## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JENI RIEGER individually, and on behalf of a class of similarly situated individuals,<br><br>              Plaintiff,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, d/b/a AUDI OF AMERICA, INC., AUDI AG, a German corporation, and VOLKSWAGEN AG, a German corporation,<br><br>              Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiff Jeni Rieger ("Plaintiff") brings this action for herself and on behalf of all similarly situated persons ("Class Members") in the United States who purchased or leased any 2012-2017 Audi vehicle equipped with 2.0-liter turbocharged engines ("Class Vehicles")[1] against Volkswagen Group of America,

---

[1] The Class Vehicles are any 2012 through 2017 model year Audi vehicles equipped with a 2.0 liter turbocharged engine. These vehicles include the following Audi models: TT, A3, A4, A5, A6, Q3, and Q5.

Inc., ("VWGoA") d/b/a Audi of America, Inc., Audi AG, and Volkswagen AG ("VWAG") (collectively "VW" or "Defendants"). The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

2.     This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

3.     Defendants VWAG, Audi AG, or both, designed and manufactured the Class Vehicles, and Defendant VWGoA imported, distributed, marketed, and sold the Class Vehicles through its extensive network of authorized dealerships in the United States. Defendant VWGoA also provides service and maintenance for the Class Vehicles dealers and service providers nationwide, using information provided by VWAG, Audi AG, or both.

4.     Defendants sold, directly or indirectly, through their agent dealers and other retail outlets, the Class Vehicles throughout the United States, without disclosing that the Class Vehicles' were equipped with defective turbocharged 2.0 liter engines ("2.0T Engine").

5.     VW's history of trouble with the 2.0T Engine is extensive, with the subject engine being the genesis for other class action lawsuits for excessive oil consumption in its 2009-2011 model year vehicles, and for the defective timing

chain design for its 2008-2013 model year vehicles.[2] These actions ultimately led VW to extend its warranty periods and reimburse claimants for unforeseeable costs related to the defective designs within the 2.0T Engines.

6.     VW wrongfully and intentionally concealed a defect in the design, manufacture, and/or workmanship of the pistons/piston heads ("Piston Defect") in the 2.0T Engine. The Piston Defect can cause the pistons and the engine itself to fail at any time. It can also cause the engine to consume an excessive amount of oil. As a result of the Piston Defect, Plaintiff and Class Members incur out of pocket costs to repair or replace the damaged engine parts or their entire engine. The repairs cost thousands of dollars.

7.     The Piston Defect in the 2.0T Engine also presents a safety risk for Plaintiff and Class Members, because when a piston or pistons suddenly and unexpectedly fails, the Class Vehicles immediately lose engine power. It goes without saying that a sudden loss of power poses a clear-cut safety risk—it can prevent the driver from accelerating, maintaining speed, and even adequately controlling the steering wheel, engaging the brakes, all of which drastically increase the risk of collisions.

8.     The Piston Defect also causes substantial damage. When the defect

---

[2] *See Asghari v. Volkswagen*, 42 F.Supp.3d 1306 (C.D. California, 2013); *see also In Re Volkswagen Timing Chain Product Liability Litigation* 16-CV-2765 JLL 2017 WL 1902160 (D.N.J. May 8, 2017).

manifests, in addition to destroying critical engine components, it causes further damage throughout the powertrain of the Class Vehicles as shards of the pistons are circulating throughout the engine and fuel system.

9. By way of explanation, in internal combustion engines, the piston is a fast-moving metal component contained within a cylinder. Piston rings attached at the piston head make the piston gas-tight. A piston's purpose is to transfer force from expanding gas in the cylinder to the crankshaft via a piston rod and/or connecting rod. In most, if not all, mass produced car engines, the intake, compression, combustion and exhaust process takes place above the piston in the cylinder head, which forces the piston to move up and down within the cylinder, thereby causing the crankshaft to turn. The piston is subjected to tremendous forces and heat during normal engine operation.

10. Specifically, the pistons and or piston heads in the Class Vehicles' 2.0T Engine are defective in that they cause excessive oil consumption and crack, fracture, or splinter at their point of contact. The damage to the pistons causes immediate loss of compression within the engine cylinder and causes the remnants of the piston to circulate throughout the fuel system of the Class Vehicles. These failures occur before the engine reaches 75,000 miles, resulting in a lifespan well short of the class members' expectations and the industry standard for similar engines.

11.    The Piston Defect is inherent in each Class Vehicle and was present at the time of sale.

12.    VW undertook affirmative measures to conceal the Piston Defect through, among other things, a Technical Service Bulletin ("TSB") that VWGoA issued to its authorized repair facilities (but not to the class members themselves).

13.    VW was sufficiently aware of the Piston Defect from pre-production testing, design failure mode analysis, calls to its customer service hotline, and customer complaints made to dealers. However, this knowledge and information was exclusively in the possession of VW and its network of dealers who are Defendants' agents for repairs and, therefore, unavailable to consumers.

14.    The Piston Defect is material because it poses a serious safety concern. As attested by Class Members in scores of complaints to the National Highway Traffic Safety Administration ("NHTSA"), and other online forums, the Piston Defect can impair any driver's ability to control his or her vehicle and greatly increase the risk of collision.

15.    The Piston Defect is also material because consumers incur significant and unexpected repair costs. VW's failure to disclose, at the time of purchase, the pistons' marked tendency to fail is material because no reasonable consumer expects to spend hundreds, if not thousands, of dollars to repair or replace essential engine components expected to last much longer than 75,000 miles of use.

16.    Had VW disclosed the Piston Defect, Plaintiff and Class Members would not have purchased the Class Vehicles or would have paid less for them.

## THE PARTIES

**Plaintiff Jeni Rieger**

17.    Plaintiff Rieger is a Nevada citizen who resides in Las Vegas, Nevada.

18.    On or around August 18, 2016, Plaintiff Rieger purchased a certified pre-owned 2015 Audi A4 Allroad with only 8,000 miles, equipped with the subject 2.0T Engine, from Audi San Diego, an authorized Audi dealer in San Diego, California. As a certified pre-owned vehicle, Plaintiff Rieger's 2015 Audi A4 came with an express warranty provided by VW and must go through a rigorous checklist to confirm that the vehicle contains no defects or damage.

19.    Plaintiff Rieger purchased her vehicle primarily for personal, family, or household use.

20.    Passenger safety and reliability were important factors in Plaintiff Rieger's decision to purchase her vehicle. Before making her purchase, Plaintiff Rieger did an online search for the vehicle on Google. She watched YouTube videos and television ads about the 2015 Audi. Plaintiff visited VW's official website to research the 2015 Audi and its 2.0T engines. Moreover, before making her purchasing decision, Plaintiff Rieger test drove the vehicle she ended up buying with an authorized dealership salesperson. During the test drive, Plaintiff and the

salesperson discussed the vehicle, and the salesperson made no mention of the Piston Defect. Also, before purchase, Plaintiff Rieger reviewed the vehicle's Monroney Sticker or "window sticker" which listed official information about the vehicle. Like the other sources, in the Monroney Sticker, Defendants made no reference to the Piston Defect. Plaintiff Rieger believed that her 2015 Audi would be a safe and reliable vehicle.

21.     VW's omissions were material to Plaintiff Rieger. Had VW disclosed its knowledge of the Piston Defect before she purchased her vehicle, Plaintiff Rieger would have seen and been aware of the disclosures. Furthermore, had she known of the Piston Defect, Plaintiff Rieger would not have purchased her vehicle, or would have paid less for it.

22.     Specifically, on or around October 10, 2020 with approximately 45,000 miles on the odometer of her Audi A4, Plaintiff Rieger presented her vehicle to Walters Audi, an authorized Audi dealership in Riverside, California, complaining of a check engine light which gave a reading indicating "cylinder misfire." Walters Audi performed tests and confirmed that Plaintiff's vehicle had a cylinder misfire due to loss of compression in the engine cylinder. Despite these findings, Walters Audi and VWGoA refused to cover the necessary repairs under warranty. Unable to afford the high out of pocket cost, Plaintiff Rieger had no choice but to leave the dealership with her vehicle unrepaired.

23.     Following her unsuccessful repair visit Walters Audi, On November 11, 2020 Plaintiff Rieger's vehicle was transported to Audi Henderson, in Henderson, Nevada and the vehicle continued to exhibit symptoms due to loss of compression in the engine, including but not limited to rough starting of the engine, excessive shuddering and loud operation of the engine, and inability to maintain a consistent idle. Audi Henderson and VWGOA again refused to cover the necessary repairs under warranty.

24.     Accordingly, on or around February 5, 2021, Plaintiff Rieger transported her vehicle to a CarsNV, LLC, a third-party repair facility in Las Vegas, Nevada, complaining that her vehicle was exhibiting the aforementioned symptoms and that it experienced a general loss of power during operation of her vehicle. Upon investigation, CarsNV LLC discovered that her engine needed to be replaced entirely. Accordingly, because of the Piston Defect, and because VWGoA refused to cover the necessary repairs under warranty when Ms. Rieger presented her vehicle to Defendants' dealership, Plaintiff Rieger had to pay an approximate total of $10,059 out of pocket to have her engine replaced, including but not limited to transport fees, purchasing new replacement parts, and labor for removing and repairing the damaged engine.

25.     Accordingly, Plaintiff Rieger's vehicle continues to exhibit the Piston Defect, continues to have loss of compression, and has never been repaired by VW.

26.     At all times, Plaintiff Rieger, like all Class Members, attempted to drive her vehicle in a manner both foreseeable and in which it was intended to be used, in the sense that she has driven it like a typical consumer and not used it for drag racing, for example.

**Defendants**

27.     Defendant VWGoA is a New Jersey corporation with its headquarters at 220 Ferdinand Porsche Drive, Herndon, Virginia 20171. One of its fictious names is Audi of America, Inc., which it has registered with the Virginia Secretary of State.

28.     Defendant VWGoA, through its various entities, markets, distributes, warranties, and sells Volkswagen and Audi-branded automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including New Jersey and California.

29.     In order to sell vehicles to the general public, VWGoA enters into agreements with authorized dealerships who engage in retail sales with consumers such as Plaintiff. In return for the exclusive right to sell new Volkswagen and/or Audi-branded vehicles, authorized dealerships are also permitted to service and repair these vehicles under the warranties VWGoA provides directly to consumers who purchased new vehicles from the authorized dealerships. All service and repair at an authorized dealership is completed according to VWGoA, Audi AG, and

VWAG instructions, issued through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents. Per the agreements between VWGoA and the authorized dealers, consumers such Plaintiff are able to receive services under VWGoA's issued warranty at dealer locations that are convenient to them. These agreements provide VWGoA with a significant amount of control over the actions of the authorized dealerships.

30.     VWGoA also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles. VWGoA also is responsible for the content of the Monroney Stickers on Volkswagen and Audi-branded vehicles.

31.     Defendant Volkswagen AG is a German corporation headquartered in Wolfsburg, Germany. VWAG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Volkswagen, Skoda, and Audi-branded vehicles and parts for those vehicles worldwide, including the in the United States.

32.     VWAG is the parent corporation of VWGoA and Audi AG, which are each wholly owned subsidiaries. VWAG is also the parent corporation of the United States manufacturing facilities for Volkswagen and Audi-branded vehicles. For all its United States subsidiaries, including VWGoA, VWAG and/or Audi AG provides all the technical and information for the purpose of manufacturing, servicing, and repairing the Class Vehicles.

33.    Defendant Audi AG is a foreign corporation located at Auto-Union-Str. 2 D-85045, Ingolstadt, Germany. Audi AG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Audi-branded vehicles and parts for those vehicles worldwide, including in the United States.

34.    The relationship between VWAG and VWGoA is governed by a General Distributor Agreement that gives Audi AG and/or VWAG the right to control nearly every aspect of VWGoA's operations related to both Volkswagen and Audi-branded vehicles—including sales, marketing, management policies, information governance policies, pricing, and warranty terms.

35.    For all VWAG United States subsidiaries, including VWGoA, VWAG and/or Audi AG provides all the technical and information for the purpose of servicing, and repairing the Class Vehicles, as well as the information needed to draft the owners' manuals.

36.    At all relevant times, VW was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in San Diego County and throughout the United States of America.

## JURISDICTION

37.    This is a class action.

38.    Plaintiff and members of the proposed Class are citizens of states

different from the home state of Defendant.

39.     The aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

40.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

41.     Defendants, through their business of distributing, selling, and leasing the Class Vehicles, have established sufficient contacts in this district such that personal jurisdiction is appropriate. As such, Defendants are deemed to reside in this district pursuant to 28 U.S.C. § 1391(c)-(d).

42.     In addition, a substantial part of the events or omissions giving rise to these claims took place in this District because VWGoA is incorporated in this District.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

43.     For years, VW has designed, manufactured, distributed, sold, and leased the Class Vehicles. VW has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles in New Jersey, California, and nationwide. VW warrants and services the Class Vehicles through its nationwide network of authorized dealers and service providers.

44.     The 2.0T Engine is a four-cylinder turbocharged engine, designated as the second generation EA888 by VW.  In production since 2008, the 2.0T Engine

was different from the first generation EA888 in that it had low-friction thin piston rings and newly designed pistons.

45.    As with most internal combustion engines, the piston slides into the cylinder bore of an engine block, transferring the force from expanding gas in the cylinder to the crankshaft via the crankpin.  See Figure 1 below. Pistons, such as the ones in the 2.0T engine, are cast aluminum alloy pieces which conduct and transfer heat.  Because aluminum expands when heated, both the piston and the cylinder bore must be manufactured precisely so that the piston can move freely without allowing the force of the combusting gas to escape.



FIGURE 1

13

46.     The piston head is the top of the piston, closest to the cylinder head. Piston rings, which are settled into the piston grooves, seal the combustion chamber, transfer heat to the cylinder wall, and control oil consumption.  As with the piston itself, the piston rings must be manufactured to precise specifications, so that they can provide a radial fit between the cylinder wall and the piston.

47.     The Class Vehicles contain one or more design, manufacturing, and/or workmanship defects, including but not limited to defects wherein the pistons, piston rings, and/or piston heads cannot withstand the heat and pressure of the engine and crack, fracture, or splinter as a result. See Figure 2 below.  One result of this defect is that the engine can consume excessive amounts of oil.  Furthermore, the damage to the piston causes immediate loss of compression within the engine cylinder and causes the remnants of the piston to circulate throughout the fuel system of the Class Vehicles, damaging other engine components. (the Piston Defect).



FIGURE 2[3]

48.     VW acquired its knowledge of the Piston Defect within the 2.0T Engine through sources not available to Plaintiff or Class Members, including but not limited to pre-release testing data, early consumer complaints about the Piston Defect to VW and its dealers about the Class Vehicles as well as other earlier model year versions of such vehicles, testing conducted in response to those complaints, aggregate data from VW's dealers, and from other internal sources.

49.     The 2.0T Engine, since its widespread release by VW in 2009, has proven to be nothing but problematic. Since its release, the 2.0T Engine has been subject to many complaints, including but not limited to excessive oil consumption and defective timing chains, both of which resulted in VW agreeing to extend its warranty and reimburse persons affects by such defect. Presently, the 2.0T Engine in the Class Vehicles has caused VW to become aware of the Piston Defect through many customers' complaints of loss of compression within an engine cylinder, metal shavings within the fuel system, and/or other forms of engine failure. All of these failures or sequelae of failures ultimately cause the catastrophic failure of the 2.0T Engine, the majority of the time before 75,000 miles. As such, many customers have had to completely replace their engines prematurely.

---

[3] Humble Mechanic, "Catastrophic Piston Failure 2.0t TSI Engine ~ Walkthrough and Diagnosis," Aug. 7, 2019, https://www.youtube.com/watch?v=V6jzRQpMw24 (last visited April 19, 2021)

50.     Specifically, the 2.0T Engine's pistons/piston heads were defectively designed to operate within the formulaic pressures and temperatures of the oil and fuel system, which in turn causes the piston/piston heads to crack, splinter, shatter, fracture, and/or break off into pieces within the engine cylinder. In turn, this causes loss of compression in one or more cylinders, triggering a "check engine light" for cylinder misfire due to loss of engine performance. Additionally, the pistons' constant engagement to tremendous forces and heat during normal engine operation will cause the piston head and/or piston rings to become faulty or fail, leading to excessive oil consumption, engine knock and/or pre-ignition, which can lead to undesirable pressure within the engine resulting in poor performance and engine damage, and oftentimes catastrophic damage.

**The Piston Defect Poses a Serious Safety Concern**

51.     As discussed *supra,* when a piston or pistons suddenly and unexpectedly fails, the Class Vehicles immediately lose engine power. It goes without saying that a sudden loss of power poses a clear-cut safety risk—it can prevent the driver from accelerating, maintaining speed, and even adequately controlling the steering wheel, engaging the brakes, all of which drastically increase the risk of collisions.

16

**VW Had Superior and Exclusive Knowledge of the Piston Defect**

52.    Since 2012, VW has designed, manufactured, distributed, sold, and leased the Class Vehicles. VW was acutely aware of the 2.0T engine's defective pistons and piston rings that caused oil consumption well before the Class Vehicles were offered for sale on the market.

53.    VW had superior and exclusive knowledge of the Piston Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

54.    Well before Plaintiff's purchase in August 2016, VW knew about the Piston Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to VW and its dealers, testing conducted in response to those consumer complaints, high failure rates of the pistons within the 2.0T Engine, the data demonstrating the inordinately high volume of replacement part sales, and other aggregate data from VW dealers about the problem.

55.    VW is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, VW conducts tests, including pre-sale durability testing, on incoming components, including the pistons, to verify the

parts are free from defect and align with VW's specifications.[4] Thus, VW knew or should have known the pistons within the 2.0T Engine were defective and prone to put drivers in a dangerous position due to the inherent risk of the Piston Defect.

56.    Specifically, VW's preproduction testing includes extensive road testing at its proving grounds in Ehra-Lessien, Germany.  There, testing includes materials testing for engine components and VW is known to be spend more for research and development than any other major vehicle manufacturer in the world and produces far more pre-production vehicles.[5]  In fact, VW even mistakenly sold nearly 7,000 pre-production models, which were meant to be destroyed, to consumers.  The pre-production testing on the 2.0T engines revealed the Defect to VW.[6]

57.    Additionally, Defendants should have learned of this widespread defect from the sheer number of reports received from dealerships. VW's customer relations department, which interacts with individual dealerships to identify

---

[4] Akweli Parker, *How Car Testing Works*, HOWSTUFFWORKS.COM, http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last viewed June 5, 2019).

[5] Christiaan Hetzner, *Inside Volkswagen's secret Ehra-Lessien proving grounds*, AUTOWEEK.COM, https://www.autoweek.com/news/technology/a1828046/volkswagens-secret-ehra-lessien-proving-grounds/ (last viewed April 19, 2021).

[6] Kyle Hyatt, *VW sold at least 6,700 preproduction cars to consumers and that's not good*, CNET.com, https://www.cnet.com/roadshow/news/vw-preproduction-test-cars-sold-to-public/ (last viewed April 20, 2021)

potential common defects, has received numerous reports regarding the Piston Defect, which led to the release of the Technical Tips for its pre-2012 2.0T Engine. VW's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

58.    VWGoA's warranty department similarly analyzes and collects data submitted by its dealerships to identify warranty trends in its vehicles. It is VWGoA's policy that when a repair is made under warranty the dealership must provide VWGoA with detailed documentation of the problem and a complete disclosure of the repairs employed to correct it. Dealerships have an incentive to provide detailed information to Defendant, because they will not be reimbursed for any repairs unless the justification for reimbursement is sufficiently detailed.

59.    Federal law requires automakers like VW to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

60.    Automakers have a legal obligation to identify and report emerging

safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety-related. *Id.* Thus, VW knew or should have known of the many complaints about the Piston Defect logged by NHTSA ODI. The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, VW to the Piston Defect in its 2.0T Engines as early as 2012.

61.    With respect solely to the Class Vehicles, the foregoing excerpts of owner incident reports are but a few examples of the many complaints concerning the Piston Defect which are available through NHTSA's website, www.NHTSA.gov. Many of the complaints reveal that VW, through its network of dealers and repair technicians, had been made aware of the Piston Defect. In addition, the complaints indicate that despite having knowledge of the Piston Defect and even armed with knowledge of the exact vehicles affected, VW often refused to diagnose the defect or otherwise attempt to repair it while Class Vehicles were still under warranty. When VW did attempt repairs, it merely replaced the defective pistons with similarly defective pistons.

62.    On September 15, 2015, a class vehicle driver reported the following

incident dated September 15, 2015:[7]

> EXCESSIVE OIL CONSUMPTION. UNDER NORMAL
> DRIVING CONDITIONS, THE ENGINE LIGHT CAME ON
> TO ADD 1 QUART OF OIL 3,000 MILES BEFORE THE
> NEXT SERVICE INTERVAL. ONLY 22,000 MILES ON
> THE CAR.

63.    On October 13, 2014, a class vehicle driver reported the following

incident dated August 14, 2014:[8]

> I GOT A LOW OIL WARNING WITH ONLY 2700 MILES
> ON THE CAR, AND THE OIL IS DARK AND DIRTY
> COMPARE TO THE LONER CAR I GOT.
> IT HAS BEEN THREE TIMES I BROUGHT MY CAR BACK
> TO THE SERVICE DEPARTMENT IN THE DEALER, BUT
> THEY NEVER SOLVED THE PROBLEM. FIRST TIME,
> THEY TOPED UP THE OIL. AFTER TWO WEEKS, THE
> OIL WAS LOW AGAIN, SO I BROUGHT IT BACK. THIS
> TIME, THEY CHANGED A NEW OIL TANK CAP FOR ME,
> BUT TWO WEEKS LATER, THE OIL WAS LOW. I DROVE
> IT BACK TO THE SERVICE, THIS TIME ACTUALLY THE
> AUDI COMPANY TOLD ME THAT IS BECAUSE MY CAR
> IS STILL IN BREAK-IN PERIOD AND JUST TOPPED UP
> THE OIL AGAIN. BUT AS AN ENGINEER, I KNOW IT
> CANNOT BE 2 QT PER 1000 MILES.

64.    On April 6, 2018, a class vehicle driver reported the following incident

dated March 5, 2018:

> LOST COMPRESSION AT ONLY 43,670 MILES TO
> FOURTH CYLINDER. ENGINE WAS REBUILT BY AUDI
> DEALER. FOUND PIECES OF OIL CONTROL RING
> FROM A PISTON IN OIL PAN, AIR LEAKING THROUGH
> INTAKE, SEATING SURFACE FOR INTAKE VALVE
> NUMBER 2 ON CYLINDER 4 WAS BURNT AND UNABLE
> TO SEAT PROPERLY DUE TO SPRING ON THAT VALVE
> BEING WEAKER THAN OTHERS.

---

[7]https://www.nhtsa.gov/vehicle/2015/AUDI/A4/4%252520DR/AWD#complaints
[8] https://www.nhtsa.gov/vehicle/2015/AUDI/A3

65.     On January 25, 2016, a class vehicle driver reported the following

incident dated June 4, 2015:[9]

> THE CONSUMER ALSO STATED THE VEHICLE
> BURNED 1/4 QUART OF OIL EVERY 5,000.

66.     On September 11, 2018, a class vehicle driver reported the following

incident dated August 19, 2018:

> I JUST BOUGHT THE CAR FROM LEASING IT IN MAY
> 2018.THEY DID A INSPECTION AT AUDI AND ABOUT 3
> WEEKS LATER THE ENGINE GOT STUCK AND CAR
> SMOKED FROM HOOD.

67.     On February 25, 2020, a class vehicle driver reported the following

incident dated February 15, 2020:[10]

> WHILE IN MOTION ON A DARK COUNTRY ROAD IN
> VT, MY 2015 AUDI Q5 CAR WITH JUST 61,000 MILES ON
> IT STARTED TO MAKE A LOUD NOISE AND BECAME
> UNDRIVABLE. THE DRIVER SAT ON THE ROAD AND
> WAITED FOR ROADSIDE ASSISTANCE AND A TOW
> TRUCK TO TAKE THE CAR TO THE NEAREST AUDI
> DEALER, WHICH WAS 40 MILES AWAY. SEVERAL
> DAYS LATER, AUDI DRAINED THE OIL IN THE ENGINE
> AND FOUND METAL SHAVINGS.

68.     On August 7, 2018, a class vehicle driver reported the following

incident dated July 8, 2018:

> TL* CONTACT OWNS A 2015 AUDI Q5. AFTERTHE
> VEHICLE UNDERWENT AN OIL CHANGE, THE OIL
> CHANGE WARNING INDICATOR ILLUMINATED. THE
> CONTACT MENTIONED THAT THE OIL NEEDED TO BE
> REFILLED EVERY 1,000 MILES. THE VEHICLE WAS

---

[9] https://www.nhtsa.gov/vehicle/2015/AUDI/Q3

[10] https://www.nhtsa.gov/vehicle/2015/AUDI/Q5/SUV/AWD

> TAKEN TO FATHERS & SONS AUDI WEST
> SPRINGFIELD (434 MEMORIAL AVE, WEST
> SPRINGFIELD, MA 01089, (413) 384-5229) WHERE THE
> OIL CONSUMPTION TEST SHOWED HOW MUCH OIL
> WAS BURNED AND THAT THE PISTONS WERE
> DAMAGED. THE DEALER STATED THAT THE PISTON
> AND SOLENOID NEEDED TO BE REPAIRED. THE
> VEHICLE WAS NOT REPAIRED. THE MANUFACTURER
> WAS NOTIFIED OF THE FAILURE.

69.     On November 5, 2020, a class vehicle driver reported the following

incident dated January 1, 2019:[11]

> THIS VEHICLE IS NEEDING A QUART OF OIL EVERY
> 300-400 MILES. IT'S A 6 YEAR OLD CAR, THERE IS
> SOMETHING SERIOUSLY WRONG WITH AUDI ENGINE
> DESIGN. A QUART OF OIL EVERY 300-400 MILES IS
> COMPLETELY UNACCEPTABLE. SINCE DAY 1 THIS
> VEHICLE HAS HAD AN OIL CONSUMPTION PROBLEM
> NOW AT 75K MILES AND THE PROBLEM JUST
> CONTINUES TO GET WORSE.

70.     On March 24, 2017, a class vehicle driver reported the following

incident dated January 24, 2017:

> TL* THE CONTACT OWNS A 2014 AUDI A4. WHILE
> DRIVING 55 MPH, THE VEHICLE BEGAN TO SHAKE.
> THE DEALER DETERMINED THAT THE PISTONS IN
> THE ENGINE LOST COMPRESSION AND THE ENGINE
> NEEDED TO BE REPLACED. THE VEHICLE WAS NOT
> REPAIRED. THE MANUFACTURER WAS MADE AWARE
> OF THE FAILURE. THE FAILURE MILEAGE WAS 62,000.

71.     On April 4, 2019 a class vehicle driver reported the following incident

dated April 1 2019:[12]

> EPC LIGHT ILLUMINATED, ROUGH IDLING, LOSS OF
> POWER, CAR WILL NOT TURN ON. 2017 IT DID THE

---

[11] https://www.nhtsa.gov/vehicle/2014/AUDI/A4/4%252520DR/AWD

[12] https://www.nhtsa.gov/vehicle/2013/AUDI/A4/4%252520DR/AWD

SAME THING, FOUND ELECTRICAL FAULT NEAR GAS
TANK (COULD HAVE BLOWN UP). AUDI FIX AT
GOODWILL. COMPRESSION OF ENGINE WAS NEVER
CHECKED. 2019 SAME THINGS HAPPENING, ENGINE
LOST COMPRESSION IN 2 CYLINDERS. ALL SERVICES
DONE AT AUDI. TOLD NEW ENGINE $10K-13K AND
THEY WILL NOT HELP COVER COSTS. ONLY 60'000
MILES DONE ON THE CAR AND NO OVERHEATING
ISSUES EVER.

72.    On February 27, 2019, a class vehicle driver reported the following

incident dated February 21, 2019:

I AM CONSUMING 1.66 QUARTS IN 600 MILES WHICH
HAS BEEN DOCUMENTED BY MY LOCAL AUDI
DEALER. I WAS TOLD CALL AUDI USA CUSTOMER
SUPPORT TO START CLAIM. I DID AND WAS TOLD
THEY UNDERSTAND THAT MY CAR HAS AN ISSUE
BUT SINCE IT DID NOT FALL IN THE YEARS OF CLASS
ACTION LAWSUIT THEY WOULD NOT BE ABLE TO
ASSIST IN ANY MATTER. NOW I HAVE DONE MY
HOMEWORK AND HAVE FOUND AUDI DOES MAKE
EXCEPTIONS BUT WILL DO NOTHING IN MY CASE.
UNFORTUNATELY I CAN NOT UPLOAD DOCUMENTS
FROM AUDI BECAUSE IT HAS ALL MY INFORMATION
AND VEHICLE IDENTITY. BUT I CAN SAY MY AUDI
CASE NUMBER IS [XXX].
SO MAYBE AUDI CAN RESPOND TO MY CLAIM IN THE
APPROPRIATE WAY AND EXTEND THEIR HELP TO
OTHER VEHICLES WITH THE SAME ENGINE.

73.    On March 25, 2019, a class vehicle driver reported the following

incident dated February 6, 2019:

THE CAR HAS BEEN BURNING THROUGH OIL. IT HAS
BEEN REQUESTING A QUART OF OIL BE ADDED JUST
ABOUT EVERY 500-700 MILES. ABOUT A YEAR AGO
THE PROBLEM STARTED IN EARLY 2019 AND AT
FIRST IT WAS JUST EVERY 1200-900 MILES THAT THE
CAR WOULD ASK FOR AN EXTRA QUART OF OIL.
THEN IN THE PAST 6 MONTHS IT HAS GOTTEN WORSE
ASKING FOR A QUART OF OIL EVERY 500-700 MILES;
THIS IS ALL IN ADDITION TO THE REGULARLY

SCHEDULE OIL CHANGES.

74.     On March 7, 2019, a class vehicle driver reported the following incident dated August 16, 2018:[13]

> TL* THE CONTACT OWNS A 2016 AUDI Q3. THE
> CONTACT STATED THAT THE VEHICLE WOULD NOT
> START PROPERLY AND WOULD CONSTANTLY
> DECELERATE WHILE IN THE MIDDLE OF TRAFFIC.
> THE CONTACT EXPERIENCED THE FAILURES OFTEN.
> ALSO, THE CHECK ENGINE INDICATOR
> ILLUMINATED. THE VEHICLE WAS TOWED TO AUDI
> DOMINION (21105 I-10, SAN ANTONIO, TX 78257, (888)
> 478-2089) WHERE IT WAS DIAGNOSED THAT A NEW
> FUEL SENSOR NEEDED TO BE INSTALLED. THE
> VEHICLE WAS REPAIRED, BUT THE FAILURES
> RECURRED. THE CONTACT TOOK THE VEHICLE BACK
> TO THE DEALER AND HAD IT REPAIRED AGAIN, BUT
> THE FAILURES RECURRED. DURING THE THIRD
> REPAIR, THE DEALER BROKE ONE OF THE
> HEADLIGHTS. SINCE THEN, THE FAILURES
> RECURRED MULTIPLE TIMES. THE MANUFACTURER
> WAS NOTIFIED AND DID NOT ASSIST. THE FAILURE
> MILEAGE WAS 49,500.

75.     On August 23, 2018, a class vehicle driver reported the following incident dated August 15, 2018:

> WHEN STARTING VEHICLE (EITHER COLD OR WARM),
> VEHICLE HAS A SEVERAL SECONDS HESITATION
> WHEN PUSHING DOWN ACCELERATOR. VEHICLE
> DOES NOT MOVE, HESITATES THEN LURCHES
> FORWARD AS IF THE VEHICLE IS NOT GETTING
> SUFFICIENT POWER TO MOVE. VEHICLE HAS BEEN
> TO THE VOLKSWAGEN DEALER SEVERAL TIMES AND
> THEY HAVE BEEN UNABLE TO REPAIR. THIS IS
> DANGEROUS WHEN YOU ARE ENTERING A HIGHWAY
> OR CROSSING A MULTI LANE ROAD AND HAVE TO
> MOVE QUICKLY AND THE VEHICLE DOES NOT
> RESPOND.

---

[13] https://www.nhtsa.gov/vehicle/2016/AUDI/Q3/SUV/FWD

76.    On January 21, 2021, a class vehicle driver reported the following

incident dated January 21, 2021:[14]

> SEVERAL COMPLAINTS OF FAULTY PISTON RINGS
> CAUSING OIL CONSUMPTION TO BE 1 QUART EVERY
> 200/300 MILES FROM AUDI A4 MODELS 2009-2015.

77.    On November 5, 2019, a class vehicle driver reported the following

incident dated November 3, 2019:

> PISTON RINGS CAR IS SMOKING AND OIL IS COMING
> OUT OF THE MUFFLER THE CAR HAVE LAST THEN
> 100K MILEAGE.

78.    On September 26, 2018, a class vehicle driver reported the following

incident dated August 24, 2018:

> 2012 AUDI A4 QUATTRO USES (BURNS) AN EXCESSIVE
> AMOUNT OF OIL, CONSTANTLY HAVING TO ADD
> MOTOR OIL. MUST ADD A QUART OF OIL ON A
> MONTHLY BASIS AND DRIVING LESS THAN 1,000 PER
> MONTH.

79.    On November 1, 2018, a class vehicle driver reported the following

incident dated November 6, 2016:

> EXCESSIVE OIL CONSUMPTION ISSUES, CHECK
> ENGINE LIGHT IS ON AND AUDI WANTS TO CHARGE
> ME $12,000 TO REPAIR THE OIL CONSUMPTION DUE
> TO THEIR BEING DAMAGE TO MY PISTON RINGS.

80.    On October 1, 2018, a class vehicle driver reported the following

incident dated September 30, 2018:

> THE VEHICLE HESITATES WHEN ACCELERATING
> FROM A STOP OR OCCASINGLY SURGES UNDER

---

[14] https://www.nhtsa.gov/vehicle/2012/AUDI/A4/4%252520DR/FWD

HEAVIER THROTTLE PRESSURE. THIS IS VERY
DANGEROUS AND THE DEALERS ARE TELLING US
THIS IS "NORMAL" BEHAVIOR. I SEE THAT MANY
DRIVERS HAVE REPORTED THIS ISSUE. DOES
SOMEONE HAVE TO GET INJURED BEFORE WE GET
TAKEN SERIOUSLY? VOLKSWAGEN NEEDS TO FIX
THE PROBLEM WITH THE ENGINE NOW.

81.    On April 24, 2017, a class vehicle driver reported the following

incident dated April 4, 2017:

I TURNED CAR OFF, WENT INTO A STORE CAME
BACK, STARTED CAR AND IT SOUNDED HORRIBLE,
AS IF TOTALLY FALLING APART. TURNED IT OFF,
TRIED AGAIN AND WOULD NOT START AT ALL.
DEALER SAID ENGINE WAS SHOT, SEIZED UP HAS TO
BE REPLACED. THEY HAVE BEEN MAINTAINING IT
SINCE THE DAY I BOUGHT IT. OIL CHANGES ALL UP
TO DATE. 30,000 MILE OUTSIDE OF WARRANTY.
DEALER HAS NO UNDERSTAND OF WHAT COULD
HAVE HAPPENED. COULD THIS HAVE HAPPENED
WHEN I WAS DRIVING? NO IDEA. HAS ANYONE
HEARD OF THIS HAPPENING TO THEIR AUDI A4 2012?

82.    On July 6, 2020, a class vehicle driver reported the following incident

dated June 11, 2020:[15]

ONLY 500 MILES FOLLOWING AN AUDI OIL CHANGE,
THE OIL SENSOR LIGHT WENT OFF NOTIFYING US TO
ADD ONE QUART OF OIL. WE ADDED ONE QUART OF
OIL AND CONTINUED DRIVING AND THEN THE LIGHT
WENT OFF AGAIN. WE CALLED AUDI SERVICE AND
THEY TOLD US TO FOLLOW THE INSTRUCTIONS AND
ADD ANOTHER QUART OF OIL. WE DID AND
REPEATED ONE MORE TIME AFTER ANOTHER HOUR
(75 MILES). AFTER FILLING THE THIRD TIME AND
DRIVING, WHITE SMOKE STARTED BILLOWING FROM
THE VEHICLE AND WE HAD THE CAR TOWED TO THE
AUDI DEALERSHIP 233 MILES FROM WHERE WE
WERE.

---

[15] https://www.nhtsa.gov/vehicle/2016/AUDI/A4/4%252520DR/AWD

83.     On November 6, 2020, a class vehicle driver reported the following

incident dated October 28, 2020:

> BOUGHT IT 7 WEEKS AGO, 44,000 MILES. SEVERE OIL
> CONSUMPTION PROBLEM I'M FINDING OUT
> EVERYONE KNOWS ABOUT ALREADY WITH AUDI
> TURBOS AND WAS PREVIOUSLY A CLASS ACTION. I'M
> PUTTING OIL IN EVERY OTHER DAY AND FEEL THE
> PISTONS MISSING WHEN I DRIVE IN THE MORNING.

84.     On November 18, 2019, a class vehicle driver reported the following

incident dated August 1, 2019:[16]

> TL* THE CONTACT OWNS A 2014 AUDI Q5. WHILE THE
> VEHICLE WAS PARKED OUTSIDE OF THE CONTACT'S
> RESIDENCE, THE CHECK ENGINE OIL WARNING
> INDICATOR ILLUMINATED WHEN THE VEHICLE WAS
> STARTED. THE CONTACT STATED THAT SHE NEEDED
> TO ADD OIL TO THE ENGINE EVERY TWO WEEKS.
> THE VEHICLE WAS TAKEN TO BIENER AUDI
> (LOCATED AT 795 NORTHERN BLVD, GREAT NECK,
> NY 11021, (516) 829-2834) THREE TIMES. ON OCTOBER
> 13, 2019, THE CONTACT WAS INFORMED THAT THE
> PISTON SIZES WERE TOO SMALL AND THE ENGINE
> NEEDED TO BE REPLACED. THE VEHICLE WAS NOT
> REPAIRED. THE MANUFACTURER WAS NOTIFIED. THE
> FAILURE MILEAGE WAS 81,886.

85.     On October 3, 2018, a class vehicle driver reported the following

incident dated September 13, 2018:

> TL* THE CONTACT OWNS A 2014 AUDI Q5. WHILE
> DRIVING 70 MPH, THE ENGINE TURNED OFF AND THE
> ELECTRONIC POWER CONTROL INDICATOR
> ILLUMINATED. THE VEHICLE WAS TOWED TO AUDI
> SAN DIEGO (9010 MIRAMAR RD, SAN DIEGO, CA 92126)
> AND REMAINED THERE FOR THREE WEEKS. THE
> MANUFACTURER WAS ALSO CONTACTED AND DID
> NOT ASSIST. THE VEHICLE WAS NOT DIAGNOSED OR

---

[16] https://www.nhtsa.gov/vehicle/2014/AUDI/Q5/SUV/AWD

REPAIRED. THE APPROXIMATE FAILURE MILEAGE
WAS 37,000. THE VIN WAS UNAVAILABLE. *TR.

86.     On August 29, 2018, a class vehicle driver reported the following

incident dated July 31, 2018:

WHILE DRIVING THE CAR, CAR SUDDENLY
STOPPED... A LOT OF LIGHTS CAME ON IN THE
DASHBOARD. THERE WAS A BURNING SMELL INSIDE
THE CAR. CAR WOULDN'T START AFTER THAT AND
HAD TO BE MANUALLY PUSHED TO THE SIDE OF THE
ROAD.
AUDI SERVICE INSPECTED THE CAR AND SAID THAT
ENGINE HAD INTERNAL DAMAGE AND I WAS ASKED
TO REPLACE THE ENGINE. CAR ONLY HAD 35,000
MILES ON IT. WARRANTY HAD EXPIRED JUST FEW
MONTHS EARLIER. I HAD GOTTEN SERVICE DONE
EVERY YEAR AT THE SAME AUDI SERVICE
DEALERSHIP AND HAD GOTTEN A SERVICE JUST A
FEW WEEKS BEFORE THIS HAPPENED! I WAS ASKED
TO REPLACE THE ENGINE AT MY COST!! LATER I WAS
OFFERED ASSISTANCE FROM AUDI, BUT IT STILL
COST ME $4,500 OUT OF MY POCKET FOR A 4 YR OLD
CAR WITH 35K MILES ON IT AND SERVICED EVERY
YEAR BY AUDI!! LOST FAITH IN THE AUDI BRAND
AND THE LOCAL AUDI DEALERSHIP & SERVICE.

87.     On May 29, 2019, a class vehicle driver reported the following

incident dated May 5, 2019:[17]

THE VEHICLE SUFFERED COMPLETE ENGINE
FAILURE AT 52,000 MILES. ON MAY 05'19 THE CAR
WAS RUNNING SMOOTHLY AT PREVAILING
HIGHWAY SPEED WHEN I STARTED TO HEAR THE
SOUND OF MARBLES RATTLING AROUND IN THE
ENGINE COMPARTMENT. PULLED OVER, AND THEN
THE CHECK ENGINE LIGHT CAME ON.
TOWED TO AUDI BURLINGTON, AND THE $159
DIAGNOSTIC THE FOLLOWING MORNING MAY 06'19
RESULTED IN A VOICE MAIL THAT SAID IN PART

---

[17] https://www.nhtsa.gov/vehicle/2013/AUDI/A5/C/AWD

> "CAR ENGINE IS BLOWN, THE COST WILL BE $11,000,
> PLEASE LET US KNOW WHAT YOU'D LIKE TO DO".
> THEY ALSO SUGGESTED I COULD TRY TO GET AUDI
> OF AMERICA TO ASSIST SO I OPENED A TICKET WITH
> THEM ON MAY 07'19 (REFERENCE NUMBER IS
> 190452228).
> THE SERVICE HISTORY IS INTACT BUT NEITHER AUDI
> OF AMERICA NOR AUDI BURLINGTON (MA)
> DEALERSHIP WILL ASSIST WITH THE REPAIR.

88.    In addition to VW's review of NHTSA complaints, discovery will show that VW's internal consumer relations department and/or online reputation management services routinely monitor the internet for complaints about its products, including complaints posted on consumer forums and other social media websites. The fact that so many customers made similar complaints put VW on notice of the Piston Defect.

89.    On March 20, 2014, a class vehicle driver reported the following incident on an online forum:[18]

> Car's a 2011 A4 with 35k miles on board, APR stage 1 tuned, all stock otherwise. I had a cylinder misfire that turned out to be a blown piston ring.

90.    On May 11, 2017, a class vehicle driver reported the following incident on an online forum:[19]

> Anybody had an issue with a newish vehicle mine's a 2012 2.0 TFSI with 44,000 miles. Massive Piston fail scored the bore hole and knackered the engine, managed to get a used engine but it still cost me £2700.00!!

---

[18] https://www.audizine.com/forum/showthread.php/587234-APR-tuned-A4-piston-failure

[19] https://www.audi-sport.net/xf/threads/broken-piston-on-2012-black-edition-a4.324604/

91.    On May 18, 2016, a class vehicle driver reported the following

incident on an online forum:[20]

> For those of you who haven't looked at my last post. I'll catch
> you up real fast. Last week driving at 65-70mph (the speed
> limit) on my way back home to base. Car decides to go into
> limp mode while I'm in the fast lane (dangerous) barely got
> over in time. Got pulled over. Pulled codes. Misfire cyl 2 and
> random misfire. Cool. I'm at 63k miles LOW MILES…. Get to
> compression test. Test #1 cyl 1, good. Cyl 2, 0% compression

92.    On May 20, 2016, a class vehicle driver reported the following

incident on an online forum:[21]

> I've got a 2012 with just under 40K miles and my car is
> currently in the shop having new pistons put in. Driving around
> town, limp mode, run codes, cylinder one misfire, swap coils
> and plugs, no change. Leak down test shows 0% compression
> and Audi diagnosis is fried rings. Their labor only cost to
> replace only the rings in one piston - $4,800! It's currently at
> my indy shop where he found a broken piston on a car with less
> than 40,000 miles!

93.    On August 3, 2017, a class vehicle driver reported the following

incident on an online forum:[22]

> I own a 2012 Q5 2.0 PP with approx 115000 miles The month I
> paid it off (last dec) the car began burning oil at a very fast
> rate. My car was just over the extended warranty I purchased
> also. When I took in the car for a small recall they informed me
> there was another recall. Some valve don't remember what its
> called but I knew through research of the oil burning it was part

---

[20] https://www.audizine.com/forum/showthread.php/708042-My-misfire-no-compression-Audi-experience

[21] https://www.audizine.com/forum/showthread.php/708042-My-misfire-no-compression-Audi-experience

[22]https://www.audizine.com/forum/showthread.php/776083-Q5-burning-oil-post-piston-ring-replacement

of the oil consumption test. I hoped it would fix the problem to no avail. Was informed they couldn't do anything. Spoke with everyone until I reached the GM.. The GM spoke with Audi corp and agreed to do and pay for the oil consumption test. It failed. They agreed to replace the pistons and rings at no cost to me which I was very grateful BUT it did not fix the problem. My wife has since driven 5000 miles and is on her third top off. She is burning approx 1100 miles per qt

94.    On July 29, 2016, a class vehicle driver reported the following incident

on an online forum:[23]

I'm a writer with Middleburg Heights Audi in Ohio. And its still a very prevalent problem. Just next week alone we have scheduled 4 2.0 TFSI engines for piston replacement covered under Audi. Out technician alone has done over 800 of these by himself.

95.    On April 21, 2018, a class vehicle driver reported the following

incident on an online forum:[24]

The ring lands broke off one piston in this vehicle. The consensus from my previous post was the failure was the result of LSPI (low speed pre ignition). There is just the lightest of scratches in the bore of the broken piston while the rest of the bores look perfect. We are going to replace the pistons, rings, and rod bearings in this motor. My question is whether to hone the cylinders. The dealers replace rings and pistons in these vehicles all the time for oil burning. They do not hone the cylinders as far as I can tell. Does it make sense to put new rings and pistons without brush honing the cylinders? The engine has only 45 000 miles.

96.    On August 26, 2019, a class vehicle driver reported the following

---

[23]https://bobistheoilguy.com/forums/threads/audi-broken-oil-control-rings-why.257011/

[24]https://diag.net/msg/md8ij6sq56novw2yrngi8kyym4

incident on an online forum:[25]

> My car is burning a lot of oil, probably 1 quart every 1200 miles. It is manageable but I can imagine this is good for the vehicle. I hope this will not require an engine rebuild.

97.    On May 15, 2019, a class vehicle driver reported the following incident on an online forum:[26]

> I recently purchased B8 A4 Quattro Prestige 6 Speed Manual. It's never been modded and had Audi service/maintenance plan up to 65K. Currently, it has around 83K miles. Car looks sexy and super tight on the road BUT it came with a CEL and on and off PEC light at times. I did basic diagnosis at home, it showed P0303 Cylinder 3 Misfire Detected. Like everyone else, I changed the coils, plugs = same issue continues to exist. Car runs rough and engine is shaky at low RPM. My next DIY fix was going to be fuel injector on 3. While I was at local Audi dealership for something different, I talked to a service adviser. He pulled up my VIN and showed me my car is under extended warranty from Audi for injectors 10Yr/120K & timing chain 10Yr/100K. He promised they would change the injectors under this warranty. I later found out there's a class-action lawsuit settlement for timing chain related issues (hmm.. interesting right). He said I wouldn't have to pay anything out of pocket if I authorize them to replace the faulty injectors. If not, I'd be responsible for the $190 diagnostics fee. Few days later, I drop off my car to service hoping them to replace the injectors FREE and they gave me loaner car. He said they normally lend them to 2015 and up owners but he made it happen. He calls me later that same day and says "there's a misfire but the cylinder is bad, really bad because during the leak-down test the piston is shot". I am shocked at this point and confused why would a piston go bad on a well maintained car.

---

[25]https://www.audiworld.com/forums/q5-sq5-mki-8r-discussion-129/2013-audi-q5-oil-consumption-2978462/

[26]https://www.audizine.com/forum/showthread.php/856065-2012-A4-B8-Cylinder-3-Misfire-No-Compression-Engine-Issue-Dilemma

98.    On October 9, 2012, a class vehicle driver reported the following

incident on an online forum:[27]

> Purchased audi a4 used at yonkers auto mall. live in ct have
> been to new york twice and now about to go third time monday
> consumes oil and dealership repair shop keeps stating this is
> normal and in spec pleaese help.

99.    On December 6, 2012, a class vehicle driver reported the following

incident on an online forum:[28]

> I had the same problem ,erery month the audi a4 say on the
> computor that a qt of iol need needed and the oil is too low.I
> just brought this car from a dealer on boston rd about 5 month
> ago for 23000$ and finance through bank.What can i do ,this
> car is a lemon

100.   On March 20, 2013, a class vehicle driver reported the following

incident on an online forum:[29]

> I just purchased a a4 2.0t wagon on feb. 9 from private
> person. oil light came on 3 days after purchase. come to find
> out this is a common problem. took it to dealer for oil
> consumption test. – it failed and was determined it needed a
> $4200 piston ring replacement. no warranty, contacted audi
> of america several times and they refuse to pay for the repair.
> Furious

101.   On August 21, 2013, a class vehicle driver reported the following

incident on an online forum:[30]

> My car is being serviced right now at Audi of Melbourne. I

---

[27]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/
[28]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/
[29]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/
[30]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/

have a 2012 a4 2.0 T. My engine low oil light came on. They
are replacing numerous parts all related to this oil issue. They
continue to sell cars and do not inform the public or customer
about this issue knowing full well about it. The service
manager stated they are replacing these particular parts in
many vehicles. I expected to buy an Audi and get the highest
quality of vehicle but, so far that is not the case

102.   On October 10, 2013, a class vehicle driver reported the following

incident on an online forum:[31]

Purchased a new 2013 Audi Q7 10 months. Love the car but
just had my first oil light issue at 9551 miles. Dealer serviced
at 5000. Dealer now claims the oil was slightly over filled
which caused the warning light to illuminate. I've never
heard of such a thing for an oil light function, low yes but
overfilled? Implied we may have overfilled but have never
even opened the hood. All services have been by the
dealership

103.   On December 27th, 2013, a class vehicle driver reported the following

incident on an online forum:[32]

I have a 2013 Audi A6. I have called the service desk
repeatedly regarding the oil consumption issue (light would
come on between 1,500-3,000 miles after being serviced).
Each time I have been told that this is normal (one of the
service reps even tried saying that every 1k miles is normal!).
Looking at my email conversation I had with the dealership
this problem goes back to May of 2012. Not too long ago I
brought my car in for the 45k service, and already I am
getting the low oil notification (I am at 48k). Looks like I
will be calling the dealership again about this issue.

104.   On January 22, 2014, a class vehicle driver reported the following

---

[31]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/

[32]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/

incident on an online forum:[33]

> I recently reported Jan 6. I had the consumption test done and Audi replaced "crankcase breather valve, seal and separator". Advised 2 things: – that those having the same issue, the service work I just had completed usually fixes the problem. Also advised, to monitor the oil and if light comes on under 1500 miles to return for "phase 2" of test. When asked what phase 2 entailed, told that depending on test a call to AudiofAmerica headquarters would be necessary for next steps. Hopefully I will not need "phase 2". Obviously Audi recognizes this problem.

105.   On May 8, 2015, a class vehicle driver reported the following incident on an online forum:[34]

> I bought my Audi back in June of 2012. A month later I drove to a town about 1 hour away, on the highway. On the way there the oil light came on. I talked to the mechanic at the dealership about this and he told me it is normal for Audi to consume oil and to just come in when ever the car needs more oil. Every single time I drive on the highway for a total of about 2 hours I will need to add a quart of oil. My boyfriend recently moved to the opposite side of town and so now I drive about 10mn on the highway a few times a week. This has caused me to have to add oil once a month.

106.   On July 19, 2015, a class vehicle driver reported the following incident on an online forum:[35]

> I bought a CPO Q5 2012 in October 2014. I have not been driving the car that much in the first year, but this year (2015) it is basically my primary commute car. in 2014, the "low oil" yellow light came on a few month after I got the car, and I took it for service. It went on again a few month after the service, and the dealer top it off for free. Looking at the oil level, it seems like it is half way down already. So

---

[33]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/

[34]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/

[35]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/

with record of burning a quarts of oil per 1000 mile, I started searching around and I learned about the issue and the class action. I confirmed that based on my engine serial number, it is one of the problematic ones subject to class lawsuit.

107.   On April 25, 2015, a class vehicle driver reported the following incident on an online forum:[36]

Purchased a CPO Audi A4 in Syracuse back in October, oil light has continued to come on every 2k to 3k miles. Dealership has done 3 oil consumption test and continue to say to drive the car and fi the light comes back on and call us. I've called Audi Headquarters to make them aware of the issue, they have called Driver's Village to schedule another oil consumption test and have also said there is no recall on my 2013 A4 because the recall ended for 2012. I wish I would have known that Audi did not correct this issue because I would have went with Lexus or Mercedes instead.

108.   On November 23, 2015, a class vehicle driver reported the following incident on an online forum:[37]

I'm not sure Audi will ever have a solution to this problem. I have a 2013 Audi A4 2.0T with 60,000Km and it uses one liter / 800 Km's (497 miles)!

109.   On April 24, 2016, a class vehicle driver reported the following incident on an online forum:[38]

I purchased a New Q5 in 2012 but notice that the 2.0 Turbo engine was manufactured in August of 2011. It had the standard 4/50,000 warranty. I am 2000 miles outside of the warranty, with 52,000 on the vehicle… and the engine lost it's oil in a matter of hours and my engine has seized. Used engine will be $4900, with another $1300 in labor to install.

---

[36]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/
[37]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/
[38]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/

110.   On March 7, 2017, a class vehicle driver reported the following incident on an online forum:[39]

> I purchased my Audi A4 private in August 2016. Currently my car has 109,000 miles. I drive within a 10 mile radius every other day or so. I must always put a quart of oil in every two weeks like clock work. Is there anything I can do to get Audi to do anything at all? An Audi dealership in Ohio told me that I would have to pay $8,000 to replace the pistons in the engine to fix the consumption issue.

111.   On March 29, 2019, a class vehicle driver reported the following incident on an online forum:[40]

> Vehicle has 70 000 km (45 000 miles). Original customer complaint was check engine light on. Engine code was P0303. When vehicle was brought it was not missing and we road tested and could not make it miss. We moved the ignition coils and plugs and sent vehicle back out with customer.
> A few days later check engine light returned and vehicle was running rough. Code was P0303 again but now the compression on cylinder three was close to nothing and leakage was through to crankcase. Further diagnosis resulted in disassembly of the engine to find a piston with broken ring lands. The top of the piston looks perfect. I am not sure the cause of the piston failure.

112.   On January 1, 2016, a class vehicle driver reported the following incident on an online forum:[41]

---

[39]https://www.lemonlaw.com/wordpress/audi-oil-consumption-problem/
[40]https://diag.net/msg/m584321f5dvhwmgaq3dx15089t
[41]https://www.carcomplaints.com/Audi/Q5/2012/engine/oil_consumption_excessive.shtml

Bought this car second hand in 2016. Noticed the oil light in the 1st week but just thought it needed a top up. Since then a quart of oil is needed every 300 km! There is no leak and I don't know where the oil is going. A full gas tank will take me 600km so that two quarts of oil for every tank of gas!! Coming from cars which have never needed additional oil between service, this is shocking and for such a brand name car, highly unacceptable. I will check with the dealers this week to see if there as a fix as my research now shows me the problem is well known. Unacceptable for a modern car!

113.   On April 1, 2017, a class vehicle driver reported the following incident on an online forum:[42]

I bought a 2012 Audi Q5 in in 2015. It was a certified pre-owned Audi straight from the dealer with 39,000 miles on it. For the first 20,000 miles of owning this car, it was all I had hoped for. Then, the check engine and oil light game started. At first, adding oil meant that it would it go another 1500-2000 miles without issue. Then, around 75k, it went to 500 to 750 miles. Once it hit 95k, it dropped to every 400 to 600 miles that it needed oil. I am at 100k and desperately want to dump this lemon. Unfortunately, I have another 16 payments on this garbage car. I've spoken with a local mechanic about it and he says the fix is replacing the pistons etc, basically, a $9k job to fix it.

114.   On November 17, 2015, a class vehicle driver reported the following incident on an online forum:[43]

I purchased my Q5 from a NY Audi dealer in March of 2012, my car was built February 2012.
Approximately, 2 1/2 years ago, my cars minimum oil light went on 1,000 miles short of its next oil change, which had never happened before. I called the dealership, I was told "this was to be expected, was just the way these cars aged". I

---

[42]https://www.carcomplaints.com/Audi/Q5/2012/engine/oil_consumption_excessive.shtml

[43]https://www.carcomplaints.com/Audi/Q5/2012/engine/oil_consumption_excessive.shtml

added the recommended 5W40 European synthetic oil. This continued, in increasing intervals.

I repeatedly asked the dealership about this and was told again and again this was fine and to keep adding oil. This car was only every serviced at Audi dealerships and has primarily highway miles. Last December, the dealership began only dealing in VW. So in the spring when I needed tail light and hvac fan work I went to the Audi dealer in Albany/Latham. They completed $1500. worth of work. I asked again about the oil, at that point I was adding a quart every 500 miles. I was told there was a known problem w/this causing early piston failure but that it was with the 2009-2011 models and to fix it would cost approximately $6000.! And, you guessed it, was told to keep adding oil!!!!

115.    On May 5, 2017, a class vehicle driver reported the following incident

on an online forum:[44]

Audi wasted my time and money proving my car failed oil consumption test. I was sent on wild goose chase for receipts, knowing they would not fix my car. For 1 person at Audi, having all power to grant you Good Will.. to fix your car. I can't believe Audi won't support their product and fix these cars. Problem obviously not solved.

116.    On February 1, 2016, a class vehicle driver reported the following

incident on an online forum:[45]

The car has been burning extra oil for about 5 months. I have brought it to the dealership twice and they say there are no issues. It is now using an extra quart of oil every 500 miles or 10 days or so. This is truly excessive and I know from this site that Audi has already settled a class action suit for the same issue with other models.

---

[44]https://www.carcomplaints.com/Audi/Q5/2012/engine/oil_consumption_excessive.shtml

[45]https://www.carcomplaints.com/Audi/Q5/2012/engine/oil_consumption_excessive.shtml

117.   On November 30, 2015, a class vehicle driver reported the following

incident on an online forum:[46]

> The Purchased the car new from the dealer. It has always
> consumed oil but late last year the oil consumption jumped.
> It currently has 90K miles and is using about a quart every
> 500 miles. Audi has a class action lawsuit settlement but is
> claiming our car is just out of the extended warranty and
> because we had it serviced outside of the dealership for a
> period of time, they prefer to spend their money fixing cars
> that they maintained (made money on).
>
> Spent a bunch of money to purchase this car and now they
> say its needs a 8K fix, total junk. Audi's lack of customer
> service, poor product quality and their larger corporate
> dishonesty (VW fraud) is disgusting.

118.   On May 16, 2016, a class vehicle driver reported the following

incident on an online forum:

> I noticed an excessive oil consumption over a year ago but the
> dealer led me to believe no one else had this issue. Over the
> past few months the issue seems to get worst - 1/2 quart every
> 2000 miles. I called the dealer but they told me I would have to
> pay for the repairs although Audi knows of the issue. Called
> Audi Customer Service and after checking my VIN they told
> me the same, although it is well known the problem was fixed
> mid year of that model year. I was about to purchase another
> Audi later this year but it would seem it would be a poor
> decision on my part: love the product but hate the fact Audi
> does not stand behind their product on a known issue

119.   On February 28, 2017, 2017, a class vehicle driver reported the

---

[46]https://www.carcomplaints.com/Audi/Q5/2012/engine/oil_consumption_e
xcessive.shtml

following incident on an online forum:[47]

> The dealer recommended piston replacement... just like all
> the previous model years subject to the lawsuit. We are
> burning 1.13 quarts every thousand miles. The cost of rthe
> epair is $6,000.00. The regional network is willing to cover
> $2K for parts, but no labor.

120.   On May 22, 2017, a class vehicle driver reported the following
incident on an online forum:[48]

> Audi A4 2012 excessive oil consumption. Dealer did the oil
> consumption test and piston and rings need to be replaced.
> Already spent over $1K on new breather crankshaft repairs
> etc. Did anyone get AoA to pay for new piston and rings? Its
> a $6K repair that I am unwilling to pay because it should not
> be doing this crap for such an expensive car.

121.   On May 31, 2017, a class vehicle driver reported the following
incident on an online forum:[49]

> My 2013 A4 (purchased in June 2012) had major oil
> consumption problem. Battled with the dealer and Audi.
> Failed oil consumption test but Audi was not going to repair
> under warranty. By now my vehicle had 115000km -problem
> was gradually getting worse. Filed a CAMVAP claim
> (Canadian Dealer Arbitration). Now Audi and dealer
> changed their minds. Car was in recently for piston
> replacement under "goodwill warranty".

---

[47]https://www.audiworld.com/forums/a4-b8-platform-discussion-128/excessive-oil-consumption-2012-model-2915461/

[48]https://www.audiworld.com/forums/a4-b8-platform-discussion-128/excessive-oil-consumption-2012-model-2915461/

[49]https://www.audiworld.com/forums/a4-b8-platform-discussion-128/excessive-oil-consumption-2012-model-2915461/

122.   On July 18, 2017, a class vehicle driver reported the following incident on an online forum:[50]

> We just bought a used 2012 Audi A4 (115k mileage) and just discovered it has this cursed problem. It burns a quart in 200 miles... that is not a typo... every 200 miles we now have to top it off.

123.   On July 18, 2017, a class vehicle driver reported the following incident on an online forum:[51]

> We just bought a used 2012 Audi A4 (115k mileage) and just discovered it has this cursed problem. It burns a quart in 200 miles... that is not a typo... every 200 miles we now have to top it off.

124.   As discussed above, VW issued a Technical Service Bulletin to address the piston issues in its 2.0T engines.  On October 16, 2013, VW issued a TSB entitled "Engine oil consumption too high." In the TSB, which applied to the 2.0T-equipped Audi A4, A5, and Q5 of various model years between 2009 and 2011, VW admitted that its customers were complaining of "excessive engine oil consumption," and directed its dealerships to replace the 2.0T engine's crankcase pressure regulating valve and front crankshaft seal in response. A copy of this TSB is attached as Exhibit 1.

---

[50]https://www.audiworld.com/forums/a4-b8-platform-discussion-128/excessive-oil-consumption-2012-model-2915461/

[51]https://www.audiworld.com/forums/a4-b8-platform-discussion-128/excessive-oil-consumption-2012-model-2915461/

125.   On September 5, 2013, VW issued a revised TSB for all of its vehicles, adding the model years 2012 through 2014.  This TSB cautioned dealer technicians to clean "metal debris resulting from the mechanical problem" out of the intake manifold and other areas when installing a replacement engine.  Notably, the TSB stated that "[e]ngine damage caused by failure to clean debris from assemblies that are transferred to a replacement engine is not covered by Warranty." A copy of this TSB is attached as Exhibit 2.

126.   The existence of the Piston Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiff and other Class Members known of the Piston Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

127.   Reasonable consumers, like Plaintiff, expect that a vehicle's engine is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiff and Class Members further reasonably expect that VW will not sell or lease vehicles with known safety defects, such as the Piston Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect VW to conceal and fail to disclose the Piston Defect to them, and to then continually deny its existence.

**VW Has Actively Concealed the Piston Defect**

128.   Despite its knowledge of the Piston Defect in the Class Vehicles, VW actively concealed the existence and nature of the defect from Plaintiff and Class Members. Specifically, VW failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

> (a)   any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the pistons within the 2.0T Engine;

> (b)   that the Class Vehicles, including the pistons, were not in good in working order, were defective, and were not fit for their intended purposes; and

> (c)   that the Class Vehicles and the pistons were defective, despite the fact that VW learned of such defects as early as early 2012.

129.   When consumers present their Class Vehicles to an authorized VW dealer for piston related repairs, rather than repair the problem under warranty, VW dealers choose to inform consumers that their vehicles are functioning properly, conduct repairs that merely mask the Piston Defect, or fail to provide service stating that such damage is not covered under warranty.

130.   VW has caused Class Members to expend money at its dealerships to

diagnose, repair or replace the Class Vehicles' pistons and/or related components, despite VW's knowledge of the Piston Defect.

**VW Has Unjustly Retained A Substantial Benefit**

131.   Defendants unlawfully failed to disclose the Piston Defect to induce Plaintiff and other Class Members to purchase or lease the Class Vehicles.

132.   Defendants thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiff's.

133.   Defendants unlawfully induced Plaintiff and class members to purchase their respective Class Vehicles by concealing a material fact (the defective pistons within the 2.0T Engine). Had Plaintiff and class members known of the subject defect, they would have paid less for the Class Vehicles or would or not have purchased them at all.

134.   Accordingly, VW's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did - and likely will continue to - deceive consumers, should be disgorged.

## CLASS ACTION ALLEGATIONS

135.   Plaintiff brings this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority

requirements of those provisions.

136.   The Class and Sub-Class are defined as:

> **Class**:   All individuals in the United States who purchased or leased any 2012-2017 Audi vehicle equipped with the 2.0-liter turbocharged engines "Class Vehicles."
>
> **California Sub-Class**:  All members of the Class who purchased a Class Vehicle in the State of California.
>
> **CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).
>
> **Implied Warranty Sub-Class**:  All members of the Class who purchased or leased their Class Vehicles in the State of California.

137.   Excluded from the Class and Sub-Classes are:  (1) Defendant, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

138.  **Numerosity**:   Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number

is easily in the multiple thousands and thus significant enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

139.   **Typicality**:  Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by VW. The representative Plaintiff, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing the defective Pistons and/or its components. Furthermore, the factual bases of VW's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

140.   **Commonality**:   There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

(a)   Whether Class Vehicles suffer from defects relating to the pistons within the 2.0T Engine;

(b)    Whether the defects relating to the pistons in the 2.0T Engines constitute an unreasonable safety risk;

(c)    Whether Defendants knew about the defects pertaining to the Pistons in the 2.0T Engines and, if so, how long Defendants have known of the defect;

(d)    Whether the defective nature of the pistons constitutes a material fact;

(e)    Whether Defendants have had an ongoing duty to disclose the defective nature of the pistons in the 2.0T Engine to Plaintiff and Class Members;

(f)    Whether Plaintiff and the other Class Members are entitled to equitable relief, including a preliminary and/or a permanent injunction;

(g)    Whether Defendants knew or reasonably should have known of the defects pertaining to the pistons within the 2.0T Engine before it sold and leased Class Vehicles to Class Members;

(h)    Whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective pistons within the 2.0T Engine and/or its

components;

(i)     Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective pistons and/or its components;

(j)     Whether Defendants breached the implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act;

(k)     Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act

(l)     Whether Defendants breached its express warranties under UCC section 2301; and

(m)     Whether Defendants breached written warranties pursuant to the Magnuson-Moss Warranty Act.

141.   Adequate Representation:  Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to vigorously prosecute this action.

142.   Predominance and Superiority:  Plaintiff and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class

action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## COUNT I

(Violation of California's Consumers Legal Remedies Act,
**California Civil Code § 1750, *et seq*.**)
(On Behalf of the CLRA Sub-Class)

143.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 134 of this Complaint.

144.  Plaintiff brings this cause of action on behalf of themselves and the CLRA Sub-Class (CLRA Sub-Class).

145.  Defendants are a "person" as defined by California Civil Code § 1761(c).

146.  Plaintiff and the CLRA Sub-Class members are "consumers" within

the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

147.   By failing to disclose and concealing the defective nature of the pistons within the 2.0T Engine from Plaintiff and putative CLRA Sub-Class members, Defendants violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their 2.0T Engine had characteristics and benefits that they do not have, and represented that the Class Vehicles and their 2.0T Engine were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

148.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

149.   Defendants knew that the Class Vehicles and their 2.0T Engine suffered from an inherent defect, were defective and were not suitable for their intended use.

150.   As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Piston Defect, Plaintiff and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' 2.0T Engine and its components

are substantially certain to fail before their expected useful life has run.

151.   Defendants were under a duty to Plaintiff and the CLRA Sub- Class members to disclose the defective nature of the 2.0T Engine and/or the associated repair costs because:

(a)   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Pistons within the 2.0T Engine;

(b)   Plaintiff and the CLRA Sub-Class members could not reasonably have been expected to learn or discover that their 2.0T Engine had a dangerous safety defect until it manifested; and

(c)   Defendants knew that Plaintiff and the CLRA Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

152.   In failing to disclose the defective nature of 2.0T Engine, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

153.   The facts Defendants concealed from or failed to disclose to Plaintiff and the CLRA Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or

lease the Class Vehicles or pay less. Had Plaintiff and the CLRA Sub-Class members known that the Class Vehicles' 2.0T Engines were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

154.   Plaintiff and the CLRA Sub-Class members are reasonable consumers who do not expect the engines installed in their vehicles to exhibit problems such as the Piston Defect. This is the reasonable and objective consumer expectation relating to a vehicle's engine.

155.   As a result of Defendants' conduct, Plaintiff and the CLRA Sub-Class members were harmed and suffered actual damages because, *inter alia,* the Class Vehicles exhibited and will continue to exhibit problems such as the Piston Defect.

156.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the CLRA Sub-Class members suffered and will continue to suffer actual damages.

157.   Plaintiff and the CLRA Sub-Class members are entitled to equitable relief.

158.   Plaintiff and California Sub-class Members provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a). If, within 30 days of the date of the notification letter, Defendants fail to provide appropriate relief for their violation of the CLRA, Plaintiff will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to

the injunctive and equitable relief she seeks now.

## COUNT II

(Breach of Implied Warranty Pursuant to Song-Beverly
**Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1,** *et seq.*)
(On Behalf of the Implied Warranty Sub-Class)

159.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 134 of this Complaint.

160.   Plaintiff brings this cause of action against Defendants on behalf of themselves and the Implied Warranty Sub-Class (IW Sub-Class).

161.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

162.   Defendants provided Plaintiff and the Implied Warranty Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their 2.0T Engines suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

163.   Defendants impliedly warranted that the Class Vehicles were of

merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their 2.0T Engine, which were manufactured, supplied, distributed, and/or sold by VW, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their 2.0T Engine would be fit for their intended use.

164.   Contrary to the applicable implied warranties, the Class Vehicles and their 2.0T Engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the IW Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective 2.0T Engine.

165.   The Piston Defect is inherent and was present in each Class Vehicle at the time of sale.

166.   As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Piston Defect, Plaintiff and the IW Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' 2.0T Engine and/or its components are substantially certain to fail before their expected useful life has run.

167.   Defendants' actions, as complained of herein, breached the implied

warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## COUNT III

**(Violation of California Business & Professions Code § 17200, *et seq.*)**
(On Behalf of the California Sub-Class)

168.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 134 of this Complaint.

169.  Plaintiff brings this cause of action on behalf of herself and the California Sub-Class (CA Sub-Class).

170.  As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Piston Defect, Plaintiff and the CA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' 2.0T Engines and/or its components are substantially certain to fail before their expected useful life has run.

171.  California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

172.  Plaintiff and the CA Sub-Class members are reasonable consumers who do not expect their engine to exhibit problems such as loss of power,

premature wear, and frequent replacement or repair.

173.   Defendants knew the Class Vehicles and their 2.0T Engines were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

174.   In failing to disclose the Piston Defect, Defendants have knowingly and intentionally concealed material facts and breached its duty not to do so.

175.   Defendants were under a duty to Plaintiff and the CA Sub-Class members to disclose the defective nature of the Class Vehicles and their 2.0T Engine because:

(a)   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' 2.0T Engine; and

(b)   Defendants actively concealed the defective nature of the Class Vehicles and their 2.0T Engine piston failures from Plaintiff and the CA Sub-Class.

176.   The facts Defendants concealed from or failed to disclose to Plaintiff and the CA Sub-Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had they known of the Piston Defect, Plaintiff and the other CA Sub-Class members would have paid less for Class Vehicles equipped with the 2.0T

Engine or would not have purchased or leased them at all.

177.   Defendants continued to conceal the defective nature of the Class Vehicles and their 2.0T Engine even after Plaintiff and the other CA Sub-Class members began to report problems.

178.   Defendants' conduct was and is likely to deceive consumers.

179.   Defendants' acts, conduct, and practices were unlawful, in that they constituted:

        (a)    Violations of California's Consumers Legal Remedies Act;

        (b)    Violations of the Song-Beverly Consumer Warranty Act, including California Civil Code §§ 1792 and 1791.1.;

        (c)    Violations of the Magnuson-Moss Warranty Act; and

180.   By their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

181.   Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

182.   As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and the other CA Sub-Class members have suffered and will continue to suffer actual damages.

183.   Defendants have been unjustly enriched and should be required to

make restitution to Plaintiff and the other CA Sub-Class members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

**COUNT IV**

(Breach of Express Warranty
**CAL. COM. CODE §§ 2313 and 10210**
(On Behalf of the California Sub-Class)

184.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 134 of this Complaint.

185.  Plaintiff brings this cause of action on behalf of herself and on behalf of the California Sub-Class against VWGoA.

186.  VWGoA is and was at all relevant times a "merchant" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

187.  With respect to leases, VW is and was at all relevant times a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

188.  The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

189.  VWGoA provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under California law.

190.   The 2.0T Engine and its component parts were manufactured and/or installed in the Class Vehicles by VW and are covered by the express warranty.

191.   In a section entitled "What's Covered," the express warranty provides in relevant part that "The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." The warranty further provides that "You pay nothing for these repairs. These warranty repairs or adjustments—including all parts and labor connected with them—will be made by your dealer at no charge, using new or remanufactured parts."

192.   According to VWGoA, "Our New Vehicle Limited Warranty is simple – four years or 50,000 miles, whichever occurs first."

193.   VWGoA breached the express warranties by selling and leasing Class Vehicles with 2.0T Engine that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the 2.0T Engine and its component parts, and instead, replacing the defective 2.0T Engine and its components with equally defective 2.0T Engines and components. By simply replacing Plaintiff's and Class Members' defective 2.0T Engines with similarly defective parts, VWGoA has failed to "repair" the defects as alleged herein.

194.   Plaintiff was not required to notify VWGoA of the breach or was not

required to do so because affording VWGoA a reasonable opportunity to cure its breach of written warranty would have been futile. VWGoA was also on notice of the defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the 2.0T Engine, and from other internal sources.

195.   As a direct and proximate cause of the breach of express warranty by VWGoA, Plaintiff and the other Class members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff and the other Class members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

196.   Plaintiff and the other Class members are entitled to legal and equitable relief against VWGoA, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT V

(Breach of Express Warranty under the Magnuson-Moss Warranty Act,
**15 U.S.C. § 2303 *et seq.*)**
(On Behalf of the Class)

197.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 134 of this Complaint.

198.   Plaintiff brings this cause of action on behalf of herself and on behalf

of the Class against VWGoA.

199.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

200.   VWGoA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

201.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

202.   VWGoA provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, this express warranty is an express warranty under California law and is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

203.   The 2.0T Engine and its component parts were manufactured and/or installed in the Class Vehicles by VW and are covered by the express warranty.

204.   In a section entitled "What's Covered," the express warranty provides in relevant part that "The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." The warranty further provides that "You pay nothing for these repairs. These warranty repairs or adjustments—including all parts and labor connected with them—will be made by

your dealer at no charge, using new or remanufactured parts."

205.   According to VWGoA, "Our New Vehicle Limited Warranty is simple – four years or 50,000 miles, whichever occurs first."

206.   VWGoA breached the express warranties by selling and leasing Class Vehicles with 2.0T Engine that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the 2.0T Engine and its component parts, and instead, replacing the defective 2.0T Engine and its components with equally defective 2.0T Engines and components. By simply replacing Plaintiff's and/or Class Members' defective 2.0T Engines with similarly defective parts, VW has failed to "repair" the defects as alleged herein.

207.   Plaintiff was not required to notify VWGoA of the breach or was not required to do so because affording VWGoA a reasonable opportunity to cure its breach of written warranty would have been futile. VWGoA was also on notice of the defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the 2.0T Engine, and from other internal sources.

208.   Affording VWGoA a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, VWGoA has long been on notice of the claims of Plaintiff and Class members and has refused to

provide a remedy, instead placing the blame on customers or refusing to acknowledge the existence of the defect.

209.   As a direct and proximate cause of VWGoA's breach, Plaintiff and the other Class members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease and have been deprived of the benefit of their bargains. Additionally, Plaintiff and the other Class members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

210.   Plaintiff and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because VWGoA is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Class Vehicles by retaining them.

211.   Plaintiff provided notice to VWGoA of her intent to pursue class claims under the MMWA via letter dated April 20, 2021.

212.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

213.   Plaintiff and the other Class members are entitled to legal and equitable

relief against VWGoA, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT VI

(Breach of Implied Warranty under the Magnuson-Moss Warranty Act,
**15 U.S.C. § 2303 *et seq.***)
(On Behalf of the Class)

214.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 134 of this Complaint.

215.   Plaintiff brings this cause of action on behalf of themselves and the Class against Defendants.

216.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

217.   Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

218.   Defendants are a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

219.   Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

220.   VW impliedly warranted that the Class Vehicles were of merchantable quality and fit for use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their 2.0T Engine were manufactured, supplied, distributed, and/or sold by VW would provide safe and reliable

transportation; and (ii) a warranty that the Class Vehicles and their 2.0T Engine would be fit for their intended use while the Class Vehicles were being operated.

221.   Contrary to the applicable implied warranties, the Class Vehicles and their 2.0T Engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective nature of their 2.0T Engine.

222.   Defendants' breach of implied warranties has deprived Plaintiff and Class members of the benefit of their bargain.

223.   Plaintiff and members of the Class have had sufficient direct dealings with either VW or its agents (dealerships and technical support) to establish privity of contract between VW, on one hand, and Plaintiff and each of the other members of the Class on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the members of the Class are intended third-party beneficiaries of contracts between VW and its dealers, and specifically, of VW's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

224.   Plaintiff and the other Class members would suffer economic hardship

if they returned their Class Vehicles but did not receive the return of all payments made by them. Because VW is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Class Vehicles by retaining them.

225.   Plaintiff provided notice to VW of her intent to pursue class claims under the MMWA via letter dated April 20, 2021.

226.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

227.   Defendants have been afforded a reasonable opportunity to cure its breach, including when Plaintiff and Class members brought their vehicles in for diagnoses and repair of the 2.0T Engine.

228.   As a direct and proximate cause of Defendants' breach of implied warranties, Plaintiff and Class members sustained and incurred damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiff and Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

As a result of Defendants' violations of the Magnuson-Moss Warranty Act as

alleged herein, Plaintiff and Class members have incurred damages.

## RELIEF REQUESTED

229.   Plaintiff, on behalf of herself and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

(a)   An order certifying the proposed Class and Sub-Classes, designating Plaintiff as named representatives of the Class, and designating the undersigned as Class Counsel;

(b)   A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the 2.0T Engine, including the need for periodic maintenance;

(c)   An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to remove, repair, and/or replace the Class Vehicles' defective 2.0T Engine and/or its components with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling Defendants to reform its warranty, in a manner

deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d)    A declaration requiring Defendants to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

(e)    An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(f)    Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

(g)    Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(h)    A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiff and Class Members;

(i)    An award of attorneys' fees and costs, as allowed by law;

(j)    An award of pre-judgment and post-judgment interest, as provided by law;

(k)    Leave to amend the Complaint to conform to the evidence produced at trial; and

(l)    Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

230. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues in this action so triable.

Dated: April 30, 2021             Respectfully Submitted,

/s/ Russell D. Paul
Russell D. Paul (NJ Bar. No. 037411989)
Amey J. Park (NJ Bar. No. 070422014)
Abigail J. Gertner (NJ Bar. No. 019632003)
Natalie Lesser (NJ Bar No. 017882010)
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA  19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net
apark@bm.net
agertner@bm.net

Steven Weinmann (N.J. Bar No. 033111989)
Tarek H. Zohdy (*pro hac vice pending*)
Cody R. Padgett (*pro hac vice pending*)
**CAPSTONE LAW APC**
1875 Century Park East
Suite 1000
Los Angeles, California 90067
Tel: (310) 556-4811

Fax: (310) 943-0396
steven.weinmann@capstonelawyers.com
tarek.zohdy@capstonelawyers.com
cody.padgett@capstonelaywers.com

Ramzy P. Ladah (SBN 271039*)*
Adrian A. Karimi (*Pro Hac Pending)*
**LADAH LAW FIRM**
517 S. 3rd St
Las Vegas, NV  89101
Telephone:   (702) 252-0055
Facsimile:   (702) 248-0055
Ramzy@ladahlaw.com
Adrian@ladahlaw.com

*Attorneys for Plaintiff and the Proposed Class and Subclasses*