Homer B. Ramsey, Esq. (042661997)
Michael B. Gallub, Esq. (*pro hac vice*)
**HERZFELD & RUBIN, LLC**
354 Eisenhower Parkway
Livingston, New Jersey 07039
T: (973) 535-8840
F: (973) 535-8841
hramsey@herzfeld-rubin.com
mgallub@herzfeld-rubin.com
*Attorneys for Defendant*
*Volkswagen Group of America, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENI RIEGER, ALOHA DAVIS, JODIE CHAPMAN, CARRIE VASSEL, KAREN BURNAUGH, TOM GARDEN, ADA AND ANGELI GOZON, HERNAN A. GONZALEZ, PATRICIA A. HENSLEY, CLYDIENE FRANCIS, PETER and GUNNEL LOWEGARD, and GRANT BRADLEY, individually and on behalf of a class of similarly situated individuals, | Case No. 1:21-cv-10546 (NLH)(MJS)  *Document electronically filed*  Motion Date: February 22, 2022 |
| Plaintiff, | |
| vs. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, d/b/a AUDI OF AMERICA, INC., AUDI AG, a German corporation, and VOLKSWAGEN AG, a German corporation, | |
| Defendants. | |

**DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ...................................................................................... iv

STATEMENT OF FACTS ....................................................................................... 1

ARGUMENT .......................................................................................................... 4

I.   PLAINTIFFS' IMPERMISSIBLE GROUP PLEADING WARRANTS DISMISSAL OF THE CAC .............................................. 5

II.  PLAINTIFFS' "NATIONWIDE" CLASS CLAIMS SHOULD BE DISMISSED OR STRICKEN FOR LACK OF STANDING (COUNT 35) ............................................................................................ 7

III. PLAINTIFF GUNNEL LOWEGARD'S CLAIMS SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING ..................... 8

IV.  THE EXPRESS WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS 4, 11, 17, 20, 24, 27, 30, 33) ............................ 9

     A. The New Vehicle Limited Warranties Do Not Cover Design Defects .................................................................................. 9

     B. The Breach of Express Warranty Claims of Vassel, Garden, the Gozons, Gonzalez, Francis, Hensley, the Lowegards, and Bradley are Untimely (Counts 11, 17, 20, 24, 27, 30, 33) ............... 11

     C. The Breach of Express Warranty Claims of Vassel, Garden, the Gozons, Gonzalez, Francis, Hensley, the Lowegards, and Bradley, Also Fail Because the Alleged Issues with their Vehicles Did Not Arise During the Warranty Period (Counts 11, 17, 20, 24, 27, 30) ........................................................... 14

     D. The NVLW Are Not Unconscionable ............................................. 16

V.   THE IMPLIED WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS 2, 12, 14, 18, 19, "4," 28, 31, 34) ................... 20

     A. All Plaintiffs' Breach of Implied Warranty Claims are Untimely (Counts 2, 12, 14, 18, 19, "4," 28, 31, 34) ...................... 20

i

B.  The Breach of Implied Warranty Claims of Vassel (IL), Burnaugh (LA), Garden (MN), the Gozons (NV), Gonzalez (NJ), Francis (PA), Hensley (PA), and the Lowegards (TX) Fail Under the Express Terms of the NVLWs (Counts 12, 14, 18, 19, "4" 28, 31) ...................................................................23

C.  The Implied Warranty Claims Under IL, FL, NV, and OR Law Fail for Lack of Privity (Counts 6, 12, 19, 34)...................................24

D.  Plaintiffs' Vehicles Were Merchantable at the Time of Sale ..........28

E.  The Magnuson-Moss Warranty Act ("MMWA") Claim Should Be Dismissed (Count 25) ...................................................................31

VI.  THE STATUTORY AND COMMON LAW FRAUD CLAIMS SHOULD BE DISMISSED (COUNTS 1, 3, 5, 7, 8, 10, 15, 16, 19, 22, 23, 26, 29, 32, 35) ....................................................................31

A.  Plaintiffs Fail to Allege an Actionable Affirmative Misrepresentation ........................................................................31

B.  The Statutory and Common Law Fraudulent Omission Claims Fail Because Plaintiffs Have Not Established That VWGoA Had Pre-Sale Knowledge of the Alleged Defect (Counts 1, 3, 5, 7, 8, 10, 15, 16, 19, 22, 23, 26, 29, 32, 35) ........................................35

C.  The Common Law Fraudulent Omission Claims Should Be Dismissed for Lack of a Duty to Disclose (Count 35).....................42

D.  All Omission-Based Claims Fail Because Plaintiffs Have Not Plead Facts Establishing the Requisite Reliance or Causation (Counts 1, 3, 5, 7, 8, 10, 15, 16, 19, 22, 23, 26, 29, 32, 35)..............44

E.  Certain Plaintiffs' Fraudulent Concealment Claims are Barred by the Economic Loss Rule  (Count 35) ...........................................47

F.  Dismissal of Gonzalez's NJ Statutory Claims (Counts 22, 23) ........48

G.  Garden's MN Statutory Claims are Untimely (Counts 15 and 16)..........................................................................................50

H.  Plaintiffs' Common Law Fraudulent Concealment Claims Fail Under TX and PA Law (Count 35)...................................................51

I.    Dismissal of Chapman's GA Statutory Claims (Counts 7, 8) ..........51

VIII.  DISMISSAL OF CHAPMAN'S UNJUST ENRICHMENT CLAIM (COUNT 9)................................................................................54

IX.   ALL CLAIMS FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF SHOULD BE DISMISSED (COUNTS 1, 4, 7, 8, 11, 17, 19, 20, 22, 24, 27, 29, 30, 33, AND "PRAYER FOR RELIEF")...........56

A.  Plaintiffs Lack Article III Standing to Seek Injunctive Relief..........56

B.  Plaintiffs Fail to State a Valid Claim for Any Equitable (Including Injunctive) Relief, and the Request to Compel a Recall is Preempted.........................................................................58

CONCLUSION .........................................................................................60

## Table Of Authorities

**Page(s)**

**Cases**

*Alban v. BMW of N. Am.*,
2011 WL 900114 (D.N.J. Mar. 15, 2011) .........................................................18

*Alexander v. Cigna Corp.*,
991 F. Supp. 427 (D.N.J. 1998) ..........................................................................32

*Alin v. Am. Honda Motor Co.*,
2010 WL 1372308 (D.N.J. Mar. 31, 2010) .......................................................29

*Allen v. Hylands, Inc.*,
2012 WL 1656750 (C.D. Cal. May 2, 2012) .......................................................8

*Allstate Ins. Co. v. Toyota Motor Mfg. N. Am., Inc.*,
2009 WL 3147315 (N.D. Ill. Sept. 28, 2009) .....................................................27

*Altamont Summit Apts., LLC v. Wolff Properties, LLC*,
2002 WL 926264 (D. Or. Feb. 13, 2002) ...........................................................28

*Am. Suzuki Motor Corp. v. Superior Court*,
37 Cal. App. 4th 1291 (1995) .............................................................................28

*Amato v. Subaru of Am., Inc.*, 2019 WL 6607148, at *8 (D.N.J. Dec.
5, 2019) ........................................................................................................17, 29

*Anderson v. 1399557 Ontario Ltd.*,
2019 WL 5693749 (D. Minn. Dec. 4, 2019) .......................................................22

*Aprigliano v. Am. Honda Motor Co.*,
979 F. Supp. 2d 1331 (S.D. Fla. 2013) ...............................................................33

*Argabright v. Rheem Manufacturing Co.*,
201 F. Supp. 3d 578 (D.N.J. 2016) .........................................................22, 32, 56

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................4, 41

*Atlantic Spec. Ins. Co. v. Caterpillar, Inc.*,
2021 WL 4845771 (E.D. La. Oct. 18, 2021) .......................................................23

iv

*In re Atlas Roof. Corp. Chalet Shingle Prods. Liab. Litig.*,
2018 WL 2765961 (N.D. Ga. June 18, 2018) ....................................................42

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ....................................................................................32

*Baker v. BMW of N. Am., LLC*,
2021 WL 1577837 (E.D. La. Apr. 22, 2021)....................................................53

*Baranco v. Ford Motor Co.*,
294 F. Supp. 3d 950 (N.D. Cal. Mar. 12, 2018) ................................................20

*Bass v. Howard*,
2020 WL 1332007 (D.N.J. Mar. 23, 2020) ........................................................6

*Beaty v. Ford Motor Co.*,
2018 WL 3320854 (W.D. Wash. Jan. 16, 2018) ...............................................20

*Belanger v. BAC Home Loans Serv., L.P.*,
839 F. Supp. 2d 873 (W.D. Tex. 2011) ......................................................17, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................4

*Berenblat v. Apple, Inc.*,
2010 WL 1460297 (N.D. Cal. Apr. 7, 2010)....................................................40

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020) .............................................................................57

*Berry v. Indianapolis Life Ins. Co.*,
608 F. Supp. 2d 785 (N.D. Tex. 2009) .............................................................33

*Bigler-Engler v. Breg, Inc.*,
7 Cal App. 5th 276 (2017) ................................................................................43

*Birdsong v. Apple Inc.*,
590 F.3d 955 (9th Cir. 2009) ...........................................................................28

*Blissard v. FCA US LLC*,
2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ...................................................28

*In re Bridgestone/Firestone Inc., ATX, ATX II & Wilderness Tires Prods. Liab. Litig.*,
   153 F. Supp. 2d 935 (S.D. Ind. 2001)...................................................................59

*Brown v. Hyundai Mot. Am.*,
   2019 WL 4126710 (D.N.J. Aug. 30, 2019) ...........................................14, 19, 41

*Bruce Martin Constr., Inc. v. CTB, Inc.*,
   735 F.3d 750 (8th Cir. 2013) ...............................................................................11

*Buraimoh v. BMW of N. Am., LLC*,
   2020 WL 7711823 (W.D. Tex. Dec. 29, 2020) ....................................................51

*Burdt v. Whirlpool Corp.*,
   2015 WL 4647929 (N.D. Cal Aug. 5, 2015) .........................................................41

*Butler v. ATS, Inc.*,
   2021 WL 1382378 (D. Minn. April 13, 2021) ...............................................17, 18

*Cabebe v. Nissan of N. Am., Inc.*,
   2018 WL 5617732 (N.D. Cal. Oct. 26, 2018) .......................................................51

*Cadena v. Am. Honda Motor Co.*, 2019 WL 3059931
   (C.D. Cal. May 29, 2019) .....................................................................................38

*Callaghan v. BMW of N. Am., Inc.*,
   2014 WL 6629254 (N.D. Cal. Nov. 21, 2014) .....................................................37

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) .........................................................................33, 57

*Cannon v. Ashburn Corp.*,
   2016 WL 7130913 (D.N.J. Dec. 7, 2016)............................................................49

*Cardenas v. Toyota Motor Corp.*,
   418 F. Supp. 3d 1090 (S.D. Fla. 2019)................................................................47

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
   169 Cal. App. 4th 116 (2008) ..............................................................................21

*Carfagno v. Ace, Ltd.*,
   2005 WL 1523530 (D.N.J. June 28, 2005)...........................................................25

*Carideo v. Dell, Inc.*,
706 F. Supp. 2d 1122 (W.D. Wash. 2010) .........................................................43

*In re Caterpillar, Inc*.,
2015 WL 4591236 (D.N.J. July 29, 2015) ...................................................18, 49

*Causey v. Sewell Cadillac-Chevrolet, Inc*.,
394 F.3d 285 (5th Cir. 2004) ..............................................................................26

*Certified Question United States Dist. Court Order v. Philip Morris*,
621 N.W.2d 2 (Minn. 2001) .................................................................................34

*Chalk v. T-Mobile USA, Inc*.,
500 F.3d 1087 (9th Cir. 2009) ......................................................................17, 18

*In re Chinese Mfg. Drywall Prod. Liab. Litig.*,
2019 WL 1057003 (E.D. La. March 6, 2019) ....................................................22

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..............................................................................................56

*Claridge v. I-Flow Corp.*,
2019 WL 4139433 (D. Nev. Aug. 30, 2019).......................................................24

*Clerk v. First Bank*,
735 F. Supp. 2d 170 (E.D. Pa. Mar. 23, 2010) ..................................................16

*Cleveland v. Whirlpool Corp*.,
2021 WL 3173702 (D. Minn. July 27, 2021) .....................................................16

*Coba v. Ford Motor Co*.,
932 F.3d 114 (3d Cir. 2019) ..........................................................................9, 10

*Cole v. NIBCO, Inc.*,
2015 WL 2414740 (D.N.J. May 20, 2015)............................................................3

*Connick v. Suzuki Mot.Co.*,
174 Ill.2d 482 (1996) ...........................................................................................42

*Cooper-Booth Trans. Co. L.P. v. Daimler Trucks of N. Am., LLC*,
2018 WL 1940527 (E.D. Pa. April 24, 2018).....................................................22

*Copeland v. US Bank*,
 2018 WL 4145900 (D.N.J. Aug. 30, 2018) ........................................................4

*Covarrubias*, 2019 WL 2866046 ............................................................21

*Crisdon v. Bank of Am.*,
 2013 WL 2644951 ........................................................................34

*Cummings v. FCA US LLC*,
 401 F. Supp. 3d 288 (N.D.N.Y. Aug. 1, 2019)............................................38, 41

*David v. Volkswagen Grp. of Am., Inc.*,
 2018 WL 1960447 (D.N.J. Apr. 26, 2018) ......................................................10

*Davidson v. Apple, Inc.*,
 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ..................................................44

*Debarros v. Gen. Mot. LLC*,
 2019 WL 2143061 ....................................................................33, 34

*Delgado v. Ocwen Loan Servicing, LLC*,
 2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ..................................................52

*Deras v. Volkswagen Grp. of Am., Inc.*,
 2018 WL 2267448 (N.D. Cal. May 17, 2018)............................................37, 38

*Diebler v. SanMedica Int'l, LLC*,
 488 F. Supp. 3d 169 (D.N.J. 2020 ....................................................57

*Dillard v. Morris Cty. Prosecutor's Office*,
 2020 WL 4932527 (D.N.J. Aug. 24, 2020) ......................................................6

*Divis v GM LLC*,
 2019 WL 4735405 (E.D. Mich. Sep. 27, 2019)................................................34

*Dow Chem. Co. v. Mahlum*,
 114 Nev. 1468 (1998) ....................................................................42

*Drobnak v. Andersen Corp.*,
 561 F.3d 778 (8th Cir. 2009) ............................................................50

*Drover v. LG Elecs. USA, Inc.*,
 2012 WL 5198467 (D. Nev. Oct. 18, 2012) ....................................................33

*Dubin v. Great Basin Primary Care,*
2012 WL 78158 (D. Nev. Jan. 10, 2012)......................................................17, 18

*Edwards v. Lindenwold Police Dept.,*
2021 WL 3115809 (D.N.J. July 22, 2021) ....................................................6, 7

*Falat v. County of Hunterdon,*
2013 WL 1163751 (D.N.J. Mar. 19, 2013) .........................................................6

*FDIC v. Bathgate,*
27 F.3d 850 (3d Cir. 1994) ............................................................................5, 33

*Flynn-Murphy v. Jaguar Land Rover N. Am., LLC,*
2021 WL 5448716 (D.N.J. Nov. 19, 2021) ....................................14, 18, 19, 55

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.,*
2010 WL 2813788 (D.N.J. July 9, 2010) ..........................................................25

*In re Ford Motor Co. Vehicle Paint Litig.,*
1997 WL 539665 (E.D. La. Aug. 27, 1997).......................................................43

*In re Ford Tailgate Litig.,*
2014 WL 3899545 (N.D. Cal. Aug. 8, 2014) ...............................................54, 55

*Friedman v. Mercedes Benz USA LLC,*
2013 WL 8336127 (C.D. Cal. June 12, 2013)...................................................45

*Garcia v. Chrysler Group LLC,*
127 F. Supp. 3d 212 (S.D.N.Y. 2015) ...............................................................10

*Garcia v. TEMPOE, LLC,*
2018 WL 1535256 (D.N.J. Mar. 29, 2018) ........................................................16

*Garick v. Mercedes-Benz USA, LLC,*
2019 WL 3815178 (D. Mass. Mar. 29, 2019) ....................................................28

*Gaylord v. Ocwen Loan Servicing, LLC,*
2013 WL 12291744 (N.D. Ga. Mar. 27, 2013) ..................................................55

*In re General Motors LLC Ignition Switch Litig.,*
257 F. Supp (S.D.N.Y. 2017) ............................................................................33

*Girard v. Toyota Mot. Sales, U.S.A., Inc.*,
    316 Fed. App'x. 561 (9th Cir. 2008) ...................................................56

*Gisairo v. Lenovo (U.S.) Inc.*,
    516 F. Supp. 3d 880 (D. Minn. 2021).................................................50

*Glass v. BMW of N. Am., LLC*,
    2011 WL 6887721 (D.N.J. Dec. 29, 2011)...................................30, 44

*Glauberzon v. Pella Corp.*,
    2011 WL 1337509 (D.N.J. Apr. 7, 2011)..........................................14

*In re GM Air Conditioning Mktg. & Sales Pract. Litig.*,
    406 F. Supp. 3d 618 (E.D. Mich. 2019) ......................................17, 19

*Gonzales v. CarMax Auto Superstores, LLC*,
    2013 WL 12207506 (C.D. Cal. Nov. 5, 2013) ...................................30

*Granillo v. FCA US LLC*,
    2016 WL 9405772 (D.N.J. Aug. 29, 2016) ...................................37, 59

*Gredell v. Wyeth Labs., Inc.*,
    346 Ill. App. 3d 51 (2004) ...............................................................13

*Guardado v. Deutsche Bank Nat'l Tr. Co.*,
    2019 WL 7761811 (W.D. Tex. Aug. 30, 2019)..................................48

*Hager v. Selene Fin. LP*,
    2020 WL 5422825 (D.N.J. Sept. 10, 2020) .........................................9

*Hall v. GM, LLC*,
    2020 WL 1285636 (E.D. Mich. Mar. 18, 2020).................................41

*Hart v. Amazon.com, Inc.*,
    191 F. Supp. 3d 809 (N.D. Ill. 2016).................................................35

*Heber v. Toyota Motor Sales, U.S.A., Inc.*,
    2018 WL 3104612 (C.D. Cal. June 11, 2018)...................................11

*Hemy v. Perdue Farms, Inc.*,
    2011 WL 6002463 (D.N.J. Nov. 30, 2011) .........................................8

*Herremans v. BMW of N. Am., LLC,*
  2014 WL 5017843 (C.D. Cal. Oct. 3, 2014)......................................................45

*Howard v. McFarland,*
  237 Ga. App. 483 (1999) ...................................................................................13

In re Sony PS3 Other OS Litig., 551 Fed. App'x. 916, 920 (9th Cir.
  2014) ...................................................................................................................31

*Kanter v. Barella,*
  489, F.3d 170, 175 (3d Cir 2007) .......................................................................5

*Kearney v. BMW AG,*
  2018 WL 4144683 (D.N.J. Aug. 29, 2018) .........................................................4

*Kearns v. Ford Mot. Co.,*
  567 F.3d 1120 (9th Cir. 2009) ..........................................................................33

*Khoday v. Symantec Corp.,*
  858 F. Supp. 2d 1004 ........................................................................................33

*Lang v. Burd,*
  800 A.2d 336 (Sup. Ct. Pa. 2002)......................................................................13

*Licul v. Volkswagen Grp. of Am.,*
  2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)......................................................18

*Liebler v. LG Elecs. U.S.A., Inc.,*
  2015 WL 3561590 (D.N.J. June 4, 2015)...........................................................34

*Lindeman v. Eli Lilly & Co.,*
  816 F.2d 199 (5th Cir. 1987) ............................................................................17

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)......................................................................................8, 56

*MacDonald v. Ford Mot. Co.,*
  37 F. Supp. 3d 1087 (N.D. Cal. 2014)...............................................................22

*Majdipour v. Jaguar Land Rover N. Am., LLC,*
  2015 WL 1270958 (D.N.J. Mar. 18, 2015) .......................................................13

*Malleus v. George*,
  641 F.3d 560 (3d Cir. 2011) ................................................................4

*Mandani v. Volkswagen Group of Am.*,
  2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ....................................41

*Manley v. Hain Celestial Group., Inc.*,
  417 F. Supp. 3d 1114 (N.D. Ill. 2019)................................................24

*Martell v. Gen. Mot. LLC*,
  492 F. Supp. 3d 1131 (D. Or. 2020) ..................................................43

*Matanky v. GM LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. Mar. 29, 2019)..................10, 25, 52

*Matthews v. Am. Honda Mot. Co.*,
  2012 WL 2520675 (S.D. Fla. June 6, 2012)......................................35

*McCabe v. Daimler AG*,
  948 F. Supp. 2d 1347 (N.D. Ga. June 7, 2013) ................................20

*McGuire v. BMW of N. Am., LLC*,
  2014 WL 2566132 (D.N.J. June 6, 2014)............................................7

*McNair v. Synapse Grp. Inc.*,
  672 F.3d 213 (3d Cir. 2012) ........................................................56, 57

*McQueen v. BMW of N. Am.*,
  2013 WL 4607353 (D.N.J. Aug. 29, 2013) ........................................38

*McQueen v. Yamaha Motor Corp., U.S.A.*,
  488 F. Supp. 3d 848 (D. Minn. 2020)................................................43

*MDNet, Inc. v. Pharmacia Corp.*,
  147 F. App'x 239 (3d Cir. 2005) ..........................................................7

*Merkin v. Honda N. Am., Inc.*,
  2017 WL 5309623 (D.N.J. Nov. 9, 2017) ..........................................29

*Mitchell v. Skyline Homes*,
  2010 WL 1791281 (E.D. Cal. May 4, 2010) ......................................21

*Mladenov v. Wegmans Food Mkts., Inc.*,
   124 F. Supp. 3d 360 (D.N.J. Aug. 26, 2015) .......................................................48

*Mocek v. Alfa Leisure, Inc*.,
   114 Cal. App. 4th 402 (2003) ...........................................................................28

*Mydlach v. Chrysler Corp*.,
   226 Ill. 2d 307 (Ill. 2007) ...............................................................................12

*Myers v. BMW of N. Am., LLC*,
   2016 WL 5897740 (N.D. Cal. Oct. 11, 2016) .............................................34, 44

*Namovicz v. Cooper Tire & Rubber Co.*,
   225 F. Supp. 2d 582 (D. Md. 2001) ...................................................................59

*Neal-Lomax v. Las Vegas Metro. Police Dept.*,
   2006 WL 2022989 (D. Nev. July 18, 2006) ......................................................27

*Nemykina v. Old Navy LLC*,
   461 F. Supp. 3d 1054 (W.D. Wash. 2020) .........................................................33

*Ocana v. Ford Motor Co.*,
   992 So.2d 319 (Fla. Dist. Ct. App. 2008) ..........................................................26

*Oliver v. Funai Corp.*,
   2015 WL 9304541 (D.N.J. Dec. 21, 2015) .........................................................40

*Osness v. Lasko Prods., Inc.*,
   868 F. Supp. 2d 402 (E.D. Pa. 2012) .................................................................28

*Padilla v. Porsche Cars N. Am., Inc.*,
   391 F. Supp. 3d 1108 (S.D. Fla. May 21, 2019) .................................................27

*Philips v. Ford Motor Co*.,
   726 Fed. App'x 608 (9th Cir. June 8, 2018) .......................................................58

*Phoenix Ins. Co. v. Rosen*,
   242 Ill. 2d 48 (2011) ..................................................................................17, 18

*Picus v. Wal-Mart Stores, Inc.*,
   256 F.R.D. 651 (D. Nev. 2009) .......................................................................34

*Pierre-Charles v. Cons. Port. Servs.*,
  2018 WL 3425737 (D.N.J. July 16, 2018) .......................................................48

*Pinon v. Daimler AG*,
  2019 WL 11648560 (N.D. Ga. Nov. 4, 2019) .............................................54, 55

*Pitre v. Yamaha Mot. Co.*,
  51 F. Supp. 3d 644 (E.D. La. 2014)...................................................................53

*Ponzio v. Mercedes-Benz USA, LLC*,
  447 F. Supp. 3d 194 (D.N.J. 2020)...............................................................7, 47

*Powell v. Subaru of Am., Inc.*,
  502 F. Supp. 3d 856 (D.N.J. 2020) ...........................................................17, 24

*Pusey v. Sardo*,
  2009 Pa. Dist. & Cnty. Dec. LEXIS 296 (Pa. Comm. Pleas 2009)...................35

*Quitno v. General Motors, LLC*,
  2020 WL 777273 (N.D. Ill. Feb. 18, 2020) .......................................................24

*Resnick v. Hyundai Motor Am.*,
  2016 WL 9455016 (C.D. Cal. Nov. 14, 2016) ...................................................40

*Rivera v. Ford Motor Co.*,
  2017 WL 3485815 (E.D. Mich. Aug. 15, 2017)..................................................20

*Romero v. Allstate Ins. Co.*,
  158 F. Supp. 3d 369 (E.D. Pa. 2016).........................................................17, 18

*Sabol v. Ford Mot. Co.*,
  2015 WL 4378504 (E.D. Pa. July 16, 2015) .....................................................33

*Santos v. Sanyo Mfg. Corp.*,
  2013 WL 1868268 (D. Mass. May 3, 2013).......................................................19

*Sater v. Chrysler Grp.*,
  2015 WL 736273 (C.D. Cal. Feb. 20, 2015) .....................................................11

*Schechter v. Hyundai Motor Am.*,
  2019 WL 3416902 (D.N.J. July 29, 2019) .......................................37, 40, 41, 49

*Schiesser v. Ford Motor Co.*,
2016 WL 6395457 (N.D. Ill. Oct. 28, 2016) ..........................................34, 35, 44

*Schiesser v. Ford Motor Co.*,
2017 WL 1283499 (N.D. Ill. Apr. 6, 2017).......................................................59

*Scott v. Am. Tobacco Co.*,
949 So. 2d 1266 (La. Ct. App. 2007) *writ denied*, 973 So. 2d 740
(La. Jan. 7, 2008) ................................................................................................53

*Seltzer v. I.C. Optics, Ltd.*,
339 F. Supp. 2d 601 (D.N.J. 2004).....................................................................25

*Shady Grove Ortho. Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ......................................................................................51, 52

*Shaw v. Hous. Auth. of Camden*,
2012 WL 3283402 (D.N.J. Aug. 10, 2012) ..........................................................6

*Shea v. General Motors, LLC*,
2021 WL 4804171 (N.D. Ind. October 14, 2021) ..................................13, 14, 46

*Sheeran v. Blyth Shipholding S.A.*,
2015 WL 9048979 (D.N.J. Dec. 16, 2015)............................................................6

*Sloan v. GM LLC*,
2017 WL 3283998 (N.D. Cal. August 1, 2017) ..................................................38

*Smart v. West Creek Fin., Inc.*,
2021 WL 415130 (M.D. Ga. Feb. 5, 2021) ........................................................34

*Smith v. Newman Mot., Inc.*,
2011 Pa. Dist. & Cnty. Dec. LEXIS 394 (Pa. Comm. Pleas 2011)....................28

*Sonner v. Premier Nutrition Corp.*,
962 F.3d 1077 (9th Cir. 2020) ............................................................................58

*Speier-Roche*, 2014 WL 1745050, at *1 (S.D. Fla. Apr. 30, 2004) ........................18

*Sprague v. Quality Rests. Northwest, Inc.*,
213 Or. App. 521 (2007).....................................................................................17

*Stevenson v. Mazda Motor of Am., Inc.*,
2015 WL 3487756 (D.N.J. June 2, 2015)..........................................................28

*Stewart v. Electrolux Home Prods.*,
2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ....................................................40

*Stewart v. Smart Balance, Inc.*,
2012 WL 4168584 (D.N.J. June 26, 2012)..........................................................49

*Stires v. Carnival Corp.*,
243 F. Supp. 2d 1313 (M.D. Fla. 2002).............................................................33

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
941 F. Supp. 2d 537 (D.N.J. 2013).....................................................................13

*In re Subaru Battery Drain Prods. Liab. Litig.*,
2021 WL 1207791 (D.N.J. Mar. 31, 2021) ...........................................42, 47, 51

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014) ...............................................................30

*In re Takata Airbag Prods. Liab. Litig.*,
193 F. Supp. 3d 1324 (S.D. Fla. June 14, 2016).................................................47

*Tatum v. Chrysler Grp. LLC*,
2011 WL 1253847 (D.N.J. Mar. 28, 2011) ........................................................32

*Tatum v. Chrysler Grp., LLC*,
2012 WL 6026868, at *8 (D.N.J. Dec. 3, 2012).................................................31

*Tawil v. Illinois Tool Works, Inc.*,
2016 WL 4260791 (D.N.J. Aug. 11, 2016) ........................................................57

*Terrill v. Electrolux Home Products, Inc.*,
753 F. Supp. 2d 1272 (S.D. Ga. 2010) ..............................................................55

*Tershakovec v. Ford Motor Co.*,
2018 WL 3405245 (S.D. Fla. July 12, 2018) (FL and OR law)........................24

*Thorne v. Riggs*,
2013 Ill. App. 3d 120244-U (2013)....................................................................32

*Thunander v. Uponor, Inc.*,
  887 F. Supp. 2d 850 (D. Minn. 2012)....................................................50

*Tomassini v. FCA US LLC*,
  2015 WL 3868343 (N.D.N.Y. June 23, 2015) ....................................20

*Torch v. Windsor Surry Co.*,
  2019 WL 6709379 (D. Or. Dec. 9, 2019)............................................13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
  *Practices, & Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...............................................16

*TransPetrol, Ltd. v. Radulovic*,
  764 So.2d 878 (Fla. Ct. App. 2000).....................................................42

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).........................................................................56

*Troup v. Toyota Motor Corp.*,
  545 Fed. App'x. 668 (9th Cir. 2013) .............................................10, 28

*UBI Telecom Inc. v. KDDI Am., Inc.*,
  2014 WL 2965705 (D.N.J. June 30, 2014)............................................3

*Voelker v. Porsche Cars N. Am., Inc.*,
  353 F.3d 516 (7th Cir. 2003) .................................................................9

*VVIG, Inc. v. Alvarez*,
  2019 WL 5063441 (S.D. Fla. Oct. 9, 2019) ........................................34

*Wachovia Inc. Serv., Inc. v. Fallon*,
  682 S.E.2d 657 (Ga. App. 2009) .........................................................54

*Walters v. Pella Corp.*,
  2015 WL 2381335 (D.S.C. May 19, 2015) ..........................................16

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002) ................................................................18

*Weske v. Samsung Elecs., Am.*,
  42 F. Supp. 3d 599 (D.N.J. 2014).................................................35, 44

*Whitaker v. Herr Foods, Inc.*,
　198 F. Supp. 3d 476 (E.D. Pa. 2016) .................................................... 58

*Wilson v. Hewlett-Packard Co.*,
　668 F.3d 1136 (9th Cir. 2012) .......................................................... 35

*Wilson v. JPMorgan Chase, N.A.*,
　2020 WL 885971 (W.D. Wash. Feb. 24, 2020) .................................... 34

*Wood v. Winnebago Indus., Inc.*,
　2020 WL 3453076 (D. Nev. March 23, 2020) ..................................... 20

*World Help v. Leisure Lifestyles*,
　977 S.W.2d 662 (Tex. Ct. App. 1998) ................................................ 43

*Wozniak v. Ford Mot. Co.*,
　2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ....................................... 35

*Yagudayev v. BMW of N. Am.*,
　2020 WL 6689799 (D.N.J. Nov. 13, 2020) ............................. 24, 26, 27

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
　578 Pa. 479 (2004) ......................................................................... 34

*Zeno v. Ford Motor Co., Inc.*,
　480 F. Supp. 2d 825 (W.D. Pa. 2007) ................................................ 25

**Statutes**

810 ILCS § 5/2-725 ................................................................... 12, 21

13 Pa. CSA § 2725 ............................................................... 12, 21, 22

15 U.S.C. § 1232 ......................................................................... 46

15 U.S.C. § 2301(7) ..................................................................... 31

49 U.S.C. § 30118(a) .................................................................... 59

49 U.S.C. § 32908 ....................................................................... 46

CA's Song-Beverly Act ................................................................. 20

Cal. U. Com. Code § 2725(2) ......................................................... 21

Federal Motor Vehicle Safety Act (49 U.S.C. § 30101 et seq.) ..............................59

Ga. Code Ann. § 10-9-399 ......................................................................................51

GA Fair Business Practices Act ...............................................................................51

Ga. Stat. Ann. § 10-1-373 .......................................................................................52

GA Uniform Deceptive Trade Practices Act ............................................................52

GAFBPA ...................................................................................................................52

LA. Civ. Code Art. §§ 2520 .....................................................................................22

La. Civ. Code § 2534 ...............................................................................................22

LA Product Liability Act ................................................................................ 3, 52-54

La. Stat. Ann. § 9:2800.53(5) ..................................................................................53

Magnuson-Moss Warranty Act ............................................................................3, 31

N.J. Stat. Ann. § 12A:2-725 ...............................................................................12, 21

New Jersey Consumer Fraud Act ...........................................................34, 48, 49, 56

New Jersey Truth in Consumer Contract Warranty and Notice Act ......................49

ORS § 72.7250 ....................................................................................................12, 21

Motor Vehicle Safety Act .........................................................................................59

TCCWNA ............................................................................................................49, 50

Tex. Bus. & Com. Code § 17.50(a) .........................................................................34

**Other Authorities**

49 C.F.R. § 575.302 ..................................................................................................46

49 C.F.R. § 575.302(e)(11) .......................................................................................46

49 C.F.R. § 575.401 ..................................................................................................46

49 C.F.R. § 583.5 ......................................................................................................46

75 Fed. Reg. 10740, 10741 .........................................................................46

Fed. R. Civ. P. 9(b) ......................................................................................1

Fed. R. Civ. P. 12(b)(1)................................................................................1

Fed. R. Civ. P. 12(b)(6)................................................................................1

Rule 8 ...............................................................................................2, 5, 33

Rule 9(b).................................................................................................*passim*

Rule 12 ...........................................................................................3, 4, 53

Rule 23 .................................................................................................52

Defendant Volkswagen Group of America, Inc. ("VWGoA")[1] respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("CAC") pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b).

## STATEMENT OF FACTS

In this putative class action, 14 named Plaintiffs, residing in 12 states, claim to be purchasers or lessees of certain model year Audi vehicles equipped with 2.0-liter turbocharged engines. Plaintiffs allege that their vehicles, and all of the putative class vehicles, purportedly contain a "piston defect" which, they claim, may cause the piston rings to fail to seat properly in the grooves of the piston heads and potentially result in excessive oil consumption and/or damage to the pistons and engine. CAC ¶¶ 6-8. While conclusorily alleging that their vehicles have a "safety risk" (*Id.* ¶ 7), none of the Plaintiffs claim that their vehicles were ever involved in an accident on account of the alleged defect and Plaintiffs continue to drive their vehicles.

When looking past its sheer volume, the CAC consists primarily of conclusory allegations that lack the pleaded "facts" required to state valid claims for relief. Indeed, many of the allegations consist of multiple conclusory allegations mounted

---

[1] Defendants Audi AG and Volkswagen AG have not been served with process and, accordingly, are not parties to this motion.

upon one another in the same paragraph. These fatal pleading deficiencies are compounded significantly by the fact that virtually all of Plaintiffs' material allegations and claims are asserted against all of the Defendants collectively, in improper "group pleading" allegations that, in addition to being conclusory, fail to distinguish among the separate Defendants or plead what "acts" or "omissions" each Defendant is alleged to have done. As the Third Circuit and this District have repeatedly recognized, such improper "group pleading" violates Rule 8, and manifestly violates the heightened particularity pleading standards of Rule 9(b) which apply to all of Plaintiffs' statutory and common law fraud-based claims.

As to the claims, no Plaintiff has alleged any personal injury or property damage. This action seeks only economic damages or, for some claims, equitable/injunctive relief. Plaintiffs allege the following 36 causes of action, under the laws of 12 states, both individually and on behalf of putative state sub-classes, with one claim (Count 35) purporting to be on behalf of a putative nationwide class:[2] alleged breach of express warranty (under CA, IL, MN, NJ, NV, PA, TX, and OR law), breach of implied warranty (under CA, FL, IL, LA, MN, NV, NJ, PA, TX, and OR law), violation of certain states' consumer fraud statutes (CA, FL, GA, IL, MN,

---

[2] The CAC ends with Count 35, but due to mislabeling of the counts, it actually contains 36 counts. The CAC includes two counts labeled 19, and another Count 4 ["Fourth"] that is wedged between Counts 24 and 25, and no Count 21.

NV, NJ, PA, TX, and WA), violation of the Magnuson-Moss Warranty Act (NJ law [Plaintiff Gonzalez] only), unjust enrichment (GA law [Plaintiff Chapman] only), violation of the LA Product Liability Act (Plaintiff Burnaugh only), and common law fraud by omission (Count 35, labeled as "Fraud by Concealment, Fraud by Omission, and/or Fraud in the Inducement").[3]

As will be shown, many of Plaintiffs' claims are time-barred by the applicate state statutes of limitations. In addition, the CAC fails to plead the facts required to establish the material elements of many of Plaintiffs' claims, and the few facts that are actually plead confirm the invalidity of those and other claims. Certain Plaintiffs also lack Article III standing to assert their claims, none of the Plaintiffs have standing to assert an injunctive relief claim, and none of the Plaintiffs have standing to assert a representative "nationwide" class claim encompassing states other than

---

[3] Each Plaintiff's claim is asserted under the law of the state where he/she purchased/leased the subject vehicle, which is also the same state of his/her residence except for four Plaintiffs: Rieger (NV resident; purchased vehicle in CA), Bradley (WA resident; purchased vehicle in OR), Hensley (NY resident; purchased vehicle in PA), and Burnaugh (TN resident; purchased her vehicle in LA). Bradley asserts a claim under the WA consumer fraud statute, but oddly, also asserts express and implied warranty claims under OR law (Counts 32-34). Rieger asserts claims only under CA law (Counts 1-4) and Hensley asserts claims only under PA law (Counts 26-28). This motion follows the CAC in addressing the state laws under which the Plaintiffs have asserted their claims. *Cole v. NIBCO, Inc.*, 2015 WL 2414740, at \*5 (D.N.J. May 20, 2015) (when the parties agree upon which state's law applies to a Rule 12 motion, "the court will follow the lead of the parties"); *UBI Telecom Inc. v. KDDI Am., Inc.*, 2014 WL 2965705, at \*9 (D.N.J. June 30, 2014) (same). However, if this action is not dismissed, VWGoA reserves the right to re-analyze any choice of law issue, if warranted, following discovery.

those in which he/she neither resides or purchased a subject vehicle. Finally, many of the Plaintiffs' claims are barred for various reasons and prohibitions under the applicable state laws.

For the reasons demonstrated below, VWGoA respectfully requests that the CAC be dismissed in its entirety.

## **ARGUMENT**

To survive a motion to dismiss under Rule 12, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). A claim has "facial plausibility" only when the plaintiff pleads facts, not conclusory allegations, which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations are not accorded a presumption of truth, and the factual allegations in the complaint must support each claim, "rais[ing] a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In this regard, the "formulaic recitation of the elements of a cause of action" without supporting facts is not sufficient to meet this standard. *Copeland v. US Bank*, 2018 WL 4145900, at *2 (D.N.J. Aug. 30, 2018); *see Kearney v. BMW AG*, 2018 WL 4144683, at *4 (D.N.J. Aug. 29, 2018).

Finally, all of Plaintiffs' fraud-based claims, including those alleged under common law and state consumer fraud statutes, are subject to the heightened pleading specificity requirements of Rule 9(b). *See*, *e.g.*, *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (common law and statutory fraud claims subject to "particularity requirement" of Rule 9(b)); *Kanter v. Barella*, 489, F.3d 170, 175 (3d Cir. 2007) (Rule 9(b) requires plaintiffs to plead the "who, what, when, where, and how of the events at issue").

## I.    PLAINTIFFS' IMPERMISSIBLE GROUP PLEADING WARRANTS DISMISSAL OF THE CAC

The CAC asserts claims against three separate defendants: (1) VWGoA, a NJ corporation with its principal place of business in Herndon, VA (CAC ¶ 168); (2) Audi AG, a German corporation with its principal place of business in Ingolstadt, Germany (CAC ¶ 174); and (3) Volkswagen AG, a German corporation with its principal place of business in Wolfsburg, Germany (CAC ¶ 172). Notwithstanding that they are separate and distinct corporations, Plaintiffs improperly lump them together as "Defendants" or "VW" (CAC ¶ 1) and plead virtually all of their material allegations and claims against them collectively, in "group" fashion, without differentiating among them or properly pleading the acts or omissions each party is claimed to have committed.

"Courts in this district generally agree that this type of 'group pleading' does not satisfy Rule 8, because it does not place Defendants on notice of the claims

against each of them." *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (citing *Ingris v. Borough of Caldwell*, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading")); *see also Dillard v. Morris Cty. Prosecutor's Office*, 2020 WL 4932527, at *3 (D.N.J. Aug. 24, 2020) (dismissing complaint because it asserted claims against individual defendants "collectively without specifying what each Individual Defendant is alleged to have done"); *Bass v. Howard*, 2020 WL 1332007, at *4 (D.N.J. Mar. 23, 2020) ("conclusory allegations against defendants as a group" which "fail to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss) (quoting *Galicki v. New Jersey*, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015)); *Falat v. County of Hunterdon*, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (same); *Shaw v. Hous. Auth. of Camden*, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (same - "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants").

Recently, this Court in *Edwards v. Lindenwold Police Dept.*, 2021 WL 3115809, at *3 (D.N.J. July 22, 2021) (Hillman, J.), dismissed a complaint which, like the CAC here, improperly lumped together multiple defendants in group

pleading allegations that "contain[ed] nearly no factual allegations specific to any particular [i]ndividual [defendant]." *Id*. at *4.

Plaintiffs' improper group pleading is particularly fatal to Plaintiffs' fraud-based claims, which are governed by the heightened pleading standard in Rule 9(b). *See MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) ("When multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant.") (citation omitted).

For this reason, all of Plaintiffs' claims, and especially the fraud-based claims, are improperly and insufficiently plead, and should be dismissed.

## II. PLAINTIFFS' "NATIONWIDE" CLASS CLAIMS SHOULD BE DISMISSED OR STRICKEN FOR LACK OF STANDING (COUNT 35)

In Count 35, the Plaintiffs, who collectively reside and/or purchased their vehicles in only 14 states, purport to assert a fraud by omission claim on behalf of a putative "nationwide" class. CAC ¶ 276. This is improper, because Plaintiffs "lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223-24 (D.N.J. 2020) (dismissing all multi-state and "nationwide" claims to the extent they encompassed states other than those in which the named plaintiffs resided or purchased their vehicles); *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) ("Plaintiff here lacks standing to

assert claims under the laws of the states in which he does not reside, or in which he suffered no injury"). Accordingly, Plaintiffs' purported "nationwide" class claims in Count 35 should be dismissed or stricken for lack of Article III standing.

## III. PLAINTIFF GUNNEL LOWEGARD'S CLAIMS SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING

While the CAC alleges that Plaintiffs Peter and Gunnel Lowegard "purchased" the subject vehicle (CAC ¶¶ 146-47), the vehicle's purchase agreement confirms that only Peter Lowegard was the purchaser. *See* Declaration of Frank Pritzl ("Pritzl Dec.") ¶ 10, Ex. F. Since Gunnel Lowegard was not the vehicle's purchaser, she lacks Article III standing to assert the claims in the CAC. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (Art. III standing requires that Plaintiff plead "a causal connection between the injury and the conduct complained of"); *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *11 (D.N.J. Nov. 30, 2011) (dismissing claims for lack of standing because "without asserting that they purchased [the] products, Plaintiffs have failed to sufficiently allege an injury-in-fact with respect to those products"); *Allen v. Hylands, Inc.*, 2012 WL 1656750, at *5 (C.D. Cal. May 2, 2012) (dismissing claims on standing grounds as plaintiff suffered no injury with respect to "products that they did not buy").

## IV.   THE EXPRESS WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS 4, 11, 17, 20, 24, 27, 30, 33)

### A.   The New Vehicle Limited Warranties Do Not Cover Design Defects

The written New Vehicle Limited Warranty (NVLW) applicable to each Plaintiff's vehicle covers only repairs "to correct a defect in manufacturer's material or workmanship." Pritzl Dec., ¶¶ 5-9, NVLWs, Exs. A-E.[4] The Third Circuit has recognized that "material and workmanship" warranties, such as these, do not cover alleged design defects. *See Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) ("The plain and ordinary meaning of the term 'defect[s] in materials or workmanship'…unambiguously excludes 'design' defects"). The *Coba* court explained the difference between workmanship/materials defects and design defects as follows: "[In] the context of product development, defects in 'workmanship' and 'materials' are flaws pertaining to the construction or manufacture of a product, while defects in 'design' are shortcomings that arise in the plans for a product's creation." *Id*.; *see also Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003) (affirming dismissal of claims for breach of an express warranty (a New Car Limited Warranty) against an automobile manufacturer under IL law because

---

[4] The Court can, and should, consider the NVLWs since they are specifically referenced in the CAC, and Plaintiffs premise their express warranty claims on them. *See Hager v. Selene Fin. LP*, 2020 WL 5422825, at *3 (D.N.J. Sept. 10, 2020). For the same reason, the Lowegard Purchase Agreement should be considered because it directly relates to Gunnel Lowegard's claims (all of which are premised upon her being the vehicle's purchaser) and her lack of Article III standing.

plaintiff "point[ed] to no part of the record showing that a warranty against defective design was part of his contract with any defendant"); *Troup v. Toyota Motor Corp.,* 545 Fed. App'x. 668, 668 (9th Cir. 2013) ("[E]xpress warranties covering defects in materials and workmanship exclude defects in design"); *Matanky v. GM LLC*, 370 F. Supp. 3d 772, 788 (E.D. Mich. Mar. 29, 2019) ("[T]he overwhelming weight of state law authority holds that design defects are *not* covered under" material or workmanship warranties).

Here, the essence of Plaintiffs' claim is that their vehicles contain a common alleged "piston defect" that exists in all of the putative class vehicles. This is a classic claim of design defect. Plaintiffs cannot avoid this by adding, after the word "design," buzzwords like "manufacturing" and/or "workmanship" in what are essentially design defect allegations. *See, e.g.,* CAC ¶¶ 6, 13, 188, 191, 359, 400, 422, 453, 545, 568, 625, 682, 72, 833, 893); *Coba,* 932 F.3d at 114, 123 (plaintiff pled a design defect because, among other things, he alleged that "[a]ll" of the vehicles" suffer from a "common" issue); *David v. Volkswagen Grp. of Am., Inc.,* 2018 WL 1960447, at *8 n.5 (D.N.J. Apr. 26, 2018) ("Where, as here, a party pleads that 'all products of a particular line are defective,' the plaintiff has pled a design defect") (citing *Mickens v. Ford Co.*, 2011 WL 3444055, at *3 (D.N.J. Aug. 5, 2011)); *Garcia v. Chrysler Group LLC*, 127 F. Supp. 3d 212, 226-27 (S.D.N.Y. 2015) (dismissing express warranty claim because plaintiffs, who claimed that all

putative class vehicles suffer from the same defect, alleged a design defect claim despite "offhand references to manufacturing defects") (citations omitted); *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753–54 (8th Cir. 2013) (rejecting breach of express warranty claim because "where a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or workmanship.'"); *Heber v. Toyota Motor Sales, U.S.A., Inc.,* 2018 WL 3104612, at *4-5 (C.D. Cal. June 11, 2018) (dismissing express warranty claim because plaintiffs alleged a design defect, rather than a defect in materials, since they "allege that the decision to use soy wiring is a problem across the board–not that any individual wire was anomalously defective"); *Sater v. Chrysler Grp.*, 2015 WL 736273, at *4 (C.D. Cal. Feb. 20, 2015) (dismissing express warranty claim under a NVLW because, among other things, plaintiff alleged a "uniform" design defect).

Accordingly, Plaintiffs' express warranty claims should be dismissed.

**B.    The Breach of Express Warranty Claims of Vassel, Garden, the Gozons, Gonzalez, Francis, Hensley, the Lowegards, and Bradley are Untimely (Counts 11, 17, 20, 24, 27, 30, 33)**

The breach of express warranty claims of Plaintiffs Vassel (IL), Garden (MN), the Gozons (NV), Gonzalez (NJ), Francis (PA), Hensley (PA), the Lowegards (TX), and Bradley (OR),[5] are time-barred.  Under each of these state's laws, a breach of

---

[5] Although Bradley resides in WA (CAC ¶ 154), his breach of express and implied warranty claims are asserted only under OR law, where he purchased his vehicle.

express warranty claim has a four-year statute of limitations that begins to run on the date "tender of delivery is made," regardless of the aggrieved party's knowledge of the alleged breach of warranty. *See* 810 ILCS § 5/2-725; Minn. St. § 336.2-725; Nev. St. § 104.2725; N.J. Stat. Ann. § 12A:2-725; 13 Pa. CSA § 2725; Tex. Bus. & Com. § 2725; ORS § 72.7250.

Because these Plaintiffs purchased their vehicles, or tender of delivery was made to the original purchaser, more than four years before this action was filed, their express warranty claims are time-barred. *See* Pritzl Dec., ¶ 3 (Francis vehicle sold/delivered to its original purchaser on March 31, 2012); *Id.,* ¶ 4 (Vassel vehicle sold/delivered to its original purchaser on August 11, 2011);[6] CAC ¶ 119 (Hensley vehicle purchased on May 25, 2016); CAC ¶ 84 (Garden vehicle purchased new on April 16, 2014); CAC ¶ 98 (Gozons vehicle purchased new on April 25, 2013); CAC ¶ 109 (Gonzalez vehicle purchased new on November 15, 2014 ); CAC ¶ 146 (Peter Lowegard vehicle purchased new on June 7, 2013); CAC ¶ 155 (Bradley vehicle purchased new on March 23, 2012).

Plaintiffs' cannot invoke a fraudulent concealment toll (CAC ¶¶ 272-274) for several dispositive reasons. First, Vassel purchased her vehicle on October 28, 2020,

---

[6] Under IL law, the statute of limitations for an express warranty claim begins to run only after the NVLW expires. *Mydlach v. Chrysler Corp*., 226 Ill. 2d 307, 326 (Ill. 2007). Since tender of delivery of the Vassel vehicle occurred on August 11, 2011, the NVLW expired, at the latest, on August 12, 2015.

long after the statute of limitations for a breach of express warranty claim had expired. CAC ¶ 57; Pritzl Dec., ¶ 4 (tender of delivery was August 11, 2011); *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2015 WL 1270958, at \*5 (D.N.J. Mar. 18, 2015) (to toll the statute of limitations, plaintiff must have been prevented from discovering the basis of his cause of action during the limitations period).

Second, a fraudulent concealment toll is unavailable where, as here, the complaint fails to plead facts establishing that a defendant took affirmative and active steps to conceal the cause of action from plaintiff before the statute of limitations expired. *See e.g., Shea v. General Motors, LLC*, 2021 WL 4804171, at \*6 (N.D. Ind. October 14, 2021); *Stockroom, Inc. v. Dydacomp Dev. Corp.,* 941 F. Supp. 2d 537, 541 (D.N.J. 2013); *Lang v. Burd,* 800 A.2d 336, 339 (Sup. Ct. Pa. 2002); *Howard v. McFarland,* 237 Ga. App. 483, 487 (1999); *Gredell v. Wyeth Labs., Inc*., 346 Ill. App. 3d 51, 60 (2004); *Torch v. Windsor Surry Co*., 2019 WL 6709379, at \*4 (D. Or. Dec. 9, 2019).  The CAC pleads no such affirmative and active steps; only alleged non-disclosure, which is insufficient. CAC ¶ 274; *Shea*, 2021 WL 4804171, at \*6 ("Mere silence about the alleged defect, in the absence of a fiduciary relationship [which is not alleged here], is insufficient to establish fraudulent concealment").

13

Finally, fraudulent concealment allegations are required to be plead with particularity under Rule 9(b), *Glauberzon v. Pella Corp.*, 2011 WL 1337509, at *9 (D.N.J. Apr. 7, 2011), and the CAC fails to satisfy this requirement (Point VII, *infra*).

**C.    The Breach of Express Warranty Claims of Vassel, Garden, the Gozons, Gonzalez, Francis, Hensley, the Lowegards, and Bradley, Also Fail Because the Alleged Issues with their Vehicles Did Not Arise During the Warranty Period (Counts 11, 17, 20, 24, 27, 30)**

Plaintiffs Vassel (IL), Garden (MN), the Gozons (NV), Gonzalez (NJ), Francis (PA), Hensley (PA), and the Lowegards (TX), do not claim to have experienced an alleged piston or oil consumption issue during the 4 years or 50,000 miles (whichever occurs first) limitation period of their vehicles' NVLWs. Pritzl Dec., ¶¶ 5-9, and NVLWs, Exs. A-E.[7] As such, they have no valid breach of express warranty claim. *Flynn-Murphy v. Jaguar Land Rover N. Am., LLC,* 2021 WL 5448716, at *3 (D.N.J. Nov. 19, 2021) (dismissing express warranty claim because "there was no "presentment for service" for the turbochargers during the warranty periods, as required by the Limited Warranty"); *Shea,* 2021 WL 4804171, at *4 ("[T]o proceed on their express warranty claims, the owners must show they sought and were denied repairs during the warranty term"); *Brown v. Hyundai Mot. Am.*, 2019 WL 4126710, at *4-5 (D.N.J. Aug. 30, 2019) (dismissing express warranty claims because alleged problem was not experienced during the warranty period).

---

[7] The 4-year NVLW limitation period runs from the date that the vehicle was sold or leased to its first (initial) purchaser or lessee. Pritzl Dec., NVLWs, Exs. A-E at 7.

The NVLWs had already expired before Plaintiffs Vassel and Francis purchased their vehicles. CAC ¶ 57 (on October 28, 2020, Vassel purchased a used 2012 Audi Q5 vehicle with 58,000 miles on the odometer); CAC ¶¶ 131, 135; Pritzl Dec., ¶ 3 (on August 22, 2020, Francis purchased a used 2012 Audi A4 vehicle which had been sold/delivered to its original purchaser on March 31, 2012).

As to Plaintiffs Garden, the Gozons, Gonzalez, Hensley, and the Lowegards, their vehicles' 4-year/50,000-mile (whichever occurs first) NVLWs had already expired when they claim to have presented their vehicles to a dealer for any alleged problem claimed in this action. See CAC ¶¶ 84, 88 (Garden purchased a new 2014 Audi Q5 vehicle on April 16, 2014, and alleges he first took his vehicle to a dealer for service, including to check an illuminated oil light, on October 14, 2019 when his vehicle had approximately 55,000 miles on the odometer); CAC ¶¶ 98, 103 (Gozons purchased a new 2013 Audi A4 on April 25, 2013, and claim they first took their vehicle to an Audi dealer for the alleged piston issue in May 2019); CAC ¶¶ 109, 113 (Gonzalez purchased a new 2015 Audi Q5 vehicle on November 15, 2014, and alleges he took his vehicle to an Audi dealer complaining of a loss of power and excessive oil consumption in March 2021); CAC ¶¶ 119, 123 (Hensley purchased a used 2015 Audi A3 from a third-party on May 25, 2016, and alleges she first presented her vehicle to an Audi dealer due to issues she attributes to the alleged defect on July 28, 2021 when her vehicle had 55,000 miles on the odometer); CAC

¶¶ 146, 150 (the Lowegards purchased a new 2013 Audi Q5 vehicle on June 7, 2013, and claim they first presented the vehicle to an Audi dealer due to issues they attribute to the alleged defect on April 29, 2021, after the vehicle had been driven 70,924 miles); ¶¶ 155, 160-61 (Bradley, who purchased a new 2012 Audi A4 Avant on March 23, 2012, does not set forth any date or time in which he allegedly complained about excessive oil consumption, and presented his vehicle for repair, to any Audi dealer).[8]

Accordingly, these Plaintiffs' express warranty claims should be dismissed.

### D.    The NVLW Are Not Unconscionable

In an effort to avoid dismissal, Plaintiffs conclusorily allege that the NVLW's "time limits" are unconscionable. *See* CAC ¶¶ 342, 478, 592, 648, 717, 796, 857, 917. However, Plaintiffs allege no facts that would establish that the NVLW "time limits" are unconscionable.

Under the laws of IL, MN, NV, NJ, PA, OR, and TX, a contract provision is not unconscionable unless it is both procedurally and substantively unconscionable.[9]

---

[8] Bradley's allegations are entirely vague (CAC ¶¶ 160-61). He claims to have brought his vehicle to a dealer on several occasions to complain about oil consumption, but fails to set forth any date(s) on which this allegedly occurred.

[9] *See Cleveland v. Whirlpool Corp.*, 2021 WL 3173702, *2 (D. Minn. July 27, 2021); *Walters v. Pella Corp.*, 2015 WL 2381335, *3 (D.S.C. May 19, 2015) (NV law); *Clerk v. First Bank*, 735 F. Supp. 2d 170, 181 (E.D. Pa. Mar. 23, 2010); *Garcia v. TEMPOE, LLC*, 2018 WL 1535256, at *3-4 (D.N.J. Mar. 29, 2018); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,

Under IL law, unconscionability can either be procedural or substantive, *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011), and under OR law, substantive unconscionability must be shown. *Sprague v. Quality Rests. Northwest, Inc*., 213 Or. App. 521, 525-526 (2007). Here, however, the CAC fails to plead facts sufficient to establish either substantive or procedural unconscionability.

A contract is not substantively unconscionable unless its terms are so unfair as to be overly oppressive or unduly harsh to one of the parties. *See*, *e.g.*, *Amato v. Subaru of Am., Inc*., 2019 WL 6607148, at *8 (D.N.J. Dec. 5, 2019); *In re GM Air Conditioning Mktg. & Sales Pract. Litig.*, 406 F. Supp. 3d 618, 628 (E.D. Mich. 2019); *Phoenix Ins. Co.,* 242 Ill. 2d at 60; *Butler v. ATS, Inc*., 2021 WL 1382378, at *19 (D. Minn. April 13, 2021); *Dubin v. Great Basin Primary Care*, 2012 WL 78158, at *5 (D. Nev. Jan. 10, 2012)**;** *Romero v. Allstate Ins. Co*., 158 F. Supp. 3d 369, 383 (E.D. Pa. 2016); *Chalk v. T-Mobile USA, Inc*., 500 F.3d 1087, 1094 (9th Cir. 2009) (OR law); *Belanger v. BAC Home Loans Serv., L.P.,* 839 F. Supp. 2d 873, 880 (W.D. Tex. 2011).

There is nothing oppressive in the least about the NVLWs' 4 years/50,000 miles duration. It meets and exceeds the durational limits of other vehicle warranties that courts throughout the country have routinely determined not to be

---

754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010); *Lindeman v. Eli Lilly & Co*., 816 F.2d 199, 203-04 (5th Cir. 1987) (TX law).

unconscionable. *See e.g., Flynn-Murphy*, 2021 WL 5448716, at *6 (4 years/50,000 miles warranty); *In re Caterpillar, Inc*., 2015 WL 4591236, at *19-22 (D.N.J. July 29, 2015) (2 year warranty); *Speier-Roche*, 2014 WL 1745050, at *1 (S.D. Fla. Apr. 30, 2004) (12 months/12,000 miles warranty); *Alban v. BMW of N. Am.*, 2011 WL 900114, at *2 (D.N.J. Mar. 15, 2011) (4 years/50,000 miles warranty); *Licul v. Volkswagen Grp. of Am.*, 2013 WL 6328734, at *1 (S.D. Fla. Dec. 5, 2013) (2 years/24,000 miles warranty). Plaintiffs therefore fail to adequately allege substantive unconscionability.

To determine procedural unconscionability, courts look to the circumstances surrounding the transaction, such as a plaintiff's ability to understand the terms of the contract and the existence of a meaningful choice at the time of contracting. *See Phoenix Ins. Co.,* 242 Ill. 2d at 60; *Butler,* 2021 WL 1382378, at *19; *Dubin,* 2012 WL 78158, at *5; *Romero,* 158 F. Supp. 3d at 381; *Chalk,* 500 F.3d at 1093-1094; *Belanger,* 839 F. Supp. 2d at 880. Plaintiffs' conclusory allegations that they had "no meaningful choice" and suffered from a "gross disparity in bargaining power" are implausible and have no merit, as the Third Circuit and courts throughout the country have recognized. *Werwinski v. Ford Motor Co*., 286 F.3d 661, 673 (3d Cir. 2002) ("car purchasers…certainly do not lack bargaining power," "have the freedom to choose a less expensive car with a limited warranty or a more expensive car with a longer-term warranty," and "may select among cars of various manufacturers and

consider the differences in warranties in making their choice"); *Brown v. Hyundai Mot. Am.*, 2019 WL 4126710, at *13 (D.N.J. Aug. 30, 2019) (conclusory allegations of lopsided bargaining power and a lack of meaningful choice in the warranty terms insufficient to plead unconscionability); *In re GM Air Conditioning*, 406 F. Supp. 3d at 629 (no procedural unconscionability because "the auto industry is one of the most competitive marketplaces that exists" and "[a]n individual seeking to purchase one of the Class Vehicles has many other options…if he is unhappy with the warranty that GM provides"); *Santos v. Sanyo Mfg. Corp.,* 2013 WL 1868268, at *3 (D. Mass. May 3, 2013) (same).

Finally, unconscionability cannot be premised merely upon alleged knowledge of a defect. *Flynn-Murphy*, 2021 WL 5448716, at *6 (rejecting allegation that similar 4-year/50,000-mile express warranty was unconscionable "because Defendant knew the turbocharger would fail after the limitations of the express warranties but did not inform consumers"); *Amato*, 2019 WL 6607148, at *9-10 (no unconscionability based on allegations of defendant's knowledge and manipulation of 5-year/60,000-mile limited warranty terms to avoid doing repairs, because a manufacturer "is within its right to create a limited remedy that minimizes its costs and obligations based on its prediction of the rate of failure of particular parts"); *In re GM Air Conditioning*, 406 F. Supp. 3d at 630 ("majority" of courts have ruled that a seller's "presale knowledge" of an alleged defect is insufficient to demonstrate

unconscionability); *Beaty v. Ford Motor Co*., 2018 WL 3320854, at *4 (W.D. Wash. Jan. 16, 2018) ("The better-reasoned and 'prevailing' rule is that a defendant's knowledge of a latent defect does not render unconscionable a limitation contained in an express warranty"); *Wood v. Winnebago Indus., Inc*., 2020 WL 3453076, at *6 (D. Nev. March 23, 2020) ("[W]hether defendant expected problems with its RVs to arise does not create procedural or substantive unconscionability. Defendant specifically provided the new-vehicle limited warranty to address any problems that may—or even would—arise."); *Rivera v. Ford Motor Co*., 2017 WL 3485815, at *4 (E.D. Mich. Aug. 15, 2017); *Baranco v. Ford Motor Co*., 294 F. Supp. 3d 950, 974 (N.D. Cal. Mar. 12, 2018); *McCabe v. Daimler AG,* 948 F. Supp. 2d 1347, 1359 (N.D. Ga. June 7, 2013); *Tomassini v. FCA US LLC,* 2015 WL 3868343, at *10 (N.D.N.Y. June 23, 2015).  Plaintiffs therefore fail to establish that their warranty terms were unconscionable.

## V.    THE IMPLIED WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS 2, 12, 14, 18, 19, "4," 28, 31, 34)[10]

### A.    All Plaintiffs' Breach of Implied Warranty Claims are Untimely (Counts 2, 12, 14, 18, 19, "4," 28, 31, 34)

Under the laws of IL, MN, NJ, NV, PA, TX, OR, and CA's Song-Beverly Act, a breach of implied warranty claim, like an express warranty claim, has a four-

---

[10] As noted above, the counts in the CAC are mis-numbered. Counts 19 and "4" referred to here are the Gozons' and Gonzalez's respective implied warranty claims.

year statute of limitations that begins to run on the date "tender of delivery is made," regardless of the aggrieved party's lack of knowledge of the alleged breach of warranty. *See* 810 ILCS § 5/2-725; Minn. St. § 336.2-725; N.J. Stat. Ann. § 12A:2-725; Nev. St. § 104.2725; 13 Pa. C.S.A. § 2725; Tex. Bus. & Com. 2725; Or. Rev. Stat. § 72.7250; Cal. U. Com. Code § 2725.

Here, the following Plaintiffs purchased their vehicles more than four years before this action was filed, rendering their implied warranty claims untimely: Rieger - August 16, 2016 (CAC ¶ 18), Garden - April 16, 2014 (CAC ¶ 84), Gonzalez - November 15, 2014 (CAC ¶ 109), the Gozons - April 25, 2013 (CAC ¶ 98), the Lowegards - June 7, 2013 (CAC ¶ 146), Bradley - March 23, 2012 (CAC ¶ 155), and Hensley - May 25, 2016 (CAC ¶ 119). In addition, the Vassel and Francis vehicles were sold/delivered to their first purchasers on August 11, 2011 and March 31, 2012, respectively, thereby also rendering their claims time-barred. Pritzl Dec. ¶ 3-4; *Mitchell v. Skyline Homes*, 2010 WL 1791281, at *1 (E.D. Cal. May 4, 2010);[11]

---

[11] Rieger's Song-Beverly Implied Warranty Claim (Count 2) expired four years from the tender of delivery and not from the date "when the breach is or should have been discovered" under Cal. U. Com. Code § 2725(2). In *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116 (2008), the court explained that "[b]ecause an implied warranty is one that arises by operation of law rather than by an express agreement of the parties, ... it is not a warranty that 'explicitly extends to future performance of the goods'" such that it triggers the future performance exception. *Id*. at 134. While not all courts are in agreement, since *Cardinal Health*, the majority of courts hold that an implied warranty is not a warranty that explicitly extends to future performance of the goods. *Covarrubias*, 2019 WL 2866046, at *4;

21

*Anderson v. 1399557 Ontario Ltd*., 2019 WL 5693749, at *4 (D. Minn. Dec. 4, 2019); *Argabright v. Rheem Manufacturing Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016); *Cooper-Booth Trans. Co. L.P. v. Daimler Trucks of N. Am., LLC*, 2018 WL 1940527, at *3 (E.D. Pa. April 24, 2018) (citing *Nationwide Ins. Co. v. Gen. Mot. Corp.*, 625 A.2d 1172 (Pa. 1993)).

Furthermore, in Count 14, Plaintiff Burnaugh purports to assert claims under LA. Civ. Code Art. §§ 2520 (Implied Warranty of Merchantability) and 2524 (Redhibition). These two causes of action cannot be maintained simultaneously, and only the redhibition claim may proceed. *In re Chinese Mfg. Drywall Prod. Liab. Litig.*, 2019 WL 1057003, at *16 (E.D. La. March 6, 2019). Thus, the LA implied warranty claim should be dismissed.

As to the redhibition claim, if the seller did not know of the defect in the item sold, and the plaintiff claims that a defect in the item makes it unfit for its ordinary or intended use, the statute of limitations is two years from the day of delivery of the item to the buyer, or one year from the day the defect or unfitness was discovered by the buyer, whichever occurs first. La. Civ. Code § 2534. Since Burnaugh

---

*MacDonald v. Ford Mot. Co.*, 37 F. Supp. 3d 1087, 1101-02 (N.D. Cal. 2014) ("[T]he exception in subdivision 2 of section 2725 does not apply here and the statute of limitations runs from the time that the defect first existed. Plaintiffs allege that the defect was inherent, and existed at the time of sale. Thus, the latest each Plaintiff could have brought a claim was four years after the car was purchased.").

purchased her vehicle on May 28, 2012 (CAC ¶ 70), her redhibition claim was time-barred as of May 28, 2014 – long before this action was filed.

In addition, Burnaugh alleges she first brought her vehicle to an Audi dealer complaining of the alleged problem on February 17, 2020 (CAC ¶ 74) and this action was filed more than one year later. *Atlantic Spec. Ins. Co. v. Caterpillar, Inc*., 2021 WL 4845771, at *6 (E.D. La. Oct. 18, 2021) (redhibition claim untimely because plaintiff began investigating the alleged issue more than one year before filing suit).

### B. The Breach of Implied Warranty Claims of Vassel (IL), Burnaugh (LA), Garden (MN), the Gozons (NV), Gonzalez (NJ), Francis (PA), Hensley (PA), and the Lowegards (TX) Fail Under the Express Terms of the NVLWs (Counts 12, 14, 18, 19, "4" 28, 31)

The NVLWs expressly state that "[a]ny implied warranty, including any warranty of merchantability or warranty of fitness for a particular purpose, is limited in duration to the stated period of these written warranties." Pritzl Dec., ¶¶ 5-9, Exs. A-E at pp.14-15. As discussed above, the durational limit of the subject vehicles' NVLWs is 4 years or 50,000 miles (whichever occurs first) from the date in which the vehicle was initially sold or leased. *Id*. Thus, for the same reasons discussed in Point III-C, *supra*, since Plaintiffs Vassel, Garden, the Gozons, Gonzalez, Francis, Hensley, and the Lowegards, either purchased their vehicles after the NVLW period expired, or do not claim to have experienced the alleged piston defect during the NVLW period, their implied warranty claims fail as well.

23

Burnaugh's implied warranty claim under LA law likewise fails because she purchased her vehicle on May 28, 2012, and the NVLW therefore expired long before she first presented her vehicle to a dealer complaining of excessive oil consumption on February 17, 2020, at 58,663 miles. CAC ¶¶ 70, 74.

### C.    The Implied Warranty Claims Under IL, FL, NV, and OR Law Fail for Lack of Privity (Counts 6, 12, 19, 34)

The implied warranty claims of Vassel (IL), Davis (FL), the Gozons (NV), and Bradley (OR), fail because they lack the requisite privity of contract between themselves and VWGoA under applicable state law. *See Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 880, 884 (D.N.J. 2020) (Hillman, J.) (dismissing claims under FL law for lack of privity); *Quitno v. General Motors, LLC*, 2020 WL 777273, at *5 (N.D. Ill. Feb. 18, 2020) (IL law); *Manley v. Hain Celestial Group., Inc*., 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019) (IL law); *Tershakovec v. Ford Motor Co*., 2018 WL 3405245, at *10, 12 (S.D. Fla. July 12, 2018) (FL and OR law); *Claridge v. I-Flow Corp.*, 2019 WL 4139433, at *3 (D. Nev. Aug. 30, 2019) (NV law). It is undisputed that none of these Plaintiffs purchased their vehicles from VWGoA. *See* CAC ¶¶ 18, 29, 44, 57, 70, 84, 98, 109, 119, 131, 146, 155.

Plaintiffs allege that Audi dealerships are "agents" of VWGoA (CAC ¶¶ 263-67), but as courts in this District have held, "automobile dealerships generally are not agents of automobile manufacturers regarding the selling of vehicles' absent affirmative evidence to the contrary." *Yagudayev v. BMW of N. Am.*, 2020 WL

24

6689799, at *10 (D.N.J. Nov. 13, 2020); s*ee also In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2010 WL 2813788, at *16 (D.N.J. July 9, 2010); *Zeno v. Ford Motor Co., Inc*., 480 F. Supp. 2d 825, 845 (W.D. Pa. 2007) (collecting cases); *Matanky v. GM LLC*, 370 F. Supp. 3d 772, 786 (E.D. Mich. 2019) ("Plaintiffs' conclusory allegation that GM-authorized dealerships are agents of GM is insufficient").

In any event, in order to establish an "agency," Plaintiffs were required to plead sufficient facts establishing that (i) the purported agent is doing business in the forum that would otherwise be performed by the principal, (ii) there is common ownership of the principal and agent; (iii) there is financial dependency; and (iv) that the principal interferes with the agent's personnel, disregards the corporate formalities, and/or controls the agent's marketing and operational policies. *Carfagno v. Ace, Ltd.*, 2005 WL 1523530, at * 6 (D.N.J. June 28, 2005) *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609-10 (D.N.J. 2004).

The CAC pleads no such facts. It alleges that VWGoA provides certain instruction, training, and guidance to authorized dealerships (mostly with respect to repair and maintenance), but pleads no facts establishing common ownership, or that VWGoA has direct control over day-to-day dealership operations or personnel, or that VWGoA had direct control over the dealership's day-to-day sales of vehicles to specific purchasers, none of whom are known to VWGoA at the time. Instead,

the CAC merely alleges that VWGoA "dictates the nature and terms" of form purchase agreements that dealers enter into with their purchasers. CAC ¶¶ 263-266. Courts have repeatedly rejected such allegations as a basis for establishing that a retail dealer is the agent of the manufacturer or distributor with respect to the retail sale of any vehicle. *See*, *e.g.*, *Ocana v. Ford Motor Co.*, 992 So.2d 319, 325-26 (Fla. Dist. Ct. App. 2008) (granting motion to dismiss and rejecting agency relationship despite extensive allegations of Ford's influence over dealership location, size, sales incentives, training, software, reporting, repair, and warranty matters); *see also Causey v. Sewell Cadillac-Chevrolet, Inc*., 394 F.3d 285, 290 (5th Cir. 2004) (holding that GM had no agency relationship with authorized dealer because "GM does not control [dealer's] daily operations").

In *Yagudayev v. BMW of N. Am.*, 2020 WL 6689799, at *10 (D.N.J. Nov. 13, 2020), the court found under similar circumstances that the plaintiff had not adequately alleged an agency relationship between BMW and its authorized dealers. As in this case, the plaintiff had alleged that defendant controlled "the execution of all warranty repairs by its dealers," provided "training, materials, special tools, diagnostic software, and replacement parts to its dealers," "demand[ed] that the warranty repairs be performed in strict accordance with its repair guidelines, Technical Service Bulletins, and other instructions," and "[i]n return, BMW pa[id] its authorized dealerships monetary compensation for such

warranty repairs." *Cf. Yagudayev*, No. 20-cv-897, ECF Dkt. 6 (Complaint) at ¶¶ 29-31, *with* the CAC ¶¶ 260-67. The court held, as did the other courts cited above, that these allegations failed to properly plead an agency relationship sufficient to impute the plaintiffs' contractual relationship with the dealer onto BMW. 2020 WL 6689799, at *10.

Finally, the lack of privity is not circumvented by Plaintiffs' conclusory allegations that they are purported "third-party beneficiaries" of agreements between VWGoA and dealerships because they are the "ultimate purchasers." CAC ¶¶ 260, 261. Aside from the fact that the CAC fails to plead the requisites of any proper "third-party beneficiary" status, the laws of IL, FL, NV, and OR, under which these claims are based, do not recognize a third-party beneficiary exception to the privity rule. *See Allstate Ins. Co. v. Toyota Motor Mfg. N. Am., Inc*., 2009 WL 3147315, at *2 (N.D. Ill. Sept. 28, 2009) (third-party exception inapplicable under IL law where "there is no suggestion that [the specific consumer] had Toyota manufacture the minivan specifically to meet his requirements"); *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1118-1119 (S.D. Fla. May 21, 2019) (FL law); *Neal-Lomax v. Las Vegas Metro. Police Dept.*, 2006 WL 2022989, at *8 (D. Nev. July 18, 2006) (under Nevada statute, only third-party exception is for "any natural person who is in the family or household of his buyer or who is a

guest in his home"); *Altamont Summit Apts., LLC v. Wolff Properties, LLC*, 2002 WL 926264, at *4-8 (D. Or. Feb. 13, 2002) (OR law).

### D.    Plaintiffs' Vehicles Were Merchantable at the Time of Sale

The implied warranty of merchantability is not a guarantee of perfection. It, instead, "provides for a minimum level of quality," and for an automobile, can only be breached if "a defect renders the vehicle unfit for its ordinary purpose of providing transportation for its owner." *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *12 (D.N.J. June 2, 2015); *see also Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (implied warranty of merchantability does not require "that goods precisely fulfill the expectation of the buyer"); *Mocek v. Alfa Leisure, Inc*., 114 Cal. App. 4th 402, 406 (2003); *Birdsong v. Apple Inc*., 590 F.3d 955, 958 (9th Cir. 2009); *Garick v. Mercedes-Benz USA, LLC*, 2019 WL 3815178, at *4 (D. Mass. Mar. 29, 2019); *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 413 (E.D. Pa. 2012).

In the automobile context, a vehicle is not deemed unmerchantable unless a defect "compromise[s] the vehicle's safety, render[s] it inoperable," or "drastically undermine[s] the ordinary operation of the vehicle." *Troup v. Toyota Mot. Corp*., 545 Fed. App'x. 668, 669 (9th Cir. 2013); *Blissard v. FCA US LLC*, 2018 WL 6177295, at *7 (C.D. Cal. Nov. 9, 2018); *Smith v. Newman Mot., Inc.*, 2011 Pa. Dist. & Cnty. Dec. LEXIS 394, at *17-18 (Pa. Comm. Pleas 2011) (merchantability

only requires car to be "safe and reliable for travel"); *Merkin v. Honda N. Am., Inc.,* 2017 WL 5309623, at *5 (D.N.J. Nov. 9, 2017) (implied warranty "is breached only when a defect 'renders the vehicle unfit for its ordinary purpose of providing transportation for its owner.'"); *Alin v. Am. Honda Motor Co.,* 2010 WL 1372308, at *12 (D.N.J. Mar. 31, 2010) (implied warranty only provides for a "minimum level of quality" that product possesses the most basic degree of fitness for ordinary use).

The implied warranty claims of Plaintiffs Davis (FL), Vassel (IL), Burnaugh (LA),[12] Garden (MN), Francis (PA), and Hensley (PA), do not meet the applicable state law standard for unmerchantability in the automotive context. Other than conclusory "safety" allegations, the actual facts plead in the CAC do not establish that these Plaintiffs' vehicles were inoperable or that their safe operation was, in any way, undermined. Indeed, none of these Plaintiffs claim to have been involved in any accidents or dangerous driving situations on account of the alleged defect, and none have stopped driving their vehicles.

Davis (FL) has never stopped driving her vehicle. CAC ¶¶ 40-41. Vassel (IL) claims only excessive oil consumption, not that her vehicle ever broke down or drove improperly; she pleads nothing beyond that she "lost the use" of her vehicle

---

[12] The court need not reach this issue, since, as discussed *supra*, Burnaugh asserts a redhibition claim, and therefore cannot assert an implied warranty claim.

because she did not want to pay the cost of repair.[13] CAC ¶ 65. Burnaugh (LA) also continues to drive her vehicle without any alleged restriction; she simply claims she has to add oil from time to time. CAC ¶¶ 78-79. Garden (MN) still drives his vehicle, although he claims to have unilaterally decided not to travel long distances while not alleging that anyone advised him not to do that, or any supporting facts establishing that driving long distances would be unsafe. CAC ¶ 94. Finally, Francis (PA) has also continued to drive her vehicle without any alleged limitations other than her claim that she adds oil in between oil changes. CAC ¶ 141.

As decisions in this District recognize, "the weight of authority from across the country indicates that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts where plaintiffs have driven their cars without problems for years." *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at *15 (D.N.J. Dec. 29, 2011) (quoting *Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008)); *see also Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied warranty claim in class action alleging automatic braking defect allegations, because "basic inquiry" is "whether the vehicle was fit for driving," and "[p]laintiffs have not alleged that they stopped using their vehicles"); *Gonzales v. CarMax Auto*

---

[13] While also claiming to be concerned about safety, Vassel does not allege that she ever experienced an unsafe incident in her vehicle, nor does she plead any facts that would establish that her vehicle was unsafe to operate.

*Superstores, LLC*, 2013 WL 12207506, at *3 (C.D. Cal. Nov. 5, 2013) (dismissing claim because, despite conclusory allegations of feeling "unsafe," plaintiff plead no facts showing vehicle did not provide safe and reliable transportation and at least "a minimum level of quality").

### E.    The Magnuson-Moss Warranty Act ("MMWA") Claim Should Be Dismissed (Count 25)

Plaintiff Gonzalez purports to assert an MMWA claim on behalf of himself and a putative New Jersey sub-class. Since the MMWA claim is entirely derivative of state law warranty law, 15 U.S.C. § 2301(7); Tatum v. Chrysler Grp., LLC, 2012 WL 6026868, at *8 (D.N.J. Dec. 3, 2012); In re Sony PS3 Other OS Litig., 551 Fed. App'x. 916, 920 (9th Cir. 2014), Gonzalez's failure to state a valid and timely claim for breach of express and/or implied warranty under NJ state law (see Points IV & V, supra), dictates that his MMWA claim be dismissed.

## VI.    THE STATUTORY AND COMMON LAW FRAUD CLAIMS SHOULD BE DISMISSED (COUNTS 1, 3, 5, 7, 8, 10, 15, 16, 19, 22, 23, 26, 29, 32, 35)

### A.    Plaintiffs Fail to Allege an Actionable Affirmative Misrepresentation

Plaintiffs' common law fraud claim, while entitled "Fraud by Concealment, Fraud by Omission, and/or Fraud in the Inducement," is an omission claim. It does

not allege any affirmative misrepresentations. CAC Count 35, ¶¶ 941-56.[14]

However, certain Plaintiffs' statutory consumer fraud claims, while essentially based upon alleged fraudulent omission, include in their allegations that VWGoA purportedly "*misrepresented* and omitted material facts" by "marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality; by presenting itself as a reputable manufacturer that valued safety, reliability, performance and efficiency, and stood behind its vehicles after they were sold (emphasis added)."[15] These claims fail because it is well-settled that such generalized, generic advertising statements constitute, at most, non-actionable puffery that cannot support a claim of affirmative misrepresentation or fraud. *Argabright*, 201 F. Supp. 3d at 608 (statements such as "top-quality" and "dependable" are puffery); *Tatum v. Chrysler Grp. LLC*, 2011 WL 1253847, at *13-14 (D.N.J. Mar. 28, 2011) (same); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 174 (2005) ("Describing a product

---

[14] Since this Count is not premised upon any alleged affirmative misrepresentation, there is no legal basis for a "fraud in the inducement" claim, which requires an affirmative material misrepresentation that induces a party to enter into a contract. Fraud in the inducement cannot be based upon mere omission or non-disclosure. *See Alexander v. Cigna Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998); *Thorne v. Riggs*, 2013 Ill. App. 3d 120244-U, ¶¶ 45, 63 (2013).

[15] CAC Counts 5, ¶ 355 (FL DUPTA); 7, ¶ 396 (GA FBPA); 8, ¶ 418 (GA UDTPA); 10, ¶ 449 (IL CFA); 15, ¶ 541 (MN CFA); 16, ¶ 564 (MN DTPA); 19, ¶ 621 (NV DTPA); 22, ¶ 678 (NJ CFA); 26, ¶ 768 (PA CPL); 29, ¶ 829 (TX DTPA); 32, ¶ 889 (WA CPA). Rieger does not allege affirmative misrepresentations in connection with her CA statutory claims under the CLRA and UCL (Counts 1 & 3).

as 'quality' or as having 'high performance criteria' are the types of subjective characterizations that Illinois courts have repeatedly held to be mere puffing"); *Aprigliano v. Am. Honda Motor Co*., 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) ("in a class of its own," "smooth, quiet," and "vibration-free"); *Sabol v. Ford Mot. Co.*, 2015 WL 4378504, at *4 (E.D. Pa. July 16, 2015) ("safe" and "reliable" constitute puffery).

In addition to not being actionable, these generalized conclusory allegations fail to meet the requirements of Rule 8, let alone the heightened Rule 9(b) particularity requirements of pleading a valid claim of affirmative misrepresentation.[16] The CAC fails to identify the time, place, manner, or content of

---

[16] Plaintiffs' statutory claims, premised on "misrepresentations and omissions of material facts" (*see*, *e.g.*, ¶ 361) clearly sound in fraud and must therefore be pled with particularity. *Kearns v. Ford Mot. Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b)'s particularity requirement applies to…claims for violation of the [CA] CLRA and UCL"); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313 (M.D. Fla. 2002) (Rule 9(b) applies to FL UDTPA claims); *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1010 n. 5 (same, MN CFA); *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (same, NJ CFA); *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp, 3d 372, 440-41 (S.D.N.Y. 2017) (PA CPL claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b)); *Debarros v. Gen. Mot. LLC*, 2019 WL 2143061, at *5 (same, GA FBPA); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) (same, IL CFA); *Drover v. LG Elecs. USA, Inc.*, 2012 WL 5198467, at *2 (D. Nev. Oct. 18, 2012) (same, NV DTPA); *Nemykina v. Old Navy LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020) (same, WA CFA); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) ("It is well-established that '[c]laims alleging violations of the [TX] DTPA are subject to the requirements of Rule 9(b).'").

any specific advertisement or marketing statement, or any other affirmative representation of VWGoA, that Plaintiffs claim to be false or misleading.  *Crisdon v. Bank of Am.*, 2013 WL 2644951, at *2 (D.N.J. June 10, 2013 (Hillman, J.) (Rule 9(b) requires that the "who, what, when, where, and how" of the alleged fraud be pled with particularity); *Debarros*, 2019 WL 2143061, at *5 (same, dismissing GA FBPA claim); *Divis v GM LLC*, 2019 WL 4735405, at *8 (E.D. Mich. Sep. 27, 2019) (same, dismissing FDUTPA claim).

Likewise, the CAC fails to plead the required facts establishing causation and/or reliance upon any alleged affirmative statement or misrepresentations by VWGoA.[17] Various Plaintiffs vaguely claim they conducted either unspecified "online search[es]," watched unidentified "YouTube videos and [TV] ads," looked at VW's website, and spoke with unidentified dealer employees (CAC ¶¶ 20, 31, 46,

---

[17] *See VVIG, Inc. v. Alvarez*, 2019 WL 5063441, at *11 (S.D. Fla. Oct. 9, 2019) (FDUTPA requires causation); *Smart v. West Creek Fin., Inc.*, 2021 WL 415130, at *4 (M.D. Ga. Feb. 5, 2021) (GA FBPA requires allegations of causation and reliance); *Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *5 (N.D. Ill. Oct. 28, 2016) (ICFA requires proximate cause); *Liebler v. LG Elecs. U.S.A., Inc.*, 2015 WL 3561590, at *4 (D.N.J. June 4, 2015) (NJCFA requires causation); *Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *5-6 (N.D. Cal. Oct. 11, 2016) (reliance and causation required under CLRA and UCL); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 501 (2004) (same under PA UTPCPL); *Wilson v. JPMorgan Chase, N.A.*, 2020 WL 885971, at *5 (W.D. Wash. Feb. 24, 2020) (WA CPA requires proof of but-for causation); *Certified Question United States Dist. Court Order v. Philip Morris*, 621 N.W.2d 2, 13 (Minn. 2001) (causation required under MN CFA); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009) (NV DTPA requires proof of causation and reliance); Tex. Bus. & Com. Code § 17.50(a) (TX CPA, codifying elements of causation and reliance).

59, 86, 111, 121, 133), but have not identified the existence, content, time and place of any alleged affirmative statement or misrepresentation viewed prior to purchase. *Weske v. Samsung Elecs., Am.*, 42 F. Supp. 3d 599, 607-08 (D.N.J. 2014); *Schiesser*, 2016 WL 6395457, at *5.

B.    **The Statutory and Common Law Fraudulent Omission Claims Fail Because Plaintiffs Have Not Established That VWGoA Had Pre-Sale Knowledge of the Alleged Defect (Counts 1, 3, 5, 7, 8, 10, 15, 16, 19, 22, 23, 26, 29, 32, 35)**

Plaintiffs' common law and statutory consumer fraud claims are premised upon an alleged failure by VWGoA to disclose the purported defect. But **in order to state an omission-based claim, Plaintiffs must plead facts (not mere conclusions) establishing that VWGoA had knowledge of the alleged defect prior to the time that each Plaintiff purchased a subject vehicle.** *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.5 (9th Cir. 2012) (the failure to disclose a defect of which the manufacturer is not aware does not constitute an unfair or fraudulent practice under CA law); *Wozniak v. Ford Mot. Co.*, 2019 WL 108845, at *3 n.5 (E.D. Mich. Jan. 4, 2019) (under FL, CA, and NJ law, a fraud claim based on an omission requires knowledge of the defect by the defendant); *Matthews v. Am. Honda Mot. Co.*, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) (same, FL law); *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 822 (N.D. Ill. 2016); *Pusey v. Sardo*, 2009 Pa. Dist. & Cnty. Dec. LEXIS 296, at *1 (Pa. Comm. Pleas 2009) (holding Plaintiffs did not establish PA CPL claim because they "did not prove that

35

defendants or any of them knew of any facts…that they did not disclose").

Plaintiffs have failed to adequately plead such facts. They purport to base pre-sale knowledge upon the following allegations, none of which factually establishes that VWGoA had pre-sale knowledge of the alleged piston defect in this case which is claimed to exist in **all** ("multiple thousands" [(CAC ¶ 278]) of the 2012-2017 putative class vehicles:

(i) <u>Anonymous Complaints to NHTSA.</u> Of the "multiple thousands" of vehicles, the CAC alleges only 27 anonymous third-party complaints filed with NHTSA, scattered over a five year period (CAC ¶¶ 208-234). However, *only 8* of them actually allege any issue whatsoever with the vehicles' pistons. The remainder vaguely allege issues such as excessive oil consumption, loss of cylinder compression, or engine failures, with no reference to the vehicle's pistons or even a specific identification of the VINs of the vehicles purportedly involved or their condition, maintenance histories, and the like. Indeed, the alleged issues anonymously referred to could be due to any number of causes unrelated to any piston problem, let alone any "defect," including lack of or improper maintenance of those particular vehicles, the uses, condition, and wear and tear of those particular vehicles, their accident and/or repair histories, and/or other completely unrelated vehicle components that might have leaked, worn out or failed for any number of possible reasons in those small number of vehicles having nothing to do with the

36

claims in this action.[18] As such, these 19 anonymous complaints do not establish notice of any "defect," let alone the so-called piston defect alleged in this action.

Further, of the 8 NHTSA complaints that allege any issue with a vehicle's pistons, ***none*** pre-date the purchases of Plaintiffs Bradley, Burnaugh, Gozon, Lowegard, Garden, or Gonzalez; only one pre-dates Plaintiff Hensley and Plaintiff Rieger's purchase; and only four pre-date Plaintiff Davis' purchase.[19] All complaints that are made after the Plaintiffs' purchases cannot, as a matter of law, establish pre-sale knowledge of anything, much less the alleged piston defect. *Granillo v. FCA US LLC*, 2016 WL 9405772, at *9 (D.N.J. Aug. 29, 2016) (post-sale complaints cannot "support an inference that Defendant had the requisite knowledge as of" the date that the purchases occurred); *see also Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *19 (D.N.J. July 29, 2019); *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) (same); *Callaghan v. BMW of*

---

[18] Specifically, the only NHTSA complaints addressing piston issues are CAC ¶¶ 210, 214, 216, 222, 223, 225, 230 and 234. Eight other complaints address oil consumption issues with no reference to any piston-related issue (CAC ¶¶ 208, 209, 211, 215, 218, 219, 224, 228); six allege engine failure or damage with no reference to any piston-related issue (¶¶ 212, 213, 227, 231, 232, 233); four allege hesitation, power issues, or loss of compression with no mention of a piston issue (¶¶ 217, 220, 221, 226). One complainant (¶ 229) claimed that they could purportedly "feel the pistons missing when [they] dr[o]ve," but did not state that any problem beyond oil consumption was ever diagnosed in his vehicle.

[19] Only 7 piston-related NHTSA complaints pre-date Plaintiff Francis and Vassel's purchases, and only 8 predate Plaintiff Chapman's.

*N. Am., Inc.*, 2014 WL 6629254, at *4 (N.D. Cal. Nov. 21, 2014) (same); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 308 (N.D.N.Y. Aug. 1, 2019) (same).

The few anonymous complaints that pre-dated each Plaintiff's purchase do not come close to establishing pre-sale knowledge of an alleged systemic piston defect that is claimed to exist in all of the "multiple thousands" of putative class vehicles. CAC ¶ 278. While this warrants dismissal of all fraud-based claims, even if all 27 complaints were both addressed to relevant issues ***and*** had pre-dated the Plaintiffs' purchases, that would still not establish pre-sale knowledge of the alleged systemic design defect. *Cadena v. Am. Honda Motor Co.*, 2019 WL 3059931, at *12 (C.D. Cal. May 29, 2019) (30 complaints to NHTSA, even if known by Honda, insufficient to allege pre-sale knowledge); *Deras*, 2018 WL 2267448, at *4 (pre-sale knowledge can only be established "where there were an unusual number of complaint[s]," and 56 complaints out of hundreds of thousands of vehicles is not sufficient); *McQueen v. BMW of N. Am.,* 2013 WL 4607353, at *6-7 (D.N.J. Aug. 29, 2013); *Sloan v. GM LLC*, 2017 WL 3283998, at *7 (N.D. Cal. August 1, 2017) (81 complaints not sufficient to establish pre-sale knowledge).

(ii) <u>Technical Service Bulletins ("TSBs").</u> Plaintiffs also purport to base pre-sale knowledge upon two Audi TSBs. CAC ¶¶ 249-50; Exs. 1-2. However, both TSBs are entirely irrelevant to the issues alleged in the CAC, and neither of them apply to Plaintiffs' vehicles. While this case concerns 2012-2017 Audi vehicles with

2.0-liter turbocharged engines (CAC ¶ 276), the first TSB is applicable only to specific 2009-2011 Audi models, none of which the Plaintiffs have. CAC, Ex. 1. Further, this TSB has nothing to do with any piston-related issue in those earlier model year vehicles; rather, it states that in cases of excess oil consumption, certain repairs should be made to identified crankcase components. Consequently, this TSB does not establish any knowledge of the claimed piston "defect" in Plaintiffs' vehicles.

The second TSB (CAC, Ex. 2), entitled "Engine replacement, checking for debris lodged in transferred assemblies," has nothing to do with pistons in the putative class vehicles. Rather, it merely instructs technicians to inspect, clean, and remove any debris that may be present in a vehicle's pre-existing manifolds or hoses prior to installing a replacement engine, to prevent such debris from entering or damaging the replacement engine. Obviously, this TSB is not indicative of the purported piston defect alleged in the complaint, and in no way demonstrates "knowledge" of any problem with pistons in the Plaintiffs' vehicles.

(iii) Third-Party Blogs and Websites Not Controlled by VWGoA. Pre-sale knowledge is, likewise, not established by purported complaints allegedly posted by persons on blogs, anonymous message boards, and other third-party websites (CAC ¶¶ 236-48). The identified websites are not owned or controlled by VWGoA, and Plaintiffs plead no facts plausibly establishing that VWGoA ever saw anything

posted on them. *See Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *18-19 (D.N.J. July 29, 2019) ("[I]mputing knowledge of a defect to a manufacturer based upon an internet posting would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery") (quotations omitted); *Oliver v. Funai Corp.*, 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015) ("[T]his Court is not persuaded that knowledge of the alleged defect could be imputed to Defendants based upon anonymous internet complaints on third-party websites."); *Resnick v. Hyundai Motor Am.*, 2016 WL 9455016, at *12-13 (C.D. Cal. Nov. 14, 2016) (rejecting allegations of knowledge based on complaints posted on "Hyundai-Forums.com" because plaintiffs did not plead facts indicating Hyundai monitored these websites and "complaints on websites do not…commute knowledge to a manufacturer"); *Stewart v. Electrolux Home Prods.*, 2018 WL 1784273, at *8 (E.D. Cal. Apr. 13, 2018) (same); *Berenblat v. Apple, Inc.*, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 7, 2010) (holding that even 350 complaints posted on defendant's own website do not sufficiently plead knowledge of defect; they "merely establish that some consumers were complaining").

(iv) <u>Conclusory Allegations of "Testing" and "Monitoring"</u>. Finally, Plaintiffs assert entirely vague and conclusory allegations that VWGoA knew of the alleged piston defect through "pre-release testing," "warranty claims data," "aggregate data from VW dealers," "testing conducted in response to…consumer complaints,"

"parts sales reports," and "other internal sources." CAC ¶¶ 189, 200, 203, 204. However, none of these are identified in any way - either by source, substance, content or timing - and no facts have been plead to support these facially deficient vague and conclusory allegations. *Iqbal*, 556 U.S. at 678-79. Indeed, courts routinely reject such conclusory and unspecified allegations as a basis for establishing pre-sale knowledge of an alleged defect. *Schechter*, 2019 WL 3416902, at *8 (conclusory and unsupported allegations of "pre-production testing, pre-production design failure mode and analysis data…testing conducted by Hyundai in response to consumer complaints, and repair order and parts data received by Hyundai," were too vague and general to adequately plead presale knowledge); *Brown*, 2019 WL 4126710 at *7 (rejecting pre-sale knowledge based upon conclusory allegations of unspecified "dealership repair records," "warranty and post-warranty claims," and "internal presale durability testing"); *Mandani v. Volkswagen Group of Am.*, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019) (rejecting pre-sale knowledge based upon conclusory allegations of "pre-sale design and testing"); *Hall v. GM, LLC*, 2020 WL 1285636, at *3 (E.D. Mich. Mar. 18, 2020) (rejecting nearly identical allegations as "too vague and pleaded at too high a level of generality to support a reasonable inference that GM had pre-sale knowledge"); *Cummings*, 401 F. Supp. 3d at 308 (same); *Burdt v. Whirlpool Corp.*, 2015 WL 4647929, at *11 (N.D. Cal

Aug. 5, 2015) ("Without the necessary factual support, Plaintiff's allegations [concerning testing and internal data] are merely speculative").

Accordingly, all of the statutory and common law fraudulent omission/concealment claims should be dismissed.

### C. The Common Law Fraudulent Omission Claims Should Be Dismissed for Lack of a Duty to Disclose (Count 35)

The common law fraudulent omission/concealment claims of Plaintiffs Davis (FL), Chapman (GA), Vassel (IL), Gonzalez (NJ), Gozon (NV), Francis, and Hensley (PA), should be dismissed because those states' laws impose no duty upon remote manufacturers or distributors to disclose information to individual consumers who, like Plaintiffs here, purchased products through third-party retailers and had no direct interaction or fiduciary relationship with the defendant.[20] VWGoA had no direct relationship with Plaintiffs regarding their purchase transactions, much less a

---

[20] *In re Atlas Roof. Corp. Chalet Shingle Prods. Liab. Litig.*, 2018 WL 2765961, at *9-10 (N.D. Ga. June 18, 2018) (no duty to disclose under GA law in the absence of "confidential or dependent relationship" or direct interaction with defendant); *TransPetrol, Ltd. v. Radulovic*, 764 So.2d 878, 880 (Fla. Ct. App. 2000) (no duty to disclose under FL law in the absence of a "fiduciary or other relation of trust or confidence"); *Connick v. Suzuki Mot.Co.*, 174 Ill.2d 482, 499-501 (1996) (same, dismissing fraudulent concealment claims under IL and PA law where plaintiffs purchased from "authorized Suzuki dealers"); *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *25 (D.N.J. Mar. 31, 2021) (no duty to disclose under NJ law absent fiduciary relationship); *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1487 (1998) (under NV law, absent a direct relationship or transaction with plaintiff, remote manufacturer has no duty to disclose even known defects).

fiduciary one, and the CAC pleads no facts establishing otherwise.

In addition, Rieger (CA), Burnaugh (LA), Gonzalez (NJ), Lowegard (TX), and Bradley (OR/WA) have no valid fraudulent concealment claim because those respective states' laws require either a fiduciary relationship, a misleading partial disclosure by defendant, active concealment, or the defendant's unique knowledge of "essential" or "material" facts, in order to give rise to a duty to speak.[21] The CAC pleads no facts establishing these requirements. There is no "fiduciary relationship," no identified "partial disclosure" by VWGoA concerning the vehicles' pistons or even oil consumption, and no facts establishing "active concealment" by VWGoA as opposed to a mere alleged non-disclosure. And finally, Plaintiffs fail to plead facts, rather than mere conclusions, establishing that VWGoA had "hidden knowledge" of the existence of Plaintiffs' alleged defect prior to the time of

_____

[21] *Bigler-Engler v. Breg, Inc.*, 7 Cal App. 5th 276, 312 (2017) (CA law; duty to discloses arises in (i) fiduciary relationship, (ii) where defendant has exclusive knowledge of material facts, (iii) active concealment, or (iv) partial disclosure); *In re Ford Motor Co. Vehicle Paint Litig.*, 1997 WL 539665, at *4 (E.D. La. Aug. 27, 1997) (LA law requires confidential relationship or unique knowledge of material facts); *McQueen v. Yamaha Motor Corp., U.S.A.*, 488 F. Supp. 3d 848, 857 (D. Minn. 2020) (MN law, fiduciary relationship, special knowledge of material facts, misleading partial disclosure); *Martell v. Gen. Mot. LLC*, 492 F. Supp. 3d 1131, 1143 (D. Or. 2020) (OR law; special relationship, active concealment, or partial misleading disclosure); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) (WA law; fiduciary relationship, misleading partial disclosure, superior information of hidden defects); *World Help v. Leisure Lifestyles*, 977 S.W.2d 662, 670 (Tex. Ct. App. 1998) (TX law, special relationship, misleading partial disclosure, knowledge that other party is relying on the concealed fact).

Plaintiffs' purchases or leases.  These omission claims should be dismissed.

**D.    All Omission-Based Claims Fail Because Plaintiffs Have Not Plead Facts Establishing the Requisite Reliance or Causation (Counts 1, 3, 5, 7, 8, 10, 15, 16, 19, 22, 23, 26, 29, 32, 35)**

In order to establish the required reliance or causation for an omission claim under common law or statute, Plaintiffs were required to plead facts establishing that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *6 (N.D. Cal. Oct. 11, 2016); *Weske*, 42 F. Supp. 3d at 607-08 (NJ, IL, WA law); *Schiesser*, 2016 WL 6395457, at *5 (conclusory allegations that "advertisements and representations made by Ford" failed to disclose defect insufficient to state IL CFA omission claim under Rule 9(b); "If a consumer has neither seen nor heard any…statement" from Ford then she "cannot prove proximate cause"); *Davidson v. Apple, Inc.*, 2017 WL 976048, at *8 (N.D. Cal. Mar. 14, 2017) (dismissing CA, PA, IL, NJ, FL, TX, and WA consumer fraud claims because plaintiffs failed to sufficiently allege that they "encountered a representation made by Defendant"); *Glass*, 2011 WL 6887721, at *12 (same, NJ law).

Thus, Plaintiffs were required to plead the specific statements or information from VWGoA, viewed prior to purchase, which allegedly should have contained the allegedly undisclosed information. *Id.* Plaintiffs have failed to do so. The threadbare conclusory allegations that Rieger, David, Chapman, Garden, Gonzalez, Hensley

and Francis performed "online search[es]," (CAC), that Rieger watched "YouTube videos and [TV] ads," and that the Lowengards reviewed unspecified "vehicle brochures" at various "luxury car dealerships, (CAC ¶¶ 20, 31, 46, 59, 86, 111, 121, 133, 148), are completely unspecified as to source, content, or timing, and do not identify any statement by VWGoA which, they claim, should have contained the allegedly omitted information. Similarly, Rieger, Davis, Burnaugh, and Hensley's conclusory allegation of visiting Audi or Volkswagen's corporate website provide no details about what they allegedly viewed, when they viewed it, and what statement, if any, that they claim should have contained the allegedly non-disclosed information. CAC ¶¶ 20, 31, 72, 121. And, while all Plaintiffs generically claim to have had contacts or discussions with independent dealership employees (e.g., ¶ 20), none have identified any such employees or the substance of any such discussions, and even if any had been identified, they would not be imputable to VWGoA. *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *6-7 (C.D. Cal. Oct. 3, 2014) (rejecting plaintiff's contention "that an authorized dealer is an agent of BMW, and thus its statements can be attributed to the manufacturer"); *Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127, at *6 (C.D. Cal. June 12, 2013) (same; dismissing fraudulent misrepresentation claim against Mercedes based upon statements by its dealer alleged to have been "acting as MBUSA's agent").

Finally, each Plaintiff generically recites the same conclusory allegation that he/she viewed the "Monroney" window sticker prior to purchase. This is insufficient because no Plaintiff has identified when he/she purportedly viewed a Monroney sticker, or what was stated on the sticker other than unidentified "official information about the vehicle" (CAC ¶¶ 20, 31, 46 ,59, 72, 86, 100, 111, 121, 133, 148, 158). *See Shea v. Gen. Motors LLC*, 2021 WL 4804171, at *8 (N.D. Ind. Oct. 14, 2021) (dismissing fraudulent omission claims where plaintiff alleged that he saw the Monroney sticker at the time of purchase but did not specify the information contained on that sticker).

Moreover, a Monroney sticker is a federally-mandated and regulated label that lists certain prescribed information but does not describe details, functions, characteristics and/or limitations of specific vehicle systems or components.[22] Indeed, Monroney stickers are not supposed to, and do not, describe or represent details, functions or characteristics of the vehicles' piston components or the

---

[22] *See, e.g.,* 15 U.S.C. § 1232 (requiring certain basic information, such as retail suggested price for standard equipment, retail suggested price for optional equipment); 49 C.F.R. § 575.302 (safety ratings information); 49 U.S.C. § 32908 (fuel economy information); 49 C.F.R. § 575.401 (fuel economy information); 49 C.F.R. § 583.5 (US/foreign parts content information); NHTSA Notice of Proposed Rulemaking, New Car Assessment Program (NCAP); Safety Labeling (Mar. 9, 2010), 75 Fed. Reg. 10740, 10741 ("We are not aware of instances other than the fuel economy labeling and domestic content labeling where Congress has granted a Federal agency permission to specify that other information be provided on the Monroney label"); 49 C.F.R. § 575.302(e)(11) ("[n]o additional information may be provided in the safety rating label area").

vehicles' rates of oil consumption, and the CAC does not allege that they did. A Monroney window sticker is not supposed to be a receptacle for any information that any plaintiff, in any case, may claim to be "material," or anything that any plaintiff in a litigation might allege to be "defective" about any of the thousands of components of a particular vehicle. That is not what a Monroney sticker is, or what it is supposed to be (*see* fn. 22, *supra*), and would transform it into an amorphous, monstrous, never-ending document whose content would be at the behest of every claimant's unilateral theories, rather than the "official" regulated information admitted by Plaintiffs.  Accordingly, Plaintiffs have not established causation and/or reliance upon an alleged omission.

###    E.    Certain Plaintiffs' Fraudulent Concealment Claims are Barred by the Economic Loss Rule  (Count 35)

Under the laws of CA (Rieger), FL (Davis), IL (Vassel), and PA (Francis, Hensley), claims for common-law fraudulent concealment which, as in this case, allege only economic loss, are barred by the economic loss rule. *See Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1103-04 (S.D. Fla. 2019) (dismissing such claims under FL law); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1339-40 (S.D. Fla. June 14, 2016) (dismissing claim under PA law); *Ponzio*, 447 F. Supp. 3d at 237 (same, under CA and FL law); *In re Subaru Battery Drain*, 2021 WL 1207791, at *29 (same, under CA, FL, and IL law).

Similarly, under TX law, "[t]he economic loss rule has been routinely applied to preclude fraud claims where a plaintiff alleges no damages independent of those suffered as a result of an alleged breach of contract." *Guardado v. Deutsche Bank Nat'l Tr. Co.*, 2019 WL 7761811, at *3 (W.D. Tex. Aug. 30, 2019). Here, the Lowegards allege no damages for fraud that are separate and apart from those sought under their contractual warranty-based claims. Their fraud claim fails accordingly.

### F.    Dismissal of Gonzalez's NJ Statutory Claims (Counts 22, 23)

The New Jersey Consumer Fraud Act ("NJCFA") (plead in Count 22), requires an "ascertainable loss," defined as a cognizable loss that "is quantifiable and measurable." *Pierre-Charles v. Cons. Port. Servs.*, 2018 WL 3425737, at *4 (D.N.J. July 16, 2018). To properly plead ascertainable loss, a plaintiff must factually plead an entitlement to damages under either (1) an out-of-pocket loss theory or (2) a loss in value or benefit-of-the-bargain theory. *Id.*; *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. Aug. 26, 2015). NJ Plaintiff Gonzalez has failed to plead an out-of-pocket loss theory because he has not alleged, nor can he, that his vehicle, which he has owed since November 2014, driven for many thousands of miles, and continues to operate, is worthless. *Mladenov*, 124 F. Supp. 3d at 375 (dismissing NJCFA claim where Plaintiffs failed to "allege facts supporting an out-of-pocket loss, *i.e.*, that the products they purchased were worthless").

In addition, Gonzalez's conclusory allegations that he "would have paid less" for his vehicle or suffered "diminished value" (CAC ¶¶ 112, 693) fail to establish ascertainable loss under a loss-in-value/benefit-of-the-bargain theory. Gonzalez has not pled facts, required by courts, establishing a "quantifiable difference in value between the merchandise as [advertised] and the merchandise as delivered." *Schechter*, 2019 WL 3416902, at *8. "Failure to quantify this difference in value results in the dismissal of a claim." *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584, at *10 (D.N.J. June 26, 2012). Gonzalez also fails to "specify the price paid for the product and the price of comparable products to adequately state a claim under the NJCFA." *In re Caterpillar, Inc.*, 2015 WL 4591236, at *38; *see also Schechter*, *supra* at *8 (dismissing NJCFA claim because plaintiff did not "provid[e] any information with respect to the terms of his leased vehicle, including its price; nor has he alleged any facts that describe what a hypothetical lease for a vehicle with a defective powertrain would be, in order for the Court to ascertain, or even reasonably estimate, the difference in value…").

Gonzalez's New Jersey Truth in Consumer Contract Warranty and Notice Act ("TCCWNA") claim (Count 23) should be dismissed for failure to allege that any VWGoA contract or warranty included an "illegal" provision, which is what TCCWNA requires. Plaintiff alleges only deceptive *conduct* (CAC ¶ 705), which fails to state a valid TCCWNA claim. *Cannon v. Ashburn Corp.*, 2016 WL 7130913,

at *11 (D.N.J. Dec. 7, 2016) (dismissing claim based on allegedly fraudulent conduct because the TCCWNA addresses only "the actual terms and provisions included in consumer contracts, rather than the conduct of parties").

### G.    Garden's MN Statutory Claims are Untimely (Counts 15 and 16)

Plaintiff Garden's MN CFA and DTPA claims are governed by a six-year statute of limitations which "begins to run on the date of sale and…is not delayed based on the discovery of a potential claim." *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 876 (D. Minn. 2012). Because this action was filed more than six years after Garden's April 16, 2014 purchase of his vehicle, the claims are time-barred.[23]

Additionally, the MN DTPA does not permit a private right of action claims for damages. The sole remedy is injunctive relief, *Gisairo v. Lenovo (U.S.) Inc.*, 516 F. Supp. 3d 880, 890 (D. Minn. 2021), which Garden does not seek in connection with this claim. CAC ¶¶ 559-81.

---

[23] Under MN law, there is no basis for a fraudulent concealment toll which, in the absence of a fiduciary relationship, (i) requires an "affirmative act or statement which concealed a potential cause of action" that is specifically directed to the plaintiff, and (ii) plead with the particularity required by Rule 9(b). No such affirmative act or statement has been plead, and a mere omission or non-disclosure does not suffice. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 786 (8th Cir. 2009).

### H.    Plaintiffs' Common Law Fraudulent Concealment Claims Fail Under TX and PA Law (Count 35)

TX Plaintiff Lowegard's claim also fails because "Texas law does not recognize an independent cause of action for fraudulent concealment…and courts regularly dismiss fraudulent concealment claims pled as independent causes of action." *In re Subaru Battery Drain*, 2021 WL 1207791, at *30; *Buraimoh v. BMW of N. Am., LLC*, 2020 WL 7711823, at *6 (W.D. Tex. Dec. 29, 2020).

PA Plaintiffs Francis and Hensley's claims also fail because, under PA law, fraudulent concealment claims are limited to "transactional relationships" between the parties, and neither Plaintiff purchased a vehicle from VWGoA (CAC ¶¶ 119, 131). *Cabebe v. Nissan of N. Am., Inc.*, 2018 WL 5617732, at *9–10 (N.D. Cal. Oct. 26, 2018) (dismissing fraudulent concealment claim under PA law in the absence of a direct transaction).

### I.    Dismissal of Chapman's GA Statutory Claims (Counts 7, 8)

The GA Fair Business Practices Act ("GAFBPA") (Count 7) prohibits Plaintiffs from proceeding with those statutory claims on a class action basis. Ga. Code Ann. § 10-9-399 ("Any person who suffers injury or damages...as a result of consumer acts or practices in violation of this part…may bring an action individually, ***but not in a representative capacity***."). This constitutes a controlling and substantive state law restriction on class action claims, which pursuant to *Shady Grove Ortho. Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 423 (2010) (Stevens,

J. concurring) and its progeny, is not displaced by Rule 23. *See Matanky v. General Motors LLC*, 370 F. Supp. 3d 772, 798-99 (E.D. Mich. 2019) (applying *Shady Grove*, dismissing GAFBPA class claims based on statutory class action bar); *Delgado v. Ocwen Loan Servicing, LLC*, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017) (same). Chapman's class claims under the GFBPA should be dismissed.

Chapman's GA Uniform Deceptive Trade Practices Act claim (Count 8) should also be dismissed. The GUDTPA provides only for injunctive relief and not for civil damages, so Chapman's request for damages is improper. Ga. Stat. Ann. § 10-1-373. In addition, as discussed *infra* Point X, Chapman's request for "injunctive relief" fails because Chapman lacks standing under Article III to bring claims for injunctive relief, and has also failed to properly plead the essential requirements for injunctive relief.

## VII.  THE CLAIMS UNDER THE LOUISIANA PRODUCT LIABILITY ACT (Count 16), AND FOR COMMON LAW FRAUD (Count 35), SHOULD BE DISMISSED

Plaintiff Burnaugh (LA) alleges a violation of the LA Product Liability Act, La. Stat. Ann. § 9:2800.51, *et seq*. ("LPLA"), but has plead no facts establishing that her vehicle is "unreasonably dangerous," as required by the Act. CAC ¶¶ 509-10. Despite conclusory "safety" allegations, the only fact alleged by Burnaugh is that her vehicle consumes more oil than she believes it should. *Id*., ¶¶ 76-77. She does not claim to have ever experienced any accident, mechanical malfunction, loss of

power while driving, or any situation in which she or any other motorist was or would be at risk for injury. Moreover, Burnaugh continues to drive her vehicle, which confirms the lack of any unreasonable danger. *Id.*, ¶¶ 74-80.

In addition, Burnaugh does not assert any claim for personal injury or property damage. Her claim is for alleged economic loss only. While some courts disagree on the timing of a dismissal, the courts agree that pure economic damages are not recoverable under the LPLA where, as here, they are available under a redhibition claim. *See* La. Stat. Ann. § 9:2800.53(5); *Pitre v. Yamaha Mot. Co.*, 51 F. Supp. 3d 644, 660 (E.D. La. 2014) (Rule 12 dismissal of LPLA claims, since "economic loss claims by buyers fall under redhibition, and personal injury claims fall under the LPLA," and "to the extent that... [economic] damage is compensable in redhibition, it is not compensable under the [LPLA]"); *Baker v. BMW of N. Am., LLC*, 2021 WL 1577837, at *3 (E.D. La. Apr. 22, 2021) (summary judgment dismissing LPLA, finding that economic damages are not cognizable under the LPLA "because the redhibition articles do apply").

Further, because the LPLA provides the "exclusive remedy" for an allegedly unreasonably dangerous product, other than an action in redhibition, Burnaugh's fraudulent concealment claim (Count 35) should also be dismissed. *Pitre*, 51 F. Supp. 3d at 661 (dismissing LA fraudulent concealment and unjust enrichment claims as barred by the exclusivity provisions of the LPLA); *Scott v. Am. Tobacco*

*Co.*, 949 So. 2d 1266, 1274 (La. Ct. App. 2007) *writ denied*, 973 So. 2d 740 (La. Jan. 7, 2008) ("Fraud claims cannot be used to circumvent the LPLA").

## VIII. DISMISSAL OF CHAPMAN'S UNJUST ENRICHMENT CLAIM (COUNT 9)

Only one Plaintiff, Chapman (GA), asserts a claim for unjust enrichment, under GA law. That claim should be dismissed for several dispositive reasons:

First, any claim for equitable relief, including unjust enrichment, must be dismissed if, as in this case, the pleading fails to plead the absence of an adequate alternative remedy at law. *In re Ford Tailgate Litig.*, 2014 WL 3899545, at *3-4, n.3 (N.D. Cal. Aug. 8, 2014) (dismissing unjust enrichment claims brought, *inter alia*, on behalf of a GA plaintiff and putative GA sub-class); *Pinon v. Daimler AG*, 2019 WL 11648560, at *13 (N.D. Ga. Nov. 4, 2019) (citing GA law, dismissing enrichment claim because plaintiffs had an adequate remedy at law under the New Vehicle Limited Warranties). Chapman's failure to plead that he lacks any alternative remedy at law requires dismissal of his unjust enrichment claim. In addition, Chapman has, in fact, asserted legal claims for relief (Counts 7 and 8).

Second, under GA law, unjust enrichment is merely a remedy which may not be plead as an independent stand-alone cause of action. *Wachovia Inc. Serv., Inc. v. Fallon*, 682 S.E.2d 657, 665 (Ga. App. 2009).

Third, an unjust enrichment claim is not permitted under GA law where the rights of the parties are governed by a contract - here, the written NVLWs applicable

to Plaintiffs' vehicles. *Pinon*, 2019 WL 11648560, at *13 (N.D. Ga. Nov. 4, 2019) (dismissing unjust enrichment claim because "it is undisputed that express contracts–the NVLWs–govern the subject-matter of this dispute. Plaintiffs do not dispute that the NVLWs exist and do not challenge their validity or enforcement"); *Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 2d 1272 (S.D. Ga. 2010) ("Unjust enrichment applies when as a matter of fact there is no legal contract…") (quoting *Tuvim v. United Jewish Cmtys., Inc.,* 285 Ga. 632 (2009)).

Fourth, the unjust enrichment claim is premised upon the same non-disclosure allegations that underlie the fraud-based claims (s*ee* CAC ¶ 439). As in this case, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action" and should be dismissed as such. *In re Ford Tailgate Litig.*, 2014 WL 3899545, at *3 (citations omitted).

And finally, since the fraud-based allegations underlying the unjust enrichment claim are deficient (Point VII, *supra*), the claim should be dismissed for the same reasons. *Flynn-Murphy*, 2021 WL 5448716, at *9 (dismissing unjust enrichment claim, holding that plaintiff "failed to plausibly plead that Defendant knew of and failed to disclose the turbocharger defect at the time of sale"); *Gaylord v. Ocwen Loan Servicing, LLC,* 2013 WL 12291744, at *15 (N.D. Ga. Mar. 27, 2013) (dismissing unjust enrichment claim premised on deficient allegations of fraud);

*Girard v. Toyota Mot. Sales, U.S.A., Inc.*, 316 Fed. App'x. 561, 563 (9th Cir. 2008);

*Argabright*, 201 F. Supp. 3d at 613.

## IX.  ALL CLAIMS FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF SHOULD BE DISMISSED (Counts 1, 4, 7, 8, 11, 17, 19, 20, 22, 24, 27, 29, 30, 33, and "Prayer for Relief")

### A.  Plaintiffs Lack Article III Standing to Seek Injunctive Relief

Plaintiffs Rieger, Chapman, the Gozons, Gonzalez, and the Lowegards seek

injunctive relief in connection with their claims under the CLRA, GFBPA, GDTPA,

NDTPA, NJCFA, and TDTPA (Counts 1, 7, 8, 19, 22, 29), and the CAC's "Prayer

for Relief" also includes injunctive relief (CAC p. 257). A plaintiff "must

demonstrate standing for each claim that they press and for each form of relief that

they seek (for example, injunctive relief and damages)." *TransUnion LLC v.

Ramirez*, 141 S. Ct. 2190, 2208 (2021).

In order to have Article III standing to seek injunctive relief, each plaintiff

must show that he or she is likely to suffer a future injury that is "concrete and

particularized" and "imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992);

*TransUnion LLC*, 141 S.Ct. at 2210. The alleged threatened injury must be "certainly

impending"; allegations of past injury or "possible future injury" are not sufficient.

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also McNair v. Synapse

Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (dismissing injunctive relief claims for

lack of Article III standing because plaintiffs did not allege that they intended to

subscribe to defendant's service again, and thus, there was "no reasonable likelihood that they will be injured by [deceptive sales] techniques in the future"); *Diebler v. SanMedica Int'l, LLC*, 488 F. Supp. 3d 169, 184 (D.N.J. 2020) (Hillman, J.) (dismissing injunctive relief claims for lack of Article III standing because plaintiff's allegation that "she might someday believe the [defendant's product] formula has been improved and purchase it again" was insufficient to show that the plaintiff faced a likelihood of future injury); *Tawil v. Illinois Tool Works, Inc.*, 2016 WL 4260791, at *6 (D.N.J. Aug. 11, 2016) (dismissing injunctive relief claims where previously deceived plaintiffs did not plausibly allege they would purchase the product again). *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146-148 (2d Cir. 2020) ("If the injury occurred in the past—or if some future injury is merely conjectural or hypothetical—then plaintiffs will lack the kind of injury necessary to sustain a case or controversy, and necessary to establish standing, under Article III."); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014) (same).

Here, Plaintiffs do not even allege, much less show, a plausible threat that they will imminently suffer any concrete injury in the future. No Plaintiff alleges that he or she will be wronged again, imminently or concretely, *McNair*, 672 F.3d at 223, since ***each plaintiff specifically pleads that he or she "will not" purchase another class vehicle in the future.*** CAC ¶¶ 27, 42, 55, 68, 82, 96, 107, 117, 129, 144, 153, 167. Plaintiffs have, therefore, failed to establish the threat of a concrete and

imminent future injury[24] sufficient to confer Article III standing.

### B. Plaintiffs Fail to State a Valid Claim for Any Equitable (Including Injunctive) Relief, and the Request to Compel a Recall is Preempted

The CAC asserts generalized requests for "equitable" relief in certain consumer fraud and warranty claims[25] and in the "Prayer for Relief." All of their equitable relief claims, including injunctive relief, should be dismissed because the CAC not even allege, let alone establish, that Plaintiffs lack any adequate alternative remedy at law. *See* Point IX, *supra*; *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1077, 1081 (9th Cir. 2020) (affirming dismissal of CLRA and UCL claims for equitable relief because plaintiff failed to allege that she lacked an adequate remedy at law); *Philips v. Ford Motor Co.*, 726 Fed. App'x 608, 609 (9th Cir. June 8, 2018) (same regarding UCL equitable relief claims); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 496 (E.D. Pa. 2016) (injunctive relief unavailable where plaintiff has an adequate remedy at law).

---

[24] The GA and MN DTPA respectively provide only for injunctive relief and, as discussed *supra*, Plaintiff Garden's claim under the MN DTPA (Count 16) does not seek injunctive relief. Because Plaintiff Garden also lacks Article III standing to seek injunctive relief, Plaintiff MN DTPA claim should be dismissed for this additional reason.

[25] *See* CAC ¶¶ 297-98 (CA CLRA), ¶ 348 (CA express warranty), ¶ 412 (GA FBPA), ¶ 435 (GA UDTPA), ¶ 484 (IL express warranty), ¶ 597 (MN express warranty), ¶ 637 (NV DTPA), ¶ 653 (NV express warranty), ¶ 698 (NJ CFA), ¶ 723 (NJ express warranty), ¶ 802 (PA express warranty), ¶ 846 (TX DTPA), ¶ 863 (TX express warranty), and 922 (OR express warranty).

In addition, Plaintiffs have failed to state a valid claim for injunctive relief for the same reasons underlying Plaintiffs lack of standing (Point X(A) *supra*).

Finally, Plaintiffs' request for an injunction "compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a)" (CAC ¶ 870(c)) is also preempted by federal law. Courts have repeatedly held that the Federal Motor Vehicle Safety Act (49 U.S.C. § 30101 et seq.) preempts actions seeking to impose particular recall obligations on manufacturers. As those courts have explained, "the comprehensiveness of the Safety Act with regard to recalls demonstrates convincingly that any state law providing for a motor vehicle safety recall would frustrate the purposes of the Safety Act." *In re Bridgestone/Firestone Inc., ATX, ATX II & Wilderness Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 945 (S.D. Ind. 2001); *see also Granillo*, 2016 WL 9405772, at *18-20 (requested injunction to compel a recall preempted by the Safety Act); *Schiesser v. Ford Motor Co.*, No. 16 C 730, 2017 WL 1283499, at *5 (N.D. Ill. Apr. 6, 2017). *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 584 (D. Md. 2001) (stating that the effect of the Safety Act is to "completely preempt the area of vehicle and safety recalls").

Accordingly, all Plaintiffs' claims for injunctive and other equitable relief should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, VWGoA respectfully requests that the CAC be dismissed in its entirety; together with such other and further relief as the Court deems just and proper.

December 3, 2021

**HERZFELD & RUBIN, LLC**

By: */s/ Homer B. Ramsey*
Homer B. Ramsey
Michael B. Gallub (*pro hac vice*)
354 Eisenhower Parkway
Livingston, New Jersey 07039
T: (973) 535-8840
F: (973) 535-8841
hramsey@herzfeld-rubin.com
mgallub@herzfeld-rubin.com
*Attorneys for Defendant*
*Volkswagen Group of America, Inc.*