# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JENI RIEGER, ALOHA DAVIS, JODIE CHAPMAN, CARRIE VASSEL, KAREN BURNAUGH, TOM GARDEN, ADA and ANGELI GOZON, CLYDIENE FRANCIS, PETER and GUNNEL LOWEGARD, and GRANT BRADLEY individually, and on behalf of a class of similarly situated individuals, | Civil Action No.: 1:21-cv-10546-NLH-MJS |
| Plaintiffs, |  |
| v. |  |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, d/b/a AUDI OF AMERICA, INC., AUDI AG, a German corporation, and VOLKSWAGEN AG, a German corporation, |  |
| Defendants. |  |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ..............................................................................1

GOVERNING LEGAL STANDARDS ................................................................3

ARGUMENT .......................................................................................................5

I.    PLAINTIFFS SUFFICIENTLY DISTINGUISH EACH DEFENDANT..........5

II.   PLAINTIFFS HAVE STANDING TO ASSERT NATIONWIDE
      CLAIMS FOR A PUTATIVE CLASS ................................................................6

III.  PLAINTIFF GUNNEL LOWEGARD HAS STANDING ...............................9

IV.   PLAINTIFFS HAVE PROPERLY PLEADED BREACH OF EXPRESS
      WARRANTY .......................................................................................................11

      A.   Plaintiffs Have Sufficiently Pleaded the Piston Defect is Covered
           Under Defendants' Warranties.................................................................11

      B.   Plaintiffs' Express Warranty Claims Are Timely .....................................16

      C.   Plaintiffs Adequately Allege the Defect Existed Within the
           Warranty's Time Limits ............................................................................18

      D.   Plaintiffs Adequately Plead the Warranty's Durational Limits Are
           Unconscionable .........................................................................................19

V.    THE IMPLIED WARRANTY CLAIMS SHOULD BE SUSTAINED...........22

      A.   All Plaintiffs' Breach of Implied Warranty Claims Are Timely...............22

      B.   The Breach of Implied Warranty Claims of Vassel (IL), Burnaugh
           (LA), Garden (MN), the Gozons (NV), Gonzalez (NJ), Francis
           (PA), Hensley (PA), and the Lowegards (TX) are not Limited by
           the Durational Limits of the NVLW.........................................................24

      C.   The Implied Warranty Claims Under IL, FL, NV, and OR Survive.........24

      D.   Plaintiffs' Vehicles Were Not Merchantable at the Time of Sale ............26

      E.   The Magnuson-Moss Warranty Act Claim Is Well-Pleaded ....................29

VI.   PLAINTIFFS' STATUTORY AND COMMON LAW FRAUD
      CLAIMS ARE WELL-PLEADED ................................................................30

      A.   Plaintiffs' Affirmative Misrepresentation Claims Are Well-Pleaded .......30

B.   Plaintiffs Pre-Sale Knowledge Allegations Are Well-Pleaded.................32

C.   Plaintiffs Properly Plead Defendant's Duty to Disclose ..........................35

D.   Plaintiffs Pleaded Reliance and Causality with the Requisite Particularity Required by Rule 9(b) in an Omissions Case......................38

E.   The Economic Loss Rule Does not Bar Plaintiffs' Fraud Claims...........43

F.   Plaintiff Gonzalez's NJ Statutory Claims Are Well-Pleaded ..................44

G.   Plaintiff Garden's Minnesota CFA and DTPA Claims Are Timely .........46

H.   Plaintiffs' TX and PA Common Law Fraud Claims Are Well-Pleaded.................................................................................................47

I.   Chapman's Georgia Statutory Claims Are Well-Pleaded........................49

VII.  CHAPMAN'S UNJUST ENRICHMENT CLAIM IS WELL-PLEADED...................................................................................................50

VIII.  ALL CLAIMS FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF SHOULD BE UPHELD ....................................................................53

A.   Plaintiffs Have Standing to Seek Injunctive Relief..................................53

B.   Plaintiffs State a Valid Claim for Equitable Relief..................................55

C.   Plaintiffs' Request to Compel a Recall Is Not Preempted........................57

CONCLUSION ..............................................................................................................58

## <u>TABLE OF AUTHORITIES</u>

Cases                                                                                          Pages(s)

*Afzal v. BMW of N. Am., LLC*,
    2017 WL 3207232 (D.N.J. Jul. 27, 2017)........................................................33

*Alejandre v. Bull*,
    98 P.3d 844 (2004) ...........................................................................................36

*Alin v. Am. Honda Motor Co.*,
    2010 WL 1372308 (D.N.J. Mar. 31, 2010) ................................................ 12, 14

*Amin v. Mercedes-Benz USA, LLC*,
    301 F. Supp. 3d 1277 (N.D. Ga. 2018) ..............................................................50

*Anglo-Dutch Petroleum Int'l, Inc. v. Case Funding Network, LP*,
    441 S.W.3d 612 (Tex. App. 2014)......................................................................48

*Animal Science Prod., Inc. v. China Minmetals Corp.*,
    654 F.3d 462 .......................................................................................................4

*Aryeh v. Canon Bus. Sols., Inc.*,
    55 Cal. 4th 1185 (2013) .....................................................................................22

*Asghari v. Volkswagen*,
    42 F.Supp.3d 1306 (C.D. California, 2013)..........................................................2

*Atl. Specialty Ins. Co. v. Caterpillar Inc.*,
    2021 WL 4845771 (E.D. La. Oct. 18, 2021) ......................................................23

*Baranco v. Ford Motor Co.*,
    294 F. Supp. 3d 950 (N.D. Cal. 2018) ...............................................................27

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................4

*Bilinsco Inc. v. Harris Cty. Appraisal Dist.*,
    321 S.W.3d 648 (Tex. App. 2010)......................................................................16

*Bradley Woodcraft, Inc. v. Bodden*,
    251 N.C. App. 27, 795 S.E.2d 253 (2016)..........................................................43

*Bruni v. City of Pittsburgh,*
    824 F.3d 353 (3d Cir. 2016) ....................................................................9

*Bussian v. DaimlerChrysler Corp.,*
    411 F.Supp.2d 614 (M.D.N.C. 2005)....................................................19

*Bustamante v. Borough of Paramus,*
    413 N.J. Super. 276 (App. Div. 2010)...................................................16

*Cabebe v. Nissan of N. Am., Inc.,*
    2018 WL 5617732 (N.D. Cal. Oct. 26, 2018).......................................48

*Carlson v. Gen. Motors Corp.,*
    883 F.2d 287 (4th Cir. 1989) ........................................................ 19, 20

*Christidis v. First Pa. Mortgage Tr.,*
    717 F.2d 96 (3d Cir. 1983) .....................................................................4

*Clark v. Aaron's, Inc.,*
    914 F. Supp. 2d 1301 (N.D. Ga. 2012) .................................................50

*Clay v. Kuhl,*
    189 Ill.2d 603 (2000) .............................................................................16

*Connick v. Suzuki Motor Co.,*
    675 N.E.2d 584 (1996)...........................................................................36

*Cox v. Chrysler Grp., LLC,*
    2015 WL 5771400 (D.N.J. Sept. 30, 2015) ............................................8

*Craftmatic Sec. Litig. v. Kraftsow,*
    890 F.2d 628 (3d Cir. 1989) ....................................................................4

*Daniel v. Ford Motor Co.,*
    806 F.3d 1217 (9th Cir. 2015) ................................. 14, 30, 38, 39, 40, 42

*Daugherty v. Jacobs,*
    187 S.W.3d 607 (Tex. App. 2006)..........................................................48

*Davidson v. Apple, Inc.,*
    2017 WL 976048 (N.D. Cal. Mar. 14, 2017).........................................42

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ..................................................................54

*Dawson v. General Motors, LLC,*
    2019 WL 328046 (D.N.J. July 22, 2019)..................................................24

*DeFrank v. Samsung Electronics Am., Inc.*,
    2020 WL 6269277 (D.N.J. Oct. 26, 2020)........................... 19, 24, 32, 38, 39, 51

*Demmick v. Cellco P'ship*,
    2007 WL 789040 (D.N.J. Mar. 13, 2007) .............................................10

*Dewey v. Volkswagen AG*,
    558 F. Supp. 2d 505 (D.N.J. 2008) ............................................... 17, 24

*DiCicco v. PVH Corp.,*
    2020 WL 5237250 (S.D.N.Y. Sept. 2, 2020) .......................................45

*Driscoll v. Standard Hardware, Inc.*,
    785 N.W.2d 805 (Minn. Ct. App. 2010) ..............................................27

*Drobnak v. Andersen Corp.,*
    561 F.3d 778 (8th Cir. 2000)                                    46

*Duquesne Light Co. v. Westinghouse Elec. Corp*.,
    66 F.3d 604 (3d Cir. 1995) .................................................................48

*Egbebike v. Wal-Mart Stores E., LP*,
    2014 WL 3053184 (M.D. Fla. July 7, 2014).........................................27

*Elward v. Electrolux Home Prod. Inc.*,
    214 F. Supp. 3d 701 (N.D. Ill. 2016) ..................................................25

*ExxonMobil Corp. v. Lazy R Ranch, LP*,
    511 S.W.3d 538 (Tex. 2017) ..............................................................22

*Fausto v. Sanchez-Flores*,
    482 P.3d 677 (2021) ...........................................................................16

*Fine v. Checcio*,
    870 A.2d 850 (Pa. 2005) .....................................................................22

*First Am. Bankcard, Inc. v. Smart Bus. Tech.,* Inc.,
178 F. Supp. 3d 390 (E.D. La. 2016) ...................................................36

*First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*,
717 F. Supp. 2d 156 (D. Mass. 2010) ...................................................37

*Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*,
2021 WL 5448716, (D.N.J. Nov. 19, 2021).......................................... 21, 22, 55

*Francis v. Gen. Motors, LLC*,
2020 WL 7042935 (E.D. Mich. Nov. 30, 2020) ........................ 14, 27, 34, 35, 51

*Friedman v. Mercedes Benz USA LLC*,
2013 WL 8336127 (C.D. Cal. June 12, 2013) ......................................41

*Gallivan v. U.S.*,
943 F.3d 291 (6th Cir. 2019) ...............................................................49

*Gelis v. Bayerische Motoren Wekre Aktiengesellschaft*,
2018 WL 6804506 (D.N.J. Oct. 30, 2018).........................................20

*George v. Jaguar Land Rover N. Am. LLC*,
2021 WL 5195788 (D.N.J. Nov. 8, 2021)...................................... 28, 29

*Glass v. BMW of N. Am., LLC*,
2011 WL 6887721 (D.N.J. Dec. 29, 2011) ................................... 29, 42

*Glenn v. Hyundai Motor Am.*,
2016 WL 3621280 (C.D. Cal. June 24, 2016) ........................... 57, 58

*Global Quest, LLC v. Horizon Yachts, Inc.*,
849 F.3d 1022 (11th Cir. 2017) .........................................................26

*Gonzales v. CarMax Auto Superstores, LLC*,
2013 WL 12207506 (C.D. Cal. Nov. 5, 2013) ...................................29

*Gould Elecs. Inc. v. United States*,
220 F.3d 169 (3d Cir. 2000) ...............................................................10

*Gray v. BMW of N. Am., LLC,*
22 F. Supp. 3d 373 (D.N.J. 2014) ............................................... 38, 39

*Gray v. BMW of N. Am., LLC,*
2014 WL 4723161 (D.N.J. Sept. 23, 2014) ...........................................................6

*Green v. Fund Asset Mgmt., L.P.,*
245 F.3d 214 (3d Cir. 2001) ................................................................ 57, 58

*Grisafi v. Sony Elecs. Inc.,*
2019 WL 1930756 (D.N.J. Apr. 30, 2019)...........................................................45

*Haag v. Hyundai Motor Am.,*
969 F. Supp. 2d 313 (W.D.N.Y. 2013) .................................................................14

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.,*
2017 WL 3944285 (D.N.J. Sept. 7, 2017) .............................................................4

*Herremans v. BMW of N. Am.,*
2014 WL 5017843 (C.D. Cal. Oct. 3, 2014).................................................. 40, 41

*Herrera v. Toyota Motor Sales, U.S.A.,*
2010 WL 3385336 (D. Nev. Aug. 23, 2010)...........................................................22

*In re AZEK Bldg. Prod., Inc., Mktg. & Sales Pracs. Litig.,*
82 F. Supp. 3d 608 (D.N.J. 2015) ............................................................... 24, 31

*In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.,*
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ...................................................................7

*In re Burlington Coat Factory Sec. Litig.,*
114 F.3d 1410 (3d Cir. 1997) ..............................................................................10

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.,*
2015 WL 4591236 (D.N.J. July 29, 2015)...........................................................13

*In re FCA Monostable Gearshift,*
355 F. Supp. 3d 582 (E.D. Mich. 2018)........................................................ 49, 50

*In re FCA US LLC Monostable Elec. Gearshift Litig.,*
280 F. Supp. 3d 975 (E.D. Mich. 2017)........................................................ 14, 37

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.,*
1995 WL 714441 (E.D. La. Dec. 4, 1995)...........................................................22

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-cv-4558,
    2008 WL 4126264 (D.N.J. Sept. 2, 2008) ............................................. 18, 44, 45

*In re Ford Tailgate Litig.*,
    2014 WL 3899545 (N.D. Cal. Aug. 8, 2014) ...................................................... 52

*In re Hydroxycut*,
    299 F.R.D. 648 (S.D. Cal. 2014) ........................................................................ 49

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) ..................................................................... 55

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ...................................................... 31, 37, 48

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    155 F. Supp. 3d 772 (N.D. Ill. 2016) ................................................................. 25

*In re Samsung DLP Television Class Action Litig.*,
    2009 WL 3584352 (D.N.J. Oct. 27, 2009) ........................................................ 19

*In re Saturn L-Series Timing Chain Prod. Liab. Litig.*,
    2008 WL 4866604 (D. Neb. Nov. 7, 2008) ....................................................... 12

*In re Subaru Battery Drain Prod. Liab. Litig.*,
    2021 WL 1207791 (D.N.J. Mar. 31, 2021) .................................................. 55, 56

*In re Takata Airbag Prod. Liab. Litig.*,
    2017 WL 775811 (S.D. Fla. Feb. 27, 2017) ...................................................... 36

*In re Toyota Motor Corp. Hybrid Brake Litig.*,
    890 F. Supp. 2d 1210 (C.D. Cal. 2011) ............................................................. 58

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................. 14, 36, 57

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
    534 F. Supp. 3d 1067 (N.D. Cal. 2021) ............................................................. 53

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. and Prod. Liab. Litig.*,
    349 F. Supp. 3d 883 (N.D. Cal. 2018) ............................................................... 38

*In Re Volkswagen Timing Chain Product Liability Litigation,*
   2017 WL 1902160 (D.N.J. May 8, 2017) .. 2, 6, 12, 14, 16, 18, 19, 20, 22, 24, 31, 36, 37, 39, 48

*In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.,*
   172 F. Supp. 3d 724 (D.N.J. 2016) ....................................................7

*In re: McCormick & Co., Inc.,*
   217 F. Supp. 3d 124 (D.D.C. 2016) ...............................................7, 8

*Intown Enterprises, Inc. v. Barnes,*
   721 F. Supp. 1263 (N.D. Ga. 1989) ...................................................49

*Jones v. Harrelson & Smith Contractors, LLC,*
   194 N.C. App. 203, 670 S.E.2d 242 (2008)......................................43

*Justiss Oil Co., Inc. v. Oil Country Tubular Corp.,*
   216 So. 3d 346 (La. App. 3 Cir. 2017).......................................... 27, 28

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft,*
   2018 WL 4144683 (D.N.J. Aug. 29, 2018)................................. 5, 14, 38

*Kent v. DaimlerChrysler Corp.,*
   200 F. Supp. 2d 1208 (N.D. Cal. 2002) ...............................................57

*Kinetic Co. v. Medtronic, Inc.,*
   672 F. Supp. 2d 933 (D. Minn. 2009) ...............................................47

*Koulajian v. Trek Bicycle Corp.,*
   1992 WL 28884 (S.D.N.Y. Feb. 11, 1992)....................................11, 12

*Krys v. Aaron,*
   106 F. Supp. 3d 472 (D.N.J. 2015) ...................................................11

*Legacy Data Access, Inc. v. Cadrillion, LLC,*
   889 F.3d 158 (4th Cir. 2018)...............................................43

*Liggon-Redding v. Generations, Interstate, Harvest House APT,*
   2015 WL 3991148 (D.N.J. June 30, 2015) .........................................9

*M.G. Longstreet, LLC v. James Hardie Building Products, Inc.,*
   2021 WL 5567863 (D. Minn. Nov. 29, 2021)....................................46

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014) ...................................................34

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
    2013 WL 5574626 (D.N.J. Oct. 9, 2013)..............................................33

*Marsikian v. Mercedes Benz USA, LLC*,
    2009 WL 8379784 (C.D. Cal. May 4, 2009) .........................................58

*Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*,
    223 F.3d 873 (8th Cir. 2000) ...................................................... 22, 46

*MAT, Inc. v. Am. Tower Asset Sub, LLC*,
    493 P.3d 14 (2021) ...............................................................16

*Matanky v. Gen. Motors LLC*,
    370 F. Supp. 3d 772 (E.D. Mich. 2019) ......................................... 24, 27

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013) ........................................ 36, 37

*McCarrell v. Hoffmann–La Roche, Inc.*,
    No. 076524, 2017 WL 344449 (N.J. Jan. 24, 2017) ...........................16

*Miami Prod. & Chem. Co. v. Olin Corp.*,
    2021 WL 2588090 (W.D.N.Y. June 24, 2021)......................................47

*Miller v. Chrysler Grp. LLC*,
    2014 WL 12617598 (D.N.J. June 30, 2014) .......................................28

*Minnesota Laborers Health & Welfare Fund v. Granite Re, Inc.*,
    844 N.W.2d 509 (Minn. 2014) ...............................................16

*Myers v. BMW of N. Am, LLC*,
    2016 WL 5897740 (N.D. Cal. Oct. 11, 2016)................................. 34, 41

*N. Penn Towns, LP v. Concert Golf Partners, LLC*,
    2021 WL 3562849 (E.D. Pa. Aug. 12, 2021)......................................36

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F.3d 353 (3d Cir. 2015) ...................................................7

*Nelson v. Nissan N. Am., Inc.*,
  894 F. Supp. 2d 558 (D.N.J. 2012) ................................................................ 27, 28

*Neuss v. Rubi Rose, L.L.C.*,
  2018 WL 445432 (D.N.J. Jan. 16, 2018) ........................................................30

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*,
  760 F.3d 297 (3d Cir. 2014) ............................................................................4

*New Jersey Citizen Action v. Schering-Plough Corp.*,
  367 N.J. Super. 8 (App. Div. 2003)................................................................44

*NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
  2014 WL 2854707 (D.N.J. June 23, 2014) ......................................................9

*Olivares v. PNC Bank*,
  2011 WL 4860167 (D. Minn. Oct. 13, 2011).................................................47

*Opheim v. Volkswagen Aktiengesellschaft*,
  2021 WL 2621689 (D.N.J. June 25, 2021) ..... 2, 10, 18, 19, 22, 24, 33, 38, 51, 53

*Parrish v. Volkswagen Grp. of Am., Inc.*,
  463 F. Supp. 3d 1043 (C.D. Cal. 2020).........................................................33

*Pauly v. Houlihan's Rests., Inc.*,
  2012 WL 6652754 (D.N.J. Dec. 20, 2012) .....................................................51

*Payne v. Fujifilm U.S.A., Inc.*,
  2007 WL 4591281 (D.N.J. Dec. 28, 2007) .....................................................19

*Pearson v. DaimlerChrysler Corp.*,
  813 N.E.2d 230 (Ill. App. Ct. 2004) .............................................................27

*Persad v. Ford Motor Co.*,
  2018 WL 3428690 (E.D. Mich. July 16, 2018) .............................................13

*Peters v. Countrywide Home Loans, Inc.*,
  2016 WL 2869059 (D.N.J. May 17, 2016) .....................................................43

*Philips v. Ford Motor Co.*,
  2016 WL 693283 (N.D. Cal. Feb. 22, 2016) .................................................58

*Phillips v. Cricket Lighters*,
    883 A.2d 439 (Pa. 2005) ....................................................................27

*Pinon v. Daimler AG*,
    2019 WL 11648560 (N.D. Ga. Nov. 4, 2019) ......................................52

*Ponzio v. Mercedes-Benz USA, LLC*,
    447 F. Supp. 3d 194 (D.N.J. 2020) ......................................... 7, 22, 34, 38

*Powell v. Subaru of Am., Inc.*,
    502 F. Supp. 3d 856 (D.N.J. 2020) ......................... 8, 14, 31, 34, 35, 44

*Precht v. Kia Motors Am., Inc.*,
    2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) ...................................40

*R. Keating & Sons, Inc., v. Chiselcreek Development, LLC.*,
    2020 WL 6390676 (Del Super. Ct. Oct. 30, 2020) .............................44

*Razen v. FCA US LLC*,
    2019 WL 7482214 (M.D. Fla. Oct. 23, 2019) ....................................26

*Reniger v. Hyundai Motor Am.*,
    122 F. Supp. 3d 888 (N.D. Cal. 2015) ................................................58

*Rice v. Diocese of Altoona-Johnstown*,
    255 A.3d 237 (Pa. 2021) ....................................................................16

*Richey v. Axon Enterprises, Inc.*,
    437 F. Supp. 3d 835 (D. Nev. 2020) ..................................................36

*Robey v. PVH Corp.*,
    495 F. Supp. 3d 311 (S.D.N.Y. 2020) ................................................45

*Robinson v. Kia Motors Am., Inc.*,
    2015 WL 5334739 (D.N.J. Sept. 11, 2015) ........................................58

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) ...............................................................22

*Seidenberg v. Summit Bank*,
    348 N.J. Super. 243 (App. Div.2002) ................................................45

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021) ....................................................54

*Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*,
    30 F. Supp. 3d 166 (E.D.N.Y. 2014) ....................................................51

*Simpson v. Widger*,
    311 N.J. Super. 379 (App. Div. 1998).................................................18

*Skeen v. BMW of N. Am.*,
    2014 WL 283628 (D.N.J. Jan. 24, 2014) ............................... 19, 21, 34

*Smith v. Ethicon Inc.*,
    2021 WL 3578681 (D. Or. May 13, 2021)............................................25

*Stevens v. Ford Motor Co.*,
    2020 WL 12573279 (S.D. Tex. Nov. 2, 2020) .....................................36

*Stone Energy Corp. v. Nippon Steel*,
    475 F. Supp. 3d 563 (W.D. La. 2020) ..................................................23

*Sw. Louisiana Hosp. Ass'n v. BASF Const. Chemicals, LLC*,
    947 F. Supp. 2d 661 (W.D. La. 2013) ..................................................23

*T.J. McDermott Transp. Co. v. Cummins, Inc.*,
    2015 WL 1119475 (D.N.J. Mar. 11, 2015) ............................................6

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    992 F. Supp. 2d 962 (C.D. Cal. 2014)..................................................29

*Terrill v. Electrolux Home Prod., Inc.*,
    753 F. Supp. 2d 1272 (S.D. Ga. 2010).................................................52

*Thunander v. Uponor, Inc.*,
    887 F.Supp.2d 850 (D. Minn. August 14, 2021)..................................46

*Torch v. Windsor Surry Co.*,
    2019 WL 6709379 (D. Or. Dec. 9, 2019) .............................................22

*Travelers Indem. Co. v. Dammann & Co.*,
    594 F.3d 238 (3d Cir. 2010) .................................................................43

*Turner v. Nama*,
   689 N.E.2d 303 (Ill. 1997) ...................................................................22

*Tzung v. State Farm Fire & Cas. Co.*,
   873 F.2d 1338 (9th Cir. 1989) ............................................................12

*Umland v. PLANCO Fin. Servs., Inc.*,
   542 F.3d 59 (3d Cir. 2008) .................................................................32

*Vacation Village, Inc. v. Hitachi Am., Ltd.*,
   110 Nev. 481 (1994) ...........................................................................25

*Viking Yacht Co., Inc. v. Composite One, LLC*,
   385 F. App'x 195 (3d Cir. 2010) ........................................................15

*Wachovia Ins. Servs., Inc. v. Fallon*,
   682 S.E.2d 657 (2009) ........................................................................52

*Weiss v. Gen. Motors LLC*,
   418 F. Supp. 3d 1173 (S.D. Fla. 2019).............................. 26, 27, 28, 29

*Weller v. Accredited Home Lenders, Inc.*,
   2009 WL 928522 (D. Minn. Mar. 31, 2009).......................................47

*WESI, LLC v. Compass Env't, Inc.*,
   509 F. Supp. 2d 1353 (N.D. Ga. 2007) ...............................................52

*Weske v. Samsung Elecs., Am., Inc.*,
   42 F. Supp. 3d 599 (D.N.J. 2014) .......................................................41

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
   681 F.3d 1208 (10th Cir. 2012) ..........................................................57

Statutes

15 U.S.C. § 2310(d) ....................................................................................30

49 U.S.C. § 30118(a)...................................................................................57

Article 2534 of the Louisiana Civil Code ..................................................23

Cal. Civ. Code § 1780(e).............................................................................56

Ga. Code Ann. § 10-1-373 ..........................................................................49

Minn. Stat. § 8.31 .................................................................................47

Minn. Stat. § 336.2–725, subd. 4 ...........................................................22

Minn. Stat. § 336.2–314(2)(c) (2008) .....................................................27

UCC §2-714 and 2-715 ............................................................................16

UCC § 2-719(2) .......................................................................................15

Rules

Fed. R. Civ. P. 8(a)(3)..............................................................................50

Fed. R. Civ. P. 9(b) ................................................................... 4, 6, 32, 38

Other Authorities

Restatement (Second) of Conflicts of Laws § 142 ..................................16

## INTRODUCTION

Defendants Volkswagen Group of America, Inc., d/b/a Audi of America, Inc. ("VWGoA" or "Defendant"), Audi AG, and Volkswagen AG ("VWAG") (collectively, "VW" or "Defendants"), have known since 2008 that the 2.0T engine equipped in their Class Vehicles (as defined in the Consolidated Class Action Complaint ("CCAC") (ECF No. 45)) is defective and likely to fail catastrophically well before its expected useful life has run. This defect puts consumers' safety at risk and exposes them to substantial financial harm. Defendants concealed this information and represented that the Class Vehicles were safe, reliable, and fully protected by an extensive warranty to correct any defects. Plaintiffs bring this class action against Defendants for manufacturing, marketing, and selling Class Vehicles with a defect in the design, manufacture, and/or workmanship of the piston rings and/or piston heads within the 2.0T engine (the "Piston Defect" or "Defect")). As early as 2011, Defendants issued several Technical Service Bulletins and Technical Tips to their dealers describing the same symptoms of the Piston Defect experienced by Plaintiffs and reported by scores of consumers online, yet Defendants refuse to acknowledge their liability. As such, the Court should deny Defendant's motion to dismiss.

## FACTUAL BACKGROUND

The pistons and/or piston heads in the Class Vehicles' 2.0T Engine are defective in that they crack, fracture, or splinter at their point of contact and cause excessive oil consumption. CCAC ¶ 10. This piston damage causes immediate loss of compression within the engine cylinder and results in the piston's remnants to

circulate throughout the fuel system of the Class Vehicles. *Id.* These failures often occur before the engine reaches 75,000 miles, resulting in a lifespan well short of the class members' expectations and the industry standard for similar engines. ¶¶ 7-10. This Defect puts the drivers and occupants of the Class Vehicles at significant risk for losing control of their respective vehicles and experiencing unavoidable collisions. *Id.*

Defendants' history of trouble with the 2.0T Engine is extensive, with the subject engine being the genesis for other class action lawsuits for excessive oil consumption in its 2009-2011 model year vehicles, and for the defective timing chain design for its 2008-2013 and its 2012-2019 model year vehicles.[1] These actions ultimately led Defendants to extend the warranty periods and reimburse claimants for unforeseeable costs related to the defective designs within the 2.0T Engines.[2] ¶5. Defendants' knowledge of the Piston Defect also came from design failure mode analysis, early warranty claims, replacement part orders, consumers' complaints to both Defendants' authorized network of dealers and to the National Highway Traffic Safety Administration ("NHTSA"), and other internal sources of information as shown by communications from Defendants to their authorized dealerships, including Technical Service Bulletins ("TSBs") ¶¶ 12, 170, 189, 249; *see also* CCAC Exhibits 1 and 2. As early as November 2011, Defendants began issuing TSBs describing the Piston Defect to their exclusive network of dealerships,

---

[1] *See Asghari v. Volkswagen*, 42 F.Supp.3d 1306 (C.D. California, 2013); *see also In Re Volkswagen Timing Chain Product Liability Litigation* 2017 WL 1902160 (D.N.J. May 8, 2017); *Opheim v. Volkswagen Aktiengesellschaft*, 2021 WL 2621689 (D.N.J. June 25, 2021).
[2] *Opheim* remains pending.

without disclosing any information about the Defect publicly. *Id.* Multiple consumer complaints about the Piston Defect were also lodged with NHTSA. ¶¶ 208-34.

The Piston Defect causes expensive repairs to Class Vehicles—for example, the cost of replacing the entire engine after failure exceeds $10,000. *See* ¶ 6. Rather than repair or replace the defective parts at issue, as Defendants were required to do under warranty, Defendants denied warranty claims and/or fraudulently concealed the existence of the Defect, knowing that it typically results in catastrophic engine failure after the expiration of the warranties. ¶¶ 17-167.

Consequently, all fourteen (14) Plaintiffs and all Class members purchased and/or leased Class Vehicles that are unreasonably dangerous, are worth considerably less than represented, and carry an increased cost of vehicle ownership and an increased risk of injury that was not disclosed or reasonably anticipated at the time of purchase. Plaintiffs would not have purchased their vehicles or would have paid less for them had they known the truth. ¶¶ 15-16. Notably, all of the Plaintiffs' vehicles experienced nearly identical engine failure directly caused by the Piston Defect, and incurred additional expenses that Defendants were obligated to cover. ¶¶ 17-167. Moreover, Plaintiffs allege they reported the Piston Defect to their authorized dealerships in the United States, but no repairs were offered, or alternatively Plaintiffs were wrongfully denied warranty repairs. ¶¶ 22-23, 33-37, 49-50, 63, 74-77, 88-89, 103, 113, 123, 136, 150, 160-63.

## GOVERNING LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 2017 WL 3944285, at *2 (D.N.J. Sept. 7, 2017) (quoting *Twombly*, 550 U.S. at 555). The moving party bears the burden of showing that no claim has been stated. *See Animal Science Prod., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). At this stage, the complaint is viewed in the light most favorable to the plaintiff, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

With allegations of fraud, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Despite the stringent requirements of Rule 9(b), the courts should be "sensitive" to the fact that application of the Rule prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." *Christidis v. First Pa. Mortgage Tr.*, 717 F.2d 96, 99-100 (3d Cir. 1983). In cases of corporate fraud, "plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the [particularity] rule when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (citation omitted).

4

**ARGUMENT**

## I.    PLAINTIFFS SUFFICIENTLY DISTINGUISH EACH DEFENDANT

Defendants assert that Plaintiffs "improperly lump" VWGoA, Audi AG, and VWAG together. Defendant's Memorandum of Law in Support of Motion to Dismiss, ECF No. 53-1 ("Br."), at 5. To the contrary, the CCAC carefully distinguishes each Defendant from each other to the extent Plaintiffs are able, before discovery, due to the complex corporate structure and the intertwined nature of Defendants' businesses.

Plaintiffs, having pleaded Defendants' three separate corporate existences and alleged they are related entities with common management, are not obligated to further differentiate the conduct of related, sophisticated corporate defendants at this stage of litigation. *See Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *15 (D.N.J. Aug. 29, 2018) (recognizing "relaxed" need to distinguish roles and functions of related defendants pre-discovery because such information is peculiarly within defendants' knowledge). Plaintiffs have clearly alleged that  VWGoA "markets, distributes, warranties, and sells Volkswagen and Audi-branded automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States," enters into agreements with dealerships for sales, distribution, and warranty repair work which "provide VWGoA with a significant amount of control over the actions of the authorized dealerships," and "developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials[.]" ¶¶ 169-71.

In contrast, VWAG "designs, engineers, manufactures, tests, markets,

5

supplies, sells and distributes Volkswagen, Skoda, and Audi-branded vehicles and parts for those vehicles worldwide" and is the parent corporation of VWGoA and Audi AG. ¶¶ 172-73. Audi AG "designs, engineers, manufactures, tests, markets, supplies, sells and distributes Audi-branded vehicles and parts for those vehicles worldwide[.]" ¶174.

Courts have held similar allegations sufficient to distinguish between defendants under Rules 8 and 9(b). *See, e.g., In re Volkswagen Timing Chain Litig.*, 2017 WL 1902160, at *10 (D.N.J. May 8, 2017) (rejecting VWGoA's identical arguments because "with the limited information in Plaintiffs' possession, Plaintiffs have made specific allegations to Defendant [VWGoA]"); *T.J. McDermott Transp. Co. v. Cummins, Inc.*, 2015 WL 1119475, *7 (D.N.J. Mar. 11, 2015) (rejecting, under Rule 9(b), the argument that the plaintiff's NJCFA cause of action improperly "lump[ed] [the defendants] together and fail[ed] to distinguish their respective conduct"); *see also Gray v. BMW of N. Am., LLC*, 2014 WL 4723161, *3 (D.N.J. Sept. 23, 2014) (rejecting, under Rule 9(b), the argument that the plaintiffs were required to separate the specific roles of related corporate defendants at the pleading stage). Accordingly, Defendant's argument that Plaintiffs impermissibly rely on group pleading should be rejected.

## II.    PLAINTIFFS HAVE STANDING TO ASSERT NATIONWIDE CLAIMS FOR A PUTATIVE CLASS

Defendant argues that Plaintiffs' fraud by omission claim cannot be brought on a nationwide basis for lack of Article III standing. Br. at 7-8. Defendant is wrong. Third Circuit precedent holds "that <u>unnamed</u>, putative class members need not

establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194 (D.N.J. 2020) citing *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) (emphasis in original); *see also In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 753 (D.N.J. 2016) (quoting *Neale*, 794 F.3d at 362) ("the named plaintiff need not demonstrate that all other members of the class have standing before certification"). At a minimum, this inquiry is premature and best suited for class certification. Any "differences between claims among separate statewide classes" should not be "shoehorn[ed] . . . into an Article III analysis," but rather, should be analyzed under Rule 23 at class certification. *Neale*, 794 F.3d at 368-69. "Whether the named plaintiffs have [statutory] standing to bring suit under each of the state laws alleged is immaterial because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states." *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010).

Stated differently, "[i]t is more logical to consider named plaintiffs' ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, rather than a question of standing" because "[g]enerally, the named plaintiffs in a class action do not have individual standing for all of the claims that they raise, because one individual does not have standing to claim injury to another individual. Therefore, standing analysis cannot address whether one plaintiff should be able to bring claims on behalf of others." *In re: McCormick & Co., Inc.*, 217 F.

Supp. 3d 124, 144 (D.D.C. 2016), *amended on reconsideration sub nom. In re McCormick & Co., Inc., Pepper Prod. Mktg. &Sales Practices Litig.*, 275F. Supp. 3d 218 (D.D.C. 2017). Courts analyzing whether arguments related to standing to bring a nationwide claim are premature at the motion to dismiss stage consider "three elements: whether 'the basis for the Plaintiffs' claims [are] the same, the products [are] closely related, and the defendants [are] the same.'" *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 873 (D.N.J. 2020).

Here, Plaintiffs satisfy all three elements.  First, their claims have the same basis – the Class Vehicles all contain the same Piston Defect whereby the piston rings do not seat properly in the grooves of the piston head, causing the engine to consume an excessive amount of oil, the shrapnel of the fragments of the piston rings and/or minute pieces of the piston head to circulate throughout the engine, damaging other engine components and ultimately causing the engine to fail. ¶6. Second, Plaintiffs specifically allege that all Class Vehicles have the same 2.0-liter turbocharged engines (¶¶ 1, 4) and that "the Piston Defect is inherent in each Class Vehicle" (¶11). Third, Plaintiffs' allegations all target the same Defendants. *See generally* CCAC.

Courts in this district have routinely accepted similar allegations, holding such arguments should be delayed until class certification. *See, e.g., Powell*, 502 F. Supp. 3d at 873 (rejecting argument that plaintiffs lacked standing to bring claims for vehicles they did not own and holding such argument to be premature); *Cox v. Chrysler Grp., LLC*, 2015 WL 5771400, at *15 (D.N.J. Sept. 30, 2015) ("Under these circumstances, the Court refuses to dismiss Plaintiffs' claims as they relate to

vehicles that named Plaintiffs have not purchased. In doing so, the Court defers the standing inquiry until the class certification stage."). Thus, Plaintiffs have met the standing requirements at the pleading stage.

## III.   PLAINTIFF GUNNEL LOWEGARD HAS STANDING

Defendant improperly argues that Plaintiff Gunnel Lowegard does not have Article III standing as she is purportedly not on the relevant purchase agreement along with her husband, Peter Lowegard. Br. at 8. Defendant attempts to rely on the extrinsic declaration of VWAG employee, Frank Pritzl, in support of its argument, which is prohibited. Defendant's attempt to disprove Plaintiffs' well-pleaded allegations through extrinsic evidence is wholly improper on a motion to dismiss. *See, e.g.*, *Bruni v. City of Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) (finding the district court's consideration of "documentary [and] . . . testimonial evidence" submitted by defendant in support of a motion to dismiss was improper); *Liggon-Redding v. Generations, Interstate, Harvest House APT*, 2015 WL 3991148, at *4 (D.N.J. June 30, 2015) (declining to consider a declaration attached to a motion to dismiss and noting "[i]t is well-settled that on a motion to dismiss under Rule 12(b), the court may not consider 'matters extraneous to the pleadings,' unless the document was integral to or explicitly relied upon in the plaintiff's complaint"); *See also NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2014 WL 2854707, at *3 (D.N.J. June 23, 2014) (McNulty, J.) ("The Third Circuit has noted that a Rule 12(b)(1) motion is facial in nature when filed prior to any answer, because it necessarily-or at least ordinarily-calls for assessment of the pleadings only.")

Furthermore, the Court must accept the well-pleaded allegations in the CCAC as true and disregard any facts asserted by Defendant that conflict with those allegations. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997) (district court, in ruling on a motion to dismiss, erred in considering facts in defendants' brief and affidavit since it is not permitted to go beyond facts alleged in complaint and documents on which claims made therein were based); *see also Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) ("In reviewing a facial attack," which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."); *Demmick v. Cellco P'ship*, 2007 WL 789040, at *2 (D.N.J. Mar. 13, 2007) (In "considering a Rule 12(b)(1) motion to dismiss which facially attacks the sufficiency of the complaint's allegations, this Court is also required to assume that Plaintiff's allegations are true.")  Indeed, a court of this district recently rejected an attempt to insert factual contentions into the motion to dismiss stage of a similar proceeding, against the same Defendants who made the same arguments. *Opheim*, 2021 WL 2621689, at *7 (finding reliance on affidavit in support of a motion to dismiss was "***plainly improper***") (emphasis added).

Here, the CCAC does not explicitly rely on the purported purchase agreement relied on in Defendant's extrinsic affidavit. Moreover, Plaintiffs have had no opportunity to take discovery or depose Mr. Pritzl or other VWAG employees, or otherwise develop a factual record to contest the information contained in the declaration. Thus, Plaintiffs' allegation that Plaintiffs Peter and Gunnel Lowegard

purchased the subject vehicle must be accepted as true, and Gunnel Lowegard has standing at this juncture to pursue her claims.

## IV. PLAINTIFFS HAVE PROPERLY PLEADED BREACH OF EXPRESS WARRANTY

### A. Plaintiffs Have Sufficiently Pleaded the Piston Defect is Covered Under Defendants' Warranties

Plaintiffs plead sufficient facts to establish that Defendants' warranty covers the Defect, that the Defect manifests during the warranty period, that the warranty period is unconscionable, and that Defendants have long known of the Defect. Contrary to what Defendant suggests, Plaintiffs need not allege complete breakdown or total engine failure during the warranty period to recover.[3] Here, Defendant first tries to evade liability for the Piston Defect by contending that Plaintiffs have only alleged a "design" defect not covered under Defendants' warranties, as opposed to a defect in a "manufacturer's material and workmanship." *See* Br. at 9. Defendant's argument is meritless for several reasons.

Courts have long held there is no distinction between a design defect and a defect in workmanship. In *Koulajian v. Trek Bicycle Corp.*, 1992 WL 28884 (S.D.N.Y. Feb. 11, 1992), the Court rejected defendant's reasoning that "the warranty's reference to 'workmanship' could refer to design as well as implementation of those designs in the manufacturing process." *Id.* The court held that "[a]bsent binding authority limiting an express 'workmanship' warranty to manufacturing defects alone, we do not find as a matter of law that such warranty

---

[3] New Jersey law applies here because choice of law analysis is inappropriate at the motion to dismiss stage because "little to no discovery has taken place." *See, e.g.*, *Krys v. Aaron*, 106 F. Supp. 3d 472, 481 (D.N.J. 2015) (citation omitted).

language cannot apply to design defects." *Id.* at *2. *See Alin v. Am. Honda Motor Co.*, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) (characterization of defect pre-discovery should not control whether plaintiffs' express warranty claims survive); *In re Volkswagen Timing Chain Litig.*, 2017 WL 1902160 at *12 (same).

Similarly, in *In re Saturn L-Series Timing Chain Prod. Liab. Litig.*, 2008 WL 4866604, at *14 (D. Neb. Nov. 7, 2008), the court found that "a defect related to materials and workmanship" and a "design defect" involving the timing chain system are substantially the same. The court reasoned that a "design is integrated into each step of the manufacturing process and affects both materials and workmanship," such that distinguishing a design defect from a defect in materials or workmanship "would defy logic." *Id.* at *15. "[I]t would be absurd to interpret a car company's written warranty as *not* covering any defect in 'materials and workmanship' if the defect could simultaneously be attributable to a design implemented by the company in the manufacturing of the car." *Id.* (emphasis in original). *See also Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989) ("[w]e believe that an unstrained interpretation of the exclusion for 'faulty workmanship' includes losses caused by defects in the design and construction of a building."). If product manufacturers like Defendant were permitted to link any defect to the "design" of the product prior to discovery, any express warranty that purports to only cover defects in material and workmanship would be rendered unenforceable.

Assuming, *arguendo*, however, that this is not the case, Plaintiffs *have* adequately alleged the Piston Defect is a defect in material and/or workmanship and

therefore covered under applicable warranties. *See, e.g.*, ¶¶ 6, 188, 191-97, 254. In fact, Plaintiffs describe the Piston Defect in great detail, by providing photographs and diagrams with explanations of how the internal combustion chamber where the piston is located operates and how the pistons, piston heads, and/or piston rings fail due to defective manufacture, workmanship, and/or design. ¶¶ 185-88. Plaintiffs also explain how the material used in the piston—cast aluminum—expands when heated and thus the cylinder bore and the piston must be manufactured precisely in order for the internal combustion chamber of the engine to perform properly. ¶¶ 186-87. Plaintiffs also expressly allege the manufacture, workmanship, and/or design of the piston, piston heads, and/or piston rings are defective as the Defect causes the piston rings to seal improperly and thereby fail (crack, splinter, shatter, fracture, and/or break off into pieces) due to excess exposure to heat and pressure within the engine. ¶¶ 188, 191.

These allegations establish the Piston Defect is caused, at least in part, by certain *manufacturing* processes or *materials* used by VWGoA, as well as faulty design. *See In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.,* 2015 WL 4591236, at *19 (D.N.J. July 29, 2015) (finding substantially similar allegations sufficient "regarding defects in material and workmanship to support a breach of the express warranties" for engine failures); *Persad v. Ford Motor Co*., 2018 WL 3428690, at *4 (E.D. Mich. July 16, 2018) (rejecting similar arguments that design defects are not covered by the new vehicle warranty and finding that plaintiffs' allegation of "defects in materials, workmanship, or manufacture" as well as design defects "are sufficient to sustain that the Defect is covered by the applicable

warranties."); *Francis v. Gen. Motors, LLC*, 2020 WL 7042935, at \*6 (E.D. Mich. Nov. 30, 2020) (similar); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig*., 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010) (sustaining express warranty claim where plaintiffs alleged "failure to design, assemble and manufacture").

Indeed, whether the Piston Defect should be covered under warranty is a question of fact that cannot be decided at the pleading stage. Courts in this District and around the country routinely "refuse to apply a distinction between a defect in design and a defect in materials or workmanship at the pleadings stage of litigation." *Powell*, 502 F. Supp. 3d 856 (J. Hillman) (quoting *In re Volkswagen*, 2017 WL 1902160 at \*12); *Kearney*, 2018 WL 4144683, at \*15 (rejecting BMW's identical argument: "courts in this District routinely refuse to distinguish between design defects and defects in material or workmanship at the pleading stage, particularly where, as here, the plaintiff asserts both and alleges facts supporting both explanations").[4] "At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." *Alin*, 2010 WL 1372308, at \*6.

---

[4] *See also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1011 (E.D. Mich. 2017) (similar); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (similar); *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 316 (W.D.N.Y. 2013) (express warranty claims upheld: "[w]hether these alleged defects arose from a faulty design, faulty materials or faulty workmanship cannot be ascertained absent discovery, since any information concerning the true origin of the alleged defect is within the sole possession of the defendant.")

Consumers purchasing Defendants' automobiles reasonably expect the vehicle be free of material defects—whether involving material or workmanship or even a manufacturer's decision to use inferior materials, manufacturing, or quality control procedures. *See* ¶253. The purpose of Defendants' warranty is to give consumers what they paid for, *i.e.,* if a vehicle fails, Defendants will repair it under warranty. However, Defendant's suggested limitation of its warranty to defects of material or workmanship would cause the warranty to fail of its essential purpose because, when combined with Defendant's characterization of every defect as a "design defect," no defect could ever be covered. *See Viking Yacht Co., Inc. v. Composite One, LLC*, 385 F. App'x 195, 208 (3d Cir. 2010) (limited contractual remedy fails of its essential purpose if it fails to give the aggrieved party the benefit of their bargain). Necessarily, then, consumers will be left with defective automobiles and no remedy. If a limited remedy fails of its essential purpose, then the aggrieved party may have any appropriate remedies available under the UCC. *See* UCC § 2-719(2).

Such is the exact situation that § 2-719(2) was intended to address: "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedies of this Article." UCC § 2-719 Official Comment 1. Thus, if Defendants' written warranty is construed, as Defendant proposes, to exclude design defects, then it fails of its essential purpose, and Plaintiffs and other Class members are entitled to pursue their express warranty claims in addition to remedies under UCC §2-714 and 2-715.

### B.    Plaintiffs' Express Warranty Claims Are Timely

Defendant asserts that the express warranty claims of certain Plaintiffs are time barred because Illinois, Minnesota, Nevada, New Jersey, Pennsylvania, Oregon, and Texas impose a four-year statute of limitations on warranty claims, running from the date of delivery. Br. at 11-12.[5] However, Defendant ignores that each of these states permit statute of limitations tolling. *See Clay v. Kuhl,* 189 Ill.2d 603 (2000); *Minnesota Laborers Health & Welfare Fund v. Granite Re, Inc.,* 844 N.W.2d 509, 514 (Minn. 2014); *Fausto v. Sanchez-Flores*, 482 P.3d 677 (2021); *Bustamante v. Borough of Paramus*, 413 N.J. Super. 276 (App. Div. 2010); *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 248 (Pa. 2021); *MAT, Inc. v. Am. Tower Asset Sub, LLC*, 493 P.3d 14 (2021); *Bilinsco Inc. v. Harris Cty. Appraisal Dist.*, 321 S.W.3d 648, 654 (Tex. App. 2010).

Defendants' second contention, that Plaintiffs fail "to plead facts establishing that a defendant took affirmative and active steps to conceal the cause of action from the plaintiff," is similarly meritless. Br. at 13. Plaintiffs must show "(1) wrongful concealment by the party raising the statute of limitations defense, resulting in (2) plaintiff's failure to discover the operative facts forming the basis of his cause of action during the limitations period (3) despite the exercise of due diligence." *In re Volkswagen Timing Chain,* at *14 (quoting *Dewey v. Volkswagen AG*, 558 F. Supp.

---

[5] Plaintiffs maintain that New Jersey's statute of limitations should apply to all Plaintiffs' breach of warranty claims. *See McCarrell v. Hoffmann–La Roche, Inc.*, No. 076524, 2017 WL 344449, at *13 (N.J. Jan. 24, 2017) (relying on Restatement (Second) of Conflicts of Laws § 142 and holding that New Jersey's statute of limitations and tolling rules should apply to claims against New Jersey-based manufacturer in defective products case).  This is especially true here where is there no meaningful conflict between the laws of the states at issue.

2d 505, 523 (D.N.J. 2008)). Plaintiffs have done just that.

Here, Plaintiffs have alleged the Defect was latent and not discoverable, especially given the highly technical nature of the Defect as described in the complaint. ¶¶ 6, 186-188, 272. At all times, Defendant was under a duty to disclose because it had superior knowledge of the Piston Defect and its associated safety risk and also because it provided partial disclosures about the functionality and ability of the Class Vehicles to provide safe, reliable transportation via Monroney Stickers, advertising, and/or the statements of its authorized dealerships to consumers. ¶ 274; *see also, infra*, Sec. VI.B. Defendant actively concealed the Defect by having its authorized agent dealerships tell Plaintiffs and consumers that excessive oil consumption is normal, part of a "breaking-in" period, and/or that their vehicles are functioning properly. ¶¶ 255-256.

Moreover, Defendant further concealed the Defect by performing unnecessary repairs to purportedly fix the oil consumption issue and charging for those repairs, including "topping off" oil in engines, while failing to issue a NHTSA-required public service bulletin regarding the Defect and instead keeping information about the Defect hidden from consumers on its proprietary ODIS system as well as with its TAC. ¶¶ 33, 74, 160, 251, 255-259, 273. These steps were taken to conceal the Defect from the public, avoid paying for warranty repairs, and transfer the cost of the Defect to Plaintiffs and Class Members. ¶255.

Further, Plaintiffs were unable to discover the Defect despite their exercise of due diligence, as evidenced by the steps each Plaintiff took in evaluating their vehicles for purchase including purchasing certified pre-owned vehicles from an

17

authorized dealership, visiting Audi's website, viewing the Monroney Stickers, and/or taking the vehicles for test drives. ¶¶ 18, 20, 29, 31, 46, 59, 72, 86, 100, 111, 121, 133, 148, 155, 158.  Allegations such as these have been found to toll the statute of limitations against this very defendant.  *See In re Volkswagen Timing Chain,* 2017 WL 1902160, at 14; *Opheim,* 2021 WL 2621689, at *7; *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-cv-4558, 2008 WL 4126264, at *17-18 (D.N.J. Sept. 2, 2008); *Simpson v. Widger*, 311 N.J. Super. 379, 390 (App. Div. 1998) ("[T]he presence of fraud may toll the running of the statute" for breach of warranty claims).  As such, Plaintiff's claims are timely.

### C.  Plaintiffs Adequately Allege the Defect Existed Within the Warranty's Time Limits

Defendant's Warranty requires Defendants to cover "defects in manufacturer's material and workmanship" in Class Vehicles for four years or 50,000 miles. ¶ 193. Plaintiffs have plainly alleged the Piston Defect existed in all Class Vehicles and was known to Defendants prior to, *and* at the time of, sale, which is not only within the Warranty period, but actually prior to it. ¶¶ 184-191, 198, 200 ("VW was acutely aware of the 2.0T engines' defective pistons and piston rings that caused oil consumption well before the Class Vehicles were offered for sale on the market"). Further, Plaintiffs have alleged they experienced the Piston Defect within the warranty period and even presented their vehicles for repairs during that period but were refused repairs or provided ineffectual repairs.  ¶¶ 22, 33, 160-161, 273, 341, 477, 591, 647, 716, 754, 795, 856, 916. Thus, these allegations are sufficient.

**D.     Plaintiffs Adequately Plead the Warranty's Durational Limits Are Unconscionable**

Even had Plaintiffs failed to present their vehicles for warranty repairs within the warranty period, Plaintiffs sufficiently plead unconscionability by alleging: (i) Defendants knew the Piston Defect existed prior to and at the time of sale, before warranty period began to run; (ii) Defendants failed to disclose the Piston Defect to consumers; and (iii) that Defendants intentionally offered temporary, ineffectual fixes until the Warranty periods expire. ¶¶ 11-12, 198, 200, 207 ("When VW did attempt repairs, it merely replaced the defective pistons with similarly defective pistons"); *see also Skeen v. BMW of N. Am.*, 2014 WL 283628, at *15 (D.N.J. Jan. 24, 2014) (finding unconscionability allegations sufficed where plaintiffs pleaded defendants knew about defect before or shortly after initial sales; that warranty did not disclose the defect; defendants affirmatively misled plaintiffs reporting engine problems; and defendants did so intentionally to allow warranty expiration); *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989) (dismissal of implied warranty claims reversed on similar grounds)[6]; *In re Samsung DLP Television Class Action Litig.*, 2009 WL 3584352 at *5 (D.N.J. Oct. 27, 2009) (holding plaintiffs properly pleaded express warranty unconscionable where manufacturer knowingly sold a defective product). Indeed, allegations such as those made by Plaintiffs here have previously been held to sufficiently allege unconscionability at a motion to dismiss. *See In re Volkswagen Timing Chain,* at *11, *Opheim*, at *7; *DeFrank v.*

---

[6] The reasoning of *Carlson* has been adopted by courts throughout the country. *See, e.g.*, *Payne v. Fujifilm U.S.A., Inc*., 2007 WL 4591281, at *5-6 (D.N.J. Dec. 28, 2007); *Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614, 621-22 (M.D.N.C. 2005).

*Samsung Electronics Am., Inc.*, 2020 WL 6269277, at *18 (D.N.J. Oct 26, 2020). *See also Gelis v. Bayerische Motoren Wekre Aktiengesellschaft*, 2018 WL 6804506, at *7 (D.N.J. Oct. 30, 2018) (finding unconscionability allegations unsuitable for adjudication at motion to dismiss and permitting warranty claims to proceed).[7]

Plaintiffs have clearly alleged that: (1) Defendant knew of the existence of the Defect prior to their sale of vehicles to Plaintiffs; ¶¶ 12-13; 199-251; (2) Defendant designed strategies - including denying the Defect existed and keeping knowledge of the Defect within its proprietary ODIS system - to keep the knowledge exclusive, so that repairs would not be completed within the warranty periods; ¶¶ 255-258; (3) the Defect is inherent in all Class Vehicles and manifests both within and outside the warranty period, but well-before the expected useful life of the engine; ¶¶ 11, 22, 33, 63, 160; (4) that Defendant does not permit consumers to review the full terms and conditions of the warranty, which are offered on a take or leave basis; ¶ 197; and (5) Plaintiffs had no meaningful choice in determining the time and mileage limits in the warranties, which were drafted by Defendant with terms that unreasonably favored itself, especially considering the unequal bargaining power that Defendant had given its exclusive knowledge of the Defect. ¶¶ 170; 342; 478; 592; 648; 717; 796; 857; 917.  Indeed, no matter the length of the warranty – whether the NVLW

---

[7] The unconscionability of a contractual term requires a fact-intensive analysis not suitable for review on a 12(b)(6) motion to dismiss. *Carlson*, 883 F.2d at 292; *In re Volkswagen Timing Chain,* 2017 WL 1902160 at *11.

or the longer certified pre-owned warranty, Defendant has denied warranty coverage for all Plaintiffs, whether they complained of the Defect within the time limits or outside of them. *See, e.g.,* ¶¶ 33, 160-161.

Regarding the 4 year/50,000-mile warranty limitation, Defendant argues that "courts throughout the country have routinely determined [such limits] not to be unconscionable." Br. at 17. However, this argument misconstrues Plaintiffs' allegations. Although "a motor vehicle warranty of 4 years and 50,000 miles is not per se unconscionable," "the *allegation* of manipulation is sufficient." *Skeen*, 2014 WL 283628, at *14 (D.N.J. Jan. 24, 2014). (emphasis added) ("The procedural misconduct alleged is that Defendants unfairly took advantage of their disparate bargaining power, namely that the seller knew about the defect and consumer plaintiffs did not.") As discussed in *Skeen*:

> It is not conclusory to state that a consumer purchasing a car has less bargaining power than the manufacturer and that he had no meaningful choice in setting the terms of the warranty. To the contrary, in all of the potentially relevant states, courts give extra scrutiny to preprinted contracts or contracts of adhesion.

*Skeen*, 2014 WL 283628, at *14 (internal citations omitted).

Lastly, Defendant's primary reliance on *Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, 2021 WL 5448716, (D.N.J. Nov. 19, 2021) to argue Plaintiffs have not sufficiently alleged unconscionability is unfounded. There, the court held that "Plaintiffs fail to adequately plead that Defendant knew of the purported turbocharger defect at the time of sale" and "as a result, Plaintiffs' unconscionability

argument fails." *Id.* at *6. Here, Plaintiffs have adequately alleged Defendant knew of the Piston Defect prior to and at the time of sale.

## V.    THE IMPLIED WARRANTY CLAIMS SHOULD BE SUSTAINED

### A.    All Plaintiffs' Breach of Implied Warranty Claims Are Timely

In asserting a statute of limitation affirmative defense[8], Defendant ignores that Plaintiffs have pleaded the Defect was fraudulently concealed, effectively tolling the statute of limitations. *See In re Volkswagen Timing Chain Litig.*, 2017 WL 1902160, at *14 ("Since Plaintiffs have successfully pled fraudulent concealment, the statute of limitations may be equitably tolled.").[9] As discussed *supra* IV.B, Plaintiffs have adequately alleged that the statute of limitations for warranty claims has been tolled.

Defendant also misstates applicable Louisiana law. A "majority of Louisiana appellate courts" have found that claims under Art. 2520 and 2524 are not mutually

---

[8] In support of this affirmative defense, VWGoA has offered a declaration of an employee and several exhibits to introduce the purported date of first delivery of certain of Plaintiffs' vehicles. Br. at 21. Such evidence is inappropriate on a motion to dismiss. *See Opheim*, 2021 WL 2621689, at *7 (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

[9] Each state at issue here acknowledges that fraudulent concealment or the discovery rule tolls the statute of limitations. *See Turner v. Nama*, 689 N.E.2d 303, 308 (Ill. 1997); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 1995 WL 714441, at *3 (E.D. La. Dec. 4, 1995); Minn. Stat. § 336.2–725, subd. 4*; Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 877 (8th Cir.2000); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 251 (D.N.J. 2020); *Herrera v. Toyota Motor Sales, U.S.A.*, 2010 WL 3385336, at *1 (D. Nev. Aug. 23, 2010); *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005); *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 n.21 (Tex. 2017); *Torch v. Windsor Surry Co.*, 2019 WL 6709379, at *5 (D. Or. Dec. 9, 2019); *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013) ("The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale.")

exclusive. *Sw. Louisiana Hosp. Ass'n v. BASF Const. Chemicals, LLC*, 947 F. Supp. 2d 661, 692 (W.D. La. 2013), *amended* (Sept. 6, 2013); *Stone Energy Corp. v. Nippon Steel*, 475 F. Supp. 3d 563, 575-576 (W.D. La. 2020) (concluding after a careful analysis that "redhibition does not subsume the other sales warranties, and Plaintiff is entitled to pursue all its Civil Code warranties.")

Plaintiff Burnaugh's redhibition claim is also timely as shown by the case helpfully cited by Defendant:

> Article 2534 of the Louisiana Civil Code provides that redhibition is subject to a one-year prescriptive period. However, if a manufacturer knew of the defect, this period commences from the day the defect was discovered by the buyer. Manufacturers are presumed to have knowledge of such defects. Thus, prescription commences on the date the buyer had actual or constructive knowledge of the defect. Constructive knowledge is 'whatever notice is enough to excite attention and put the injured party on guard or call for inquiry.'

*Atl. Specialty Ins. Co. v. Caterpillar Inc.*, 2021 WL 4845771, at *5–6 (E.D. La. Oct. 18, 2021) (investigation begun immediately after an engine failure which revealed the underlying crankshaft issue sufficient for constructive notice). In contrast, Plaintiff Burnaugh paid for the repairs recommended by the Audi dealership on February 17, 2020, but did not realize the repair was ineffective until December 2020, after having to add oil to her vehicle and being told "this was not out of the ordinary," which prompted her to "research[] complaints of oil consumption in her vehicle." ¶¶ 74; 76. Her claim was then filed within one year.

**B.** **The Breach of Implied Warranty Claims of Vassel (IL), Burnaugh (LA), Garden (MN), the Gozons (NV), Gonzalez (NJ), Francis (PA), Hensley (PA), and the Lowegards (TX) are not Limited by the Durational Limits of the NVLW**

As it did in *In Re Volkswagen Timing Chain* and *Opheim*, Defendant claims that its warranty terms limiting the duration of the implied warranty to the length of the express warranty bar Plaintiffs' implied warranty claims. *See* 2017 WL 1902160, at *12; 2021 WL 2621689, at *7. However, as in those cases, Plaintiffs here have alleged this durational limit is unconscionable and unenforceable. Specifically, Plaintiffs have pleaded there is substantive unconscionability because the warranty is designed to avoid responsibility for a known defect, and procedural unconscionability due to an unfair bargaining process. *See* Section IV.D *supra; see also, e.g.*, *DeFrank*, 2020 WL 6269277, at *19.[10]

**C.** **The Implied Warranty Claims Under IL, FL, NV, and OR Survive**

Defendant next argues the implied warranty claims of Plaintiffs Davis (FL), Vassel (IL), the Gozons (NV), and Bradley (OR) fail for lack of privity. Br. at 24. Defendant is wrong.[11] First, Nevada and Oregon law do not require vertical privity for implied warranty claims by end product users in the usual distribution chain. *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 787 (E.D. Mich. 2019) (citing *Vacation Village, Inc. v. Hitachi Am., Ltd.*, 110 Nev. 481, 485 (1994)) ("Nevada law

---

[10] *See also Dawson v. General Motors, LLC,* 2019 WL 328046, at *7 (D.N.J. July 22, 2019) (discussing the New Jersey cases that held "a manufacturer's knowledge of a defect, by itself, makes the warranty's limitation period unconscionable.")

[11] Moreover, the question of privity is fact intensive and therefore not susceptible to resolution at the pleading stage. *See In re AZEK Bldg. Prod., Inc., Mktg. & Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 618 (D.N.J. 2015); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 n.24 (D.N.J. 2008).

does not require vertical privity for a breach of implied warranty claim."); *Smith v. Ethicon Inc*., 2021 WL 3578681, at *8 (D. Or. May 13, 2021), *report and recommendation adopted*, 2021 WL 3575099 (D. Or. Aug. 12, 2021) (declining to dismiss implied warranty claim for lack of privity where plaintiff purchaser was an end user in the usual distributive chain). Similarly, privity is not required here for Gozons' and Mr. Bradley's implied warranty claims, who purchased new Audi vehicles manufactured and designed by Defendant and are clearly the end users in the expected and usual chain of distribution. ¶¶ 98, 155.

Second, even in states where privity of contract is required, an exception arises "when the plaintiff relies on written labels or advertisements of a manufacturer." *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig*., 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016) (denying motion to dismiss for lack of privity as to claims of Florida and Illinois plaintiffs finding sufficient allegations of defendant's direct marketing to consumers, along with plaintiffs' allegations that they reviewed defendant's advertising and relied on same in making purchase decision); *Elward v. Electrolux Home Prod. Inc.*, 214 F. Supp. 3d 701, 706 (N.D. Ill. 2016).

Here, Plaintiffs similarly allege that Defendant "developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles[,] . . . . is responsible for the content of the Monroney stickers[,] . . . . [and] issues the express warranty directly to the consumers[.] ¶262. Each Plaintiff also alleges he or she reviewed Defendant's marketing materials relating to Class Vehicles and would not have purchased or leased the Class Vehicles or paid the amounts paid if Defendant's materials had

disclosed the Defect. ¶¶ 31-32 (Davis), ¶¶ 59-60 (Vassel), ¶¶ 100-101 (Gozons), ¶¶ 158-159 (Bradley).

Finally, under Florida law, to establish privity through an agency relationship, a plaintiff must allege that "he purchased a vehicle from an authorized dealer who was an agent of [the manufacturer], he was the intended consumer of the vehicle, the dealership was not the intended consumer, and the warranty was intended to benefit the consumer, not the dealership." *See Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1183 (S.D. Fla. 2019). Plaintiff Davis fully satisfies this standard, alleging that she purchased her certified pre-owned vehicle from an authorized dealership. ¶29. Plaintiff – not the dealership – was the intended consumer, and the warranties were intended to benefit Plaintiff as the consumer, and not the dealership. ¶261.[12]

### D.    Plaintiffs' Vehicles Were Not Merchantable at the Time of Sale

Defendant also incorrectly asserts that the implied warranty claims of Plaintiffs Davis (FL), Vassel (IL), Burnaugh (LA), Garden (MN), Francis (PA), and Hensley (PA) fail to sufficiently allege merchantability under applicable state law. Br. at 29.

"The implied warranty of merchantability is simply a guarantee that [vehicles] will operate in a safe condition and substantially free of defects and, therefore, where a car can provide safe, reliable transportation, it is generally considered

---

[12] Some courts only require that "a manufacturer directly provides a warranty to, or otherwise had direct contact with, a buyer who purchases from a third party." *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1032 (11th Cir. 2017); *see also Razen v. FCA US LLC*, 2019 WL 7482214, *4 (M.D. Fla. Oct. 23, 2019) ("The allegation that Defendant directly provided Plaintiff with these warranties satisfies Plaintiff's burden at this stage.").

merchantable." *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 567 (D.N.J. 2012). The mere ability to drive a vehicle between two points does not suffice; instead, the keystone of merchantability is the safe provision of transportation. *Matanky*, 370 F. Supp. 3d at 785 ("cars are not merchantable merely because they are able to provide transportation" in addressing implied warranty claims, including Illinois and Pennsylvania claims, generally under the U.C.C.); *see Baranco v. Ford Motor Co*., 294 F. Supp. 3d 950, 976 (N.D. Cal. 2018) ("To show a vehicle is unmerchantable does not require showing that it is incapable of transporting"); *see also Weiss*, 418 F. Supp. 3d at 1184 (denying motion to dismiss breach of implied warranty of merchantability claim where plaintiff alleged defect "affect[ed] the drivability and safety of the car."). "Ordinary car buyers reasonably expect, and the law allows that they should expect, cars not only to 'provide transportation,' but also do so in a reasonably safe and reliable manner." *Francis*, 504 F. Supp. 3d at 675 (collecting cases).[13] This reasoning has been consistently applied "in implied

---

[13] *See also Egbebike v. Wal-Mart Stores E., LP*, 2014 WL 3053184, at *6 (M.D. Fla. July 7, 2014) (sustaining a breach of implied warranty under Florida law based on allegations that product was not fit for the ordinary purpose for which it was intended); *Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 238-39 (Ill. App. Ct. 2004) (holding under Illinois law merchantability with regarding to vehicles means a vehicle must be in a safe condition and substantially free of defects; *Phillips v. Cricket Lighters*, 883 A.2d 439, 443-444 (Pa. 2005) (merchantable under Pennsylvania law means a product is suitable for the purpose for which it is designed; *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 816 (Minn. Ct. App. 2010) ("implied warranty of merchantability requires that goods be 'fit for the ordinary purposes for which such goods are used.'") (quoting Minn. Stat. § 336.2–314(2)(c) (2008)); *Justiss Oil Co., Inc. v. Oil Country Tubular Corp.*, 216 So. 3d 346, 361 (La. App. 3 Cir. 2017) ("In a suit for redhibition, the plaintiff must prove [that the product] is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that judged by the reasonable person standard, had he known of the defect, he would never have purchased it.") (redhibitory defect).

warranty cases concerning defective cars." *Id*.

At this stage of the proceedings, Plaintiffs need only "allege facts that, if proven, would show that the [defect] affects the drivability and safety of the car." *Weiss*, 418 F. Supp. 3d at 1184; *Nelson*, 894 F. Supp. 2d at 567 (allegations of transmission problems causing "slippage, hesitation and an unpredictable acceleration response" sufficient to state a claim under Pennsylvania law). "[W]hether the . . . Defect posed enough of a safety risk to actually hamper the Class Vehicles' ability to provide safe, reliable transportation is ultimately a question of fact to be resolved at summary judgment or by a jury." *George v. Jaguar Land Rover N. Am., LLC*, 2021 WL 5195788, at *8 (D.N.J. Nov. 8, 2021); *Miller v. Chrysler Grp. LLC*, 2014 WL 12617598, at *5 (D.N.J. June 30, 2014) (upholding implied warranty claims for leaking sunroofs: "the Court is not prepared to rule a family car that fails to shelter the family from rain 'merchantable' as a matter of law").

Here, Plaintiffs have sufficiently alleged the Defect renders the Class Vehicles unmerchantable because they do not provide safe and reliable transportation. In particular, the Defect presents a safety hazard because sudden piston failure causes the Class Vehicles to "lose engine power" which "can prevent the driver from accelerating, maintaining speed, and even adequately controlling the steering wheel, engaging the brakes, all of which drastically increase the risk of collisions" in addition to destroying critical engine components." ¶¶ 7-8, 14, 192.

Additionally, Plaintiffs Davis (FL), Vassel (IL), Burnaugh (LA), Garden (MN), Francis (PA), and Hensley (PA) have alleged the Defect caused their vehicles to lose power while driving (¶¶ 33 (Davis), 123 (Hensley); run roughly (¶37 (Davis);

damage to other parts of their vehicles (¶¶ 63-64 (Vassel), 74, 77 (Burnaugh), 92 (Garden), 136-40 (Francis)); consume oil excessively requiring numerous, frequent, and costly visits to their dealerships (¶¶ 33-39, (Davis), 62-64 (Vassel), 74-79 (Burnaugh), 88-92 (Garden)); and even cause complete engine failure and replacement (¶¶ 23-26 (Hensley)). This is more than sufficient to raise "a plausible inference that the . . . Defect and its various manifestations pose a safety risk." *George*, 2021 WL 5195788, at *8 (similar allegations regarding a touch-controlled infotainment system sufficiently plead unmerchantability).

Plaintiffs' continued operation of their vehicles is not fatal to their implied warranty claims.[14] *George*, 2021 WL 5195788, at *8 (denying defendant's motion to dismiss implied warranty claims and specifically noting that five of the six plaintiffs "continued driving their vehicles"); *Weiss*, 418 F. Supp. 3d at 1183 (declining to dismiss implied warranty claim notwithstanding that vehicles could still be driven even with alleged transmission defect). Indeed, Plaintiffs have alleged that, because of the Defect, the Class Vehicles' engines and pistons are substantially certain to fail before the end of their useful life. ¶¶ 307, 384, 496, 529, 609, 665, 735, 814, 875, 934. Along with the associated safety risk, the Defect renders the Class Vehicles unfit for their essential purpose of providing safe and reliable transportation.

### E.    The Magnuson-Moss Warranty Act Claim Is Well-Pleaded

The Magnuson-Moss Warranty Act (MMWA) creates a federal cause of action

---

[14] Defendant's cited cases are inapposite as they considered implied warranty claims under New Jersey law (*Glass v. BMW of N. Am., LLC*, 2011 WL 6887721 (D.N.J. Dec. 29, 2011)) and California law (*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc*., 992 F. Supp. 2d 962 (C.D. Cal. 2014) and *Gonzales v. CarMax Auto Superstores, LLC*, 2013 WL 12207506 (C.D. Cal. Nov. 5, 2013))

for any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d).  To state a claim under the MMWA, a plaintiff must adequately plead a cause of action for breach of written or implied warranty under state law as Plaintiff Gonzalez has done here. *See Neuss v. Rubi Rose, L.L.C.*, 2018 WL 445432, at *4 (D.N.J. Jan. 16, 2018) ("Claims under the MMWA 'stand or fall with [the claimant's] express and implied warranty claims under state law.'").  *See also Daniel v Ford Motor Co*., 806 F.3d 1217, 1227 (9th Cir. 2015) (same). As such, Plaintiff Gonzalez's MMWA claims survive because his state warranty claims survive. *See id.*

## VI.   PLAINTIFFS' STATUTORY AND COMMON LAW FRAUD CLAIMS ARE WELL-PLEADED

### A.   Plaintiffs' Affirmative Misrepresentation Claims Are Well-Pleaded

Initially, Defendant contends that Plaintiffs do not allege affirmative misrepresentations, but in the very next sentence cites those supposedly non-existent allegations- that Defendant misrepresented material facts by "marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality; by presenting itself as a reputable manufacturer that valued safety, reliability, performance and efficiency, and stood behind its vehicles after they were sold." Br. at 31-32. Despite Defendant's apparent argument otherwise, Plaintiffs have indeed pleaded affirmative misrepresentations and, moreover, have pleaded them properly.

First, contrary to Defendant's claim that it is "well-settled" that courts always find the misrepresentations at issue to be immaterial as "mere puffery," [Br. at 32],

courts in the instant district disagree. For example, in *Powell v. Subaru of Am., Inc.,* the court stated, "[c]ourts in this district have previously found that advertisements and representations made by a car manufacturer's sales and marketing departments can suffice to plead a fraudulent misrepresentation." 502 F. Supp. 3d 856, 888 (D.N.J. 2020) (finding repeated representations about "the relative quality and reliability of the Class Vehicles" sufficient to state fraudulent misrepresentations); *see also In re Volkswagen Timing Chain Product Liability Litigation*, 2017 WL 1902160, at *18 (finding that general sales and marketing advertisements and representations in vehicles' owner's manuals were sufficient to support claims of fraudulent misrepresentation).

Moreover, numerous courts in this and other Districts have repeatedly agreed that statements regarding safety, reliability, operability, efficiency, and high quality, etc. such as those alleged here meet the pleading standard for an affirmative misrepresentation claim on a motion to dismiss. *See, e.g., Id*.; *Powell*, *supra,* 502 F. Supp. 3d at 888; *In re AZEK Bldg. Prod., Inc. Mktg. and Sales Pracs. Litig*., 82 F. Supp. 3d 608, 612, 620-21 (D.N.J. 2015) (finding allegations of defendants' misrepresentations sufficient where plaintiffs alleged defendant made general statements of quality and durability in marketing materials while having knowledge of disputed product defects); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 954 (N.D. Cal. 2014) (finding that, when "a product manufacturer makes claims about, *e.g.,* a product's quality or reliability, [a] claim based on an affirmative misrepresentation is viable.").

Second, despite Defendant's argument to the contrary (Br. at 33-34), Plaintiffs

sufficiently allege the date, place, and time the misrepresentations were viewed by Plaintiffs—prior to their purchases of Class Vehicles. These misrepresentations were conveyed to Plaintiffs via printed materials, promotional brochures, and television and Internet advertisements, and each named Plaintiff valued safety and reliability as important factors in their vehicle purchase decision. ¶¶ 20; 31; 46; 59; 72; 86; 100; 111; 121; 133; 148; 158 (Plaintiffs' allegations of what each Plaintiff viewed prior to making the decision to purchase). Plaintiffs specifically plead that each Plaintiff, before purchase, reviewed vehicle advertisements such as the brochures and online advertising, spoke with Defendant's sales representatives concerning the vehicle's features, and/or test drove a similar vehicle. *Id*. As such, Plaintiffs' misrepresentation claims are well-pleaded and should not be dismissed.

### B.    Plaintiffs Pre-Sale Knowledge Allegations Are Well-Pleaded

Despite Defendant's assertion otherwise, Plaintiffs must only plead facts allowing the Court to draw a plausible inference of Defendant's pre-sale knowledge of the Defect. *See DeFrank*, 2020 WL 6269277, at \*6–7 (knowledge allegations not subject to a particularity standard); s*ee also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (construing, as it must on a Rule 12(b)(6) motion, all reasonable inferences in favor of plaintiff); Fed. R. Civ. P. 9(b) ("knowledge, and other conditions of a person's mind may be alleged generally"). Here, Plaintiffs allege multiple sources from which knowledge can be inferred, including pre-production testing, pre- and post-production aggregate data analysis, warranty claims data, replacement part data, its own communications with dealerships about the Defect's symptoms, such as TSBs and Technical Tips, and early consumer

complaints. ¶¶ 13, 200-207. Such sources are routinely accepted by courts as supporting the inference of pre-sale knowledge. *See, e.g., Parrish v. Volkswagen Grp. of Am., Inc.,* 463 F. Supp. 3d 1043, 1058 (C.D. Cal. 2020) (permitting reasonable inference of pre-sale knowledge from allegations of complaints, testing, aggregate data, and a technical tip); *Majdipour v. Jaguar Land Rover N. Am., LLC,* 2013 WL 5574626, at *17 (D.N.J. Oct. 9, 2013) (allegations of pre-release testing data, early consumer complaints and testing done in response, high failure rates, replacement part orders and sales data, and warranty rates, "taken together" adequately pleaded exclusive knowledge).

Moreover, these sources of knowledge must be evaluated together and considered holistically, rather than in piecemeal fashion, as Defendant disingenuously argues. *See Opheim,* 2021 WL 2621689, at *15 ("courts consider the totality of allegations … and do not, as [defendant's] brief does, attack each allegation one-by-one.") (quotation omitted); *Afzal v. BMW of N. Am., LLC,* 2017 WL 3207232, at *6 (D.N.J. Jul. 27, 2017) ("the Court finds the totality of these allegations—construed in [p]laintiffs' favor—is sufficient to impute knowledge to [defendant] of the [defect] at the time [p]laintiffs purchased their vehicles.").

Rather than proffering conclusory allegations that testing occurred, Plaintiffs alleged the specific pre-testing the Class Vehicles underwent prior to their sale to Plaintiffs (such as durability testing [¶201] and road testing [¶202]) and that such testing would have necessarily revealed the Defect. ¶¶ 201-202. This plainly establishes an inference of pre-sale knowledge. *See Ponzio v. Mercedes-Benz USA, LLC,* 447 F. Supp. 3d 194, 228 (D.N.J. 2020) (finding plaintiffs' pre-sale testing

allegations sufficient to infer knowledge where plaintiffs described both the testing and what it would have revealed); s*ee also Powell*, 502 F. Supp. 3d at 888–89 (accepting consumer complaints to dealers and to NHTSA as sources of defendants' knowledge of defect); *Myers v. BMW of N. Am, LLC,* 2016 WL 5897740, *4 (N.D. Cal. Oct. 11, 2016) (two pre-sale NHTSA complaints support knowledge: "because manufacturers such as BMW use the NHTSA website to communicate information to consumers, it is reasonable to infer that BMW has knowledge of and is aware of the [NHTSA] complaints.").

TSBs and other manufacturer communications to their networks of dealers are also routinely held by courts to support an inference of pre-sale knowledge because a "TSB helps render plausible Plaintiffs' allegations that Defendants knew" of the alleged defect. *Skeen*, 2014 WL 283628, at *10; *Francis*, 504 F. Supp. 3d at 685 (TSBs support inference that manufacturer relied on knowledge accrued from its testing and other internal data); *MacDonald v. Ford Motor Co*., 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014) (TSBs create plausible inference that manufacturer was generally aware of problems in component but continued to sell vehicles bearing that component).

Even manufacturer communications such as TSBs that discuss the same vehicle components in different vehicles, as Plaintiffs specifically allege here concerning Defendant's 2.0T engines [¶¶ 249-250], also support a plausible inference of pre-sale knowledge. *See Milisits v. FCA USA LLC*, at *9 (E.D. Mich. Jul. 26, 2021) (rejecting assertion that TSBs for prior models cannot support an inference of knowledge because "where an automaker has knowledge of a defect in

34

a 'prior similar design' of a particular part, that 'accretion of knowledge' can be used to show that the automaker had pre-sale knowledge of the same defect in the at-issue part") (quoting *Francis*, 504 F.Supp.3d at 685); *Powell*, 502 F. Supp.3d at 888-89 (finding TSBs issued for same defect in prior models supported inference of knowledge in plaintiffs' vehicles).

Defendant argues that because the TSBs cited by Plaintiffs do not specifically use the word "piston," they are unrelated, thereby omitting the obvious connection between the TSBs cited and Plaintiffs' allegations—namely, that the Defect causes an excessive consumption of oil [¶¶ 6, 10, 191], and that broken pistons resulting from the defect circulate in the vehicle [¶¶ 8, 10, 191], as addressed in the cited TSBs concerning oil consumption and metal debris. [¶¶ 249-250]. As such, the TSBs cited are explicitly related to the Defect as alleged and further support the inference of pre-sale knowledge. Consequently, when all the foregoing is taken together, Plaintiffs have plausibly and properly alleged pre-sale knowledge.

### C.    Plaintiffs Properly Plead Defendant's Duty to Disclose

Defendant contends that Plaintiffs in Georgia, Illinois, Texas, Florida, California, New Jersey, Nevada, Louisiana, Washington, and Pennsylvania have not alleged a duty to disclose because the vehicle purchases or leases were not direct interactions or there was no fiduciary relationship between Plaintiffs and Defendant. However, such is not required, especially where, as here, Defendant had exclusive and superior knowledge of the Defect which it omitted or concealed; this knowledge was actively concealed; and/or partial representations about the defect were made. *See, e.g., McCabe v. Daimler AG,* 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013)

(disclosure duty arises under GA law where a fact the other party could not discover is concealed or omitted)*; Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 595 (1996) ("unnecessary to plead a common law duty to disclose [under IL law] in order to state a valid claim of consumer fraud based on an omission or concealment."); *Stevens v. Ford Motor Co.,* 2020 WL 12573279, at *7 (S.D. Tex. Nov. 2, 2020) (duty arises under TX law where a "partial disclosure" that "conveys a false impression" is made); *In re Takata Airbag Prod. Liab. Litig*., 2017 WL 775811, at *4 (S.D. Fla. Feb. 27, 2017) (FL law imposes a duty to disclose on a defendant if that "defendant's failure to speak would render the defendant's own prior speech misleading or deceptive."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.,* 754 F. Supp. 2d 1145, 1191 (C.D. Cal. 2010) (duty arises under CA law where there is exclusive knowledge, active concealment, and/or partial representations); *In re Volkswagen Timing Chain Product Liability Litigation*, 2017 WL 1902160, at *20 (duty to disclose under NJ law where only partial representations made); *Richey v. Axon Enterprises, Inc.,* 437 F. Supp. 3d 835, 848 (D. Nev. 2020) (duty arises under NV law where defendant has superior knowledge of material facts); *First Am. Bankcard, Inc. v. Smart Bus. Tech.,* Inc., 178 F. Supp. 3d 390, 401 (E.D. La. 2016) (duty may be imposed under LA law where "an intrinsic defect not discoverable by reasonable care" is concealed); *Alejandre v. Bull*, 98 P.3d 844, 848 (2004) (duty to disclose dangerous defect); *N. Penn Towns, LP v. Concert Golf Partners, LLC*, 2021 WL 3562849, at *27 (E.D. Pa. Aug. 12, 2021) (duty arises under PA law where there is superior knowledge or partial misleading representation).

Moreover, decisions encompassing the above states issued in numerous jurisdictions have consistently recognized this duty to disclose where there was superior knowledge, partial disclosures, and/or active concealment. *See, e.g., In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1002; *In re Volkswagen Timing Chain Prod. Liab. Litig*, 2017 WL 1902160, at *19-20; *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d at 960; *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156, 162 (D. Mass. 2010); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013).

Further, courts also impose a duty to disclose safety defects like the dangerous Defect alleged by Plaintiffs in the instant matter. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *19-20; *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d at 958. Here, Plaintiffs plead that Defendant actively concealed the Defect from them and Class members at the time of sale and thereafter. ¶¶ 254-259. Specifically, Plaintiffs have alleged that Defendant affirmatively and consciously concealed information concerning the Defect in its proprietary systems. ¶ 258. Additionally, Plaintiffs also allege that Defendant had "superior knowledge of the Piston Defect and its associated safety risk, provided partial disclosures about the functionality and ability of the Class Vehicles to provide safe, reliable transportation, and the facts about the Piston Defect were not reasonably discoverable by Plaintiff and the Class." ¶ 274. As such, Plaintiffs have adequately pleaded a duty to disclose.

**D.    Plaintiffs Pleaded Reliance and Causality with the Requisite Particularity Required by Rule 9(b) in an Omissions Case**

"Pleading reliance on an omission is not a particularly difficult burden." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. and Prod. Liab. Litig.*, 349 F. Supp. 3d 883, 918 (N.D. Cal. 2018) (discussing same under various state laws). Where, as here, the fraudulent omission of information is within the defendant's exclusive control, the Rule 9(b) particularity requirement is relaxed, because a plaintiff is not "able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *10 (D.N.J. Aug. 29, 2018); *see also DeFrank v. Samsung Elecs. Am., Inc.,* 2020 WL 6269277, at *7 (D.N.J. Oct. 26, 2020) (reviewing cases); *Gray v. BMW of N. Am., LLC,* 22 F. Supp. 3d 373, 385 (D.N.J. 2014) (same). Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." *Ponzio v. Mercedes-Benz USA,* LLC, 447 F. Supp. 3d 194, 228 (D.N.J. 2020).

Plaintiffs have met their burden by alleging that Defendant failed to disclose material information and that, "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.* (applying standard to New York claims) (*quoting Daniel v Ford Motor Co.,* 806 F.3d 1217, 1225 (9th Cir. 2015)); *Opheim*, 2021 WL 2621689, at *14 (noting a plaintiff need only allege a failure to disclose material information and an omission-induced purchase). Further, a plaintiff need not allege where the omitted information should have been included when the manufacturer knowingly concealed defects. *See id.,* 2021 WL 621689, at

*10; *DeFrank*, 2020 WL 6269277, at *7; *In re Volkswagen Timing Chain Prod. Liab. Litig,* 2017 WL 1902160, at *18; s*ee also Gray*, 22 F. Supp. 3d at 386 (upholding fraud by omission claims where plaintiffs alleged defendant "knowingly concealed the defect" and only paid full price because they relied on the omissions).

Plaintiffs adequately allege reliance under Rule 9(b) by delineating the specific multitude of information they reviewed pre-purchase—information channels that were "developed and disseminated," by VW, the content of which VW "is responsible for," where VW could have disclosed, but instead omitted, information about the defect. ¶ 171. These channels include VW's own website where VW touts its vehicles (¶¶ 20, 31, 72, 111, 121); stickers authored by VW and affixed to each vehicle Plaintiffs purchased; (¶¶ 20, 31, 46, 59, 72, 86, 100, 111, 121, 133, 148, 158); VW's dealership brochures (¶ 148); and, finally, through each plaintiff's own personal test drive and discussion with VW's authorized dealerships' salespeople (¶¶ 20, 31, 46, 59, 72, 86, 100, 111, 121, 133, 148, 158). Some plaintiffs also reviewed YouTube and television advertisements regarding the Class Vehicles (¶¶ 20, 46); others reviewed automotive-focused websites including Car and Driver, Kelley Bluebook, JD Power, and Edmunds, through which VW broadly disseminates information regarding the characteristics, benefits, and quality of the Class Vehicles (¶¶ 31, 86, 121, 133).

This plethora of information channels alleged more than satisfies the requirement to plead where VW could have revealed information about the Defect but did not. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) ("[A] reasonable fact finder could conclude that Ford knew that its consumers depended

at least in part on its authorized dealerships for information about its vehicles and that Ford's authorized dealerships would have disclosed the alleged rear suspension defect to consumers if Ford had required it."); *Precht v. Kia Motors Am., Inc.*, 2014 WL 10988343, at *6 (C.D. Cal. Dec. 29, 2014) ("Regarding the omission theory…[t]he FAC also alleges the channels through which Defendant disseminated information regarding its vehicles ("where")….the FAC adequately pleads Plaintiff's UCL and CLRA claims under an omission theory.") Indeed, ***each Plaintiffs' interaction with VW's authorized dealerships' salespersons alone satisfies reliance***. *See Daniel,* 806 F.3d at 1226 ("Plaintiffs presented evidence that they interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their Focuses. This is sufficient to sustain a factual finding that Plaintiffs would have been aware of the disclosure if it had been made through Ford's authorized dealerships.")

Defendant relies on *Herremans v. BMW of N. Am*., 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) for the proposition that plaintiffs' omissions claims fail because an authorized dealer's statements cannot be attributed to the manufacturer. VW's reliance on *Herremans* is surprising, given that ***the Herremans court ruled the plaintiff had adequately pled reliance,*** even though she did not identify the information she reviewed pre-purchase. *See Herremans,* 2014 WL 5017843 at *18-19 ("[B]ecause reliance is presumed where an omission is material, such a showing is not required unless the defendant rebuts the presumption"); *see also id.* at *9-11(fraudulent omission and concealment allegations satisfy Rule 9(b)). VW ignores these portions of the ruling, instead pointing the court to the section regarding

40

*equitable tolling of the statute of limitations* at *6-7. There, unlike here, the court was expressly *not* examining "non-disclosure," but rather whether Herremans had adequately alleged an "*affirmative statement*" attributable to BMW. *Id.* (emphasis added). The distinction is critical—because the claims at issue are omissions claims, not affirmative misrepresentation claims, Plaintiffs need not establish that these dealerships' affirmative misstatements are attributable to VW; they need only allege Defendant could have, but failed to, disclose the defect at the point of sale through its authorized dealerships. The second case on which VW relies for this proposition, *Friedman v. Mercedes Benz USA LLC,* 2013 WL 8336127, at *1 (C.D. Cal. June 12, 2013), is inapposite for the same reason—*Friedman* was a false advertising case, and the court was examining affirmative misrepresentation claims as opposed to omissions claims.

Here, Plaintiffs allege in detail the control Defendant exercises over its dealerships, such that Defendant could have made disclosures at the point of sale, had it chosen to do so. *See* ¶¶ 170-171 (the agreements between VWGoA and its authorized dealerships "provide VWGoA with a significant amount of control over the actions of the authorized dealerships" and that VWGoA—not its dealerships— "developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles. VWGoA also is responsible for the content of the Monroney Stickers on Volkswagen and Audi-branded vehicles." ¶ 171.)

Defendant's other authorities are likewise distinguishable. In *Myers v. BMW of N. Am.,* LLC, 2016 WL 5897740, at *6 (N.D. Cal. Oct. 11, 2016), and *Weske v.*

41

*Samsung Elecs., Am., Inc*., 42 F. Supp. 3d 599, 607 (D.N.J. 2014), unlike here, Plaintiffs did not identify any sources where the defendant could have made a disclosure. The same is true for *Davidson v. Apple, Inc.,* 2017 WL 976048, at *8 (N.D. Cal. Mar. 14, 2017) and *Glass v. BMW of N. Am., LLC,* 2011 WL 6887721, at *17 (D.N.J. Dec. 29, 2011)—VW admits as much in its parentheticals.

Defendant's final argument is that Plaintiffs' having reviewed a window sticker before purchase does not support reliance, because the specific window sticker that was affixed to their vehicles (the federally mandated Monroney sticker) has specific statutory requirements about what information must be included. This argument likewise misses the point. Had VW chosen to disclose the defect in a disclosure affixed to the windshield—be it the Monroney sticker, or a separate, additional window sticker—Plaintiffs would have been aware of such a disclosure.

Indeed, contrary to VW's arguments, automakers can and *do* make defect disclosures on window stickers. As recently as January 4, 2022, in an article entitled "Chevy Bolts will get window sticker attesting to battery fix," Autoblog reported that GM will be affixing "certified window stickers" on vehicles that will contain information about a battery recall repair.[15] This argument also fails because Plaintiffs' discussions with VW's authorized dealership salespeople establish reliance without regard to whether they reviewed window stickers. *See Daniel*, 806 F.3d at 1226.

---

[15] Available at https://www.autoblog.com/2022/01/04/chevy-bolt-window-sticker-battery-fire-recall-fix/ (last accessed January 7, 2022).

### E.    The Economic Loss Rule Does not Bar Plaintiffs' Fraud Claims

The economic loss rule is a judicially-created doctrine that bars "the recovery of purely economic losses in tort. *Peters v. Countrywide Home Loans*, *Inc.*, 2016 WL 2869059, at *4 (D.N.J. May 17, 2016) (citing *Travelers Indem. Co. v. Dammann & Co*., 594 F.3d 238, 244 (3d Cir. 2010)). Defendant argues that the economic loss rule bars Plaintiffs' fraud claims. This is false. As one court noted, "while claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, '[t]he law is, in fact, to the contrary: a plaintiff may assert both claims.'" *Bradley Woodcraft, Inc. v. Bodden*, 251 N.C. App. 27, 795 S.E.2d 253, 259 (2016) (citing *Jones v. Harrelson & Smith Contractors, LLC*, 194 N.C. App. 203, 670 S.E.2d 242, 250 (2008)). This view was endorsed by the Fourth Circuit:

> *Bradley Woodcraft* is simply another application of the principle that the economic loss rule does not bar tort claims based on an independent legal duty, which is "identifiable' and distinct" from the contractual duty ... What matters is not whether a plaintiff has alleged a negligence tort or an intentional tort, but whether the defendant has breached some duty other than a contractual duty, such that the tort claim is "identifiable and distinct" from the breach of contract claim.

*Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 166 (4th Cir. 2018). Accordingly, the relevant inquiry is "whether the defendant has breached some duty other than a contractual duty, such that the tort claim is 'identifiable and distinct' from the breach of contract claim" (*id*.), and whether the fraud "allegations directly relate to the inducement of the contract, instead of the performance of the contract,

and thus establish an independent tort claim." *R. Keating & Sons, Inc., v. Chiselcreek Development, LLC.*, 2020 WL 6390676, at *4 (Del Super. Ct. Oct. 30, 2020).

Here, Plaintiffs allege Defendant knew the Class Vehicles suffered from the Piston Defect and concealed the Defect from Plaintiffs and the Class. ¶¶ 6, 12, 254-259. Additionally, Defendant concealed the Defect in order to induce Plaintiffs and Class Members to purchase the Class Vehicles. ¶¶ 268-271. These allegations are distinct from the performance of the contract but, rather, go to the fraudulent inducement of the contract – which falls *outside* the economic loss rule. Such allegations are sufficient to survive a motion to dismiss. *See Powell*, 502 F. Supp. 3d at 894 (holding that plaintiffs common law fraud claims are not barred by the economic loss doctrine).

### F.    Plaintiff Gonzalez's NJ Statutory Claims Are Well-Pleaded

Defendant argues that Plaintiff Gonzalez's New Jersey Consumer Fraud Act ("NJCFA") claim should be dismissed because Plaintiffs "failed to plead an out-of-pocket loss theory" or an adequate diminution in value theory. Br. p. 48. On its face, this contention is patently absurd. Plaintiff explicitly pleaded he "was charged over $7500.00," *prima facie* establishing out-of-pocket losses for repairs to his defective vehicle. ¶ 113. Assuming, *arguendo*, that Defendant mistakenly overlooked this allegation, it still gets the law wrong in its remaining argument.

New Jersey Courts consistently find that "[d]ismissal for failure to state a claim, 'in the [New Jersey] CFA context, is ... appropriately approached with hesitation.'" *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II),* 2008 WL 4126264, at *27 (citing *New Jersey Citizen Action v. Schering-Plough Corp.,* 367

N.J. Super. 8, 12 (App. Div. 2003)); *see also Seidenberg v. Summit Bank,* 348 N.J. Super. 243, 249–50 (App. Div.2002*)*. Moreover, the appropriate question at the pleading stage is whether an ascertainable loss has been pleaded, not whether the loss has a number value attached, as suggested by Defendant. *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II),* WL 4126264, at *16 (whether a diminution value claim is "too speculative" is not "an appropriate inquiry … at this stage on a motion to dismiss.")

Here, Plaintiff Gonzalez not only alleges a quantified monetary loss [¶ 113], he also alleges "had he known of the Piston Defect, Plaintiff Gonzalez would not have purchased his vehicle, or would have paid less for it" [¶ 112], that he "did not receive the benefit of their bargain as a result of VW's misconduct" [¶ 685], and that "New Jersey Plaintiff and the New Jersey Sub-Class Members were harmed and suffered actual damages in the form of the costs of diagnosis and repair of their vehicles, and the diminished value of their vehicles" [¶ 693]. Consequently, Plaintiff's NJCFA claim is adequately pleaded.

Defendant next argues that Plaintiff's TCCWNA claim is improper because only deceptive conduct is alleged rather than an illegal provision of a contract. However, a TCCNWA claim premised on an adequately pleaded NJCFA claim is cognizable because it establishes violation of a "clearly established legal right." *Robey v. PVH Corp*., 495 F. Supp. 3d 311, 323 (S.D.N.Y. 2020); *see also Grisafi v. Sony Elecs. Inc.,* 2019 WL 1930756, at *9 (D.N.J. Apr. 30, 2019); *DiCicco v. PVH Corp.,* 2020 WL 5237250, at *8 (S.D.N.Y. Sept. 2, 2020). Thus, because Plaintiff's NJCFA claim is properly pleaded, the TJCCWNA claim survives as well. ¶ 705.

### G.    Plaintiff Garden's Minnesota CFA and DTPA Claims Are Timely

The six-year statute of limitations imposed for claims brought pursuant to the Minnesota Unlawful Trade Practices Act and Minnesota False Statement in Advertising Act are tolled by Defendants' concealment. *See Thunander v. Uponor, Inc.*, 887 F.Supp.2d 850, 865 (D. Minn. August 14, 2021) ("The doctrine of fraudulent concealment of a cause of action has long been used in Minnesota to toll the applicable statute of limitations….") "To make out a facial showing that … fraudulent misrepresentations tolled the statute of limitations, [a plaintiff is] required to alleged that [the defendant] concealed 'the very existence of the facts which established the cause of action." *See M.G. Longstreet, LLC v. James Hardie Building Products, Inc.*, 2021 WL 5567863 *7 (D. Minn. Nov. 29, 2021) (citing *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 876 (8th Cir. 2000).) Even "'misleading partial disclosures may constitute affirmative fraud and affirmative concealment.'" *Id.* at 868 (citing *Drobnak v. Andersen Corp.*, 561 F.3d 778, 7886 (8th Cir. 2000).)

Here Plaintiffs have made a clear showing Defendant concealed "the very existence of the facts which established the cause of action" by: (1) concealing the Piston Defect alleged by Plaintiffs [¶ 6]; (2) only telling their dealership via TSB about the Piston Defect, but never disclosing the facts to Plaintiffs or the class  [¶ 258]; (3) by informing consumers that their vehicles were operating properly [¶ 255, 256]; (4) providing repairs to merely mask the Piston Defect [¶ 255], and/or (5) refusing warranty coverage (*id.*).

Further, contrary to Defendant's argument, seeking damages under the

MUDPTA is proper because damages are available pursuant to Minnesota's private attorney general statute, Minn. Stat. § 8.31. Courts have allowed claims seeking damages under the MUDTPA pursuant to Minnesota's private attorney general statute, so long as the cause of action benefits the public. *See e.g.*, *Miami Prod. & Chem. Co. v. Olin Corp.*, 2021 WL 2588090, at *9 (W.D.N.Y. June 24, 2021) (holding that "an individual may seek damages under the MUDTPA pursuant to Minnesota's private attorney general statute, Minn. Stat. § 8.31, so long as the 'cause of action benefits the public.'"); *Weller v. Accredited Home Lenders, Inc.*, 2009 WL 928522, at *4 (D. Minn. Mar. 31, 2009) (same). There is a plausible inference of benefit to the public because false advertising and unfair business practices can harm the public. *See, e.g.*, *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 946 (D. Minn. 2009) (holding that "the 'public benefit' requirement is not onerous" and that "there is a public benefit in eliminating false or misleading advertising" where "if, but for plaintiff's lawsuit, other 'potential consumers might have been injured in the same manner"); *Olivares v. PNC Bank*, 2011 WL 4860167, at *8 (D. Minn. Oct. 13, 2011) (holding that "claims benefit the public when misleading statements or deceptive trade practice are directed to the 'public at large[]'" and that "courts examine both the form of the alleged misrepresentation and the relief sought by the plaintiff to determine what public interests are at stake.").

## H.    Plaintiffs' TX and PA Common Law Fraud Claims Are Well-Pleaded

While Texas does not recognize a stand-alone cause of action for fraudulent

concealment, Plaintiffs' common law fraud claims on behalf of the putative Texas class survive because Plaintiff Lowengard has also alleged Fraud by Omission and Fraud in the Inducement [¶¶ 941-956] and Defendant has failed to challenge these fraud counts. *See* Br*., generally*.  Texas common law does indeed recognize these causes of action and, thus, Plaintiffs' Texas fraud claims survive. *See, e.g., Anglo-Dutch Petroleum Int'l, Inc. v. Case Funding Network, LP*, 441 S.W.3d 612 (Tex. App. 2014); *Daugherty v. Jacobs*, 187 S.W.3d 607, 617 (Tex. App. 2006).

Moreover, Plaintiffs Francis' and Henley's Pennsylvania fraud claims survive. Defendant argues that a direct transaction is required for a common law fraud claim, which, despite Defendant's convolution, is really a *redux* of its argument that Defendant has no duty to disclose under Pennsylvania law. *See, e.g., Duquesne Light Co. v. Westinghouse Elec. Corp*., 66 F.3d 604, 611 (3d Cir. 1995) (liability for fraud claims lies in *any* business transaction where all the elements are met and such elements do not include a "direct" transaction, only a duty to disclose). Even in the one case cited by Defendant, the Court acknowledges that a direct transaction is only one way to establish a duty to disclose. *Cabebe v. Nissan of N. Am., Inc*., 2018 WL 5617732, at *10 (N.D. Cal. Oct. 26, 2018).

In fact, a duty to disclose arises under Pennsylvania law where a defendant has superior knowledge, has made partial disclosures, or has actively concealed. *In re Volkswagen Timing Chain Litig*., 2017 WL 1902160, at *19-20; *In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014). Here, as discussed in more detail *supra* [Sec. VI.C], Plaintiffs have adequately alleged superior knowledge, partial disclosure, and active concealment. ¶¶ 254-259, 274. Thus, the

48

Pennsylvania fraud claims should survive.

I.     **Chapman's Georgia Statutory Claims Are Well-Pleaded**

Defendant erroneously argues that Plaintiff Chapman's statutory claims, under both the GFBPA and GUDTPA, should be dismissed due to a class action bar and an injunctive relief limitation, respectively. Case law contravenes this argument.

Regarding GFBPA, Courts classify state statutory class-action limits as "procedural," and thus not applicable to cases in federal court. *In re Hydroxycut*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) (GFPBA's class action limitation is procedural and thus federal rules are applicable); *In re FCA Monostable Gearshift*, 355 F. Supp. 3d 582 at 600 (E.D. Mich. 2018) (similarly denying motion to dismiss class claims under Georgia's consumer protection statute because the class prohibition is "procedural" and thus Rule 23 controls); *Cf, Gallivan v. U.S.,* 943 F.3d 291, 294 (6th Cir. 2019) (denying motion to dismiss plaintiff's state law claim based on the same reasoning). Indeed, the *In re FCA Monostable Gearshift* Court emphatically rejected the argument used by Defendant here, stating "if a Rule governs only the manner and the means by which the litigants' rights are enforced [such as Federal Rule of Civil Procedure 23], it is valid." *See In re FCA Monostable Gearshift,* 355 F. Supp. 3d at 600.

Regarding GUDTPA, while actual damages are not available under the GUDTPA, monetary relief in the form of, *inter alia,* punitive damages, is not barred, despite the statute's focus on injunctive relief. Ga. Code Ann. § 10-1-373; *Intown Enterprises, Inc. v. Barnes*, 721 F. Supp. 1263, 1267 (N.D. Ga. 1989). Moreover, as addressed in more detail *infr* Sec. VIII, Plaintiffs *have* adequately pleaded

allegations sustaining their request for injunctive relief and do have standing.

Notably, "the existence of an alleged defect, coupled with failed attempts at repairs, or 'band aid' fixes only, along with representations made after each repair that the vehicles are free from the defect, is sufficient to establish likely future harm resulting from similar unsatisfactory efforts by the defendant to skirt liability for the problem without an effective fix[.]" *In re FCA Monostable Gearshift*, 355 F. Supp. 3d at 597 (analyzing Georgia law); *see also Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1295 (N.D. Ga. 2018) (injunctive relief proper where car owners alleged likelihood of future necessary repair).

Here, Plaintiffs allege the existence of the Defect [*e.g.*, ¶¶ 4-11, 15, 188-191], numerous failed attempts at repair [*e.g.,* ¶¶ 22-25, 33-40, 49-53, 61-66, 74-80, 88-94, 102-105, 113-115, 123-127, 135-142], and Defendant's improper representations that the Vehicles were free from defect. S*ee* ¶ 944-955. Indeed, Plaintiffs exceed legal requirements for future harm by alleging interest in future purchases of Class Vehicles prevented by Defendant's actions. ¶¶ 27, 42, 55, 68, 82, 96, 107, 117, 129, 144, 153, 167. This sufficiently confers standing for injunctive relief and satisfies pleading requirements. *In re FCA Monostable Gearshift*, 355 F. Supp. 3d at 597. Thus, Plaintiffs' Georgia claims survive the pleading stage.

## VII. CHAPMAN'S UNJUST ENRICHMENT CLAIM IS WELL-PLEADED

Defendant's arguments for dismissal of Plaintiff Chapman's unjust enrichment claim fail for multiple reasons. First, Fed. R. Civ. P. 8(a)(3) specifically permits a party to plead in the alternative. Additionally, under Georgia law, unjust enrichment can be pleaded in the alternative. *See Clark v. Aaron's, Inc.*, 914 F. Supp.

2d 1301, 1309 (N.D. Ga. 2012) ("The Court finds that Clark has stated a claim for unjust enrichment, which she has pled in the alternative to her claim for breach of contract. While a party, indeed, cannot recover under both a breach of contract and unjust enrichment theory, a plaintiff may plead these claims in the alternative."); *See also Pauly v. Houlihan's Rests., Inc.*, 2012 WL 6652754, at *3 (D.N.J. Dec. 20, 2012) (plaintiff may plead alternative theories under an express contract and under quasi-contract). Accordingly, it is appropriate here for Plaintiff Chapman to assert unjust enrichment claims alongside legal claims for relief, regardless of whether an adequate remedy of law exists. *Opheim*, 2021 WL 2621689, at *18 ("Plaintiffs may plead unjust enrichment claims in the alternative to their claims at law.").

Further, the existence of an express warranty does not bar unjust enrichment claims. Alternate pleading is particularly appropriate where, as here, the terms of the warranty are unconscionable. *See DeFrank*, 2020 WL 6269277, at *21. Alternative pleading is also proper where defendants "explicitly disclaim[] the availability of a contractual remedy, as [they have] done here by vigorously asserting [a] warranty coverage defense." *Francis*, 504 F. Supp. 3d 659; *Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co*., 30 F. Supp. 3d 166, 172 (E.D.N.Y. 2014) (permitting "alternative pleading of breach of contract and unjust enrichment claims—and the survival of both claims at the motion to dismiss stage—where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue.").

Here, the validity and enforcement of the warranties are at issue, as Defendant claims the Defect is not covered by the express warranty (Br. at 9-11) and Plaintiffs

allege the warranty is unconscionable. ¶¶ 342, 478, 592, 648, 717, 796, 857, 917.[16]

Thus, because Defendant claims the Defect is not covered by warranty, Plaintiffs can alternatively plead Defendant was unjustly enriched. Further, Plaintiff Chapman does not assert breach of warranty claims. The cases upon which Defendant relies support this, recognizing that "a plaintiff may plead both contract and unjust enrichment claims concerning the same facts where the validity of the contract is at issue." *In re Ford Tailgate Litig.*, 2014 WL 3899545, at *3 (N.D. Cal. Aug. 8, 2014). S*ee also Pinon v. Daimler AG*, 2019 WL 11648560, at *13 (N.D. Ga. Nov. 4, 2019) (noting "a party may plead unjust enrichment as an alternative to a breach of contract claim, even though it may not recover under both theories" but finding plaintiff do not challenge the validity or enforcement of the contract at issue); *Terrill v. Electrolux Home Prod., Inc.*, 753 F. Supp. 2d 1272, 1291 (S.D. Ga. 2010) ("A plaintiff may plead inconsistent remedies, even if the plaintiff may not recover both.").[17]

---

[16] Defendant's one sentence argument that unjust enrichment is only a remedy, not a standalone cause of action is misplaced. The one case it relies on for this point was decided at the summary judgment stage where the plaintiff cited no legal authority in support of its theory of recovery. *Wachovia Ins. Servs., Inc. v. Fallon*, 682 S.E.2d 657, 665 (2009). In contrast, many courts in Georgia and elsewhere recognize unjust enrichment as an independent cause of action. *See WESI, LLC v. Compass Env't, Inc.*, 509 F. Supp. 2d 1353, 1363 (N.D. Ga. 2007) (discussing cases where claims for unjust enrichment under Georgia law were appropriate for jury consideration as an alternative recovery).

[17] Defendant's reliance on *Terrill* for the proposition that the existence of an express warranty precludes a claim for unjust enrichment is also unavailing. In *Terrill*, the court dismissed the unjust enrichment claim because plaintiffs also asserted warranty claims and did not dispute the validity of the warranty. 753 F. Supp. 2d at 1291. Here, Plaintiff Chapman does not assert warranty claims *and* the validity of the warranty is at issue.

Lastly, as set forth herein, Plaintiffs have sufficiently asserted claims for fraud and state consumer protection claims. These underlying allegations show unjust conduct from which Defendant was enriched and thus also support Chapman's unjust enrichment claim. *See Opheim*, 2021 WL 2621689, at \*18 (rejecting similar argument because the court found fraud allegations to be plausible).

## VIII.  ALL CLAIMS FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF SHOULD BE UPHELD

### A.  Plaintiffs Have Standing to Seek Injunctive Relief

Defendant argues that Plaintiffs lack standing to seek injunctive relief because "[n]o Plaintiff alleges that he or she will be wronged again, imminently or concretely. . . since *each plaintiff specifically pleads that he or she "will not" purchase another class vehicle in the future."* Br. at 57.[18] Defendant is wrong. Plaintiffs have sufficiently alleged their intention to purchase Class Vehicles in the future in order to have standing to seek an injunction against Defendants' false advertising and labeling.[19] *See* ¶  ("Although Plaintiff Rieger is interested in purchasing another Class Vehicle in the future, she will not do so because she will be unable to rely on

---

[18] Defendants' argument pertains only to Plaintiffs' request to enjoin Defendant's false advertising and labeling. Defendants do not contest that Plaintiffs have standing to seek all of the other injunctive relief requested. *See* "Prayer for Relief" (¶ 870(c)). For example, Plaintiffs have specifically alleged that "When VW did attempt repairs, it merely replaced the defective pistons with similarly defective pistons." (¶ 207) Thus, Plaintiffs will be wronged again, imminently and concretely, if Defendants are not ordered to stop this. *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1123 (N.D. Cal. 2021) (plaintiffs would likely have standing to seek injunctive relief for purposes of seeking to repair their vehicles if Toyota's ongoing repair efforts prove unsatisfactory).

[19] Plaintiffs specifically request leave to amend if the Court holds otherwise.

VW's advertising for or labeling of the vehicles."); Chapman (¶ 55); the Gozons (¶ 107); Gonzalez (¶ 117); and the Lowegards. (¶ 153).

"[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). Consumers can plead a cognizable threat of future harm where they allege, for example, "that [they] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to do so," or "that [they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved." *Id.* at 970. *See also Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 909 (N.D. Cal. 2021) (same); *see also Axelrod, et al. v. Lenovo (United States) Inc.*, Case No. 21-cv-06770-JSW, ECF. No. 18 (N.D. Calif. January 4, 2022) ("Plaintiffs have adequately alleged facts that would permit them to pursue claims for prospective injunctive relief…. Plaintiffs allege they would like to purchase products from Lenovo's website in the future but are deterred from doing so because they cannot be certain that Lenovo's representations about its prices are truthful.") Here, Plaintiffs have pleaded exactly this. Nothing more is required. *See Davidson*, 889 F. 3d at 971 (because the court is required to construe all of the allegations in the plaintiff's favor, the plaintiff had "adequately alleged that she faces an imminent or actual threat of future harm due to [the defendant's] false advertising.")

54

**B.    Plaintiffs State a Valid Claim for Equitable Relief**

Defendants argue that Plaintiffs' equitable relief claims, including injunctive relief, should be dismissed because the CCAC does not allege or establish that Plaintiffs lack any adequate alternative remedy at law. Br. at 58. However, Plaintiffs are entitled to demand equitable relief in the alternative. In *Flynn-Murphy*, 2021 WL 5448716, at *12, the court stated:

> …Defendant argues that Plaintiffs are not entitled to restitution because they do not allege that a remedy at law is unavailable. Defendant continues that Plaintiffs also fail to allege a sufficient likelihood of future injury, such that injunctive relief is not appropriate. Rule 8 provides that in a pleading, a party may demand different types of relief, including relief in the alternative... Accordingly, Plaintiff is entitled to seek injunctive relief and restitution.

*See  In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ("Plaintiffs, however, are clearly permitted to plead alternative theories of recovery.")

Regarding Plaintiffs' claim for equitable relief under California's Unfair Competition Law (UCL) (Count 3), courts in this district have upheld UCL claims where the fraudulent acts and practices plaintiffs seek to enjoin include repairing defective parts with more defective parts, failing to adequately remedy the Defect, and refusing to repair or replace the Class Vehicles under warranty or when the Defect manifested outside the warranty period, because "the requested injunction, among other equitable remedies that Plaintiffs request, is distinct from the legal damages that Plaintiffs seek elsewhere." *In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *28–29 (D.N.J. Mar. 31, 2021). Plaintiffs have alleged exactly this. *See* "Prayer for Relief" (¶ 870(c)).

Plaintiffs' claim for equitable relief under California's Consumer Legal Remedies Act ("CLRA") (Count #1) should similarly be upheld. When plaintiffs complain of CLRA damages that result entirely from a defendant's misrepresentations and omissions, courts have ruled the CLRA claim may be dismissed because injunctive relief in the form of ordering a defendant to correct its representations doesn't address the harm already caused to plaintiffs by the misrepresentations. *See In re Subaru Battery Drain Prod. Liab. Litig*., 2021 WL 1207791, at *28–29. Here, however, Plaintiffs complain of CLRA violations that certainly can be remedied by injunctive relief.

Specifically, Plaintiffs allege that, "as a result of the Piston Defect, California Plaintiff and the CLRA Sub-Class members were harmed and suffered actual damages in that **the Class Vehicles' 2.0T Engine and its components are substantially certain to fail** before their expected useful life has run." ¶290 (emphasis added). And, Plaintiffs have specifically requested injunctive relief under the CLRA to remedy this damage by requesting "an order enjoining VW's unfair or deceptive acts or practices and equitable relief under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA." (¶ 298). Plaintiffs also separately requested an order "compelling Defendants to remove, repair, and/or replace the Class Vehicles' defective 2.0T Engine and/or its components with suitable alternative product(s) that do not contain the defects alleged herein." (¶ 870(c)). Thus, because Plaintiffs have alleged a distinct damage under the CLRA that can be remedied by injunctive relief, their CLRA equitable relief claims should be upheld.

56

## C.    Plaintiffs' Request to Compel a Recall Is Not Preempted

Defendants' recall preemption argument has no merit. Br. at 59. First, *voluntary* recalls are initiated by manufacturers, not NHTSA. NHTSA initiates *involuntary* recalls after completion of its own investigation. *See* 49 U.S.C. § 30118(a); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 at 1213 (10th Cir. 2012). Second, courts have soundly rejected that NHTSA has exclusive jurisdiction over motor vehicle safety and Plaintiffs' request for injunctive relief. *See Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, *16-17 (C.D. Cal. June 24, 2016) (declining to strike plaintiffs' recall request under primary jurisdiction pre-emption doctrines); *In re Toyota*, 754 F. Supp. 2d at 1197 (C.D. Cal. 2010) (defendant "simply 'has not met its burden of showing that it was Congress' clear and manifest intent for the Safety Act to preempt the relief Plaintiffs seek pursuant to their State law claims."). Third, if a state law conflicts with federal law, state law may be displaced under conflict preemption principles when (1) compliance with both state and federal law is impossible, or (2) when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 222 (3d Cir. 2001) When an automotive recall is requested, there is a "presumption against preemption" because a recall is a remedy, not a substantive field of regulation, that is traditionally regulated by the states. *See In re Toyota*, 754 F. Supp. 2d at 1196–97.

Here, there can be no conflict between Defendant's voluntary recall and NHTSA (as it has taken no action). *See e.g., Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1217–18 (N.D. Cal. 2002) ("Defendant '[a]t most ... has

demonstrated that the relief sought by Plaintiffs *might* conflict with some future action of NHTSA as it investigates the alleged defect[s] at issue in this action.'"); *Robinson v. Kia Motors Am., Inc.*, 2015 WL 5334739, at *16 (D.N.J. Sept. 11, 2015) (refusing to dismiss request for a nationwide recall, where Kia argued conflict preemption and primary jurisdiction). Ordering a recall here would not "stand[] as an obstacle to accomplishing the purposes of federal law" (indeed, it may further such purposes of vehicle safety) and it would not be "impossible to comply with" both state and federal law. *Green*, 245 F.3d at 222; *Glenn*, 2016 WL 3621280, *17-18.[20]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that Defendants' Motion to Dismiss be denied in its entirety, and, alternatively, that Plaintiffs be granted leave to amend with respect to any claim that is dismissed.

Dated: January 14, 2022                Respectfully submitted,

                                       By:*/s/ Russell D. Paul*
                                       Russell D. Paul (NJ Bar. No. 037411989)

---

[20] *See also Glenn*, 2016 WL 3621280, at *17 ("the Court finds Plaintiffs' request for injunctive relief is not preempted by the . . . Safety Act . . . at this stage"); *Philips v. Ford Motor Co.*, 2016 WL 693283, at *13 (N.D. Cal. Feb. 22, 2016) ("the primary jurisdiction doctrine does not apply"); *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 907 (N.D. Cal. 2015) ("Defendants argue that … the NHTSA should be granted primary jurisdiction for the recall and automobile safety concerns that are an important part of this case. The Court disagrees…."); *In re Toyota Motor Corp. Hybrid Brake Litig.*, 890 F. Supp. 2d 1210, 1224 (C.D. Cal. 2011) ("the circumstances do not persuade the Court to defer to the NHTSA"); *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *9 (C.D. Cal. May 4, 2009) (denying motion because there had been no recall and it was not clear that plaintiffs were even seeking one).

Amey J. Park (NJ Bar. No. 070422014)
Abigail J. Gertner (NJ Bar. No. 019632003)
Natalie Lesser (NJ Bar. No. 017882010)
**BERGER MONTAGUE PC**
1818 Market Street Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
rpaul@bm.net
apark@bm.net
agertner@bm.net

Tarek H. Zohdy (*pro hac vice*)
Cody R. Padgett (*pro hac vice*)
**CAPSTONE LAW APC**
1875 Century Park East
Suite 1000
Los Angeles, California 90067
Tel: (310) 556-4811
Fax: (310) 943-0396
tarek.zohdy@capstonelawyers.com
cody.padgett@capstonelaywers.com

Ramzy P. Ladah
Adrian A. Karimi (*pro hac vice*)
**LADAH LAW FIRM**
517 S. 3rd St
Las Vegas, NV 89101
Telephone: (702) 252-0055
Facsimile: (702) 248-0055
Ramzy@ladahlaw.com
Adrian@ladahlaw.com

*Attorneys for Plaintiffs and the Proposed
Class and SubClasses*

59