**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

JENI RIEGER, ALOHA DAVIS,
JODIE CHAPMAN, CARRIE
VASSEL, KAREN BURNAUGH,
TOM GARDEN, ADA and
ANGELI GOZON, HERNAN A.
GONZALEZ, PATRICIA A.
HENSLEY, CLYDIENE
FRANCIS, PETER and GUNNEL
LOWEGARD, and GRANT
BRADLEY individually, and on
behalf of a class of
similarly situated
individuals,

        Plaintiffs,

   v.

VOLKSWAGEN GROUP OF
AMERICA, INC., a New Jersey
corporation, d/b/a AUDI OF
AMERICA, INC., AUDI AG, a
German corporation, and
VOLKSWAGEN AG, a German
corporation,
        Defendants.

1:21-cv-10546-NLH-EAP

OPINION

---

Appearances:

ABIGAIL GERTNER
AMEY J. PARK
NATALIE LESSER
RUSSELL D. PAUL
BERGER MONTAGUE PC
1818 MARKET STREET
SUITE 3600
PHILADELPHIA, PA. 19103

   *On behalf of Plaintiffs*

```
HOMER B. RAMSEY
SHOOK, HARDY & BACON L.L.P.
1 ROCKEFELLER PLAZA
FLOOR 28
NEW YORK, N.Y. 10020

C. MICHAEL ROWAN, JR.
HERZFELD & RUBIN, LLC
354 EISENHOWER PARKWAY
LIVINGSTON, N.J. 07039
```

*On behalf of Defendant Volkswagen Group of America, Inc.*

**HILLMAN**, District Judge

Pending before the Court are Defendant Volkswagen Group of America, Inc.'s ("VGA") motion to dismiss the consolidated class action complaint ("CAC"), (ECF 53), and Plaintiffs' motion to appoint interim lead class counsel and members of Plaintiffs' steering committee, (ECF 60). For the reasons expressed below, Plaintiffs' motion will be granted and VGA's motion will be granted in part and denied in part.

## I.   Background

VGA, which conducts business under the name "Audi of America, Inc.," is a New Jersey corporation with a principal place of business in Herndon, Virginia that markets, distributes, warranties, and sells Volkswagen and Audi-branded vehicles and parts. (ECF 45 at ¶¶ 168-69).

Plaintiffs Jeni Rieger and Ada and Angeli Gozon are domiciled in Nevada. (Id. at ¶¶ 18, 97). Rieger purchased a certified pre-owned 2015 Audi A4 Allroad from an Audi dealership

in San Diego, California on or about August 18, 2016, (id. at ¶ 19), while the Gozons purchased a new 2013 Audi A4 from an Audi dealership in Las Vegas, Nevada on or about April 25, 2013, (id. at ¶ 98).  Plaintiff Aloha Davis is a Florida domiciliary who purchased a certified pre-owned 2017 Audi A4 on or about February 2, 2019 from an Audi dealership in Jacksonville Florida.  (Id. at ¶¶ 28-29).  Plaintiff Jodie Chapman is a Georgia domiciliary who purchased a used 2017 Audi Q3 from a used-car dealership in Marietta, Georgia in or around March 2021.  (Id. at ¶¶ 43-44).  Plaintiff Carrie Vassel is a domiciliary of Illinois who, on or about October 28, 2020, purchased a used 2012 Audi Q5 from a dealership in Orland Park, Illinois.  (Id. at ¶¶ 56-57).  Plaintiff Karen Burnaugh is a domiciliary of Tennessee who purchased a new 2012 Audi A4 from an Audi dealership in Metairie, Louisiana on or about May 28, 2012.  (Id. at ¶¶ 69-70).  Plaintiff Tom Garden is a Minnesota domiciliary who purchased a new 2014 Audi Q5 from an Audi dealership in Maplewood, Minnesota on or about April 16, 2014. (Id. at ¶¶ 83-84).  Plaintiff Hernan A. Gonzalez is domiciled in New Jersey and purchased a new 2015 Audi Q5 from an Audi dealership in Englewood, New Jersey on or about November 15, 2014.  (Id. at ¶¶ 108-09).  Plaintiff Patricia A. Hensley is a New York domiciliary who purchase a used 2015 Audi A3 Cabriolet from a dealership in Perkasie, Pennsylvania on or about May 25,

3

2016. (Id. at ¶¶ 118-19). Plaintiff Clydiene Francis is a domiciliary of Pennsylvania and, on or about August 22, 2020, she purchased a used 2012 Audi A4 from a dealership in Harrisburg, Pennsylvania. (Id. at ¶¶ 130-31). Plaintiffs Peter and Gunnel Lowegard are domiciled in Texas and purchased a new 2013 Audi Q5 from an Audi dealership in Plano, Texas on or about June 7, 2013. (Id. at ¶¶ 145-46). Finally, Plaintiff Grant Bradley is a Washington domiciliary who purchased a new 2012 Audi A4 Avant from an Audi dealership in Beaverton, Oregon on or around March 23, 2012. (Id. at ¶¶ 154-55).

Plaintiffs filed their initial complaint on April 30, 2021, (ECF 1), and thereafter filed amendments, (ECF 11; ECF 36), before filing the CAC on October 12, 2021, (ECF 45). The CAC asserts thirty-six counts,[1] consisting of causes of action under theories of express and implied warranties and state fraud and consumer-protection statutes applicable to states in which Plaintiffs purchased their vehicles or are domiciled. (Id.). Plaintiffs bring this action on behalf of themselves and a nationwide class of individuals who purchased or leased a class vehicle – defined as 2012-2017 Audi vehicles equipped with 2.0-

---

[1] VGA notes in its supporting brief that the CAC is misnumbered, ending with Count 35, but including two Count 19s, two Count 4s – the latter found between Counts 24 and 25 – and no Count 21. (ECF 53-1 at 2 n.2). The Court has confirmed this misnumbering on review.

liter turbocharged engines – pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).  (Id. at ¶¶ 1, 275-76).  The CAC also presents fourteen total sub-classes for class members who purchased or leased class vehicles in California, Florida, Georgia, Illinois, Louisiana, Minnesota, Nevada, New Jersey, Oregon, Pennsylvania, Texas, and Washington.  (Id. at ¶ 276).

The central allegations described in the CAC are that class vehicles suffer from one or more design, manufacturing, or workmanship defects resulting in piston rings failing to seat properly and piston components being unable to withstand engine heat and pressure, resulting in these parts cracking, fracturing, or splintering.  (ECF 45 at ¶ 188).  This damage results in excessive oil consumption, component fragments circulating through the engine, engine damage, engine knock, loss of compression, preignition, and potential safety risks due to loss of engine power.  (Id. at ¶¶ 6-10, 188, 191).  These issues arise before the class vehicles reach 75,000 miles, according to Plaintiffs, and the replacement of piston parts or components may cost several thousands of dollars while replacement of an entire 2.0-liter turbocharged engine may cost more than $10,000.  (Id. at ¶¶ 6, 10).  Plaintiffs allege that VGA was aware of the defect through sources unavailable to consumers and concealed such information.  (Id. at ¶¶ 6, 189).

VGA moved to dismiss, (ECF 53), and Plaintiffs filed an

opposition, (ECF 55), to which VGA replied, (ECF 59).  During this time, Plaintiffs filed a notice of voluntary dismissal without prejudice as to the two other Defendants named in the CAC, Audi AG and Volkswagen AG.  (ECF 58).[2]  Plaintiffs' motion to appoint interim lead class counsel and members of its steering committee followed on September 21, 2022.  (ECF 60).

## II. Discussion

### A. Jurisdiction

The Court possesses jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, which provides district courts with original jurisdiction over class actions in which the matter in controversy exceeds $5 million exclusive of interest and costs and any class member is a citizen of a different state than any defendant.  See 28 U.S.C. § 1332(d)(2).

### B. Motions to Dismiss

In advance or in lieu of an answer to a complaint, a defendant may move to dismiss for lack of subject-matter jurisdiction or failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(1), (6).  To survive dismissal under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader

---

[2] Audi AG and Volkswagen AG had not answered the CAC at the time of Plaintiffs' notice.  Therefore, Plaintiffs' unilateral notice was compliant with Federal Rule of Civil Procedure 41(a)(1)(A)(i).

is entitled to relief,'" Doe v. Princeton Univ., 30 F.4th 335,
341-42 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and –
accepting the plaintiff's factual assertions, but not legal
conclusions, as true – "'plausibly suggest[]' facts sufficient
to 'draw the reasonable inference that the defendant is liable
for the misconduct alleged,'" id. at 342 (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 557 (2007) and Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009)).  Courts further evaluate the
sufficiency of a complaint by "(1) identifying the elements of
the claim, (2) reviewing the complaint to strike conclusory
allegations, and then (3) looking at the well-pleaded components
of the complaint and evaluating whether all of the elements
identified in part one of the inquiry are sufficiently alleged."
Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A motion to dismiss pursuant to Rule 12(b)(1) may attack
subject-matter jurisdiction facially or factually.  Davis v.
Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  A facial attack
does not dispute the facts as alleged in the complaint, id., and
therefore essentially applies the same standard as Rule
12(b)(6), see Severa v. Solvay Specialty Polymers USA, LLC, 524
F. Supp. 3d 381, 389 (D.N.J. Mar. 10, 2021) (citing In re
Schering Plough Corp. Intron/Temodar Consumer Class Action, 678
F.3d 235, 243 (3d Cir. 2012)).  A factual attack, on the other
hand, challenges the allegations by which jurisdiction is

7

asserted, permitting the court to weigh evidence outside the
pleadings and placing a burden of proof on the plaintiff to
demonstrate that jurisdiction indeed exists.  See Davis, 824
F.3d at 346.

Finally, as is the case here, when a plaintiff alleges
fraud, they "must state with particularity the circumstances
constituting fraud," though conditions of the mind such as
knowledge may be pled generally.  Fed. R. Civ. P. 9(b).  "In
order to satisfy Rule 9(b), a complaint must provide 'all of the
essential factual background that would accompany "the first
paragraph of any newspaper story" – that is, the "who, what,
when, where and how" of the events at issue.'"  United States v.
Eastwick Coll., 657 F. App'x 89, 93 (3d Cir. 2016) (quoting In
re Rockefeller Ctr. Props., Inc. Secs. Litig., 311 F.3d 198, 217
(3d Cir. 2002)).  This standard is relaxed slightly for
fraudulent omission claims where pleading specific times and
places may not be practicable and, instead, Rule 9(b) may be
satisfied by "alleg[ing] what the omissions were, the person
responsible for failing to disclose the information, the context
of the omission and the manner in which it misled plaintiff and
what defendant obtained through the fraud."  See Johansson v.
Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 264 (D.N.J. May 26,
2011) (quoting Luppino v. Mercedes-Benz USA, LLC, No. 09-5582,
2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010)).

## III. Analysis

### A. Group Pleading

The Court acknowledges VGA's group-pleading argument at the outset.  The CAC brings claims against VGA, Audi AG, and Volkswagen AG – the latter two of which were dismissed following the filing of the motion to dismiss as referenced above.  VGA attacks the CAC for impermissible group pleading and argues for dismissal on that basis.  (ECF 53-1 at 5-7).  While VGA is now currently the only Defendant and – for the purposes of this opinion – the Court interprets all allegations made in the CAC as being directed toward VGA, the Court agrees that a significant portion of the CAC refers to the three Defendants collectively as "VW" or "Defendants."  Audi AG and Volkswagen AG are not referenced at all in the individual counts within the CAC.

"[C]ourts in this District generally do not allow 'group pleading,' because the complaint must allege 'sufficient facts to identify each defendant's role.'"  MHA, LLC v. Amerigroup Corp., 539 F. Supp. 3d 349, 365 (D.N.J. May 17, 2021) (quoting D'Addario v. Johnson & Johnson, No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020)).  Such pleadings generally do not satisfy Federal Rule of Civil Procedure 8, see Mills v. Ethicon, Inc., 406 F. Supp. 3d 363, 386 (D.N.J. Aug. 27, 2019), and certainly do not meet the heightened pleading standards of

Federal Rule of Civil Procedure 9(b) with respect to Plaintiffs'
allegations of fraud, see Ponzio v. Mercedes-Benz USA, LLC, 447
F. Supp. 3d 194, 226 (D.N.J. Mar. 11, 2020) ("Rule 9(b) does not
allow a complaint to merely lump multiple defendants together."
(quoting Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.
2007))).

　　The Court declines, however, to dismiss the CAC on this
basis both because the allegations pertain to "sophisticated
corporate entities that are related to each other, [in which a]
[p]laintiff need not distinguish the specific roles that each
entity played in the fraudulent concealment in order to meet the
Rule 9(b) standard," see id. (alteration in original) (quoting
Gray v. BMW of N. Am., LLC, No. 13-cv-3417, 2014 WL 4723161, at
*2 (D.N.J. Sept. 23, 2014)), and the voluntary dismissal of Audi
AG and Volkswagen AG has left VGA as the lone allegedly
responsible party.  Nonetheless, the Court agrees that VGA is
entitled to be placed on notice of the specific claims asserted
against it, see Mills, 406 F. Supp. 3d 386, particularly in
light of the dismissals that followed the filing of CAC and the
pending motion.  The Court therefore will provide Plaintiffs
thirty days to file an amended CAC that specifies the
allegations made against VGA.

**B. Standing**

　　VGA's motion includes challenges to various Plaintiffs'

10

standing both overall and to seek injunctive relief.  (ECF 53-1 at 7-8, 56-58).  The Court will address these challenges first "[b]ecause standing is a component of jurisdiction, [and] a federal court has an independent obligation to assure itself that standing exists."  See Dougherty v. Drew Univ., 534 F. Supp. 3d 363, 372 (D.N.J. Apr. 14, 2021) (citing Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n, 959 F.3d 569, 574 (3d Cir. 2020)).

    "Article III standing requires a plaintiff to demonstrate: '(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.'" Clemens v. ExecuPharm Inc., 48 F.4th 146, 152 (3d Cir. 2022) (quoting Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1618, (2020)).  "Standing requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for each claim he seeks to press'" and is not satisfied for one claim merely because it is related to another for which standing has been satisfied.  See Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 359 (3d Cir. 2015) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006)).

    The Court will address VGA's standing challenges in turn below.

### 1. Standing as to Plaintiff Gunnel Lowegard

The Court begins with standing as it pertains to Plaintiff Gunnel Lowegard.  In its brief in support of its motion to dismiss, VGA submits that only Peter Lowegard, not Gunnel, purchased a class vehicle and thus she lacks standing to bring claims under the CAC.  (ECF 53-1 at 8).  Plaintiffs respond that, in challenging Gunnel Lowegard's standing, VGA impermissibly seeks to submit extrinsic evidence for consideration at the dismissal stage and urges the Court to accept the facts in the CAC as pleaded.  (ECF 55 at 9-10).  The Court declines to do so.

As stated above, a challenge under Rule 12(b)(1) may be facial or factual, the latter "attack[ing] the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" See Davis, 824 F.3d at 346 (second alteration in original) (quoting Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)); see also Fam. Civ. Liberties Union v. State, 386 F. Supp. 3d 411, 431 (D.N.J. May 29, 2019) ("A factual attack . . . permits the Court to consider evidence extrinsic to the pleadings.").  Upon a factual challenge, it is the plaintiff's burden to demonstrate that jurisdiction exists with no presumption of truthfulness attached to their pleadings.  See Davis, 824 F.3d at 346.

Here, VGA supports its challenge by including with its motion a retail purchase agreement from Audi Plano for the same purchase date and vehicle model in the CAC listing Peter Lowegard as the purchaser with no co-purchaser.  (ECF 53-8).  It also includes a declaration from Frank J. Pritzl, senior manager of VGA's Product Analysis Group, attesting that the agreement was the one received by Audi Plano with respect to the vehicle sold to Peter Lowegard.  (ECF 53-2 at ¶ 10).  The Court finds, as VGA asserts, (ECF 53-1 at 8), that without having purchased a class vehicle, Gunnel Lowegard cannot satisfy the injury-in-fact requirement necessary for standing, see Hemy v. Perdue Farms, Inc., No. 11-888, 2011 WL 6002463, at *11 (D.N.J. Nov. 30, 2011) ("[W]ithout asserting that they purchased 'Perdue' brand products, Plaintiffs have failed to sufficiently allege an injury-in-fact with respect to those products.")

Plaintiffs rebut that the CAC does not expressly rely on the purchase agreement and that it is unable at this stage to conduct discovery, depose Pritzl and other VGA employees, or otherwise develop facts to contest VGA's offerings and thus their pleading that Peter and Gunnel Lowegard were co-purchasers must be accepted as true.  (ECF 55 at 10-11).  The Court holds that this rebuttal does not satisfy Plaintiffs' burden to respond to VGA's factual attack by demonstrating that jurisdiction exists and therefore the action must be dismissed

for lack of standing as to Gunnel Lowegard.  See Davis, 824 F.3d at 346; Hemy, 2011 WL 6002463, at *11.

### 2. Standing to Represent a Nationwide Class (Count 35)

Count 35 of the CAC brings a claim for fraud by concealment, fraud by omission, or fraud in the inducement on behalf of Plaintiffs' individually and on behalf of the class or, alternatively, on behalf of individual subclasses.  (ECF 45 at ¶ 942).  The class, as defined within the CAC, is comprised of "[a]ll individuals in the United States who purchased or leased any 2012-2017 Audi vehicle equipped with the 2.0-liter turbocharged engines ('Class Vehicles.')."  (Id. at ¶ 276).  VGA argues that, because Plaintiffs reside or purchased their class vehicles in only fourteen states, they lack standing to assert a claim on behalf of a putative nationwide class.  (ECF 53-1 at 7-8).  The Court agrees.

In support of its argument, VGA relies – in part – on the decision in Ponzio.  The nine named plaintiffs in Ponzio, collectively representing six states, asserted state-specific claims under the laws of all fifty states and the District of Columbia.  447 F. Supp. 3d at 222.  The court ultimately concluded that the plaintiffs "lack[ed] standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where [p]laintiffs . . . suffered no alleged injury" and granted dismissal as to state-specific claims to the extent that they

were brought on behalf of putative class members in states other than those represented by the named plaintiffs.  Id. at 223.  Persuasively, with respect to nationwide claims for unjust enrichment and fraudulent concealment also brought by the plaintiffs, Ponzio concluded that – because such common-law claims relied on state law – the plaintiffs lacked standing to proceed with them on a nationwide basis.  Id.

District courts within this and other circuits have arrived at similar conclusions with respect to common-law claims brought on behalf of proposed nationwide classes.  See Robinson v. Gen. Motors LLC, No. 20-663, 2021 WL 3036353, at *20 (D. Del. July 19, 2021), report and recommendation adopted, No. 20-663, 2021 WL 7209365 (D. Del. Nov. 30, 2021) (citing Ponzio and concluding "that, at the pleadings stage, Plaintiffs lack standing to assert unjust enrichment claims under the common law of states in which Plaintiffs did not suffer an alleged injury.");  Lewis v. Mercedes-Benz USA, LLC, 530 F. Supp. 3d 1183, 1205-06 (S.D. Fla. Mar. 30, 2021) (citing Ponzio and finding that "[a]lthough the First Amended Complaint lists one generic general unjust enrichment claim, that claim is, in reality, fifty unjust enrichment claims – one for each state.  Such a claim would thus need to be brought on behalf of fifty state subclasses.");  Soo v. Lorex Corp., No. 20-cv-01437, 2020 WL 5408117, at *10 (N.D. Cal. Sept. 9, 2020) ("While the Ninth Circuit has not

definitively answered whether named plaintiffs have standing to pursue class claims under the common laws of states to which the named plaintiffs have no connection, district courts in this Circuit routinely hold that they do not.").

Plaintiffs, relying in part on Ponzio and Neale, counter by stating "that unnamed, putative class members need not establish Article III standing" so long as representatives have standing and that VGA's arguments as to standing are premature and must wait until the class-certification stage.  (ECF 55 at 6-8 (quoting Ponzio, 447 F. Supp. 3d at 222)).  The Court does not challenge this first point, but rather holds that Plaintiffs fail to satisfy the identified threshold – standing for claims under the common law of states other than those in which they purchased their class vehicles or reside.  Similarly, the Court does not seek to make any determinations here as to the "differences between claims among separate statewide classes." (Id. at 7 (quoting Neale, 794 F.3d at 368-69)).  Plaintiffs' standing to assert claims on behalf of the putative sub-classes is not addressed here and this subsection's standing analysis is limited to the proposed nationwide class.

Because Plaintiffs fail to establish standing to bring common-law claims on behalf of a nationwide class, the Court will dismiss without prejudice Count 35 to the extent that it is brought on behalf of a nationwide class but permit Count 35 to

proceed with respect to Plaintiffs and sub-classes to the extent provided below.  Because, for reasons provided above, the Court will require Plaintiffs to file an amended CAC, it will permit amendment limited to addressing the standing issue as to the nationwide class.

### 3. Standing to Seek Injunctive Relief (Counts 1, 7, 8, 19, 22, 29)

Finally, Plaintiffs seek injunctive relief both generally as part of their prayer for relief and in specific counts for relief under California, Georgia, Nevada, New Jersey, and Texas law.  (ECF 45 at ¶¶ 298, 412, 435, 637, 698, 846, p. 257-58). VGA asserts that Plaintiffs lack standing to seek such relief because they fail to show that they face a plausible threat of a concrete, imminent injury.  (ECF 53-1 at 56-58).

In addition to the injury, causation, and redressability requirements outlined above, standing to seek injunctive relief additionally requires that the plaintiff demonstrate that they are likely to suffer a "sufficiently real and immediate" threat of future injury.  See McNair v. Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012) (quoting Roe v. Operation Rescue, 919 F.2d 857, 864 (3d Cir. 1990)).  Plaintiffs contend that they have sufficiently alleged a threat of future injury due to their intention to purchase future class vehicles.  To the extent that Plaintiffs seek to enjoin VGA as to its sales and advertising

practices, the Court disagrees.[3]

The discussion in <u>McNair</u> is instructive here.  In <u>McNair</u>, the plaintiffs were prior customers of a magazine-subscription marketer who sought to assert standing for injunctive relief by alleging that they were subject to future, potentially compelling offers that they may have accepted at a future time. 672 F.3d 224-25.  The Third Circuit rejected this argument, concluding that whether plaintiffs might accept a future offer was speculative and did not establish the reasonable likelihood of future injury necessary to seek injunctive relief.  <u>Id.</u> at 225-26.

The same principles apply here.  To find standing here would be to assume that Plaintiffs are at real and immediate risk of purchasing new class vehicles from VGA despite the lengths at which they have gone through in alleging VGA's unfair and deceptive practices.  Their request for injunctive relief therefore "amounts to a '"stop me before I buy again" claim'

---

[3] As Plaintiffs' highlight, (ECF 55 at 53 n.18), the CAC seeks other relief such as an "order . . . compelling Defendants to remove, repair, and/or replace the Class Vehicles' defective 2.0T Engine and/or its components with suitable alternative product(s) that do not contain the defects alleged herein," (ECF 45 at p. 257), not directly addressed in VGA's motion.  While VGA argues that its motion challenges Plaintiffs' standing as to all injunctive relief sought, (ECF 59 at 20-21), the Court agrees with Plaintiffs that the arguments in the brief supporting the motion to dismiss focus on Plaintiffs' alleged interest in purchasing future vehicles.

that precludes Article III standing."  See Thorne v. Pep Boys
Manny Moe & Jack Inc., 980 F.3d 879, 896 (3d Cir. 2020) (quoting
In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs.
& Liab. Litig., 903 F.3d 278, 292-93 (3d Cir. 2018)); see also
In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs.
& Liab. Litig., 903 F.3d at 292-93 (concluding that the
plaintiff was unlikely to suffer a future injury associated with
a future purchase when she was aware of the health risks
associated with the product).  The Court is unwilling to save
Plaintiffs from themselves and Plaintiffs' own pleadings
indicate that such assistance is unnecessary.  As they
acknowledge in their opposition, (ECF 55 at 53-54), although
Plaintiffs are interested in purchasing a class vehicle in the
future, they "will not do so" due to their inability to trust
VGA's advertising and labeling, (ECF 45 at ¶¶ 27, 42, 55, 68,
82, 96, 107, 117, 129, 144, 153, 167).  Plaintiffs therefore
appear to have committed themselves to avoiding the future
injury they plead.

Plaintiffs counter that their allegations of future harm
comport with Davidson v. Kimberly-Clark Corp., 889 F.3d 956 (9th
Cir. 2018), and "[n]othing more is required."  (ECF 55 at 54).
In Davidson, the Ninth Circuit concluded that a consumer may
have standing to seek to enjoin false advertising or labeling
despite their awareness of their falsity in situations such as a

consumer not purchasing a product – though they would like to – because of their inability to rely on advertising or their incorrect future assumption that the product was improved.  889 F.3d at 969-70.

The Court finds that Davidson entertains the sort of stop-me-before-I-buy-again arguments repeatedly rejected within this Circuit and will therefore join another court within this District in declining to adopt its reasoning.  See In re Subaru Battery Drain Prods. Liab. Litig., No. 1:20-cv-03095, 2021 WL 1207791, at *31 (D.N.J. Mar. 31, 2021) (finding that "the Third Circuit and other courts have squarely rejected Davidson's reasoning and conclusion, finding the threat of injury that repeat customers 'might suffer as a result of the company's advertising practices [to be] "wholly conjectural."'" (alteration in original) (quoting In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig., 903 F.3d at 292)).  Because it concludes that Plaintiffs have not alleged a real and immediate threat of future injury, it will grant VGA's motion as to the injunctive relief requested regarding VGA's sales and advertising practices.[4]

---

[4] Plaintiffs seek leave to amend if the Court finds in VGA's favor.  (ECF 55 at 53 n.19).  This request does not comport with Local Civil Rule 15.1, which requires that requests to amend be made by motion and include a copy of the proposed amended pleading and a form of the amended pleading illustrating the changes made.  L. Civ. R. 15.1(a).  Furthermore, the Court

## C. Additional Equitable Relief

Beyond its arguments relating to Plaintiffs' standing to bring injunctive relief, VGA further contends that the equitable relief sought by Plaintiffs is unavailable due to their failure to plead the lack of an alternative legal remedy and preemption by the Federal Motor Vehicle Safety Act ("FMVSA").

As to the first argument, the Court generally agrees with Plaintiffs' retort that they may seek multiple and alternative forms of relief consistent with the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 8(a)(3).  Indeed, the Court concurs with a recent decision within the District that "it is premature to dismiss a claim for relief at the pleading stage." See Wesley v. Samsung Elecs. Am., Inc., No. 20-cv-18629, 2021 WL 5771738, at *9 (D.N.J. Dec. 3, 2021) (citing Cox v. Chrysler Grp., LLC, No. 14-7573, 2015 WL 5771400, at *16 (D.N.J. Sept. 30, 2015)).

This general conclusion does not, however, extend to equitable relief sought pursuant to the California Consumers Legal Remedies Act ("CCLRA") and California Unfair Competition Law ("CUCL").  In Hickman v. Subaru of America, Inc., this Court dismissed a CUCL claim for failure to plead a lack of

---

concludes that amendment would be futile in this instance.  See Matthews v. N.J. Inst. of Tech., 717 F. Supp. 2d 447, 451 (D.N.J. June 15, 2010).

alternative remedy at law based on the Ninth Circuit's decision in Sonner v. Premier Nutrition Corp., 971 F.3d 834 (9th Cir. 2020).  No. 1:21-cv-02100, 2022 WL 11021043, at *11 (D.N.J. Oct. 19, 2022).  In Sonner, the Ninth Circuit upheld dismissal of CUCL and CCLRA claims on the alternative basis that the complaint failed to allege lack of adequate legal remedy, 971 F.3d at 844, which this Court found persuasive in Hickman, see 2022 WL 11021043, at *11 n.13 (finding Sonner "highly persuasive" in the "narrow context" of CUCL claims).

Plaintiffs' arguments seeking to preserve equitable relief under the CUCL and CCLRA on the bases of the injunctive relief sought and In re Subaru Battery Drain Products Liability Litigation are unpersuasive.  The decision in In re Subaru Battery Drain Products Liability Litigation turned on the Court's finding that the plaintiffs "adequately alleged that legal remedies [we]re inadequate" with respect to the CUCL claim and likewise concluded that the plaintiffs lacked standing to seek injunctive relief as to the defendant's advertising practices under the CCLRA.  See 2021 WL 1207791, at *29.  The Court does not find, as Plaintiffs urge, (ECF 55 at 55-56), that their request for equitable relief satisfies the requirement of alleging the inadequacy of legal remedies.

Lastly, VGA submits that any recall sought by Plaintiffs is preempted by the FMVSA.  As part of the relief requested in the

CAC, Plaintiffs seek "[a]n order . . . compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a)."  (ECF 45 at p. 257).  In Hickman, this Court concluded that dismissal was inappropriate with respect to a similar request for an order for a voluntary recall and will do the same here.  See 2022 WL 11021043, at *12.  While VGA's citation to Granillo v. FCA US LLC is persuasive in that court in that decision raised compelling concerns as to its ability to order a voluntary action, the Court here finds that Granillo is distinguishable in the very least in that the complaint there did not specify between voluntary and involuntary recalls and sought recall "pursuant to applicable [National Highway Traffic Safety Administration ("NHTSA")] guidelines," which the court interpreted as compelling NHTSA's participation.  No. 16-153, 2016 WL 9405772, at *18-20 (D.N.J. Aug. 29, 2016).  Such issues do not arise here.

**D. Plaintiffs' Claims Under Express and Implied Warranties**

Moving to the substance of Plaintiffs' claims, VGA challenges VGA's express- and implied-warranty claims under various state statutes.  The Court will consider these challenges in turn.

### 1. VGA's Challenges to Plaintiffs' Express-Warranty Claims (Counts 4, 11, 17, 20, 24, 27, 30, 33)

VGA seeks to dismiss Plaintiffs' express warranty claims,

23

in part, by arguing that the claims of Vassel, Garden, the
Gozons, Gonzalez, Francis, Hensley, Lowegard, and Bradley
(Counts 11, 17, 20, 24, 27, 30, 33) are time-barred under the
respective state laws.  (ECF 53-1 at 11-14).  Indeed, the laws
of Illinois, Minnesota, Nevada, New Jersey, Oregon,
Pennsylvania, and Texas all provide four-year statutes of
limitations for warranty actions and contain identical language
stating that a "cause of action accrues when the breach occurs,
regardless of the aggrieved party's lack of knowledge of the
breach.  A breach of warranty occurs when tender of delivery is
made."  See 810 Ill. Comp. Stat. 5/2-725(1)-(2); Minn. Stat.
Ann. § 336.2-725(1)-(2); Nev. Rev. Stat. § 104.2725(1)-(2); N.J.
Stat. Ann. 12A:2-725(1)-(2); 13 Pa. Cons. Stat. § 2725(a)-(b);
Or. Rev. Stat. § 72.7250(1)-(2); Tex. Bus. & Com. Code Ann. §
2.725(a)-(b).

With respect to Garden (class vehicle purchased on or about
April 16, 2014), the Gozons (class vehicle purchased on or about
April 25, 2013), Gonzalez (class vehicle purchased on or about
November 15, 2014), Hensley (class vehicle purchased on or about
May 25, 2016), Lowegard (class vehicle purchased on or about
June 7, 2013), and Bradley (class vehicle purchased on or about
May 23, 2012), (ECF 45 at ¶¶  84, 98, 109, 119, 146, 155), it is
clear that the four-year statutes of limitations ran prior to
the filing of this action.  Therefore, the claims are barred

24

unless the statutes of limitations are tolled.

Plaintiffs contend that VGA's motion brief ignores the potential that the statutes of limitations tolled; that VGA had a duty to disclose defects due to its superior knowledge of the defects and its partial representations via window stickers, advertisements, and dealership representatives; and that defects were further concealed by unnecessary repairs performed on Plaintiffs' vehicles.  (ECF 55 at 16-18).  With respect to Garden and Gonzalez, Minn. Stat. Ann. § 336.2-725 and N.J. Stat. Ann. 12A:2-725 have been found to essentially replace the discovery rule, see Fahy v. Biomet Orthopedics, LLC, No. 3:15-CV-218, 2017 WL 1133676, at *6 (N.D. Ind. Mar. 26, 2017) (interpreting Minn. Stat. § 336.2-724(2) as limiting the discovery rule for breach-of-warranty claims to situations in which the warranty explicitly extends to future performance); Wiseberg v. Toyota Motor Corp., No. 11-3776, 2012 WL 1108542, at *7-8 (D.N.J. Mar. 30, 2012) (finding that N.J. Stat. Ann. 12A:2-725(2) "quite clearly establishes a general rule, that the discovery principle does not apply to breach of warranty actions" and that the statute's future-performance exception only applies to defects discovered during the warranty period (quoting S. Jersey Gas Co. v. Mueller Co. Ltd., No. 09-4194, 2010 WL 1742542, at *6 (D.N.J. Apr. 27, 2010))), and with respect to Lowegard, Texas law does not apply the discovery rule

to breach-of-warranty claims, see Mendes v. Toyota Motor Sales, U.S.A., Inc., No. H-15-3018, 2016 WL 1222153, at *2 (S.D. Tex. Mar. 29, 2016) ("[T]he discovery rule does not apply to actions based on express or implied warranties." (quoting Safeway Stores, Inc. v. Certainteed Corp., 710 S.W.2d 544, 549 (Tex. 1986))).

Plaintiffs allege that they took their vehicles in for repair after the warranty periods expired.  (ECF 45 at ¶¶ 84, 88, 109, 113, 146, 150 (Garden purchased his vehicle on or about April 16, 2014 and took it in for service on or about October 14, 2019, Gonzalez purchased his vehicle on or about November 15, 2014 and took it in for evaluation in March of 2021, and Lowegard purchased his vehicle on or about June 7, 2013 and noticed the check-engine light after a service on April 29, 2021)).  The Court finds that any claims of actions thereafter are inapplicable to the breach-of-express-warranty claims and the Court further finds that Plaintiffs' general claims of omission do not save the causes of action.  See Drobnak v. Andersen Corp., 561 F.3d 778, 786 (8th Cir. 2009) (noting that a plaintiff must plead an affirmative act or statement to establish fraudulent concealment); Adams v. Nissan N. Am., Inc., 395 F. Supp. 3d 838, 850 (S.D. Tex. May 23, 2018) (finding no duty to disclose tolling the statute of limitations between a manufacturer and consumer); Dewey v. Volkswagen AG, 558 F. Supp.

26

2d 505, 522-23 (D.N.J. Apr. 1, 2008) (discussing UCC § 2-725 and declining to toll the statute of limitations when the plaintiff failed to make allegations beyond the knowledge of defendants). Garden, Gonzalez, and Lowegard's claims are thus untimely.

Hensley's claim meets a similar fate.  Though there is support for the proposition that breach-of-express-warranty claims are tolled for discovery, see Hurley v. BMW of N. Am., LLC, No. 18-5320, 2020 WL 1624861, at *7 (E.D. Pa. Apr. 2, 2020) (recognizing that breach-of-express-warranty claims are subject to a four-year statute of limitations but that "Pennsylvania courts have held that this 'statute of limitations period does not begin until a defect in the vehicle was or should have been discovered'" (quoting Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 645 (Pa. Super. Ct. 1999)), even when the discovery rule applies the claim must accrue during the warranty period, see Voicheck v. Ford Motor Co., No. 12-6534, 2013 WL 1844273, at *4 n.7 (E.D. Pa. May 2, 2013) (citing Red Rose Transit Auth. v. N. Am. Bus Indus., No. 11-1146, 2013 WL 180201, at *6 (E.D. Pa. Jan. 16, 2013)).  Here, Hensley purchased a used 2015 Audi A3 Cabriolet on or about May 25, 2016 and noted signs of the defect on or about July 28, 2021.  (ECF 45 at ¶¶ 119, 123).  Thus, even if the Court were to base its analysis on the date Hensley purchased her pre-owned car, her claim is untimely.

The Court will not, however, dismiss the breach-of-express-

warranty claim of the Gozons because Nevada law tolls the
statute of limitations until discovery of the defect.  See
Herrera v. Toyota Motor Sales, U.S.A., No. 2:10-CV-924, 2010 WL
3385336, at *1 (D. Nev. Aug. 23, 2010) (citing Bemis v. Estate
of Bemis, 967 P.2d 437 (Nev. 1998), and finding that a discovery
rule applies for breach-of-warranty claims).  Angeli Gozon first
experienced issues with the alleged defect in May of 2019.  (ECF
45 at ¶ 102).  The claim is therefore timely.

Bradley's express-warranty claim also survives dismissal.
"Fraudulent concealment in the pertinent sense involves
concealment of the fact that a cause of action has accrued
against the defendant."  Benson Tower Condo. Owners Ass'n v.
Victaulic Co., No. 3:13-cv-01010, 2014 WL 5285475, at *10 (D.
Or. Oct. 15, 2014) (quoting Classen v. Arete NW, LLC, 294 P.3d
520, 526 (Or. Ct. App. 2012)).  Here, Bradley alleges that he
purchased his class vehicle on or about March 23, 2012, noticed
excessive oil consumption during Fall 2015, and thereafter
periodically complained of excessive oil consumption "but was
repeatedly told that was normal for his vehicle."  (ECF 45 at ¶¶
155, 160-61).[5]  These allegations, in the Court's view, are

---

[5] Plaintiffs allege that dealerships were manufacturer agents for
the purposes of vehicle repairs.  (ECF 45 ¶¶ at 13); see also
Powell v. Subaru of Am., Inc., 502 F. Supp. 3d 856, 888 (D.N.J.
Nov. 24, 2020) (finding – in a discussion as to the defendants'
omissions – that the plaintiffs adequately alleged knowledge, in
part, based on consumer complaints to dealers, who served as

sufficient to avoid dismissal at this stage.

Finally, the Court will further decline to dismiss the breach-of-express-warranty claim as it pertains to Francis and Vassel.  Though it recognizes that the four-year statute of limitations of 810 Ill. Comp. Stat. 5/2-725 and 13 Pa. Cons. Stat. § 2725 began to run at the time their vehicles were tendered to the original purchasers, see Fleury v. Gen. Motors LLC, No. 1:22-cv-03862, 2023 WL 1450284, at *7 (N.D. Ill. Feb. 1, 2023); Webb v. Volvo Cars of N.A., LLC, No. 13-2394, 2018 WL 1470470, at *8  (E.D. Pa. Mar. 26, 2018) (discussing breach of implied warranty), and may infer that the statutes of limitations expired prior to Vassel's October 2020 purchase of her 2012 Audi Q5 and Francis's August 2020 purchase of her 2012 Audi A4, (ECF 45 at ¶¶ 57, 131), the Court declines to rely on Pritzl's declaration at the dismissal stage, see Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (noting that courts within the Third Circuit may consider a statute-of-limitations defense only if it is "apparent on the face of the complaint" (quoting Robinson v. Johnson, 313 F.3d 128, 134-35 (3d Cir. 2002)).

To the extent that the Court does not dismiss the above breach-of-express-warranty claims, and with respect to Count 4

agents for the purpose of vehicle repairs).

pertaining to breach of express warranty pursuant to Cal. Com. Code §§ 2313 and 10210, it will decline VGA's invitation to dismiss based on the new vehicle limited warranties' ("NVLWs") limitation to defects in material and workmanship.  (ECF 53-1 at 9-11).  At minimum, Plaintiffs have pled that pistons, piston rings, or piston heads fail to seat properly and cannot withstand heat and pressure, leading to fracturing.  (ECR 45 at ¶¶ 186-88).  As it has done previously, the Court will "refuse[] to apply a distinction between a defect in design and a defect in materials or workmanship at the pleadings stage of litigation."  See Powell, 502 F. Supp. 3d at 883 (quoting In re Volkswagen Timing Chain Prod. Liab. Litig., No. 16-2765, 2017 WL 1902160, at *12 (D.N.J. May 8, 2017)).

### 2. Implied Warranty Claims (Counts 2, 6,[6] 12, 14, 18, 19, "4,"[7] 28, 31, 34)

VGA asserts similar timeliness challenges to Plaintiffs' implied-warranty claims.  (ECF 53-1 at 20-23).  VGA further contends that class vehicles were merchantable at the time of sale and that that several of the implied-warranty claims fail

---

[6] VGA does not reference Count 6, Davis's claim of the implied warranty of merchantability, in its timeliness argument and it is only included VGA's challenges as to privity.  Thus the Court only considers Count 6 as to VGA's allegation of lack of privity.

[7] As referenced above, this second Count 4, claiming breach of the implied warranty of merchantability under New Jersey law, appears between Counts 24 and Count 25 in the CAC.

based on the express language of the NVLWs and lack of privity. (Id. at 23-31).  The Court agrees in part.

The Court holds that the implied-warranty claims of Garden, Gonzalez,[8] Hensley, and Lowegard must fail as they are untimely for substantially the same reasons as noted above – the CAC indicates that they did not bring their class vehicles in until after the statutes of limitations expired and general claims of omission will not suffice to toll the statutes of limitations. See Drobnak, 561 F.3d at 786 (Minnesota law); Adams, 395 F. Supp. 3d at 850; Coba v. Ford Motor Co., No. 12-1622, 2013 WL 244687, at *12 (D.N.J. Jan. 22, 2013) (dismissing an implied-warranty claim as untimely because the complaint was filed more than four years after purchase, plaintiffs failed to cite a specific instance of active concealment or disclosure, and there was no duty to disclose on the part of the manufacturer); Goldstein v. United Lift Serv. Co., Inc., No. 09-826, 2010 WL 4236932, at *4-5 (E.D. Pa. Oct. 25, 2010) (recognizing express extension pursuant to 13 Pa. Cons. Stat. § 2725(b) and the "repair doctrine" in which "repairs were attempted;

---

[8] Count 25 of the CAC brings a claim under the Magnuson-Moss Warranty Act ("MMWA") on behalf of Gonzalez and the New Jersey sub-class.  The MMWA claim is derivative of state-law warranty claims and the Court dismisses Count 25 because it has dismissed Gonzalez's underlying state-law claims.  See Flynn-Murphy v. Jaguar Land Rover N. Am., LLC, No. 20-cv-14464, 2021 WL 5448716, at *7 (D.N.J. Nov. 19, 2021).

representations were made that the repairs would cure the defects; and the complaining party relied upon such representations" as the two exceptions that toll or extend the statute of limitations under Pennsylvania law (quoting Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc., L.P., 842 A.2d 334, 344 n.8 (Pa. 2004))).

Similarly, the statute of limitations for the Song-Beverly Act is set out by Section 2725 of California's Uniform Commercial Code, MacDonald v. Ford Motor Co., 37 F. Supp. 3d 1087, 1100 (N.D. Cal. Mar. 31, 2014), which – like the statutes discussed above – sets a four-year statute of limitations from the date of accrual and states that the accrual occurs for warranty claims when delivery is made except when the warranty explicitly extends to future performance, Cal. Com. Code § 2725(1)-(2).  The CAC states that Rieger purchased a certified pre-owned 2015 Audi A4 on or about August 18, 2016 and took it to a dealership on or about October 10, 2020 following a check-engine light indicating cylinder misfire.  (ECF 45 at ¶¶ 18, 23).  California courts have concluded that the Uniform Commercial Code's future-performance exception does not apply to implied-warranty claims, see Nguyen v. Nissan N. Am., Inc., 487 F. Supp. 3d 845, 855-56 (N.D. Cal. Sept. 13, 2020) (collecting cases), and for allegedly latent defects, breach occurs at purchase, see In re ZF-TRW Airbag Control Units Prods. Liab.

Litig., 601 F. Supp. 3d 625, 810-11 (C.D. Cal. Feb. 9, 2022);
MacDonald, 37 F. Supp. 3d at 1101-02.  The Court therefore
concludes that Plaintiffs' Song-Beverly claim is untimely.

The Court will not, however, dismiss the implied-warranty
claims of Francis and Vassel – though it acknowledges that those
claims may not ultimately be sustainable – due to its above-
stated disinclination to rely on the declaration of Pritzl.  See
Schmidt, 770 F.3d at 249.  The Gozons' claim may also proceed as
they have pled that they were first placed on notice of the
alleged defect in May 2019.  See Herrera, 2010 WL 3385336, at
*1-2 (discussing the discovery rule's applicability to express
and implied warranties in Nevada).

The Court will also allow Bradley's implied-warranty claim
to proceed on the basis that he noticed excessive oil
consumption during the statutory period and was allegedly
informed that such consumption was normal.  (ECF 45 at ¶¶ 155,
160-61); see also cf. Duncan v. Nissan N. Am., Inc., 305 F.
Supp. 3d 311, 320-21 (D. Mass. Mar. 29, 2018) (discussing the
implied warranty of merchantability under multiple states' laws,
including Oregon).

Burnaugh's claim is preserved for similar reasons.  The CAC
states that Burnaugh purchased her class vehicle in May 2012,
replaced her timing cover gaskets in February 2020, was advised
of low-oil levels during a vehicle check in December 2020, and

finally was made aware of a potential piston issue in April 2021.  (ECF 45 at ¶¶ 70, 74-77).  VGA asserts that Plaintiffs cannot maintain simultaneous claims for redhibition and implied warranty under Articles 2520 and 2524 of Louisiana's Civil Code, only the redhibition claim may proceed, and the redhibition claim is untimely.  (ECF 53-1 at 22-23).

An action for redhibition against a seller who did not know of a defect is the earlier of two years from the date of delivery or one year after discovery of the defect or, if the seller knew or is presumed to have known of the defect, the earlier of ten years from the contract of sale or one year of the discovery of the defect.  La. Civ. Code Ann. art. 2534(A)-(B).  Constructive knowledge for the purposes of Article 2534 is "whatever notice is enough to excite attention and put the injured party on guard or call for inquiry."  Atl. Specialty Ins. Co. v. Caterpillar Inc., No. 20-1863, 2021 WL 4845771, at *6 (E.D. La. Oct. 18, 2021) (quoting Hogg v. Chevron USA, Inc., 45 So. 3d 991, 997 (La. 2010)).  The Court finds that Plaintiffs' have adequately pled knowledge and will further decline to decide at the dismissal stage whether Burnaugh was placed on notice, as VGA asserts, at the time of the February 2020 repairs.  Because the Court does not conclude here that the redhibition claim is untimely, Plaintiffs may maintain claims under both Articles 2520 and 2524 at this stage.  See Cassidy v.

Ford Motor Co., No. 15-2483, 2016 WL 687621, at *3-4 (E.D. La. Feb. 19, 2016).

To the extent that the Court has not dismissed the implied-warranty claims of Vassel, Davis, Bradley, or the Gozons above, it will not do so based on VGA's privity argument.  In their opposition, Plaintiffs argue that Oregon and Nevada do not require vertical privity for end-product users, an exception to privity applies when a plaintiff relies on the advertisements or labeling of a manufacturer, and that privity may be established via an agency relationship pursuant to Florida law.  (ECF 55 at 24-26).

The Court notes that courts in Nevada have found that privity of contract is required for implied-warranty claims. See Claridge v. I-Flow Corp., No. 2:18-cv-01654, 2019 WL 4139433, at *3 (D. Nev. Aug. 30, 2019) (collecting cases).  It also acknowledges the factual differences raised by VGA with respect to some of the cases relied on by Plaintiffs.  For instance, Smith v. Ethicon involved a physical injury caused by a medical device.  See No. 3:20-cv-00851, 2021 WL 3578681, at *8 (D. Or. May 13, 2021), report and recommendation adopted, No. 3:20-cv-00851, 2021 WL 3575099 (D. Or. Aug. 12, 2021).  Further, the facts here are in some ways less detailed than those relied upon by the court in In re Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation.  See 155 F. Supp.

35

3d 772, 807 (N.D. Ill. Jan. 7, 2016) (discussing the laws of multiple states, including Illinois and Florida, and marketing representations including that the product "would last ten to twelve years").  Persuasively, a court within the Third Circuit has rejected arguments under Florida law that agency is created through agreements between manufacturers and dealerships authorizing the latter to service and repair vehicles under warranties.  See Diaz v. FCA US LLC, No. 21-cv-00906, 2022 WL 4016744, at *41-45 (D. Del. Sept. 2, 2022) (finding no privity when the plaintiffs failed to describe representations made by dealership representatives, establish that dealerships were agents, or show that the third-party-beneficiary exception applied).

Acknowledging these shortcomings, the Court is reminded that "[t]he fact-intensive nature of privity frequently renders dismissal at the pleading stage premature."  In re AZEK Bldg. Prods., Inc., Mktg. and Sales Pracs. Litig., 82 F. Supp. 3d 608, 618 (D.N.J. Jan. 30, 2015)(citing Dewey, 558 F. Supp. 2d at 524 n.17).  In light of the complexity of this issue and the fact that – due to the other arguments raised by both parties in the briefing – a mere few pages have been dedicated analyzing the laws of four states, the Court will not dismiss based on VGA's privity argument.

The Court will similarly deny VGA's motion based on the

express terms of the NVLWs, which Plaintiffs challenge on unconscionability grounds.  Though, as will be discussed below, the Court is not satisfied that Plaintiffs have demonstrated that they were without meaningful choice in their purchases, the Court also notes that the parties' briefing on this issue is minimal and fails to recognize the substantive differences between the states' laws.  See Jackson v. Payday Fin., LLC, 764 F.3d 765, 777 (7th Cir. 2014) ("Under Illinois law, a contractual provision may be unconscionable on either procedural or substantive grounds." (citing Razor v. Hyundai Motor Am., 854 N.E. 2d 607, 622 (Ill. 2006))); Axalta Coating Sys., LLC v. Midwest II, Inc., 217 F. Supp. 3d 813, 819 (E.D. Pa. Nov. 9, 2016) ("To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable." (quoting Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012))). Louisiana has not even codified Article 2 of the Uniform Commercial Code pertaining to unconscionability. See 1 Consumer Law Sales Practices and Credit Regulation § 179 n.3 (2022); see also Melancon v. Countrywide Bank, No. 10-1723, 2011 WL 692051, at *10 (E.D. La. Feb. 18, 2011) ("Louisiana . . . has not adopted Article 2 of the Uniform Commercial Code.").

Given the need for further clarity, the Court will deny VGA's motion to the extent that it relies on the express terms

of the NVLWs to rebut Plaintiffs' implied-warranty claims.

**E. Fraud Claims**

Finally, VGA attacks Plaintiffs' statutory and common-law fraud claims on multiple grounds.  Generally, VGA asserts that Plaintiffs have not alleged actionable affirmative misrepresentations, VGA's pre-sale knowledge of the alleged defect, reliance or causation, or – in the case of Plaintiffs' common-law fraudulent omission claim – a duty to disclose.  (ECF 53-1 at 31-47).  VGA also makes state-specific challenges to the claims of several plaintiffs.  (Id. at 48-56).  The Court will first address the state-specific challenges.

**1. State-Specific Challenges**

**a. Chapman's Claims Based in Georgia Law (Counts 7, 8, and 9)**

VGA, citing the Georgia Fair Business Practices Act's ("GFBPA") prohibition on class actions, argues that Count 7 must be dismissed to the extent it asserts claims on behalf of a class.  (Id. at 51-52 (citing Ga. Code Ann. § 10-9-399(a))).  Count 8, brought under the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") must be dismissed, according to VGA, because the GUDTPA only provides for injunctive relief and Chapman lacks Article III standing to seek injunctive relief.  (Id. at 52).  Finally, Chapman's unjust enrichment claim fails, according to VGA, among other reasons due to her failure to plead a lack of an alternative remedy at law, the fact that the

parties' rights are governed by contract, and the duplicative
nature of the allegations underlying her unjust enrichment and
fraud claims.  (Id. at 54-55).

　　　With respect to Count 8, the GUDTPA provides that a "person
likely to be damaged by a deceptive trade practice of another
may be granted an injunction against it under the principles of
equity and on terms that the court considers reasonable."  Ga.
Code Ann. § 10-1-373(a).  "[I]njunctive relief is the only
remedy permitted by the [G]UDTPA."  Catrett v. Landmark Dodge,
Inc., 560 S.E. 2d 101, 106 (Ga. Ct. App. 2002).  Though
Plaintiffs' rebuttal, (ECF 55 at 49-50), that monetary relief in
the form of punitive damages is available, see Schramm v.
Exactech, Inc., No. 2:17-CV-200, 2018 WL 11448995, at *4 (N.D.
Ga. Feb. 20, 2018) (noting that costs, attorney's fees, and
punitive damages are contingent upon a successful injunction
claim but ultimately dismissing the plaintiff's GUDTPA claim),
the Court concludes that Chapman's GUDTPA claim must be
dismissed based upon the Court's conclusions regarding standing
for injunctive relief above, see Bolinger v. First Multiple
Listing Serv., Inc., 838 F. Supp. 2d 1340, 1364 (N.D. Ga. Jan.
18, 2012) ("To have standing to seek injunctive relief under the
[G]UDTPA, a plaintiff must show, under its plain language, that
she is 'likely to be damaged' in the future by some deceptive
trade practice of the defendant." (citing Silverstein v. Procter

& Gamble Mfg. Co., No. CV 108-003, 2008 WL 4889677, at *4 (S.D. Ga. Nov. 12, 2008))).

The Court also finds that Chapman's unjust enrichment claim must be dismissed given the existence of the NVLWs.  See Clark v. Aaron's, Inc., 914 F. Supp. 2d 1301, 1310 (N.D. Ga. Sept. 26, 2012) ("[C]ourts have held that a plaintiff may not plead an unjust enrichment claim in the alternative to a claim for breach of contract when it is undisputed (or when the court has found) that a valid contract exists." (citing Tidikis v. Network for Med. Commc'ns & Research, LLC, 619 S.E. 2d 481, 485 (Ga. Ct. App. 2005))); see also Pinon v. Daimler AG, No. 1:18-CV-3984, 2019 WL 11648560, at *13 (N.D. Ga. Nov. 4, 2019) (concluding that the NVLWs governed the dispute); In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig., 22 F. Supp. 3d 1322, 1330-31 (N.D. Ga. May 12, 2014) (concluding that the plaintiffs' argument that they may assert an unjust enrichment claim in the alternative misunderstood defendant's argument that a plausible contract claim did not exist rather than the existence of valid contracts).

Plaintiffs contend that even though duplicative recovery is unavailable, alternative pleading is permissible and seeks to distinguish cases such as Pinon by emphasizing that the validity of the relevant contract is at issue in this case due to its alleged unconscionability.  (ECF 55 at 51-52).  The Court notes,

however, that the portions of the CAC cited by Plaintiffs appear in other portions of the CAC – not Chapman's claims – and even if the Court were to apply those same general allegations to Chapman's unjust enrichment claim – the Court finds that Plaintiffs' vague assertions of disparity in bargaining power and lack of meaningful choice as to the warranty's time restrictions are inadequate here.  See Clark, 914 F. Supp. 2d at 1310-11 (recognizing that unconscionability under Georgia law requires procedural and substantive unconscionability and procedural unconscionability considers "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." (quoting NEC Techs., Inc. v. Nelson, 478 S.E. 2d 769, 773 n.6 (Ga. 1996))); see also Brown v. Hyundai Motor Am., No. 18-11249, 2019 WL 4126710, at *4 (D.N.J. Aug. 30, 2019) (interpreting Georgia law and finding that the plaintiff failed to allege that the warranty at issue was unconscionable based on allegations that the defendants knowingly sold a defective product and conclusory statements of lack of meaningful choice and bargaining power).

Finally, the Court will decline to dismiss Count 7 based on the GFBPA's prohibition on actions brought in a representative

capacity.  Resolution of the parties' arguments rely on the
interplay between the GFBPA and Federal Rule of Civil Procedure
23 governing class actions.  As another Court in this District
has concluded, this is a "thorny issue," that has been
accompanied with minimal briefing by the parties given the
litany of other claims at issue.  See Opheim v. Volkswagen
Aktiengesellschaft, No. 20-02483, 2021 WL 2621689, at *17
(D.N.J. June 25, 2021).  Accordingly, the Court finds dismissal
at this stage to be inappropriate.  See id. (interpreting
Colorado, Georgia, and Ohio law and finding further development
to be appropriate at the class-certification stage).

### b. Burnaugh's Claims Under Louisiana Law (Counts 13 and 35)

Next, VGA claims that Burnaugh's claim under the Louisiana
Products Liability Act ("LPLA") must be dismissed for failure to
sufficiently allege that her vehicle is unreasonably dangerous
or personal-injury or property damage.  (ECF 53-1 at 52-53).
Because the LPLA provides an exclusive remedy – other than an
action for redhibition – VGA further argues that Count 35
alleging fraud by concealment, omission or in the inducement
must be dismissed as to Burnaugh.  (Id. at 53-54).

The Court recognizes that, to succeed in an LPLA action, a
plaintiff must establish that "(1) defendant manufactured the
product at issue; (2) plaintiff's injury was proximately caused
by a characteristic of the product; (3) this characteristic made

42

the product unreasonably dangerous; and (4) plaintiff's injury arose from a reasonably anticipated use of the product by plaintiff or someone else." Couturier v. Bard Peripheral Vascular, Inc., 548 F. Supp. 3d 596, 606 (E.D. La. July 9, 2021) (citing Stewart v. Cap. Safety USA, 867 F.3d 517, 520 (5th Cir. 2017)).  The LPLA defines "Damage" to "include[] damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled 'Redhibition,' does not allow recovery for such damage or economic loss." La. Stat. Ann. § 2800.53(5).  "[G]enerally, economic loss claims by buyers fall under redhibition, and personal injury claims fall under the LPLA." TruSouth Oil, LLC v. Burlington Ins. Co., Nos. 11-cv-0493 & 11-cv-1256, 2012 WL 4483465, at *5 (W.D. La. Sept. 28, 2012).

Further, "[f]raud claims cannot be used to circumvent the LPLA." See Scott v. Am. Tobacco Co., Inc., 949 So. 2d 1266, 1273-74 (La. Ct. App. 2007) (concluding that a jury's finding that cigarettes were not of defective design under the LPLA was "case-dispositive" even upon its finding that defendants engaged in fraudulent activity).

Here, as VGA notes, Plaintiffs do not address VGA's challenges in their opposition.  (ECF 59 at 18).  This Court has rejected the notion that a failure to oppose necessitates ruling

43

in favor of the movant, see Marina Dist. Dev. Co. LLC v. AC Ocean Walk LLC, No. 1:20-cv-15719, 2021 WL 1526552, at *4 (D.N.J. Apr. 19, 2021); however, the Court finds substantive merit in VGA's undisputed arguments and will grant the motion as to Burnaugh's claims.

### c. Garden's Claims Under Minnesota Law (Counts 15 and 16)

VGA next seeks to dismiss Garden's claims under the Minnesota Prevention of Consumer Fraud Act ("MPCFA") and Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA") for failure to bring this action within the six-year statute of limitations and further contends that the MUDTPA does not provide a private right to action for damages. (ECF 53-1 at 50). Plaintiffs rebut that the statute of limitations has been tolled due to fraudulent concealment of "the very existence of the facts which established the cause of action" by concealing the alleged defect from Plaintiffs, only informing dealerships of the defect and not Plaintiffs or the class, informing customers that their vehicles were operating properly, masking the defect with repairs, and refusing warranty coverage. (ECF 55 at 46).

The six-year statute of limitations for MPCFA and MUDTPA claims begins to run on the date of sale. Thunander v. Uponor, Inc., 887 F. Supp. 2d 850, 875-76 (D. Minn. Aug. 14, 2012). To find fraudulent concealment, "[t]here must be an affirmative

44

concealment of a cause of action, and absent a fiduciary
relationship, mere silence is not sufficient." Id. at 867
(quoting Appletree Square 1 Ltd. P'shio v. W.R. Grace & Co., 815
F. Supp. 1266, 1275 (D. Minn. Feb. 25, 1993)).

The CAC alleges that Garden purchased his class vehicle on
or about April 16, 2014 and took it to an Audi dealership on or
about October 14, 2019 after its low-oil light began to
illuminate every 500 to 600 miles, but that the dealership did
not attempt to repair the engine and, instead, performed repairs
to the CV boot and steering shaft.  (ECF 45 at ¶¶ 84, 88).
Garden next took the vehicle to the dealership due to excessive
oil consumption on May 30, 2020, after the statute of
limitations had run, where the car was diagnosed with an oil
leak and Garden chose to take it to an independent mechanic for
repairs.  (Id. at ¶ 89).  Garden brought the class vehicle to
the independent mechanic again on or about July 29, 2020 and yet
again on or about April 21, 2021 and June 8, 2021, when
defective pistons were determined to be a possible cause of the
excessive oil consumption and Garden was ultimately given a
quote of $8,020.94 to repair the car.  (Id. at ¶¶ 90-92).

Beyond these specific allegations, Counts 15 and 16 of the
CAC generally allege concealment of the piston defect and a duty
owed to Garden and the Minnesota sub-class members to disclose
the entire truth.  (Id. at ¶¶ 540-42, 549, 551, 563-66, 572-74).

45

The CAC allegations relied on in Plaintiffs' opposition are not specific to Garden or the claims made pursuant to the MPCFA or MUDTPA, but rather are alleged to apply to all Plaintiffs and class and sub-class members.  (Id. at ¶¶ 6, 255-6, 258; ECF 55 at 46).  The Court holds that these general allegations – reiterated throughout the CAC with respect to other Plaintiffs, sub-classes, and causes of action – and the allegation that the dealership's failed attempt to repair the engine of Garden's class vehicle on or about October 14, 2019 do not sufficiently support fraudulent concealment as to toll the statute of limitations.  See Thunander, 887 F. Supp. 2d at 868 (finding that the plaintiffs failed to adequately plead fraudulent concealment when they relied on the same general allegations supporting their substantive claims).  Counts 15 and 16 are therefore dismissed as untimely.

### d. Gonzalez's Claims Under New Jersey Law (Counts 22 and 23)

Gonzalez's New Jersey Consumer Fraud Act ("NJCFA") and New Jersey Truth-in-Consumer, Contract, Warranty and Notice Act ("NJTCCWNA") claims must be dismissed, according to VGA, for failure to establish an ascertainable loss of an illegal contractual term or provision, respectively.  (ECF 53-1 at 48-50).

A prima facie claim under the NJCFA requires "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff;

46

and (3) a causal relationship between the unlawful conduct and
the ascertainable loss." Romero v. Gold Star Distrib., LLC, 257
A.3d 1192, 1209 (N.J. Super. Ct. App. Div. 2021) (quoting
Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009)).
"Ascertainable loss" refers to "'either an out-of-pocket loss or
a demonstration of loss in value' that is 'quantifiable or
measurable.'" MacDonald v. Cashcall, Inc., 333 F.R.D. 331, 350-
51 (D.N.J. Oct. 31, 2019) (quoting Marcus v. BMW of N. Am., LLC,
687 F.3d 583, 606 (3d Cir. 2012)). Further still, "quantifiable
or measurable" does not require the pleading of an exact dollar
amount, but rather "enough specificity to give defendants notice
of their possible damages." Block v. Seneca Mortg. Servicing,
221 F. Supp. 3d 559, 594-95 (D.N.J. Oct. 31, 2016) (quoting
Giordano v. Saxon Mortg. Servs., Inc., No. 12-7937, 2014 WL
4897190, at *6 (D.N.J. Sept. 30, 2014) and concluding that,
because the damages for the NJCFA were the same as those for the
breach-of-contract claim, the defendants were placed on notice
of the claimed damages). Here, Plaintiffs allege that Gonzalez
was charged approximately $7,500 for repairs. (ECF 45 at ¶
113). The Court finds the CAC therefore sufficiently pleads an
ascertainable loss. See T.J. McDermott Transp. Co., Inc. v.
Cummins, Inc., No. 14-04209, 2015 WL 1119475, at *7 (D.N.J. Mar.
11, 2015).

Having concluded that Plaintiffs allege an ascertainable

loss, the Court will nonetheless dismiss Count 22.  An unlawful practice under the NJCFA may stem from an affirmative act, knowing omission, or regulatory violation.  <u>Romero</u>, 257 A.3d at 1209.  No regulatory violation is pled and the Court notes that, contrary to some of the cases Plaintiffs cite for support of its allegations of affirmative misrepresentations, the CAC does not provide any particulars as to the content of the advertising and promotional materials relied upon.  (ECF 45 at ¶ 111); <u>see also Powell</u>, 502 F. Supp. 3d at 888 (noting that plaintiffs alleged misrepresentations including, specifically, that the defendants' "Eyesight Driver Assist Technology" increased safety and reduces crashes).

To state an omission claim under the NJCFA a "plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment," with the heightened pleading standard of Federal Rule of Civil Procedure 9(b) permitting essential elements such as intent to be alleged generally.  <u>Harnish v. Widener Univ. Sch. of L.</u>, 931 F. Supp. 2d 641, 652 (D.N.J. Mar. 20, 2013) (quoting <u>Judge v. Blackfin Yacht Corp.</u>, 815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2003)).  New Jersey courts have concluded, however, that there is no duty to disclose in an arms-length transaction such as the ones at issue here merely based upon superior knowledge of a defect.  <u>See In re Subaru Battery Drain</u>

48

Prods. Liab. Litig., 2021 WL 1207791, at *25 (collecting cases).
Plaintiffs do not provide for any such duty under the NJCFA and
thus the Court will dismiss the claim.

Count 23, Plaintiffs' NJTCCWNA claim, must fail, too.  The
NJTCCWNA requires (1) the plaintiff to be a consumer within the
definition of the statute, (2) the defendant to be a seller, (3)
the defendant to offer a contract or give or display a written
notice or sign, and that (4) "the contract, notice or sign
includes a provision that 'violate[s] any legal right of a
consumer' or responsibility of a seller."  Hite v. Lush Internet
Inc., 244 F. Supp. 3d 444, 453 (D.N.J. Mar. 22, 2017)
(alteration in original) (quoting Mattson v. Aetna Life Ins.
Co., 124 F. Supp. 3d 381, 392–93 (D.N.J. Aug. 31, 2015)); see
also Kent Motor Cars, Inc. v. Reynolds and Reynolds, Co., 25
A.3d 1027, 1044 (N.J. 2011) ("The purpose of the [NJ]TCCWNA,
N.J.S.A. 56:12–15, is to prevent deceptive practices in consumer
contracts by prohibiting the use of illegal terms or warranties
in consumer contracts.").

Here, VGA asserts – and the Court agrees – that Plaintiffs
do not identify a violative contractual provision.  (ECF 53-1 at
49-50).  Plaintiffs' contention that the NJCFA claim supports
the violation of a legal right, (ECF 55 at 45), does not address
this substantive deficiency.  Therefore, Count 23 must be
dismissed.

**2. General Challenges**

    **a. California (Counts 1 and 3)**

VGA challenges two California statutory causes of action brought by Rieger on behalf of subclasses.  First, there is the CCLRA.  Plaintiffs alleges in the CAC that the CCLRA was violated by the failure to disclose and concealment of the piston defect and the misrepresentation that class vehicles and their engines were of a particular standard or quality that they were not.  (ECF 45 at ¶ 287); see also Cal. Civ. Code § 1770(a)(5), (7) (listing as among unlawful acts or practices "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have  . . . ." and "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another").  "These provisions of the [C]CLRA proscribe both fraudulent omissions and fraudulent affirmative misrepresentations."  Herron v. Best Buy Co. Inc., 924 F. Supp. 2d 1161, 1169 (E.D. Cal. Feb. 14, 2013).

In their opposition, Plaintiffs assert that affirmative misrepresentations were made about safety, reliability, quality, and similar characteristics of class vehicles via advertisements, brochures, and other materials that Plaintiffs viewed prior to their purchases.  (ECF 55 at 30-32).  The CAC

does not, however, allege any specific misrepresentations made.
See Myers v. Starbucks Corp., 536 F. Supp. 3d 657, 663 (C.D.
Cal. May 5, 2021) (noting that affirmative misrepresentations in
violation of the CCLRA must satisfy the heightened pleading
requirements of Federal Rule of Civil Procedure 9(b)); Stickrath
v. Globalstar, Inc., 527 F. Supp. 2d 992, 998 (N.D. Cal. Sept.
25, 2007) (finding that the plaintiffs' affirmative-
misrepresentation claims failed to satisfy Rule 9(b) when they
specified just one set of comments from the defendant's website,
but not when they appeared).

    "A fraudulent omission is actionable under the [C]CLRA if
the omission is 'of a representation actually made by the
defendant, or an omission of a fact the defendant was obliged to
disclose.'"  Mosqueda v. Am. Honda Motor Co., Inc., 443 F. Supp.
3d 1115, 1130 (C.D. Cal. Mar. 6, 2020) (quoting In re Toyota
Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod.
Liab. Litig., 754 F. Supp. 2d 1145, 1172-73 (C.D. Cal. Nov. 30,
2010)).  A duty to disclose arises if the defendant has a
fiduciary relationship with the plaintiff, had exclusive
knowledge of material facts unknown to the plaintiff, actively
concealed a material fact from the plaintiff, or made a partial
representation but suppressed additional material facts.  Id.

    "An omission is material if a reasonable consumer 'would
attach importance to its existence or nonexistence in

determining his choice of action in the transaction in question.'" Daniel v. Ford Motor Co., 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting In re Tobacco II Cases, 207 P.3d 20, 39 (Cal. 2009)).  "Actual reliance is presumed (or at least inferred) when the omission is material." Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 919 (C.D. Cal. Aug. 11, 2010) (citing In re Tobacco II Cases, 207 P.3d at 39)).  Here, Plaintiffs have pled that the alleged defect leads to excessive oil consumption, engine knock, preignition, and related issues and that they would not have purchased their vehicles or would have paid less for them if they were made aware of the alleged defect.  (ECF 45 ¶¶ 16, 191).  The Court finds that Plaintiffs have sufficiently pled that VGA omitted facts that would have been material to Plaintiffs and therefore reliance may be presumed.  See Carrillo v. BMW of N. Am., LLC, No. CV 19-8702, 2020 WL 12028896, at *5 (C.D. Cal. June 8, 2020) (concluding that the alleged engine defect – which was pled to have caused "catastrophic engine failure that can result in stalling events while the vehicle is being operated" – would have been material to a reasonable consumer); Becerra v. Gen. Motors LLC, 241 F. Supp. 3d 1094, 1110 (S.D. Cal. Mar. 10, 2017) (finding that an alleged headlight defect posed a safety risk that the plaintiffs would have found material and that the defendants' knowledge of the defect was adequately pled by citing customer complaints and

bulletins warranting notification under the TREAD Act.).
Therefore, the Court finds that Count 1 of the CAC should not be
dismissed.[9]

Plaintiffs have also brought a claim – Count 3 – under the
CUCL, alleging that VGA knew class vehicles were defectively
designed or manufactured, were of a relatively short lifespan,
and unsuitable for their intended use and knowingly and
intentionally concealed material facts despite a duty not to do
so.  (ECF 45 at ¶¶ 318-21).  To allege a violation of the CUCL
based on fraudulent misrepresentation or omission, "a plaintiff
must plead (1) misrepresentation or omission, (2) reliance, and
(3) damages."  Hammerling v. Google LLC, 615 F. Supp. 3d 1069,
1081 (N.D. Cal. July 18, 2022).  As with the CCLRA, there is a
duty to disclose under the CUCL when the defendant had exclusive
knowledge over a material fact unknown to plaintiff, see Johnson
v. Nissan N. Am., Inc., 272 F. Supp. 3d 1168, 1182 (N.D. Cal.
Aug. 29, 2017), and actual reliance may be inferred when the
omission is material, Ehrlich, 801 F. Supp. 2d at 919.  VGA's
motion will therefore similarly be denied as to Count 3.

---

[9] In its supporting brief, VGA challenges the CAC based on the
relative few complaints cited and the small portion of those
that predated any named Plaintiff's purchase of a class vehicle.
(ECF 53-1 at 36-38).  The CAC specifically states, however, that
the individual complaints included were not exhaustive.  (ECF 45
at ¶ 207).  The Court further notes that the Federal Rules of
Civil Procedure do not require knowledge to be pled with
particularity.  See Fed. R. Civ. P. 9(b).

### b. Florida (Count 5)

Count 5 of the CAC alleges violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. Ann. § 501.204(1). A claim under the FDUPTA requires a deceptive or unfair practice, causation, and actual damages. YMD Recs., LLC v. Ultra Enters., Inc., 361 F. Supp. 3d 1258, 1267 (S.D. Fla. Feb. 15, 2019).

Here, Plaintiffs allege violation of the FDUPTA by failing to disclose and active concealment of the piston defect via presentation as a reputable manufacturer that stood behind its products. (ECF 45 at ¶¶ 353-54). Though VGA attacks the FDUPTA claim for the same failure to allege affirmative misrepresentations, knowledge, or reliance as it does Plaintiffs' other statutory claims, the Court finds support for not requiring the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) to Plaintiffs' FDUPTA claim. See Weiss v. Gen. Motors LLC, 418 F. Supp. 3d 1173, 1185 (S.D. Fla. Oct. 22, 2019) (concluding that the FDUTPA seeks to remedy conduct distinct from common-law fraud and that the requirements of Rule 9(b) do not apply to FDUTPA claims). The Court further notes that a defendant's knowledge for a FDUTPA claim has been

sufficiently pled by citing NHTSA and other online complaints,
see id., and that a plaintiff's actual reliance on alleged
conduct is not required, see Lewis, 530 F. Supp. 3d at 1234
("[The] FDUTPA does not require a plaintiff to prove actual
reliance on the alleged conduct." (quoting Cold Stone Creamery,
Inc. v. Lenora Foods I, LLC, 332 F. App'x 565, 567 (11th Cir.
2009))).  For these reasons, the Court declines to dismiss Count
5 at this stage.

### c. Illinois (Count 10)

Plaintiffs bring a claim under the Illinois Consumer Fraud
and Deceptive Business Practices Act ("ICFA") as Count 10 of the
CAC.  Plaintiffs allege that VGA engaged in unfair practices in
violation of the act by failing to disclose and actively
concealing the piston defect.  (ECF 45 at ¶¶ 447-49).  An ICFA
violation requires "(1) an unfair or deceptive act or practice
by defendant; (2) defendant's intent that plaintiff rely on or
be treated unfairly by the act or practice; and (3) that the
deception occurred in the course of conduct involving trade and
commerce."  Rodriguez v. Ford Motor Co., 596 F. Supp. 3d 1050,
1056 (N.D. Ill. Mar. 31, 2022) (quoting Bartolotta v. Dunkin'
Brands, No. 16 CV 4137, 2016 WL 7104290, at *5 (N.D. Ill. Dec.
6, 2016)).  A viable claim under the ICFA may be asserted by
alleging the concealment or omission of a material fact.  Gavin
v. AT&T Corp., 543 F. Supp. 2d 885, 909 (N.D. Ill. Feb. 12,

2008).

The Court declines to dismiss Count 10 at this time.  A
plaintiff may survive a motion to dismiss by alleging a material
omission and that they would have acted differently had they
been aware of the omitted information.  Id.  Further, pleading a
common-law duty to disclose is not necessary for ICFA claims,
see McMahan v. Deutsche Bank AG, 938 F. Supp. 2d 795, 808 (N.D.
Ill. Apr. 5, 2013), and a plaintiff need not demonstrate their
actual reliance or the defendant's bad faith, see Lipinski v.
Martin J. Kelly Oldsmobile, Inc., 759 N.E. 2d 66, 70 (Ill. App.
Ct. 2001).  The Court finds that Plaintiffs have sufficiently
alleged an omission of information that, if they had known, they
would have acted differently.  Therefore, VGA's motion to
dismiss is denied as to Count 10.

### d. Nevada (Count 19)

Count 19 of the CAC brings a claim under the Nevada
Deceptive Trade Practices Act ("NDTPA").  The NDTPA defines
deceptive trade practice as including knowingly making false
representation as to the characteristics, ingredients, uses,
benefits, alterations, or quantities of a good; representing
that goods are of a particular standard, quality, or grade when
it is known that they are of another standard, quality or grade;
advertising goods with an intent to not sell or lease them as
advertised; or knowingly making another false representation in

56

a transaction.  Nev. Rev. Stat. 598.0915(5), (7), (9), (15).

Nev. Rev. Stat. 41.600 provides that a victim of consumer fraud

under the NDTPA has standing to bring an action.  See Nev. Rev.

Stat.  41.600(e); Prescott v. Slide Fire Sols., LP, 410 F. Supp.

3d 1123, 1145 (D. Nev. Sept. 26, 2019).

Plaintiffs allege unfair and deceptive practices by failing

to disclose and actively concealing the piston defect, marketing

class vehicles as safe and of high quality, and representations

that VGA is a reputable manufacturer.  (ECF 45 at ¶¶ 619-21).

As the Court has noted throughout this opinion, Plaintiffs do

not allege any specific representations made in advertisements,

websites, and other materials.  (See id. at ¶ 100); see also

Mallory v. McCarthy & Holthus, LLP, No. 2:14-CV-00396, 2015 WL

2185413, at *3-4 (D. Nev. May 11, 2015) (finding that the

plaintiffs did not state a claim under the NDTPA, in part, due

to their failure to specify any affirmative misrepresentation).

Further, to the extent that Plaintiffs allege a violation of the

NDTPA based on omission, a court in this District has concluded

that Nevada law requires a duty to disclose that cannot be met

by a "straightforward vendor-vendee relationship."  See Cohen v.

Subaru of Am. Inc., No. 1:20-cv-08442, 2022 WL 714795, at *26

(D.N.J. Mar. 10, 2022) (quoting Nev. Power Co. v. Monsanto Co.,

891 F. Supp. 1406, 1417 (D. Nev. 1995)).  The Court therefore

finds dismissal of Count 19 to be appropriate.

### e. Pennsylvania (Count 26)

Count 26 of the CAC brings a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"). Plaintiffs allege that the PUTPCPL was violated via the failure to disclose and active concealment of the piston defect, promoting products it knew were defective, and by VGA presenting itself as a reputable manufacturer, among other claims. (ECF 45 at ¶¶ 767-772).

The PUTPCPL defines "[u]nfair methods of competition" and "unfair or deceptive acts or practices" to include the representation of goods and services as having characteristics and qualities they do not have, representing goods as being of a particular standard or quality when they are of another, and advertising goods with the intent to not sell them as advertised.  73 Pa. Cons. Stat. § 201-2(4)(v), (vii), (ix).  It also includes a catch-all provision that includes "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  § 201-2(4)(xxi).  To state a claim under the catch-all provision, a plaintiff must plead that (1) the defendant engaged in deceptive conduct, (2) they justifiably relied on the deceptive conduct, (3) they were damaged by the justifiable reliance and – when allegations pertain to nondisclosure – (4) a duty to disclose by defendant.  See DeSimone v. U.S. Claims Servs., Inc., No. 19-

6150, 2020 WL 2556949, at *2 (E.D. Pa. May 20, 2020).  The Court has found at least some support that there is a duty to disclose under the PUTPCPL when a seller has superior knowledge of a material fact that is unavailable to a consumer and that reliance may be presumed when concealment of an alleged defect would be material in the decision to purchase a car.  See Zwiercan v. Gen. Motors Corp., No. 3235, 2002 WL 31053838, at *4-5 (Pa. Com. Pl. 2002).  The Court will therefore decline to grant VGA's motion as to Count 26.

### f. Texas (Count 29)

Count 29 of the CAC brings a claim under the Texas Deceptive Trade Practices – Consumer Protection Act ("TDTPCPA"). Plaintiffs allege violation of the TDTPCPA by the failure to disclose the alleged piston defect, marketing class vehicles as safe and of high quality, and similar claims.  (ECF 45 at ¶¶ 827-29).

The TDTPCPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code Ann. § 17.46(a).  A failure to disclose may be actionable under the TDTPCPA, see § 17.46(b)(24), and a claim based on failure to disclose is established by "(1) a failure to disclose, (2) which was known at the time of the transaction, (3) which was intended to induce the plaintiff into a transaction, and (4) that the plaintiff otherwise would not have

entered the transaction if the information had been disclosed,"
Franklin v. Apple Inc., 569 F. Supp. 3d 465, 480 (E.D. Tex. Oct.
27, 2021) (citing Hudspeth v. Enter. Life Ins. Co., 358 S.W. 3d
373, 388 (Tex. App. 2011)).  Because a duty to disclose known
material information has been recognized within this District
with respect to the TDTPCPA, see Cohen, 2022 WL 714795, at *29
(citing Washburn v. Sterling McCall Ford, 521 S.W.3d 871, 876
(Tex. App. 2017)), and the Court finds that knowledge has been
sufficiently pled in the CAC, it will deny VGA's request for
dismissal here.

### g. Washington (Count 32)

Plaintiffs allege violation of the Washington Consumer
Protection Act ("WCPA") for Count 32 of the CAC.  VGA violated
the WCPA by failing to disclose and actively concealing the
piston defect, marketing class vehicles as safe and high
quality, and representing itself as a reputable manufacturer,
according to Plaintiffs.  (ECF 45 at ¶¶ 887-89).

The WCPA makes unlawful "[u]nfair methods of competition
and unfair or deceptive acts or practices in the conduct of any
trade or commerce," Wash. Rev. Code Ann. § 19.86.020, and a
claim for damages under the WCPA requires that the plaintiff
show "(1) an unfair or deceptive act or practice; (2) occurring
in the conduct of trade or commerce; (3) which impacts the
public interest; (4) an injury to business or property; and (5)

a causal link between the injury and the deceptive act or practice," Hell Yeah Cycles v. Ohio Sec. Ins. Co., 16 F. Supp. 3d 1224, 1230 (E.D. Wash. Apr. 28, 2014) (citing Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assocs., P.L.L.C., 228 P.3d 1260 (Wash. 2010)).  A WCPA claim may be premised on a material omission, see Garza v. Nat'l R.R. Passenger Corp., 418 F. Supp. 3d 644, 655 (W.D. Wash. Oct. 1, 2019), and the Court finds support that the WCPA demands a "broad duty of disclosure" and recognizes a general duty to disclose when facts are known by the seller and not easily discoverable by the consumer, see In re Carrier IQ, Inc., 78 F. Supp. 3d 1051, 1124 (N.D. Cal. Jan. 21, 2015) (citing Griffith v. Centex Real Estate Corp., 969 P.2d 486, 492 (Wash Ct. App. 1998)).  Further, "[w]hen a plaintiff alleges deception through omission of a material fact, a rebuttable presumption of reliance applies."  See Eng v. Specialized Loan Servicing, 500 P.3d 171, 181 (Wash. Ct. App. 2021) (citing Deegan v. Windermere Real Estate/Ctr.-Isle, Inc., 391 P.3d 582 (Wash Ct. App. 2017)). The Court therefore finds dismissal to be inappropriate at this time.

### h. Common Law (Count 35)

Finally, VGA challenges Count 35 – Plaintiffs' common-law fraud in the inducement or fraudulent concealment or omission claim – based on the economic-loss doctrine barring such claims

in various states, fraudulent concealment claims being otherwise unsustainable under Pennsylvania and Texas law, and VGA having no duty to disclose under a fraudulent-omission theory.  (ECF 53-1 at 42-44, 47-48, 51).

The Court begins with VGA's economic-loss-doctrine argument.  As this Court has previously stated, "[t]he economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort.'"  Powell, 502 F. Supp. 3d at 891 (quoting Peters v. Countrywide Home Loans, Inc., No. 15-6329, 2016 WL 2869059, at *4 (D.N.J. May 17, 2016)).  VGA contends that the laws California, Florida, Illinois, and Pennsylvania bar common-law fraudulent concealment claims in which purely economic losses are alleged and Texas law has similarly barred fraud claims that allege no damages beyond those of the underlying alleged breach of contract.  (ECF 53-1 at 47-48).  Plaintiffs counter that their common-law claims are distinct from performance under the contract and rather address the inducement of the contract.  (ECF 55 at 43-44).  However, in so doing, Plaintiffs rely on cases interpreting the law of inapplicable states.  (Id.).

Plaintiffs allege that they and class members sustained damages by paying for their class vehicles without consideration of the defect and have since paid for repairs and replacement

parts that suffer from the same defect.   (ECF 45 at ¶ 954).

Though some California courts have limited the fraudulent-

inducement exception to the economic-loss rule to affirmative

misrepresentations, see Mosqueda, 443 F. Supp. 3d at 1134

(collecting cases), others have not, finding allegations of

material omissions sufficient to avoid dismissal under

California law, see Scherer v. FCA US, LLC, 565 F. Supp. 3d

1184, 1193 (S.D. Cal. Oct. 5, 2021) (finding that a claim was

not barred by the economic-loss rule when it alleged that

defendants "committed fraud by allowing the Subject Vehicle to

be sold to Plaintiff without disclosing that the Subject Vehicle

and its transmission and [powertrain control modules] was

defective").   In light of Plaintiffs' allegations of fraudulent

inducement, VGA's motion to dismiss Count 35 under California

law based on the economic-loss doctrine will be denied.

Similarly, Texas "[c]ourts have not extended the economic

loss rule to fraudulent inducement claims . . . noting that 'it

is well established that the legal duty not to fraudulently

procure a contract is separate and independent from the duties

established by the contract itself.'"   AHBP LLC v. Lynd Co., SA-

22-CV-00096, 2023 WL 139149, at *20 (W.D. Tex. Jan. 9, 2023)

(quoting Formosa Plastics Corp. USA v. Presidio Eng'rs &

Contractors, Inc., 960 S.W. 2d 41, 46 (Tex. 1998)); see also

Simms v. Jones, 879 F. Supp. 2d 595, 602 (N.D. Tex. July 19,

2012) (declining to dismiss plaintiffs' fraudulent inducement claim based on allegations that they received tickets for seats with obstructed views, they were unaware their views would be obstructed, and the National Football League was aware of the obstructed views and omitted that fact on tickets).  Likewise, Illinois recognizes an exception to the economic-loss rule for fraud, which includes fraud in the inducement.  Intermatic Inc. v. J. Baxter Brinkmann Int'l Corp., No. 10 C 50131, 2011 WL 4808190, at *2 (N.D. Ill. Oct. 11, 2011).

However, the Court concludes that claims under Florida and Pennsylvania law may not be spared from the economic-loss doctrine.  See Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 490-91 (E.D. Pa. July 29, 2016) (differentiating representations extraneous to a contract – such as misrepresentation of a company's financial status – from those intrinsic to the contract – such as the quality of goods – and finding that the economic-loss doctrine applied to plaintiff's fraudulent misrepresentation claim alleging the latter); In re Takata Airbag Prods. Liabi. Litig., 193 F. Supp. 3d 1324, 1338-39 (S.D. Fla. June 15, 2016) (collecting cases interpreting Florida law as applying the economic-loss doctrine to claims alleging that a vehicle did not work as promised).

VGA next claims that Texas law does not recognize an independent cause of action for fraudulent concealment and

Pennsylvania law requires a transactional relationship between the parties to sustain a fraudulent-concealment action.  (ECF 53-1 at 51).  The Court agrees.

As to Texas law, Plaintiffs do not dispute the fact that "Texas does not recognize a stand-alone cause of action for fraudulent concealment."  (ECF 55 at 47-48).  Indeed, "Texas law does not recognize fraudulent concealment as an independent cause of action distinct from common law fraud."  Famigletti v. Ethicon, Inc., No. 3:19-CV-2585, 2019 WL 7370670, at *2 (N.D. Tex. Dec. 31, 2019) (citing ExxonMobil Corp. v. Lazy R Ranch, LP, 511 S.W. 3d 538, 544 n.21 (Tex. 2017)); see also Sweezey v. C.R. Bard Inc., No. 3:19-CV-2172-S, 2020 WL 1237394, at *1 (N.D. Tex. Mar. 12, 2020) ("Under Texas law, 'fraudulent concealment is not an independent cause of action, but is rather a tolling provision to prevent the defendant from relying upon a statute of limitations period as an affirmative defense.'" (quoting Seismic Wells, LLC v. Matthews, No. 5:15-CV-148-C, 2015 WL 11027778, at *4 (N.D. Tex. Sept. 11, 2015))).

The Court is further persuaded that Plaintiffs have not adequately pled a transactional relationship to sustain a fraudulent-concealment claim under Pennsylvania law.  See Cabebe v. Nissan of N. Am., Inc., No. 18-cv-00144, 2018 WL 5617732, at *10 (N.D. Cal. Oct. 26, 2018) (concluding that the plaintiff's purchase of a vehicle from a Nissan dealership – rather than

Nissan itself – did not satisfy the transactional relationship requirement of Pennsylvania law).  VGA's motion will thus be granted as to Plaintiffs' Pennsylvania and Texas fraudulent-concealment claims.

Finally, VGA argues that there is no duty to disclose as to Plaintiffs' fraudulent-omission claims under Florida, Georgia, Illinois, New Jersey, Nevada, and Pennsylvania law.  Further, it argues that the laws of California, Louisiana, New Jersey, Oregon, Texas, and Washington require a fiduciary relationship, misleading partial disclosure, active concealment, or unique knowledge on the part of a defendant of a material fact to state a claim for fraudulent concealment.  (ECF 53-1 at 42-44).

After reviewing the parties' briefs as to the duty to disclose, the Court agrees with VGA's general position as to Illinois, Nevada, and New Jersey law.  See Rodriguez, 596 F. Supp. 3d at 1058 (concluding that the defendant had no duty to disclose a defect, despite superior knowledge, in part because the plaintiff did not demonstrate the defendant's overwhelming influence over him); Cohen, 2022 WL 714795, at *19-20 (finding no duty to disclose under Nevada or New Jersey law in vendor-vendee relationships).  The Court further agrees with VGA that Plaintiffs' reliance on In re Takata Airbag Products Liability Litigation, No. 14-24009, 2017 WL 775811, at *4 (S.D. Fla. Feb. 27, 2017), for support of the proposition that a duty to

66

disclose arises from prior misleading speech is unpersuasive as Plaintiffs have not specified any prior misleading speech directed toward Davis and thus will dismiss the claim.

However, the Court will not dismiss fraudulent omission claims under Pennsylvania and Georgia law.  Though the Court acknowledges VGA's challenges, it finds dismissal inappropriate at this stage when there is some support for the proposition that a duty to disclose may have arisen out of VGA's alleged knowledge of the defect.  See Nalley v. Gen. Motors LLC, No. 1:21-cv-04174, 2022 WL 18459646, at *6-7 (N.D. Ga. Aug. 30, 2022) (finding that the defendant may have had a duty to disclose a defect to consumers based on their inability to otherwise discover it through ordinary prudence and caution); N. Penn Towns, LP v. Concert Golf Partners, LLC, 554 F. Supp. 3d 665, 705 (E.D. Pa. Aug. 12, 2021) (discussing a duty to disclose facts basic to a transaction).

To the extent that the Court has not otherwise dismissed Plaintiffs' common-law claims, it will not do so on the bases argued by VGA as to the requirements of a fiduciary relationship, misleading partial disclosure, active concealment, or unique knowledge to plead active concealment.  The Court finds that, at the very least, Plaintiffs have adequately pled that VGA had knowledge of the alleged defect via testing, consumer complaints, technical service bulletins, and the like.

(ECF 45 at ¶¶ 198-253).   The Court repeats that knowledge need not be pled with particularity, see Fed. R. Civ. P. 9(b), and "[k]nowledge [is] exempt from Rule 9(b)'s particularity requirement, so long as the circumstances surrounding such general allegations of knowledge suffice to infer what defendant is alleged to have known and when," Ponzio, 447 F. Supp. 3d at 228 (alterations in original) (quoting BK Trucking Co. v. Paccar, Inc., No. 15-2282, 2016 WL 3566723, at *8 (D.N.J. June 30, 2016)).   The Court is satisfied that Plaintiffs have done so here.   See Powell, 502 F. Supp. 3d at 888 (finding that plaintiffs sufficiently pled that defendant possessed exclusive knowledge of the defect via testing, complaints, repair orders, and other sources).

## IV. Motion to Appoint Interim Lead Class Counsel and Steering Committee

Finally, Plaintiffs move to appoint Russell D. Paul of Berger Montague PC as interim lead class counsel and Tarek H. Zohdy of Capstone Law APC and Adrian A. Karimi of Ladah Law Firm as members of Plaintiffs' steering committee.   (ECF 60). Plaintiffs note that counsel began investigating the alleged defects in December 2020 and collected available information, conferred with consultants, interviewed putative class members, and made similar efforts over the course of several months. (Id. at 6).   More than a year following the initial complaint in

this matter, a substantially similar action, Mishkin v. Volkswagen Group of America, Inc., was filed in the Eastern District of Missouri and later transferred to this District.[10] Plaintiffs assert that appointment of interim lead counsel is necessary for effective communication, protection of class interests, and avoiding copycat cases and would lead to overall effective and cohesive litigation.  (Id. at 7-8).

A court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).  When determining whether to appoint interim counsel, courts consider the same factors applicable to appointment of counsel for a certified class – the work counsel has already performed identifying and investigating potential claims; counsel's experience with class actions, complex litigation, and the types of claims asserted in the instant case; counsel's knowledge of applicable law; and the resources counsel will commit toward representing the class.  See La. Health Serv. & Indem. Co. v. Janssen Biotech Inc., Nos. 19-14146 & 19-14291, 2021 WL 486895, at *1 (D.N.J. Feb. 10, 2021); Fed. R. Civ. P. 23(g)(1)(A).

_____

[10] At the time of Plaintiffs' motion, a motion was pending within the Eastern District of Missouri to transfer the case.  (ECF 60 at 6-7).  The motion has since been granted, Mishkin v. Volkswagen Grp. of Am., Inc., No. 4:22-cv-00666, 2022 WL 18664851, at *2-3 (E.D. Mo. Oct. 11, 2022), and the case has been assigned to the undersigned.

"Rule 23(g) requires a court to assess the adequacy of proposed class counsel." Hassine v. Simon's Agency, Inc., No. 18-9031, 2021 WL 2646990, at *5 (D.N.J. Apr. 29, 2021). To that end, courts have looked to evidence such as certifications and declarations of counsel indicating availability and willingness to commit necessary resources to a case, counsel's breadth of experience with class actions and similar claims, and work already performed. See, e.g., Jane v. Rodriguez, No. 20-5922, 2020 WL 6867169, at *12 (D.N.J. Nov. 23, 2020); Schultz v. Midland Credit Mgmt., Inc., No. 16-4415, 2020 WL 3026531, at *6 (D.N.J. June 5, 2020). Here, in addition to an accompanying brief providing detail as to the work already performed on this case, the achievements and experience of counsel and their familiarity with applicable law, and the firms' ability and willingness to expend necessary resources on behalf of the class, (ECF 60 at 11-26), the motion includes a declaration by Paul as to the general qualifications of the three firms as well as profiles of each, (ECF 60-2; ECF 60-3; ECF 60-4; ECF 60-5).

Upon review – and noting that there is no opposition to the motion – the Court is satisfied with counsel's qualifications, efforts, and resources and grants Plaintiffs' motion to appoint interim lead class counsel and members of plaintiffs' steering committee.

**V. Conclusion**

    For the reasons stated above, Plaintiffs' motion to appoint interim lead class counsel and steering-committee members, (ECF 60), will be granted and VGA's motion to dismiss the CAC, (ECF 53), will be granted in part and denied in part.  Plaintiffs shall have thirty days to file an amended complaint specifying its allegation against VGA and addressing the Court's decision as to their standing to represent a nationwide class.

    An Order consistent with this Opinion will be entered.


Date: <u>  May 4, 2023  </u>       <u>  s/ Noel L. Hillman  </u>
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.