## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENI RIEGER, ALOHA DAVIS, JODIE CHAPMAN, CARRIE VASEL, KAREN BURNAUGH, TOM GARDEN, ADA and ANGELI GOZON, HERNAN A. GONZALEZ, PATRICIA A. HENSLEY, CLYDIENE FRANCIS, PETER LOWEGARD, and GRANT BRADLEY, individually and on behalf of a class of similarly situated individuals, | Case No. 1:21-cv-10546-NHL-EAP |
| Plaintiffs, | |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, d/b/a AUDI OF AMERICA, INC., | |
| Defendant. | |
| . | |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## THEIR UNOPPOSED MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.   Introduction...................................................................................1

II.   Factual Background .......................................................................3

    A.   Plaintiffs' Experiences With the Class Vehicles................................3

    B.   Overview of the Litigation and Settlement Negotiations....................4

III.   Material Terms of the Proposed Settlement ...................................6

    A.   The Settlement Benefits ........................................................6

        1.   Warranty Extension for Current Owners and
           Lessees of Settlement Class Vehicles .......................................7

        2.   Reimbursement of Certain Past Paid Out-of-Pocket
           Repair Expenses .................................................................9

    B.   Release of Claims/Liability .................................................10

    C.   Claim Submission and Administration .............................................11

    D.   The Proposed Class Notice Plan .....................................................12

    E.   Proposed Attorneys' Fees, Litigation Expenses, and
        Service Awards.................................................................15

IV.   Argument ...................................................................................16

    A.   The Court Should Grant Preliminary Approval of the
        Class Settlement.................................................................16

        1.   The Settlement Is the Result of Arm's-Length
           Negotiations .......................................................................18

        2.   The Extent of Discovery Completed Supports
           Preliminary Approval.............................................................20

        3.   Class Counsel Have Extensive Experience in
           Similar Litigation .................................................................22

        4.   The *Girsh* Factors Support Preliminary Approval.................23

B.    Certification of the Settlement Class Is Appropriate for Settlement Purposes ........................................................27

      1.    Numerosity Under Rule 23(a)(1) ...............................28

      2.    Commonality Under Rule 23(a)(2) ..........................28

      3.    Typicality Under Rule 23(a)(3) ................................30

      4.    Adequacy of Representation Under Rule 23(a)(4) .................31

      5.    The Requirements of Rule 23(b)(3) Are Met .........................32

C.    The Court Should Appoint Plaintiff's Counsel as Settlement Class Counsel ....................................................35

D.    The Court Should Approve the Notice Plan ......................................36

E.    A Final Approval Hearing Should be Scheduled ..............................37

V.    Conclusion ....................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Alin v. Honda Motor Co.,*
  2012 WL 8751045 (D.N.J. April 13, 2012) .......................................................29

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012) ..........................................................19

*Amchem Prod Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................... 25, 27, 33

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ..................................................................28

*Barnes v. Am. Tobacco Co*.,
  161 F.3d 127 (3d Cir. 1998) .............................................................30

*Chemi v. Champion Mortg*.,
  2009 WL 1470429 (D.N.J. May 26, 2009) .......................................................27

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .............................................................37

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) .................................................... 16, 18, 23

*Glaberson v. Comcast Corp*.,
  2014 WL 7008539 (E.D. Pa. Dec. 12, 2014) ....................................................19

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc*.,
  525 Fed. Appx. 94 (3d Cir. 2013) .......................................................31

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ...........................................................27

*Hassine v. Jeffes*,
  846 F.2d 169 (3d Cir. 1988) .............................................................31

*Henderson v. Volvo Cars of N. Am., LLC*,
  2013 WL 1192479 (D.N.J. Mar. 22, 2013) ...................................... 29, 30, 33, 34

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)..........................................................23

*In re Cmty. Bank of N. Virginia*,
  622 F.3d 275 (3d Cir. 2010) ...................................................................31

*In re Gen. Motors Corp. Pick-Up Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...................................................... 18, 26, 28

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ...................................................................21

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013) ........................................................ 17, 30

*In re Nassau Cnty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) ...................................................................35

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  301 F.R.D. 191 (E.D. Pa. 2014) ..................................................... 17, 18

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ..................................................... 21, 26, 36

*In re Pet Food Prod. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ...................................................................16

*In re Philips/Magnavox Television Litig.*,
  2012 WL 1677244 (D.N.J. May 14, 2012) ..........................................32

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ...................................................................28

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ...................................................................18

*In re Sch. Asbestos Litig.*,
  921 F.2d 1330 (3d Cir. 1990) .................................................................16

*In re Shop-Vac Mktg. & Sales Pracs. Litig.*,
  2016 WL 3015219 (M.D. Pa. May 26, 2016) .....................................26

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ............................................................ 16, 17

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No.,*
   *1,* 921 F.2d 1371 (8th Cir. 1990) ..............................................................17

*Marchese v. Cablevision Sys. Corp.*,
   2016 WL 7228739 (D.N.J. Mar. 9, 2016) ..................................... 33, 34

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008)..........................................................34

*Mehling v. New York Life Ins.*,
   246 F.R.D. 467 (E.D.Pa.2007) ...............................................................17

*Patrick v. Volkswagen Grp. Of Am.*,
   2021 WL 3616105 (C.D. Cal. Mar. 10, 2021) ............................. 22, 37

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) .................................................................19

*Rudel Corp. v. Heartland Payment Sys., Inc.*,
   2017 WL 4422416 (D.N.J. Oct. 4, 2017) ..................................... 16, 17

*Saint v. BMW of N. Am., LLC*,
   2015 WL 2448846 (D.N.J. May 21, 2015) ..............................................22

*Shapiro v. All. MMA, Inc.*,
   2018 WL 3158812 (D.N.J. June 28, 2018) ..............................................16

*Skeen v. BMW of N. Am., LLC*,
   2016 WL 70817 (D.N.J. Jan. 6, 2016) .....................................................30

*Smith v. Merck & Co.*,
   2019 WL 3281609 (D.N.J. July 19, 2019) ..............................................23

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ....................................................................28

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ............................................... 26, 33, 34

*Tardiff v. Knox Cnty*,
  365 F.3d 1 (1st Cir. 2004) ...................................................................35

*Udeen v. Subaru of Am., Inc.*,
  2019 WL 4894568 (D.N.J. Oct. 4, 2019) ........................ 16, 19, 21, 23, 24, 29, 37

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .........................................................................29

**Statutes**

28 U.S.C. § 1715 ............................................................................ 14, 15

**Rules**

Fed. R. Civ. P. 23(a)(1) ...................................................................28

Fed. R. Civ. P. 23(a)(2) ...................................................................28

Fed. R. Civ. P. 23(a)(3) ...................................................................30

Fed. R. Civ. P. 23(a)(4) ...................................................................31

Fed. R. Civ. P. 23(c)(2)(B) ........................................................... 36, 37

Fed. R. Civ. P. 23(g)(1)(A) ...............................................................35

Fed. R. Civ. P. 23(g)(1)(B) ...............................................................35

Fed. R. Civ. P. 23(b)(3) ................................................................ 33, 36

**Other Authorities**

W. Rubenstein & H. Newberg, *Newberg on
 Class Actions (Sixth), (2022)* ............................................................17

## I.   INTRODUCTION

As the Court appointed interim Rule 23(g) counsel in this matter (ECF 66), we hereby advise the Court that after nearly two-and-a-half years of litigation, the Parties[1] have reached a nationwide class settlement of this consumer class action on behalf of all persons and entities who purchased or leased, in the United States and Puerto Rico, certain model year Audi vehicles that were imported and distributed by Defendant Volkswagen Group of America, Inc. ("VWGoA" or "Defendant") for sale or lease in the United States or Puerto Rico ("Settlement Class Vehicles").[2] Plaintiffs respectfully seek preliminary approval of the Parties' proposed Class Settlement Agreement ("Settlement"). As discussed below, this Settlement, which affords substantial benefits to the Settlement Class, was the result of extensive arm's length negotiations of highly disputed claims by experienced class action counsel. Plaintiffs claim that the pistons rings and/or piston/piston heads in the Settlement Class Vehicles' 2.0-liter turbocharged engines are defective in that they cause excessive

---

[1] The named Plaintiffs who are Parties to the Settlement Agreement, individually and as representatives of the Settlement Class, are Plaintiffs Tom Garden, Carrie Vassel, Karen Burnaugh, Grant Bradley, Clydiene Francis, Ada Gozon and Angeli Gozon, Peter Lowegard, and Patricia Hensley (collectively, "Plaintiffs"). "Parties" is defined as Plaintiffs and Defendant Volkswagen Group of America, Inc. Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement, attached as Exhibit 1 to the Declaration of Tarek H. Zohdy ("Zohdy Decl.").

[2]  Settlement Class Vehicles include only certain of the following models and model years: 2012, 2013, and 2014 Audi A4, A5, A6, and Q5 vehicles; model year 2012, 2013, 2014, 2016 and 2017 Audi TT vehicles, and model year 2015, 2016 and 2017 Audi A3 vehicles. A complete list of the Vehicle Identification Numbers of included Settlement Class Vehicles is attached as Exhibit 4 to the Settlement Agreement.

oil consumption and can cause the pistons and the engine itself to fail. Plaintiffs have asserted claims under theories of, *inter alia*, breach of express and implied warranties and violation of the state fraud and consumer-protections statutes of states in which Plaintiffs purchased their vehicles or are domiciled. VWGoA denies these allegations and maintains that the subject vehicles' pistons are not defective, were properly designed, manufactured, marketed, distributed and sold, and function properly. VWGoA further maintains that no express or implied warranties were breached, and no consumer statutes or common law duties were violated.

The proposed nationwide Class Settlement (hereinafter "Settlement" or "Class Settlement") was the culmination of extensive arms-length negotiations, ultimately reached with the assistance of a respected neutral Mediator who is highly experienced in class action settlements. The Settlement, described more fully below, provides Settlement Class Members with immediate and valuable relief, including a warranty extension and reimbursement for past covered repairs, that directly addresses issues applicable to respective categories of the Settlement Class Vehicles. It is fair, reasonable, and adequate, and complies in all respects with Fed. R. Civ. P. 23 ("Rule 23").

Plaintiffs accordingly request that this Court review their negotiated Settlement Agreement, attached as Exhibit A to the accompanying Declaration of Tarek H. Zohdy, and enter an order: (1) granting preliminary approval of the Settlement; (2) conditionally certifying the proposed Settlement Class for settlement purposes; (3) conditionally appointing Plaintiffs as the Settlement Class Representatives and Plaintiffs' approved Interim Rule 23(g) Class Counsel, Berger

Montague PC, Capstone Law APC, and Ladah Law Firm, as Settlement Class Counsel; (4) approving the Parties' proposed Class Notice Plan for disseminating the Class Notice; (5) conditionally appointing JND Legal Administration as the Settlement Claim Administrator; (6) setting deadlines for the filing of any objections to, or requests for exclusion from, the Settlement, and other submissions in connection with the Settlement approval process; and (7) setting a hearing date and briefing schedule for Final Approval of the Settlement and Plaintiffs' application for service awards and attorneys' fees and expenses.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Experiences With the Class Vehicles

This nationwide class action arises out of an alleged defect in certain model year 2012-2017 Audi vehicles equipped with the Audi 2.0T engine. Plaintiffs allege that the pistons and/or piston heads in the vehicles' engine are defective, causing excessive oil consumption or piston fracture, and in some instances, can potentially lead to engine damage. Each of the settling Plaintiffs asserts that they purchased a settlement class vehicle that experienced excessive oil consumption or a piston issue, requiring repair. Certain Plaintiffs allege that they paid out of pocket for repairs to address these issues, and others contend that they were unable to afford such repairs. Defendant asserts these engines are not defective, and the cause of damage was due to lack of or improper maintenance, improper usage of the subject vehicles and/or other outside influence.

**B.      Overview of the Litigation and Settlement Negotiations**

The Complaint asserting a nationwide putative class action was originally filed on April 30, 2021, and was amended on May 6, 2021 (First Amended Complaint) and July 26, 2021 (Second Amended Complaint) adding multiple named plaintiffs, including most of the Plaintiffs here. *See* ECF 11 and 36; Zohdy Decl. ¶¶ 2-3.

On August 5, 2021, Plaintiff Hernan A. Gonzalez, represented by Class Counsel, filed *Gonzalez v. Volkswagen Group of America, et al.*, in Superior Court of the State of New Jersey, Mercer County, Law Division, under Docket No. L-001632-21.  Zohdy Decl. ¶ 4.  On August 9, 2021, Defendant filed a notice of removal of the *Gonzalez* action to this Court.  *See Gonzalez v. Volkswagen Group of America, et al.*, Civil Case No. 1:21-cv-15026-NLH-MJS, ECF 1.  On September 30, 2021, pursuant to Consent Motion of the Parties, this Court entered an order consolidating *Gonzalez* with and into this action, and directing the filing of a Consolidated Class Action Complaint, which was filed on October 12, 2021. ECF 42, 45; Zohdy Decl. ¶ 4.

Defendant VWGoA filed a motion to dismiss the Consolidated Class Action Complaint on December 3, 2021. ECF 53; Zohdy Decl. ¶ 5. Substantial briefing on that motion thereafter ensued, with Plaintiffs filing an extensive opposition on January 14, 2022 (ECF 55; Zohdy Decl. ¶ 5), and VWGoA filing a reply on February 11, 2022. ECF 59; Zohdy Decl. ¶ 5.[3] On May 4, 2023, the Court granted in part and

---

[3] On June 23, 2022, *Mishkin v. Volkswagen Group of America, Inc.*  was filed in U.S. District Court for the Eastern District of Missouri involving the same vehicles and

denied in part the motion to dismiss, with leave to amend. ECF 66; Zohdy Decl. ¶ 6. As a result, on June 2, 2023, Plaintiffs filed the First Amended Consolidated Class Action Complaint. ECF 67; Zohdy Decl. ¶ 7.[4]

In Spring 2023, the Parties initially discussed the possibility of settlement, and the Parties agreed to participate in mediation before an experienced mediator. Zohdy Decl. ¶ 8. On July 7, 2023, following extensive settlement negotiations, the Parties engaged in a vigorous day-long mediation before Bradley A. Winters, Esq., a respected and very experienced neutral class action Mediator with JAMS during which the Parties reached agreement on the material terms of a settlement in principle. *Id.* at ¶ 9. The Parties continued negotiations, exchanging additional information and finalizing the details of this nationwide settlement. *Id.* at ¶ 10. Following further review of the information exchanged and investigation of the

---

alleging the same defect and underlying allegations on behalf of a Missouri Plaintiff and a putative Missouri-only class. Since *Mishkin*'s Missouri-only putative class members were already encompassed within this action's putative nationwide class, the Missouri court, on October 11, 2022, transferred *Mishkin* to this Court, and that action was assigned to Judge Hillman under 1:22-cv-06127-NLH-EAP. Other than VWGoA's motion to dismiss (*Mishkin* ECF 41), which this Court granted in part and denied in part (*Id.*, ECF 52), there has been no litigation activity in the *Mishkin* action, nor did *Mishkin's* counsel, who was well aware of this action, ever object to Class Counsel's appointment as Rule 23(g) interim class counsel for the nationwide class (ECF 66). The nationwide Class Settlement herein encompasses *Mishkin* and his putative Missouri-only class. This Court recently scheduled a Case Management Conference in *Mishkin* for November 1, 2023, and an application will be made to stay all proceedings in that case pending the Court's final determination of whether to approve this nationwide Class Settlement.

[4] On October 10, 2023, Plaintiff Jeni Rieger, Jodie Chapman, Aloha Davis, and Hernan A. Gonzalez filed voluntary dismissals of their claims. *See* ECF 81.

claims extensively, the Parties finalized the terms of the settlement and reduced those terms to a formal Settlement Agreement.  Based on the information exchanged as well as a thorough investigation prior to filing the Complaint, including interviewing putative Class Members, researching publicly available materials, and inspecting Class Vehicles, Class Counsel gained a thorough understanding of both the strengths and weaknesses of Plaintiffs' claims and believe the proposed terms of the Settlement Agreement represent a substantial recovery on behalf of the putative Class. *Id.* at ¶¶ 10, 12-15.

Only after agreeing to the structure and material terms for settlement of the Class claims, the Parties negotiated, including during an additional mediation with Mr. Winters on August 21, 2023,  and ultimately agreed upon an appropriate request for incentive awards and Plaintiffs' attorneys' fees and expenses. Zohdy Decl. ¶ 11. All the terms of the Settlement Agreement are the result of extensive, adversarial, and arm's-length negotiations between experienced counsel for both sides. *Id.* The settlement is set forth in complete and final form in the Settlement Agreement.  *Id.*, Zohdy Decl., Ex. A.

## III.    MATERIAL TERMS OF THE PROPOSED SETTLEMENT

### A.    The Settlement Benefits

If approved, the Settlement will provide to all persons and entities who purchased or leased a Settlement Class Vehicle in the United States and Puerto Rico ("Settlement Class")[5] substantial benefits that squarely address the issues in this

---

[5] The Settlement Class Vehicles are certain model year 2012, 2013, and 2014 Audi

litigation. The Settlement provides for an extensive warranty extension and a reimbursement of certain previous past-paid out-of-pocket repair expenses, as follows.

### 1.      Warranty Extension for Current Owners and Lessees of Settlement Class Vehicles

Effective on the Court-ordered date by which the Claim Administrator shall mail the Class Notice of this Settlement to the Settlement Class (the "Notice Date"), VWGoA will extend the New Vehicle Limited Warranties ("NVLWs") for the Settlement Class Vehicles to cover 75% of the cost of repair (parts and labor), by an authorized Audi dealer, of the following during a period of up to nine (9) years or ninety-thousand (90,000) miles (whichever occurs first) from the Settlement Class

---

A4, A5, A6 and Q5 vehicles, certain model years 2012, 2013, 2014, 2016 and 2017 Audi TT vehicles, and certain model year 2015, 2016 and 2017 Audi A3 vehicles imported and distributed by VWGoA for sale or lease in the United States or Puerto Rico and are specifically designated by Vehicle Identification Number on Exhibit 4 to the Settlement Agreement. The benefits afforded by this Settlement Agreement differ among certain models/model years of the Settlement Class Vehicles.

Excluded from the Settlement Class are: (a) all Judges who have presided over the Action and their spouses; (b) all current employees, officers, directors, agents and representatives of Defendant, and their family members; (c) any affiliate, parent or subsidiary of Defendant and any entity in which Defendant has a controlling interest; (d) anyone acting as a used car dealer; (e) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (f) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company that acquired a Settlement Class Vehicle as a result of a total loss; (g) any insurer of a Settlement Class Vehicle; (h) issuers of extended vehicle warranties and service contracts; (i) any Settlement Class Member who, prior to the date of this Agreement, settled with and released Defendant or any Released Parties from any Released Claims, and (j) any Settlement Class Member who files a timely and proper Request for Exclusion from the Settlement Class. *See* Settlement Agreement ["S.A."] section I.V.

Vehicle's In-Service Date: (1) <u>for Audi A4, A5, A6, Q5 and Model Year 2012-2014 Audi TT Settlement Class Vehicles only</u> – a diagnosed condition of excessive oil consumption by an authorized Audi dealer, as confirmed by an authorized Audi dealer's oil consumption test,[6] or (2) <u>for Audi A3 and Model Year 2016-2017 Audi TT Settlement Class Vehicles only</u> – a diagnosed condition of a fractured piston by an authorized Audi dealer. S.A. § II.A.

The Warranty Extension shall also cover a percentage, based on a Sliding Scale detailed in the Settlement, of the cost of repair (parts and labor), by an authorized Audi dealer, of a diagnosed condition of engine damage which was directly caused by excessive oil consumption (for Audi A4, A5, A6, Q5, and Model Year 2012-2014 Audi TT Settlement Class Vehicles only), or a diagnosed condition of engine damage other than to a piston which was directly caused by a fractured piston (for Audi A3 and Model Year 2016-2017 Audi TT Settlement Class Vehicles only), during the aforesaid period of nine (9) years or ninety-thousand (90,000) miles (whichever occurs first) from the applicable Settlement Class Vehicle's In-Service Date. As to all Settlement Class Vehicles, the Warranty Extension is conditioned upon the Settlement Class Member providing, to the dealer, Proof of Adherence to Maintenance Requirements. *Id.* The Warranty Extension is subject to the same terms, conditions, and limitations set forth in the Settlement Class Vehicle's original NVLW and Warranty Information Booklet, and shall be fully transferable to

---

[6] If an oil consumption repair is performed under the warranty extension, then the cost of the oil consumption test that led to said repair shall likewise be covered at the same percentage (75%) as provided under the warranty extension.

subsequent owners to the extent that its extended time and mileage limitation periods have not expired. S.A. § II.A.

Further, if a Settlement Class Vehicle's Warranty Extension time period from the In-Service Date has already expired as of the Notice Date, then for that Settlement Class Vehicle only, the Warranty Extension time and mileage limitations shall be for a period of up to seventy (70) days after the Notice Date or ninety-thousand (90,000) miles from the Settlement Class Vehicle's In-Service Date (whichever occurs first), subject to the same conditions and limitations set forth above. *Id.* Prior to the Notice Date, VWGoA will advise authorized Audi dealers of the Settlement's Warranty Extension, so that the Warranty Extension may be implemented in accordance with the terms and conditions of this Settlement Agreement. *Id.* at § IV.B.8.

### 2.    Reimbursement of Certain Past Paid Out-of-Pocket Repair Expenses

In addition to the very substantial Warranty Extension, the Settlement provides that Settlement Class Members who timely mail to the Settlement Claim Administrator a Claim for Reimbursement (*i.e.*, a fully completed, dated and signed Claim Form together with all Proof of Repair Expense and Proof of Adherence to Maintenance Requirements documentation) shall be eligible for 75% reimbursement of the paid (and unreimbursed) cost (*i.e.*, parts and labor) of a past repair (limited to one (1) past repair) that was performed on a Settlement Class Vehicle prior to the Notice Date and within nine (9) years or ninety-thousand (90,000) miles (whichever occurred first) from the Settlement Class Vehicle's In-Service Date, to address the

following: (i) <u>for Audi A4, A5, A6, Q5 and Model Year 2012-2014 Audi TT</u> <u>Settlement Class Vehicles only</u> – a diagnosed condition of excessive oil consumption as confirmed by an authorized Audi dealer's oil consumption test, or (ii) <u>for Audi A3 and Model Year 2016-2017 Audi TT Settlement Class Vehicles only</u> - a diagnosed condition of a fractured piston(s). S.A. § II.B.1.

Reimbursement shall also include a percentage, determined by the same percentages of coverage set forth in the Sliding Scale in the Settlement, of the past paid (and unreimbursed) cost (*i.e.*, parts and labor) of repair (limited to one (1) past repair), performed prior to the Notice Date and within nine (9) years or ninety-thousand (90,000) miles (whichever occurred first) from the Settlement Class Vehicle's In-Service Date, of: (1) <u>for Audi A4, A5, A6, Q5 and 2012-2014 Audi TT</u> <u>Settlement Class Vehicles only</u> – engine damage which was diagnosed to be directly caused by excessive oil consumption, or (2) <u>for Audi A3 and 2016-2017 Audi TT</u> <u>Settlement Class Vehicles only</u> - engine damage other than to a piston which was diagnosed to be directly caused by a fractured piston. S.A. § II.B.1.

**B.   Release of Claims/Liability**

In consideration of the Settlement benefits, VWGoA and its related entities and affiliates (the "Release Parties," as defined in S.A. § I.U.) will receive a release of claims and potential claims related to the alleged defects in the Settlement Class Vehicles that are the subject of this litigation and Settlement, including the claims that were or could have been asserted in the litigation (the "Released Claims," as defined in S.A. § I.T.). The scope of the release properly reflects the issues, allegations and claims in this case, and specifically excludes claims for personal

injury and property damage (other than damage to the Settlement Class Vehicle itself). *Id.*

### C.    Claim Submission and Administration

The Parties agreed to retain JND Legal Administration as the Claim Administrator. S.A. §I.C. The Claim Administrator will carry out the Notice Plan (discussed below), disseminate the CAFA notice, administer any requests for exclusion, and administer the Claims process including the review and determination of reimbursement claims, and distribution of payments to eligible Claimants whose claims are complete and have been approved under the Settlement terms. *Id.*at §§ III.B. and IV. Pursuant to the Settlement, VWGoA will pay all administrative costs separate and apart from any benefits to which the Settlement Class Members may be entitled. *Id.* § III.A. Thus, none of the Settlement Administration costs will be borne by the Class Members in any way.

The Settlement also provides for a fair, equitable, and straightforward claims process for Settlement Class Members. For each complete claim that is approved, the Claim Administrator will mail a reimbursement check to the Settlement Class Member within the later of 150 days after submission of the completed Claim, or 150 days after the Effective Date of the Settlement. S.A. § III.B. Significantly, the Settlement provides that if a claim and/or its supporting documentation is incomplete or deficient, the Claim Administrator will mail the Settlement Class Member a letter or notice outlining the deficiencies and affording a 30-day period to cure them. *Id.* The Claim Administrator's decision is final, but any Settlement Class Member that disagrees with the ultimate denial of his/her/its/their reimbursement claim, in whole

or in part, may request an "attorney review" of that decision within 15 days of such denial. *Id.* at § III.B.4 If an attorney review is requested, Class Counsel and Defense Counsel will confer and make good faith efforts to resolve the disputed denial. *Id.*

The Class Notice, its accompanying Claim Form, and a settlement website all provide the necessary details, including how and by when reimbursement claim must be submitted, what information and documentary proof is required for a valid claim, and how to contact the Claim Administrator, or Class Counsel, with any questions or requests for assistance with respect to a claim. Indeed, the Class Notice and settlement website provide the mailing address, the email address and a toll-free telephone number for Class Members to contact the Claim Administrator. S.A. § IV.B.6.

### D.     The Proposed Class Notice Plan

The Settlement Agreement contains an effective Notice Plan to be paid for solely by VWGoA. S.A. § III.A. Class Notice, together with the Claim Form, will be mailed to Settlement Class Members via first class mail within 100 days after entry of the Court's Order preliminarily approving this proposed Settlement. (*Id.* at section IV.B.1.) Settlement Class Members will be located based on the Settlement Class Vehicles' VIN (vehicle identification) numbers and using the services of Polk/IHS Markit or equivalent company like Experian. (*Id.* at section IV.B.2.) These established services obtain vehicle ownership histories through state title and registration records, thereby identifying the names and addresses of record of the

Settlement Class Members.[7] The Settlement Claim Administrator will then compare the obtained addresses to information in the National Change of Address database to confirm that addresses for mailing are the most current addresses possible. In addition, after the Class Notice is mailed, for any individual mailed Notice that is returned as undeliverable, the Claim Administrator will re-mail to any provided forwarding address, and for any undeliverable notice packets where no forwarding address is provided, the Claim Administrator will perform an advanced address search (e.g., a skip trace) and re-mail any undeliverable Class Notice packets to any new and current addresses located. *Id.* at section IV.B.3.

In addition to the mailing, the Claim Administrator will, with input from counsel for both Parties, establish a dedicated Settlement website that will include details regarding the lawsuit, the Settlement and its benefits, and the Settlement Class Members' legal rights and options including objecting to or requesting to be excluded from the Settlement and/or not doing anything; instructions on how and when to submit a claim for reimbursement; instructions on how to contact the Claim Administrator by e-mail, mail or (toll-free) telephone; copies of the Class Notice, Claim Form, Settlement Agreement, Motions and Orders relating to the Preliminary and Final Approval processes and determinations, and important submissions and documents relating thereto; important dates pertaining to the Settlement including

---

[7] The 100-day time period for mailing of the Class Notice is needed to obtain the vehicle ownership and history records from the DMVs and/or state agencies of the 50 states and Puerto Rico, which typically several weeks to obtain, and for the Claim Administrator to identify the names and last known addresses of the Settlement Class Member to whom the Class Notice will be mailed.

the deadline to opt-out of or object to the Settlement, the deadline to submit a claim for reimbursement, and the date, place and time of the Final Fairness Hearing; and answers to Frequently Asked Questions (FAQs). S.A. § IV.B.6.

The Class Notice (Ex. 2 to Settlement Agreement) is very detailed and more than complies with Rule 23(c)(2)(B). It clearly and concisely states in plain, easily understood language the nature of the action; the Settlement Class definition; the class claims, issues and/or defendant's positions; the Settlement terms and benefits available under the Settlement; the claim submission process including details and instructions regarding how and when to submit a Claim for reimbursement and the required proof/documentation for a Claim; the release of claims under the Settlement; the manner of and deadline by which Settlement Class Members may object to the Settlement, Class Counsel's requested fee/expense award, and/or the Plaintiffs' requested service awards; the manner of and deadline by which a Settlement Class Member may request to be excluded from the Settlement; the binding effect of the Settlement and release upon Settlement Class Members that do not timely and properly exclude themselves from the Settlement; the procedure by which Settlement Class Members may appear at the final fairness hearing individually and/or through counsel; the settlement website address; how to contact the Claim Administrator (through the dedicated toll-free number, email or by mail) with any questions about the settlement or requests for assistance, the identities of and contact information for Class Counsel; and other important information about the Settlement and the Settlement Class Members' rights. *See* S.A., Ex. 2.

Pursuant to 28 U.S.C. § 1715, the Class Action Fairness Act of 2005, the

Claim Administrator will also provide timely notice to the U.S. Attorney General and the applicable State Attorneys General ("CAFA Notice") so that they may review the proposed Settlement and raise any comments or concerns to the Court's attention prior to final approval. S.A. § IV.A.

## E.     Proposed Attorneys' Fees, Litigation Expenses, and Service Awards

The Parties did not discuss the issues of Class Representative service awards or reasonable Class Counsel attorneys' fees and expenses until after agreement was reached on the material terms of the Settlement, Thereafter, the Parties, at arm's length and with the assistance of an experienced mediator, were able to negotiate sums for attorneys' fees, expenses, and service awards separately, with the amount finally awarded by the Court not affecting the Class benefits in any way.  *See* S.A. § V.III.C.  Subject to Court approval, VWGoA has agreed to not oppose Class Counsels' application for attorneys' fees and documented costs of a combined collective sum up to $2,200,000.  *Id.*

Also subject to Court approval, the Settlement Agreement provides for service awards to the named Class Representatives for their efforts to secure relief on behalf of the Settlement Class, in the amount of $5,000.00, each,[8] to be paid separately from the benefits to the Settlement Class. S.A. §§ VIII.C. VWGoA pays that to Class Counsel to distribute – the Claim Admininstrator does not pay out the service awards

---

[8] The Settlement Class Representatives Tom Garden, Carrie Vassel, Karen Burnaugh, Grant Bradley, Clydiene Francis, Peter Lowegard, and Patricia Hensley will be paid $5,000 each. Settlement Class Representatives Ada and Angeli Gozon will collectively receive a single $5,000 service award. S.A. § VIII.C.1.

VWGoA will pay to the Claims Administrator the total amount of service awards approved by the Court, and the Claim Administrator will distribute to each Plaintiff. *Id.* Further details will be provided when Plaintiffs submit their application for fees, costs, and service awards.

## IV.    ARGUMENT

### A.    The Court Should Grant Preliminary Approval of the Class Settlement

In the Third Circuit, there is a strong policy that favors settlements in class actions. *See In re Pet Food Prod. Liab. Litig.,* 629 F.3d 333, 351 (3d Cir. 2010) ("We reaffirm the 'overriding public interest is settling class action litigation.'") (quoting *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535 ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (The court "encourage[s] settlement of complex litigation 'that otherwise could linger for years'").

The ultimate approval of a class action settlement depends on whether the settlement is fair, adequate, and reasonable. *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975). Unlike final approval, "[p]reliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019) (collecting cases and quoting *Shapiro v. All. MMA, Inc.*, 2018 WL 3158812, at *3 (D.N.J. June 28, 2018); *Rudel Corp. v. Heartland Payment Sys., Inc.*, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017) (finding "[t]he proposed settlement agreement here meets the not

'obviously deficient' standard.") Settlements "are generally approved when they emerge from serious, non-collusive negotiations, do not give preferential treatment to certain segments of the class or class representatives, and fall with the range of possible approval." *Rudel Corporation,* 2017 WL 4422416, at *2.

At this preliminary stage, "the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Injury Litig. ("In re NFL")*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting *Mehling v. New York Life Ins*., 246 F.R.D. 467, 472 (E.D.Pa.2007) (citations omitted)). Indeed, "a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors." *In re Ins. Brokerage Antitrust Litig*., 297 F.R.D. 136, 144 (D.N.J. 2013) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535).[9] This approach is consistent with the principle that "settlement of litigation is especially favored by courts in the class action setting." *In re Insurance Brokerage Antitrust Litig.,* 297 F.R.D. at 144.

_____

[9] As the leading commentator on class actions has noted, courts may adopt an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.   *See* W. Rubenstein & H. Newberg *,Newberg and Rubenstein on Class Actions*, § 13:13 and n.9 (6th ed. 2022); *see also Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,* 921 F.2d 1371, 1391 (8th Cir. 1990) (stating that class action settlement agreements "are presumptively valid").

In determining whether the proposed settlement falls within the "range of reasonableness," district courts within the Third Circuit typically consider factors such as: (i) whether the negotiations occurred at arm's length; (ii) whether there was sufficient discovery; and (iii) whether the proponents of the settlement are experienced in similar litigation.[10] *In re Gen. Motors Corp. Pick-Up Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). Under Rule 23, a settlement falls within the "range of possible approval," if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness— will be satisfied. *In re NFL*, 301 F.R.D. at 198. Here, because there are no "obvious deficiencies" in the Settlement Agreement, nor any "grounds to doubt its fairness," the standards for granting preliminary approval are readily satisfied and the factors above are easily met.

### 1.       The Settlement Is the Result of Arm's-Length Negotiations

Under Rule 23(e)(2)(A) and (B), the Court should "consider whether the settlement is proposed by experienced counsel who reached the agreed-upon terms

---

[10] At the final approval stage, courts in the Third Circuit apply a nine factor *"Girsh"* analysis to assess the fairness, adequacy, and reasonableness of the proposed class action settlement. Specifically, the Court would review the settlement in light of the factors established by *Girsh*, 521 F.2d at 157: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).

through arms-length bargaining." *Alves v. Main*, 2012 WL 6043272, at *9 (D.N.J. Dec. 4, 2012). "A settlement is presumed fair when it results from 'arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Udeen*, 2019 WL 4894568, at *2 (citation omitted). This applies here as the settlement was the result of months-long negotiations and two mediations conducted by a neutral mediator between the Parties. Zohdy Decl. ¶¶ 9-11. The Parties first reached an agreement with respect to the terms of the Settlement, prior to negotiating the Class Representatives' service awards and attorneys' fees. *Id.*

Further, counsel on both sides are experienced class action litigators, including litigating class action automotive cases such as this action. The Parties only entered into the Settlement Agreement after diligently exploring the strengths and weaknesses of their claims and defenses, as discussed further below. Zohdy Decl. ¶¶ 11-15. Moreover, as courts have emphasized, the views of experienced counsel supporting settlement should be accorded substantial weight. *See Glaberson v. Comcast Corp.*, 2014 WL 7008539, at *4 (E.D. Pa. Dec. 12, 2014) (a settlement is presumed to be fair "when the negotiations were at arm's length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation"); *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").

Here, Interim Class Counsel, who are highly experienced class action litigators with national reputations, have made a considered judgment regarding the

risks, benefits, and duration of further litigation and have concluded - based on their deep familiarity with the factual and legal issues in this case, extensive pre-litigation investigation, interviews with many putative Class Members, information provided by Defendant, vehicle inspections, and their independent research - that the Settlement is not only fair, reasonable, and adequate, but a very favorable result for the Settlement Class that should be granted preliminary approval.

## 2.    The Extent of Discovery Completed Supports Preliminary Approval

Interim Class Counsel obtained sufficient informal information from Defendant to enter into the proposed Settlement on a fully informed basis. Class Counsel conducted a detailed investigation into the origins and nature of the issues reported by owners of the vehicles who had contacted them. Before filing the Complaint, Class Counsel inspected Plaintiffs' vehicles, documented their issues, interviewed many other putative Class Members, reviewed vehicle repair records, analyzed Technical Service Bulletins addressing the relevant issues, symptoms for the Class Vehicles, analyzed owners' and warranty manuals for the Class Vehicles, researched publicly available documents and reviewed other materials, to determine the extent to which the alleged vehicle issues affected the putative Class, as well as VWGoA's alleged knowledge. Zohdy Decl. ¶¶ 12-14. In addition, Class counsel continued to respond to inquiries from many putative Class Members and investigate their complaints. *Id.* at ¶ 13. Class counsel also gained information from vehicle inspections, including inspection of certain Plaintiffs' vehicles. *Id*. Then, in light of settlement negotiations, the parties informally exchanged information, including

technical information, regarding the nature of the alleged issues, condition of the Settlement Class Vehicles, and Defendant's ameliorative actions. *Id.* at ¶ 10. *See Udeen*, 2019 WL 4894568, at *3 (third *Girsh* factor supported preliminary approval even when discovery was not "overly extensive"); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016). VWGoA has been trying to fix the problem since at least 2013 by issuing Technical Service Bulletins ("TSBs"). *See* Zohdy Decl., ¶ 14; Compl. ¶¶ 270-271.

Based on this information and investigation, Class Counsel gained an understanding of both the strengths and weaknesses of Plaintiffs' claims and other the anticipated defenses to those claims. In particular, both sides would face risks were the litigation to proceed, and in contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, prompt and very substantial benefits for the Settlement Class.

The immediacy and certainty of the significant benefits provided by the Settlement supports granting preliminary approval. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012) ("By reaching a favorable Settlement . . . Class Counsel have avoided significant expense and delay and have also provided an immediate benefit.").

The benefit provided to the Settlement Class is substantial, addresses the alleged issues in this litigation, is in line with similar automotive class-action settlements, and is fair, reasonable, and adequate. *See e.g., Udeen*, 2019 WL 4894568, at *1 (preliminarily approving a settlement that reimbursement of certain repair-related expenses); *Parrish v. Volkswagen Grp. of Am., Inc.*, No. 8:19-cv-

01148 (C.D. Cal. Jan. 27, 2022), ECF 81 (preliminarily approving class action settlement, which provided a reimbursement for previous out of pocket costs of specified transmission-related repairs, to owners and lessees of certain 2019 Volkswagen Jetta or 2018, 2019, or 2020 Volkswagen Tiguan vehicles); *Patrick v. Volkswagen Grp. of Am., Inc*., 2021 WL 3616105 (C.D. Cal. Mar. 10, 2021), ECF 72 (finally approving class action settlement, which provided reimbursement for previous out of pocket costs for repairs of specified engine stalling issues, to owners and lessees of certain 2019 and 2020 Volkswagen Golf GTI or Jetta GLI vehicles equipped with manual transmissions suffering from an alleged engine stalling defect); *Saint v. BMW of N. Am., LLC*, 2015 WL 2448846 (D.N.J. May 21, 2015) (finding settlement that provided a warranty extension of three months and a reimbursement program to owners or lessees of service demo vehicles was fair reasonable and adequate and finally approving class-action settlement).

### 3.    Class Counsel Have Extensive Experience in Similar Litigation

As set forth in greater detail below and in the Declarations appended to this motion, proposed Class Counsel are highly experienced and skilled in handling complex class actions, and in particular, automotive class actions such as this. Proposed Class Counsel have served in leadership positions many class actions and have successfully obtained meaningful recoveries for consumers through class litigation.  *See* Zohdy Decl. at ¶¶ 24-27; Declaration of Russell D. Paul ("Paul Decl.") at ¶¶ 4-7. Accordingly, this factor strongly supports granting preliminary approval.

### 4.    The *Girsh* Factors Support Preliminary Approval

Although the foregoing analysis is sufficient for the Court to grant preliminary approval, courts sometimes consider the final approval factors to mitigate any potential issues in the future. *Udeen*, 2019 WL 4894568, at *3.[11] The Third Circuit directs district courts to analyze the following nine factors at the final approval stage:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. All of the *Girsh* factors that the Court can analyze at this stage support preliminary approval.[12]

As to the first factor, the complexity, expense, and likely duration support

---

[11] Rule 23(e) was amended in December 2018 to specify uniform standards for settlement approval. Courts in this district have continued to apply the same legal standards to preliminary approvals after the 2018 amendments. *See*, *e.g.*, *Udeen*, 2019 WL 4894568; *Smith v. Merck & Co.*, 2019 WL 3281609 (D.N.J. July 19, 2019). Further, "[t]he 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each circuit had developed its own list of factors to be considered in determining whether a proposed class action was fair[.]" *Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes). "[T]he goal of the amendment is not to displace any such factors, but rather to focus the parties [on] the 'core concerns' that motivate the fairness determination." *Id.* In this Circuit, the *Girsh* factors govern the analysis.

[12] The reaction of the class cannot be evaluated until after notice is issued to the Class Members pursuant to the Settlement.

preliminary approval because, without the Settlement, the parties would be engaged in contested motion practice and adversarial litigation for years. The claims advanced on behalf of the Settlement Class Members involve complex technical, engineering and legal issues. Continued litigation would be complex, time consuming and expensive, with no certainty of a favorable outcome. The Settlement Agreement secures substantial benefits for the Settlement Class while avoiding the delays, risks and uncertainties of continued litigation.

The third factor, the stage of the proceedings and the amount of discovery completed, also supports preliminary approval. In addition, Plaintiffs' counsel have conducted their own extensive independent investigation into the alleged issues, and informally obtained detailed information from Defendant. The information investigated and obtained has allowed Plaintiffs' counsel to understand the strengths and weaknesses of their case, and to analyze the risks of future litigation in comparison to the relief offered by the Settlement. *Udeen*, 2019 WL 4894568, at *3.

The fourth, fifth, and sixth factors all analyze the risks of continued litigation. If the parties had been unable to resolve this case through the Settlement, the litigation would likely have been protracted and costly. Plaintiffs' counsel have litigated many automotive class actions that have taken several years to conclude. Before ever approaching a trial in this case, the parties likely would have briefed, and the Court would have had to decide, discovery-related motions, a motion for class certification (along with a potential Rule 23(f) appeal), motions for summary judgment, as well as *Daubert* /FRE 702 motions and other pre-trial and trial-related motions. Additionally, considerable resources would have been expended on

discovery, depositions, and expert witnesses.

Moreover, there is a risk of not obtaining class certification should this action be litigated rather than settled. Defendant is likely to assert numerous defenses that may apply to many individual putative class members under the applicable laws of their respective states, such as lack of standing, statute of limitations, privity, and others, which, if litigated, could substantially if not completely bar many Settlements Class Members' claim and/or recovery. Likewise, if this action is litigated, there are other potentially predominating individualized issues relating to each putative class member's claim including the facts and circumstances of each putative class member's purchase or lease transaction; what, if anything, each putative class member viewed, heard and/or relied upon prior to purchase or lease; individual vehicle-related facts including the maintenance, use, repair history, and physical and mechanical condition of each vehicle; whether individual putative class members ever experienced the alleged issues; and the individual facts and circumstances of any putative class member's interactions, if any, with Audi dealers with respect to the breach of warranty claims.

Conversely, in the context of a class settlement, these potential impediments do not preclude certification of a nationwide Settlement Class, since the Court is not faced with the significant manageability problems of a trial. *See Amchem Prod Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (individual issues that may preclude class certification in litigation do not preclude class certification for settlement purposes, since manageability at trial is no longer a concern).

Courts routinely find the seventh factor – the defendant's ability to withstand

greater judgement – to be neutral, as it is here. Such a factor is typically only relevant when "the defendant's professed inability to pay is used to justify the amount of the settlement." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 440. This not a factor here.

Finally, the remaining *Girsh* factors – the range of reasonableness of the settlement both independently and weighed against the risk of further litigation – support preliminary approval. While it is important to remember that "settlement is a compromise," the proposed Settlement is reasonable and confers a substantial benefit on the Settlement Class, namely an extended warranty and reimbursement for out-of-pocket repair expenses. As a result, the 8th and 9th *Girsh* factors are also fulfilled because these factors involve analyzing the outcome of the Settlement in comparison to the potential risks of litigation. *See, e.g., In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 440 ("In evaluating the eighth and ninth *Girsh* factors, we ask 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'") (citation omitted).

The settlement must be judged "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). In conducting the analysis, the court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Litig.*, 55 F.3d at 806; *see also In re Shop-Vac Mktg. & Sales Pracs. Litig.*, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) ("The proposed settlement amount does not have to

be dollar-for-dollar the equivalent of the claim…and a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted). Here, as shown, the settlement provides significant benefits to the Settlement Class Members in the form of a Warranty Extension and reimbursements for certain out-of-pocket costs of a repair for a diagnosed condition of excessive oil consumption or a diagnosed condition of a fractured piston(s). And the reasonable class notice expense, claim administration expense, counsel fees/expenses and/or service awards are paid by Defendant without reducing, in any way, any Settlement Class Member's available benefits.

**B.    Certification of the Settlement Class Is Appropriate for Settlement Purposes**

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Products Inc.*, 521 U.S. 591 at 620; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). Accordingly, Plaintiffs seek the certification of the Settlement Class set forth above for settlement purposes. "Rule 23 of the Federal Rules of Civil Procedure allows this Court to certify a class for settlement purposes only," *Chemi v. Champion Mortg*., 2009 WL 1470429, at *6 (D.N.J. May 26, 2009), and here, certification of the Settlement Class for settlement purposes only clearly satisfies the Rule 23(a) and 23(b)(3) factors, especially under the standards for preliminary approval.

In the Third Circuit, "a class action—whether certified for settlement or

litigation purposes—must meet the class requisites enunciated in Rule 23." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d at 778, 800.

### 1.      Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the [numerosity requirement] of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) (citation omitted). The Settlement Class is comprised of all persons and entities who purchased or leased a Settlement Class Vehicle in the United States of America and Puerto Rico. S.A. § I.V.

The number of Settlement Class Vehicles in the putative class here is 2-5,152. Therefore, the numerosity requirement has been met.

### 2.      Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The test for commonality is "easily met." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). All that is required is that "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227. "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions,* 148 F.3d 283, 310 (3d Cir. 1998). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement

is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do.").

In this case, there are common questions of law and fact, such as, *inter alia*: (1) whether the Settlement Class Vehicles suffer from the alleged defects relating to the pistons within the 2.0T engine; (2) whether the defects relating to the pistons in the 2.0T engines implicate safety issues; (3) whether VWGoA knew about the alleged defects and, if so, for how long; and (4) whether the alleged defective nature of the pistons constitutes a material fact. Commonality is, therefore, satisfied. *See Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *4 (D.N.J. Mar. 22, 2013) ("Several common questions of law and fact exist in this case, including whether the transmissions in the Class Vehicles suffered from a design defect, whether Volvo had a duty to disclose the alleged defect, whether the warranty limitations on Class Vehicles are unconscionable or otherwise unenforceable, and whether Plaintiffs have actionable claims."). For classes alleging automobile defects, such questions are common. *See Udeen,* 2019 WL 4894568, at *5 (commonality satisfied where there were numerous common questions regarding whether the class vehicles were defective); *Alin v. Honda Motor Co.,* 2012 WL 8751045 at *5 (D.N.J. April 13, 2012) (finding commonality and predominance satisfied where "class vehicles allegedly suffer from defects that cause their air conditioning systems to

29

break down, although there are differences as to how the breakdowns occur").

### 3.        Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998). "As with numerosity, the Third Circuit has 'set a low threshold' for satisfying typicality, holding that '[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established….'" *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 149 (alternations in original) (citation omitted).

Here, the claims of Plaintiffs and the Settlement Class Members arise out of the same alleged defects and VWGoA course of conduct. *See Henderson,* 2013 WL 1192479, at *5 (typicality satisfied where "the claims made by the named Plaintiffs and those made on behalf of Settlement Class Members arise out of the same alleged conduct by Volvo – namely, Volvo's design, manufacture and sale of the allegedly defective Class Vehicles and Volvo's alleged failure to disclose the defect."); *Skeen v. BMW of N. Am., LLC*, 2016 WL 70817, at *6 (D.N.J. Jan. 6, 2016) (typicality satisfied where class suit alleged defendants "knowingly placed Class Vehicles containing the alleged defect into the stream of commerce and refused to honor its warranty obligations"). This requirement is, likewise, met here.

### 4.       Adequacy of Representation Under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining the adequacy of representation, the court should "'evaluate [both] the named plaintiffs' and … counsel's ability to fairly and adequately represent class interests.'" *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. Appx. 94, 100-101 (3d Cir. 2013) (alterations in original; citation omitted)). In doing so, "the district court ensures that no conflict of interest exists between the named plaintiffs' claims and those asserted on behalf of the class, and inquires whether the named plaintiffs have the ability and incentive to vigorously represent the interests of the class." *Id.* at 101 (citing *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 291 (3d Cir. 2010)).

In addressing the adequacy of the proposed class representative, district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988). Here, all of the Representative Plaintiffs are adequate because they purchased Settlement Class Vehicles and were allegedly injured in the same manner based on the same alleged defect as absent Class Members. They have also actively participated in the litigation of this case and been in regular communication with their attorneys regarding these proceedings.

The Settlement Agreement designates Berger Montague PC, Capstone Law APC ("Capstone"), and the Ladah Law Firm, all experienced and respected class action firms, as co-Class Counsel. Class Counsel have significant experience

litigating consumer class actions, including automobile-defect class actions. *See* Zohdy Decl. at ¶¶ 24-27 and Ex. B; Paul Decl. at ¶¶ 4-7 and Ex. A; Declaration of Ramzy P. Ladah ("Ladah" Decl.) ¶¶ 4-5 and Ex. A. Class Counsel have invested considerable time and resources into the prosecution of this action. They have a wealth of experience in litigating complex class actions and were able to negotiate an outstanding settlement for the Class. The extensive experience of Class Counsel is discussed more fully in their Declarations filed concurrently herewith. Based on the results achieved here, the Court should appoint these attorneys as Class Counsel for the Class and determine that Rule 23(a)'s adequacy requirement is satisfied.

Further, Plaintiffs have no interest adverse or "antagonistic" to the absent Class Members. Each of the Plaintiffs is an owner of a Settlement Class Vehicle who claims to have experienced the piston defect which is the condition at issue. Plaintiffs have no interests antagonistic to the other Settlement Class Members and will continue to vigorously represent the Settlement Class's interests. The interests of Plaintiffs and other Class Members are aligned in seeking to maximize the Class's recovery relating to the alleged defect. *See In re Philips/Magnavox Television Litig.*, 2012 WL 1677244, at *6 (D.N.J. May 14, 2012) (plaintiffs adequately represent the interests of class where they purchased the same allegedly defective televisions as the rest of the class and were allegedly injured in the same manner).

### 5.      The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek to certify the Class under Rule 23(b)(3), which has two components: predominance and superiority. When assessing predominance and superiority, the court may consider that the class will be certified for settlement

purposes only, and that a showing of manageability at trial is not required. *See Amchem Products Inc.*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial."); *Marchese v. Cablevision Sys. Corp.*, 2016 WL 7228739, at *2 (D.N.J. Mar. 9, 2016) (There is "a 'key' distinction between certification for settlement purposes and certification for litigation: when taking a proposed settlement into consideration, individual issues which are normally present in litigation usually become irrelevant, allowing the common issues to predominate.").

The Third Circuit has reiterated that the focus of the predominance "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members, especially for settlement purposes. For example, were this case to proceed, the focus would be whether VWGoA is liable to the Class under the claims pled, based on the alleged existence of a piston defect and VWGoA's related conduct. Both issues are subject to generalized proof, and reflect a question that is common to all class members. *See Henderson,* 2013 WL 1192479, at *6. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). Superiority requires the Court to

consider whether or not "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." *Sullivan*, 667 F.3d at 296 (citations omitted). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. *McCoy v. Health Net, Inc*., 569 F. Supp. 2d 448, 457 (D.N.J. 2008). These factors include: "(i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action." *Id*. (quoting Fed. R. Civ. P. 23(b)(3)).

The Settlement Agreement provides Class Members with substantial prompt, predictable, and certain relief, with well-defined procedures to ensure due process, such as affording the right of any Class Members who are dissatisfied with the Settlement to object or to exclude themselves. The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against VWGoA. *See Marchese*, 2016 WL 7228739, at *2 (finding that certification of a class for settlement purposes is more efficient than separate litigation of numerous individual claims). To litigate the claims of the potential Class Members on an individual basis would be economically infeasible and result in "needless duplication of effort." *See Henderson*, 2013 WL 1192479, at *6 (citation omitted). And because the Parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. *Sullivan*, 667 F.3d at 302-03. Therefore, "class

34

status here is not only the superior means, but probably the only feasible [way] . . . to establish liability and perhaps damages." *In re Nassau Cnty. Strip Search Cases,*, 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox Cnty*, 365 F.3d 1, 7 (1st Cir. 2004)).

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### C.     The Court Should Appoint Plaintiff's Counsel as Settlement Class Counsel

The Fed. R. Civ. P. 23(g) requires a court to appoint class counsel. In appointing class counsel, the Court "must" consider:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
- counsel's knowledge of the applicable law; and
- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Proposed Class Counsel, including Berger Montague PC, Capstone Law APC, and the Ladah Law Firm, clearly satisfy this criteria and have already been appointed by this Court as Interim Class Counsel for the nationwide putative class under Rule 23(g). These firms expended time, effort, and expense investigating this action and the bona fides of the Settlement herein. Further, as set forth in their respective Declarations submitted herewith, they are highly experienced in consumer and other

35

complex class action litigation. *See* Zohdy Decl. at ¶¶ 24-27 and Ex. B; Paul Decl. at ¶¶ 4-7 and Ex. A; Declaration of Ramzy P. Ladah ("Ladah" Decl.) ¶¶ 4-5 and Ex. A. It is clear from the firm's track record of success that proposed Class Counsel are highly skilled and knowledgeable concerning consumer law and class action practice. As confirmed by the result obtained in this case, Class Counsel have made the investment and have the experience to represent the Class vigorously. Accordingly, the appointment of the proposed Class Counsel under Rule 23(g) is warranted.

### D.   The Court Should Approve the Notice Plan

Under Federal Rule of Civil Procedure 23(e), class members who would be bound by a settlement are entitled to reasonable notice before the settlement is approved. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.212 (2004). In an action certified for settlement purposes under Rule 23(b)(3) "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In Re Nat'l Football League Players Concussion Injury Litig*., 821 F.3d at 435.

The notice plan described above and set forth in sections III and IV of the Settlement Agreement provides the best notice practicable under the circumstances. Here, the Notice Program includes: (1) mailing a First Class Notice to the Settlement

Class; (2) a settlement website established to allow Settlement Class Members to obtain information regarding the Settlement and access important documents regarding the Settlement; and (3) a toll-free number to provide Settlement Class Members with information regarding the Settlement. First Class Notices and Full Notices provided in this manner have been held to be sufficient. *Udeen*, 2019 WL 4894568, at *7; *Patrick v. Volkswagen Grp. Of Am.*, 2021 WL 3616105, at *5. The content and substance of the proposed notice, which is attached as Exhibit 2 the Settlement Agreement, will include all necessary legal requirements and provide a comprehensive explanation of the Settlement in simple layman's terms. *See* Fed. R. Civ. P. 23(c)(2)(B). Accordingly, the Parties respectfully request that the Court approve the Notice Plan.

### E.    A Final Approval Hearing Should be Scheduled

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval to the Settlement, address Class Counsel's request for attorneys' fees, expenses, and an incentive award for the Representative Plaintiffs, consider any objections and exclusions, and determine whether to dismiss this action with prejudice. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.44 (2004); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 600 (3d Cir. 2010). Plaintiffs respectfully request that the final approval hearing be scheduled for approximately six months from the date the preliminary approval order is entered.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) granting preliminary approval of the Settlement; (2) conditionally

certifying the proposed Settlement Class for settlement purposes; (3) conditionally appointing Plaintiffs as the Settlement Class Representatives and Plaintiffs' Counsel, Berger Montague PC, Capstone Law APC, and Ladah Law Firm, as Settlement Class Counsel; (4) approving the Parties' proposed Class Notice Plan for disseminating the Class Notice; (5) conditionally appointing JND Legal Administration, as the Settlement Claim Administrator; (6) setting deadlines for the filing of any objections to, or requests for exclusion from the Settlement and other submissions in connection with the Settlement approval process; and (7) setting a hearing date and briefing schedule for Final Approval of the Settlement and Plaintiffs' application for service awards and attorneys' fees and expenses.

Dated: October 11, 2023                    Respectfully Submitted,

                                           /s/ Russell D. Paul
                                           Russell D. Paul (NJ Bar. No. 037411989)
                                           Amey J. Park (NJ Bar. No. 070422014)
                                           Abigail J. Gertner (NJ Bar. No. 019632003)
                                           Natalie Lesser (NJ Bar No. 017882010)
                                           **BERGER MONTAGUE PC**
                                           1818 Market Street
                                           Suite 3600
                                           Philadelphia, PA  19103
                                           Tel: (215) 875-3000
                                           Fax: (215) 875-4604
                                           rpaul@bm.net
                                           apark@bm.net
                                           agertner@bm.net

                                           Tarek H. Zohdy (*pro hac vice*)
                                           Cody R. Padgett (*pro hac vice*)

**CAPSTONE LAW APC**
1875 Century Park East
Suite 1000
Los Angeles, California 90067
Tel: (310) 556-4811
Fax: (310) 943-0396
tarek.zohdy@capstonelawyers.com
cody.padgett@capstonelaywers.com

Ramzy P. Ladah
Adrian A. Karimi (*pro hac vice*)
**LADAH LAW FIRM**
517 S. 3rd St
Las Vegas, NV  89101
Telephone:   (702) 252-0055
Facsimile:    (702) 248-0055
Ramzy@ladahlaw.com
Adrian@ladahlaw.com

*Attorneys for Plaintiffs and the Proposed Class and Subclasses*