# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENI RIEGER, ALOHA DAVIS, JODIE CHAPMAN, CARRIE VASEL, KAREN BURNAUGH, TOM GARDEN, ADA and ANGELI GOZON, HERNAN A. GONZALEZ, PATRICIA A. HENSLEY, CLYDIENE FRANCIS, PETER LOWEGARD, and GRANT BRADLEY, individually and on behalf of a class of similarly situated individuals, <br><br>　　　　　　Plaintiffs, <br><br>　　　　v. <br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, d/b/a AUDI OF AMERICA, INC., <br><br>　　　　　　Defendant. | Case No. 1:21-cv-10546-NHL-EAP |

**DECLARATION OF TAREK H. ZOHDY IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Tarek Zohdy, hereby declare as follows:

1.　　I am an attorney at law duly licensed to practice before the courts of the State of California and all Federal District Courts in California. I am also a Senior Counsel at Capstone Law APC which, along with Berger Montague PC and Ladah Law (collectively, "Class Counsel"), are counsel of record for Plaintiffs Carrie Vassel, Karen Burnaugh, Tom Garden, Ada and Angeli Gozon, Patricia A. Hensley,

1

Clydiene Francis, Peter Lowegard, and Grant Bradley ("Plaintiffs") in the above-captioned action. Unless the context indicates otherwise, I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto. I make this declaration in support of the Motion for Preliminary Approval of Class Action Settlement.

### OVERVIEW OF THE LITIGATION AND SETTLEMENT NEGOTIATIONS

2. This nationwide class action arises out of an alleged defect in certain model year 2012-2017 Audi vehicles equipped with the Audi 2.0T engine. On April 30, 2021, original Plaintiff Jeni Rieger filed this class action asserting various individual and putative class claims alleging that defects in the pistons and/or piston heads of the putative class vehicles may allegedly result in engine malfunctions and/or excessive oil consumption.

3. She amended the Complaint on May 6, 2021, and filed a Second Amended Complaint on July 26, 2021, adding multiple named plaintiffs, including most of the Plaintiffs here.

4. On August 5, 2021, Plaintiff Hernan A. Gonzalez filed *Gonzalez v. Volkswagen Group of America, et al.*, in Superior Court of the State of New Jersey, Mercer County, Law Division, under Docket No. L-001632-21. On August 9, 2021, Defendants in that action filed a notice of removal to this Court. *See Gonzalez v. Volkswagen Group of America, et al.*, Civil Case No. 1:21-cv-15026-NLH-MJS, ECF No. 1. On September 30, 2021, the Court entered an order consolidating *Gonzalez* with and into this action, and directing the filing of a Consolidated Class Action Complaint, which was filed on October 12, 2021.

2

5. Defendant Volkswagen Group of America ("VWGoA") filed a motion to dismiss the Consolidated Class Action Complaint on December 3, 2021. Plaintiffs filed a response in opposition to the motion to dismiss on January 14, 2022. Plaintiffs voluntarily sought to dismiss the foreign defendants Volkswagen AG and Audi AG from the action, on February 2, 2022. VWGoA filed a reply on February 11, 2022, in support of its motion to dismiss.

6. On May 4, 2023, the Court granted in part and denied in part the motion to dismiss, with leave to amend.

7. As a result, on June 2, 2023, Plaintiffs filed the First Amended Consolidated Class Action Complaint solely against VWGoA. This complaint alleged a nationwide class as well as various state sub-classes for class members who purchased or leased class vehicles in California, Florida, Georgia, Illinois, Louisiana, Minnesota, Nevada, New Jersey, Oregon, Pennsylvania, Texas, and Washington.

8. In Spring 2023, the Parties initially discussed the possibility of settlement, after which the Parties agreed to participate in mediation before an experienced mediator.

9. On July 7, 2023, the Parties engaged in a vigorous day-long mediation before Bradley A. Winters, Esq., a respected and very experienced neutral class action Mediator with JAMS in which no agreement could be reached.

10. The Parties continued negotiations, exchanging additional information related to a potential settlement. Following further review of the information exchanged and investigation of the claims extensively, the Parties participated in a

second mediation on August 21, 2023. The return to mediation resulted in a class-wide Settlement. Mediator Winters helped the Parties to bridge the gap between their respective positions and agree to a settlement in principle. The terms of this Settlement have since been memorialized in the Settlement Agreement.

11. After agreeing to the structure and material terms for settlement of the Class claims, the Parties negotiated and ultimately agreed upon an appropriate request for incentive awards and Plaintiffs' attorneys' fees and expenses. All the terms of the Settlement Agreement are the result of extensive, adversarial, and arm's-length negotiations between experienced counsel for both sides. The settlement is set forth in complete and final form in the Settlement Agreement. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A.**

CLASS COUNSEL THOROUGHLY INVESTIGATED THE CLAIMS AND DEFENSES

12. Based on the information exchanged as well as a thorough investigation prior to filing the Complaint, including interviewing putative Class Members, researching publicly available materials, and inspecting Class Vehicles, counsel gained a thorough understanding of both the strengths and weaknesses of Plaintiffs' claims and believe the proposed terms of the Settlement Agreement represent a substantial recovery on behalf of the putative Class.

13. Class Counsel conducted a detailed investigation into the origins and nature of the issues reported by owners of the vehicles who had contacted them. Before filing the Complaint, Class Counsel investigated Plaintiffs' complaints, documented their problems, interviewed other putative Class Members, and researched publicly available materials to determine the extent to which the

problems affected the putative Class, as well as VWGoA's knowledge of the defect alleged. Class Counsel reviewed Technical Service Bulletins addressing the relevant symptoms and owners' and warranty manuals for each of the Class Vehicles. In addition, Class Counsel continued to respond to inquiries from putative Class Members and investigate their complaints. Class Counsel also gained information from vehicle inspections, including inspection of certain Plaintiffs' vehicles.

14. Class Counsel researched publicly available materials and information provided by the National Highway Traffic Safety Administration ("NHTSA") concerning consumer complaints about the Class Vehicles. Counsel reviewed and researched consumer complaints and discussions of related problems in articles and forums online, in addition to the various manuals and Technical Service Bulletins dating back to 2013 discussing the alleged defect. Finally, counsel conducted research into the various causes of actions and other similar automotive actions.

15. Accordingly, Class Counsel identified information that was instrumental to the case and to Plaintiffs' efforts during mediation. Class Counsel thoroughly investigated and researched the claims in litigating this action, which allowed Class Counsel to better evaluate VWGoA's claimed representations and omissions concerning the alleged piston defect.

### SETTLEMENT BENEFITS

16. Class Counsel have been responsible for the prosecution of this Action and for the negotiation of the Settlement Agreement. Counsel have vigorously represented the interests of the Class Members throughout the course of the litigation

5

and settlement negotiations. The number of Settlement Class Vehicles in the putative class here is over 205,152.

17. The Settlement is an excellent result, as it provides the Settlement Class with valuable relief that squarely addresses the piston defect issues raised in this litigation. This includes a Warranty Extension and reimbursement of certain previous out-of-pocket repair expenses.

18. In regards to the Warranty Extension, effective on the Court-ordered date by which the Claim Administrator shall mail the Class Notice of this Settlement to the Settlement Class ("Notice Date"), VWGoA will extend the New Vehicle Limited Warranties ("NVLWs") to cover 75% of the cost of repair (parts and labor), by an authorized Audi dealer, of the following during a period of up to nine (9) years or ninety-thousand (90,000) miles (whichever occurs first) from the Settlement Class Vehicle's In-Service Date: (1) <u>for Audi A4, A5, A6, Q5 and Model Year 2012-2014 Audi TT Settlement Class Vehicles only</u> – a diagnosed condition of excessive oil consumption by an authorized Audi dealer, as confirmed by an authorized Audi dealer's oil consumption test,[1] or (2) <u>for Audi A3 and Model Year 2016-2017 Audi TT Settlement Class Vehicles only</u> – a diagnosed condition of a fractured piston by an authorized Audi dealer. The Warranty Extension shall also cover a percentage, based on a Sliding Scale detailed in the Settlement, of the cost of repair (parts and labor), by an authorized Audi dealer, of a diagnosed condition of engine damage

---

[1] If an oil consumption repair is performed under the warranty extension, then the cost of the oil consumption test that led to said repair shall likewise be covered at the same percentage (75%) as provided under the warranty extension.

which was directly caused by excessive oil consumption (for Audi A4, A5, A6, Q5, and Model Year 2012-2014 Audi TT Settlement Class Vehicles only), or a diagnosed condition of engine damage other than to a piston which was directly caused by a fractured piston (for Audi A3 and Model Year 2016-2017 Audi TT Settlement Class Vehicles only), during the aforesaid period of nine (9) years or ninety-thousand (90,000) miles (whichever occurs first) from the applicable Settlement Class Vehicle's In-Service Date. As to all Settlement Class Vehicles, the Warranty Extension is conditioned upon the Settlement Class Member providing, to the dealer, Proof of Adherence to Maintenance Requirements.

19. The Warranty Extension is subject to the same terms, conditions, and limitations set forth in the Settlement Class Vehicle's original NVLW and Warranty Information Booklet, and shall be fully transferable to subsequent owners to the extent that its time and mileage limitation periods have not expired. Further, If a Settlement Class Vehicle's Warranty Extension time period from the In-Service Date has already expired as of the Notice Date, then for that Settlement Class Vehicle only, the Warranty Extension time and mileage limitations shall be for a period of up to seventy (70) days after the Notice Date or ninety-thousand (90,000) miles from the Settlement Class Vehicle's In-Service Date (whichever occurs first), subject to the same conditions and limitations set forth above. Prior to the Notice Date, VWGoA will advise authorized Audi dealers of the Settlement's Warranty Extension, so that the Warranty Extension may be implemented in accordance with the terms and conditions of this Settlement Agreement.

20. In regards to the reimbursement for out-of-pocket repairs, Settlement Class Members who timely mail to the Settlement Claim Administrator a Claim for Reimbursement (i.e., a fully completed, dated and signed Claim Form together with all Proof of Repair Expense and Proof of Adherence to Maintenance Requirements documentation) shall be eligible for 75% reimbursement of the paid (and unreimbursed) cost (i.e., parts and labor) of a past repair (limited to one (1) past repair) that was performed on a Settlement Class Vehicle prior to the Notice Date and within nine (9) years or ninety-thousand (90,000) miles (whichever occurred first) from the Settlement Class Vehicle's In-Service Date, to address the following: (i) for Audi A4, A5, A6, Q5 and Model Year 2012-2014 Audi TT Settlement Class Vehicles only – a diagnosed condition of excessive oil consumption as confirmed by an authorized Audi dealer's oil consumption test, or (ii) for Audi A3 and Model Year 2016-2017 Audi TT Settlement Class Vehicles only - a diagnosed condition of a fractured piston(s).

21. Reimbursement shall also include a percentage, determined by the same percentages of coverage set forth in the Sliding Scale in the Settlement, of the past paid (and unreimbursed) cost (i.e., parts and labor) of repair (limited to one (1) past repair), performed prior to the Notice Date and within nine (9) years or ninety-thousand (90,000) miles (whichever occurred first) from the Settlement Class Vehicle's In-Service Date, of: (1) for Audi A4, A5, A6, Q5 and 2012-2014 Audi TT Settlement Class Vehicles only – engine damage which was diagnosed to be directly caused by excessive oil consumption, or (2) for Audi A3 and 2016-2017 Audi TT

Settlement Class Vehicles only - engine damage other than to a piston which was diagnosed to be directly caused by a fractured piston.

22. Plaintiffs remain convinced that their case has merit but recognize the substantial risk that comes along with continued litigation. Based on Counsel's investigation and review of information and evidence exchanged, and in consideration of the risks of continued litigation and the relative strengths and weaknesses of Plaintiffs' claims and VGWoA's defenses, we have concluded that the Settlement represents an excellent result for Class Members.

### SETTLEMENT NOTICE AND CLAIMS ADMINISTRATION

23. The Parties agreed to retain JND Legal Administration as the Claim Administrator. The Claim Administrator will carry out the Notice Plan (as discussed in the Settlement), disseminate the CAFA notice, administer any requests for exclusion, and administer the Claims process including the review and determination of reimbursement claims, and distribution of payments to eligible Claimants whose claims are complete and have been approved under the Settlement terms. Pursuant to the Settlement, VWGoA will pay all administrative costs separate and apart from any benefits to which the Settlement Class Members may be entitled. Thus, none of the Settlement Administration costs will be borne by the Class Members in any way.

### QUALIFICATIONS TO SERVE AS CLASS COUNSEL

24. Capstone is one of California's largest plaintiff-only labor and consumer law firms. With over twenty-five seasoned attorneys, Capstone has the experience, resources, and expertise to successfully prosecute complex employment and consumer actions.

25. Capstone's accomplishments since its creation in 2012 are set forth in the firm resume. A true and correct copy of Capstone's firm resume is attached hereto as **Exhibit B.**

26. Capstone, as lead or co-lead counsel, has obtained final approval of sixty class actions valued at over $100 million dollars. Recognized for its active class action practice and cutting-edge appellate work, Capstone's recent accomplishments have included three of its attorneys being honored as California Lawyer's Attorneys of the Year in the employment practice area for 2014 for their work in the landmark case *Iskanian v. CLS Transportation Los Angeles*, 59 Cal. 4th 348 (2014).

27. Capstone has an established practice in automotive defect class actions and is currently appointed sole class counsel, following contested class certification, in *Salas v. Toyota Motor Sales, U.S.A., Inc*., No. 15-8629-FMO, 2019 WL 1940619 (C.D. Cal. Mar. 27, 2019). Capstone was also appointed sole class counsel after contested class certification in *Victorino v. FCA US LLC,* No. 16CV1617-GPC(JLB), 2021 WL 4124245 (S.D. Cal. Sept. 9, 2021) and, along with co-counsel, in *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493 (E.D. Mich. 2023). Capstone has negotiated numerous class action settlements providing relief to owners/lessees in the last five years. *See, e.g., Weckwerth, et al. v. Nissan North America, Inc.,* No. 3:18-cv-00588 (M.D. Tenn, Mar. 10, 2020) (finally approving settlement on behalf of millions of Nissan drivers with alleged transmission defects); *Wylie, et al. v. Hyundai Motor America,* No. 8:16-cv-02102-DOC (C.D. Cal. Mar. 02, 2020) (finally approving settlement on behalf of tens of thousands of Hyundai drivers with alleged transmission defects); *Granillo v. FCA US LLC,* No. 16-00153-FLW (D. N.J. Feb.

12, 2019); *Morishige v. Mazda Motor of Am., Inc.,* No. BC595280 (Los Angeles Sup. Ct. Aug. 20, 2019); *Falco v. Nissan N. Am. Inc.*, No. 13-00686-DDP (C.D. Cal. July 16, 2018), Dkt. No. 341 (finally approving settlement after certifying class alleging timing chain defect on contested motion); *Vargas v. Ford Motor Co.*, No. CV12-08388 AB (FFMX), 2017 WL 4766677 (C.D. Cal. Oct. 18, 2017) (finally approving class action settlement involving transmission defects for 1.8 million class vehicles); *Batista v. Nissan N. Am., Inc.*, No. 14-24728-RNS (S.D. Fla. June 29, 2017), Dkt. 191 (finally approving class action settlement alleging CVT defect); *Chan v. Porsche Cars N.A., Inc.*, No. No. 15-02106-CCC (D. N.J. Oct. 6, 2017), Dkt. 65 (finally approving class action settlement involving alleged windshield glare defect); *Klee v. Nissan N. Am., Inc.*, No. 12-08238-AWT, 2015 WL 4538426, at *1 (C.D. Cal. July 7, 2015) (settlement involving allegations that Nissan Leaf's driving range, based on the battery capacity, was lower than was represented by Nissan); *Asghari v. Volkswagen Group of America, Inc.*, Case No. 13-cv-02529-MMM-VBK, 2015 WL 12732462 (C.D. Cal. May 29, 2015) (class action settlement providing repairs and reimbursement for oil consumption problem in certain Audi vehicles).

## CONCLUSION

28.   As a result of this litigation, all current owners and lessees of the Settlement Class Vehicles receive substantial benefits from the Settlement. Based on my experience, the Settlement is fair, reasonable, and adequate, and treats all Class Members equitably. I ask that the Court approve the Settlement achieved on behalf of the Class resulting from this litigation.

I declare under penalty of perjury under the laws of United States of America

that the foregoing is true and correct.

Dated: October 11, 2023

_____
Tarek H. Zohdy