UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JENI RIEGER**, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>**VOLKSWAGEN GROUP OF AMERICA, INC.**, a New Jersey corporation, d/b/a **AUDI OF AMERICA, INC.**,<br><br>      Defendant. | Case No. 21–cv–10546–ESK–EAP<br><br>OPINION |

**KIEL, U.S.D.J.**

      **THIS MATTER** is before the Court on plaintiffs' unopposed motion for attorney's fees, costs, and service awards (ECF No. 90) and plaintiffs' motion for an order granting final approval of the settlement (ECF No. 101). I held a motion hearing on May 13, 2024. For the following reasons, the motions will be GRANTED.

      **I.**    **BACKGROUND AND PROCEDURAL HISTORY**

      The original complaint was filed in April 2021 (ECF No. 1) and thereafter twice amended to add additional plaintiffs (ECF Nos. 11, 36, 101–2 ¶¶ 2, 3). In August 2021, the *Gonzalez* action was filed in New Jersey Superior Court and later removed to this District (ECF No. 38–1 ¶¶ 7, 9) and consolidated with this action (ECF No. 42). Plaintiffs filed a 36-count consolidated class-action complaint asserting breach of express and implied warranties, violation of various state consumer-protection statutes, and fraud stemming from an alleged defect common to class vehicles by which piston rings failed to seat properly—leading them to fracture under heat and pressure and, in turn, cause issues including excessive oil consumption and engine damage. (ECF No. 45.)

On May 4, 2023, Judge Noel L. Hillman (Ret.) granted in part and denied in part defendant's motion to dismiss, concluding, in part, that plaintiffs failed to demonstrate standing to assert common-law claims on behalf of a nationwide class, and provided plaintiffs 30 days to specify their allegations and address the standing issue. (ECF Nos. 65, 66.) Plaintiffs filed an amended consolidated class-action complaint on June 2, 2023.  (ECF No. 67.)

### A.     Proposed Settlement

At roughly this same time, during Spring 2023, the parties began settlement discussions and informally exchanged information including the condition of class vehicles and defendant's ameliorative efforts.   (ECF No. 101–2 ¶8.) Settlement discussions picked up during the summer with two mediation sessions before Bradley A. Winters of JAMS, resulting in agreed-upon settlement terms.  (*Id.* ¶¶9, 10.)  Negotiations for attorney's fees and incentive awards took place after the parties agreed to the settlement terms. (*Id.* ¶11.)  On October 19, 2023, Judge Hillman entered an order preliminarily approving the settlement.  (ECF No. 84.)

As is discussed below, a class has not yet been certified.  The settlement defines settlement class vehicles as certain model year 2012, 2013, and 2014 Audi A4, A5, A6, and Q5 vehicles; 2012, 2013, 2014, 2016, and 2017 Audi TT vehicles, and 2015, 2016, and 2017 Audi A3 vehicles imported and distributed by defendant for sale or lease in the United States or Puerto Rico and designated by vehicle identification number (VIN).  (ECF No. 82–3 p.11.) The settlement class refers to individuals and entities who purchased or leased a settlement class vehicle, excluding various groups including those who have previously reached a settlement and release-of-claim with defendant and those who have timely and properly requested to be excluded from this settlement. (*Id.* pp.10, 11.)

The settlement provides two general types of relief.  First, the settlement extends the warranty for current owners and lessees to nine years or 90,000 miles of the vehicle's in-service date, whichever occurs first, during which defendant will cover 75 percent of the repair cost by an authorized Audi dealer for Audi A4, A5, A6, Q5, and 2012–2014 Audi TT settlement class vehicles (First Settlement Class Vehicles) diagnosed as having excessive oil consumption by an authorized Audi dealer or 75 percent of the repair cost by an authorized Audi dealer for Audi A3 and 2016–2017 Audi TT settlement class vehicles (Second Settlement Class Vehicles) diagnosed with a fractured piston by an authorized Audi dealer.  (*Id.* p.12.)   For comparison, the applicable new vehicle limited warranties were for four years or 50,000 miles, whichever occurred first.   (ECF No. 101–1 p.18.)   The warranty extension also covers a percentage of repair costs by an authorized Audi dealer for diagnosed engine damage directly caused by excessive oil consumption for First Settlement Class Vehicles and engine damage—other than piston damage—caused by a fractured piston for Second Settlement Class Vehicles, with the applicable percentage subject to a sliding scale based on the age and mileage of the vehicle.   (ECF No. 82–3 pp.12, 13.) The extended warranty is transferable to subsequent owners subject to the same mileage and vehicle-age maximums and was extendable by up to seventy days after the notice date of January 29, 2024 if the extended warranty expired as of the notice date and the vehicle had not yet reached 90,000 miles.  (*Id.* pp.13, 14.)

The second type of relief is reimbursement of out-of-pocket costs for one past repair performed within nine years and 90,000 miles of the in-service date for which a settlement class member has timely and fully completed a claim for reimbursement.  (*Id.* p.14.)   The reimbursement of 75 percent of the paid and unreimbursed cost applies to First Settlement Class Vehicles with a diagnosed condition of excessive oil consumption or Second Settlement Class Vehicles

3

diagnosed with a fractured piston.  (*Id.*)  Similar to the extended warranty, the reimbursement also applies to a percentage of one past repair for engine damage performed prior to the notice date but within nine years and 90,000 miles for First Settlement Class Vehicles if the engine damage was diagnosed as being directly caused by excessive oil consumption and Second Settlement Class Vehicles if the engine damage—other than a damaged piston—was diagnosed as being directly caused by a fractured piston.  (*Id.* p. 15.)  Engine-repair reimbursements are subject to the same sliding scale as the warranty extension.  (*Id.*)  If the repair was not conducted by an authorized Audi dealer, the maximum value of the unreimbursed repair to which the applicable percentage is to be applied is $3,700 for First Settlement Class Vehicles with an unreimbursed repair for excessive oil consumption, $12,000 for First Settlement Class Vehicles with an unreimbursed repair for engine damage directly caused by excessive oil consumption, and $9,000 for Second Settlement Class Vehicles with an unreimbursed repair for a fractured piston or engine damage—other than piston damage—caused by a fractured piston.  (*Id.*)

The relief is subject to various requirements and exceptions including necessary proof of adherence to maintenance requirements; exceptions for damage caused by abuse, modification or alteration of parts, insufficient maintenance, and collision;  and a requirement that—for past repairs not made by an authorized Audi dealer—the class member submit documentation or a declaration that the class member first sought to have the repair performed at an authorized Audi dealer.  (*Id.* pp. 12–16.)

## B. Notice to Class

As approved by Judge Hillman (ECF No. 84) the notice plan provided for a thorough class-member-identification process by which defendant was to provide VINs for the administrator to thereafter use to locate class members' mailing addresses for mailing of notices via first-class mail within 100 days of

4

preliminary approval (ECF No. 82–3 pp. 19, 20). The administrator was to also maintain a website with pertinent information including copies of the settlement and class notice and instructions on how to submit a claim form and contact the administrator or counsel for assistance. (*Id.* pp. 20, 21.)

In practice, the administrator utilized the 205,152 VINs provided by defendant, acquired contact information through registration information from the departments of motor vehicles of all 50 states as well as territories, identified 533,690 potential class members,[1] and mailed the class-notice, claim form, and other pertinent information to each class member on January 29, 2024. (ECF No. 101–4 ¶¶ 4, 5, 8.) For the 54,131 notices returned undeliverable, the administrator re-mailed 4,746 notices to forwarding addresses provided by the United States Postal Service and an additional 29,757 notices with updated addresses obtained through additional research. (*Id.* ¶ 10.) Also on January 29, 2024, the administrator established a settlement website—PistonSettlement.com—which featured copies of the settlement and notice, a claim form, and form declarations and received 39,420 page views from 15,923 unique users. (*Id.* ¶¶ 11, 12.) Additionally, a case-specific toll-free telephone number was set up, which received 4,279 calls. (*Id.* ¶¶ 13, 14.)

Finally, the terms of the settlement required that an objector must have filed notice of their intent to appear for the hearing on the motions. (ECF No. 82–3 pp. 23, 24.) No objector expressed an intent to appear for the hearing and no objector otherwise attended the May 13, 2024 motion hearing.

---

[1] The declaration of Marcia A. Uhrig, vice president of JND Legal Administration, states that 533,690 potential class members were identified through the search process, though 533,570 notices were sent. (ECF No. 101–4 ¶¶ 5, 8.) This discrepancy is explained by the fact that 120 potential class members had 10 or more VINs associated with their name and address. (*Id.* ¶ 9.) Notice was sent to those class members with cover letters listing the VINs associated with their name and address. (*Id.*)

## II. DISCUSSION

### A. Class Certification

The proposed settlement class has not yet been certified. The requirements of Rule 23(a) must be met no matter whether certification is sought for the purpose of proceeding with litigation or, as here, for the purpose of proceeding toward settlement. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379 (3d Cir. 2013). Those prerequisites are numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016).

If that threshold is met, courts must then determine whether the class meets the requirements of one of the three categories of class actions in Rule 23(b). *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 426. Here, plaintiffs assert that they meet the standards of a Rule 23(b)(3) class (ECF No. 101 pp. 30–32) which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3). Courts exercise considerable discretion in making certification rulings. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 426 (noting that the decision to certify a class is reviewed for abuse of discretion).

First with respect to numerosity, the Third Circuit has found that Rule 23(a)(1) is generally met if named plaintiffs can demonstrate that the number of plaintiffs exceeds 40. *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249, 250 (3d Cir. 2016). Here, 205,152 unique class vehicle VINs were identified and subsequent analyses identified 533,690 potential class members. (ECF No. 101–4 ¶¶ 4, 5.) The numerosity requirement is therefore met.

Second, where, as here, plaintiffs assert a 23(b)(3) class, the commonality requirement of Rule 23(a)(2) is subsumed by Rule 23(b)(3)'s predominance requirement and courts look to whether the named plaintiffs have demonstrated that the class members have suffered the same injury and their "claims 'depend upon a common contention ... capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 346 (D.N.J. 2020) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Common questions regarding vehicle defects and related duties to disclose and resulting harm have been found to satisfy the commonality and predominance requirements in this District. *See Udeen v. Subaru of Am., Inc.*, Case No. 18–17334, 2019 WL 4894568, at *5 (D.N.J. Oct. 4, 2019) (granting preliminary approval of a class-action settlement). Here, the class members' claims all stem from an alleged piston defect common to class vehicles and related fuel consumption issues, engine damage, and defendant's alleged duty to disclose. I find that the commonality and predominance requirements are therefore met.

Third, the Third Circuit has set a "'low threshold' for typicality," and courts seek to "ensure[] the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 427, 428 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182, 183 (3d Cir. 2001)). Here, again, though plaintiffs have asserted claims under multiple state warranty and consumer-protection laws, this case ultimately boils down to the same alleged defect, the same alleged concealment or failure to disclose, and substantially similar legal theories. *See Udeen*, 2019 WL 4894568, at *5. I find that typicality is therefore satisfied.

7

Finally, adequacy looks toward the named plaintiffs to determine whether there is any conflict between their claims and those asserted on behalf of the class and their ability and incentive to vigorously represent the interests of the class.  *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 101 (3d Cir. 2013).  Adequacy also evaluates class counsel under the Rule 23(g) factors, *id.*, which include the work counsel has performed in identifying and investigating potential claims; counsel's experience handling class actions, complex litigation, and the types of claims asserted; counsel's knowledge of applicable law; and the resources counsel will commit to representation.  Fed. R. Civ. P. 23(g)(1)(A).  I find that named plaintiffs have been harmed in substantially the same way as all class members, there are no identifiable conflicts between their claims and those of the class at large, and they have ably represented the class as evidenced by this settlement which—as will be discussed—appears to be well-supported.  I further conclude that class counsel has been diligent in identifying and investigating the asserted claims, is well-experienced and knowledgeable, and has and will commit sufficient resources to representing the class for the same reasons articulated by Judge Hillman in his opinion appointing interim class counsel (ECF No. 65 pp.68–70) and confirmed by my review of the docket and pending motions.

With respect to the proposed 23(b)(3) class, I have already found that the predominance requirement has been met.  I therefore turn to superiority, which includes consideration of the difficulty of managing the class and the ability to ascertain the class.  *Somogyi*, 495 F. Supp. 3d at 347.  When, as here, the certification is for the purpose of settlement, a showing of manageability for trial is not required, and ascertainability looks to whether the class is defined by objective criteria and there is a reliable and feasible method of determining whether class members fall within that definition.  *Id.*

Here, plaintiffs' claims center on an alleged defect present in class vehicles. Defendant provided 205,152 class-vehicle VINs and the administrator has acquired contact information for current and former owners and lessees by using those VIN numbers, obtaining contact information from the departments of motor vehicles, and standardizing the data to arrive at 533,690 potential class members. (ECF No. 101–4 ¶¶ 4, 5.) I conclude that plaintiffs have demonstrated that Rule 23(a) prerequisites have been met and, further, that Rule 23(b)(3)'s predominance and superiority requirements have been satisfied.

### B. Fairness of Settlement

A settlement may not be approved unless the court finds—after a hearing—that it is fair, reasonable, and adequate based on consideration of class representatives' and counsel's adequate representation of the class, whether the proposal was negotiated at arm's length, the adequacy of relief, and the equitable treatment of class members. Fed. R. Civ. P. 23(e)(2).

Courts within the Third Circuit have determined whether class-action settlements satisfy Rule 23(e)'s standards by considering the *Girsh* factors, which consist of

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018) (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

The *Girsh* factors have been utilized within this District for class-actions alleging vehicle defects. *See Skeen v. BMW of N. Am., LLC*, Case No. 13–01531, 2016 WL 4033969, at *7–17 (D.N.J. July 26, 2016); *Henderson v. Volvo Cars of N. Am., LLC*, Case No. 09–04146, 2013 WL 1192479, at *7–12 (D.N.J. Mar. 22, 2013). In evaluating the relevant factors, I note that it is the settling parties' burden to demonstrate that the *Girsh* factors weigh in favor of approving the settlement. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). The approval of a proposed settlement is a matter of discretion, and a district court may be found to have abused its discretion if its "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)).

I find that the first *Girsh* factor, the complexity, expense, and likely duration of litigation, favors approval. This matter has proceeded for three years with multiple iterations of the complaint, investigation into the very technical nature of defect at issue, and—more recently—the informal exchange of relevant information and subsequent mediation sessions. Continued litigation would, at the very least, lead to lengthy and expensive formal discovery, disputes over class certification, the retention of experts, and summary-judgment motion practice. *See Saini v. BMW of N. Am., LLC*, Case No. 12–06105, 2015 WL 2448846, at *7 (D.N.J. May 21, 2015) (finding that significant time and expense would have been expended through discovery, dispositive motions, class certification, and trial preparation and that the settlement provided substantial benefits, including extended warranty coverage); *Henderson*, 2013 WL 1192479, at *7, 8 (noting the complex and technical issues implicated, requiring expert trial testimony, and that

10

settlement avoided the significant expense of pre-trial motions and trial preparation). The first factor is therefore met.

The second factor, the reaction to the settlement, "'attempts to gauge whether members of the class support the settlement,' by considering the number of objectors and opt-outs and the substance of any objections." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d at 318). Here, the administrator mailed notices to 533,570 class members, received 54,131 returned-as-undeliverable notices, and remailed 4,746 notices using provided forwarding addresses and 29,757 notices using advanced address searches. (ECF No. 101–4 ¶¶8–10.) A dedicated website and toll-free number were also established, with 15,923 unique website views and 4,279 fielded calls. (*Id.* ¶¶11–14.) The administrator received 32 exclusion requests and 5,134 claim forms. (*Id.* ¶¶15–18, ECF No. 116–1 ¶5.)

The Court has received eleven objections (ECF Nos. 89, 91, 92, 93, 94, 95, 96, 97, 98, 99, 109) the latter of which appears to have been submitted out-of-time and the remainder challenged vigorously by a brief filed by counsel (ECF No. 108). Four objections have since been withdrawn with no further explanation. (ECF Nos. 104, 105, 106, 112.) I have reviewed each of these objections as well as counsel's response. These objections raise valid concerns and grievances including arguments that some class vehicles have already exceeded the extended warranty in time or mileage; the benefits of the settlement should be extended to all owners and lessees regardless of age or mileage; the opt-out, objection, and exclusion processes are prohibitively complicated; the settlement does not account for lost resale value; and the settlement inadequately holds defendant accountable for its alleged misconduct. Counsel, too, makes compelling arguments, including that a desire for a "better" settlement is typically not a constructive objection, objectors had an opportunity

to opt-out if doing so would have been in their best interest, and that the age of some of the vehicles makes it such that many class members would not have any relief but for the settlement. (ECF No. 108 pp. 10–12, 16, 17.)

Faced with these competing arguments, I am reminded that "lines must be drawn somewhere" and while this settlement may fail to offer relief to a percentage of class members, a more generous warranty extension may not have been reachable during settlement discussions and to have jeopardized settlement then and to do so now would deprive many other class members of the benefits offered. *See Alin v. Honda Motor Co., Ltd.*, Case No. 08–04825, 2012 WL 8751045, at *12 (D.N.J. Apr. 13, 2012) (finding that the second *Girsh* factor supported approval of the settlement despite objectors' claims that their vehicles were either too old or had too many miles to be eligible for recovery). I conclude that the objections, in both number and substance, do not outweigh the apparent support for the settlement. *See Sullivan*, 667 F.3d at 321. The second *Girsh* factor therefore favors settlement.

The third *Girsh* factor considers the stage of proceedings and quantity of discovery. I note that this case had just moved past the dismissal stage when the parties began settlement discussion in earnest. Formal discovery has not yet taken place. That being said, plaintiffs' counsel spent considerable time researching the claims asserted and drafting the multiple iterations of the complaint. The parties also informally exchanged information during settlement discussions and participated in two mediation sessions with a neutral mediator through JAMS. The third *Girsh* factor has been satisfied under similar circumstances. *See Saini*, 2015 WL 2448846, at *10 (finding that the third *Girsh* factor was met when the case had been litigated for two years, the parties had engaged in motion-to-dismiss briefing, and a settlement was reached through mediation). I conclude that counsel fully appreciated the merits and liabilities of the case prior to entering into settlement.

The fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).  I find that these factors also support settlement.  Plaintiffs have already experienced partial dismissal.  This case implicates the statutory and common law of numerous states, each with their own defenses.  There are risks inherent in any litigation and this one faces numerous forthcoming hurdles including class certification, summary-judgment motion practice, a likely battle of experts, motions *in limine*, and trial all while defendant maintains that vehicles were not defective and no fraudulent act or omission took place. (ECF No. 101–1 pp. 40, 41.)  The proposed settlement provides immediate relief to a larger number of potential class members than may have remained throughout litigation.  *See Skeen*, 2016 WL 4033969, at *15 (concluding that the fourth and fifth *Girsh* factors weighed in favor of approval upon the parties' representations that they were both confident in their positions and that the best outcome for the class would have otherwise been preceded by years of litigation and related cost without a likelihood of increased benefits to class members).  The fourth and fifth factors are therefore met.

The sixth *Girsh* factor "'measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial' in light of the fact that 'the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action.'"  *Sullivan*, 667 F.3d at 322 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537).  I find that the certification process would have been challenging for plaintiffs and would have been subject to continued review throughout litigation.  *See Gray v. BMW of N. Am., LLC*, Case No. 13–03417, 2017 WL 3638771, at *3 (D.N.J. Aug. 24, 2017).  Cases such as this one lend themselves to arguments related

to individualized circumstances such as class members' driving and maintenance habits. *See Henderson*, 2013 WL 1192479, at *11. As recognized by counsel, the differing state laws relied upon—each with their own elements, burdens of proof, and defenses—would have further complicated certification. This factor thus weighs in favor of approval.

"The seventh *Girsh* factor considers 'whether the defendants could withstand a judgment for an amount significantly greater than the settlement.'" *Sullivan*, 667 F.3d at 323 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537, 538). I have little doubt that an entity the size of defendant can withstand a larger judgment, but—as has repeatedly been recognized within this District under similar circumstances—the relative financial resources of a defendant do not themselves render a settlement unreasonable. *See, e.g., Oliver v. BMW of N.A., LLC*, No. 17–12979, 2021 WL 870662, at *8 (D.N.J. Mar. 8, 2021); *Yaeger v. Subaru of Am., Inc.*, Case No. 14–04490, 2016 WL 4541861, at *11 (D.N.J. Aug. 31, 2016). This factor is therefore, at worst, neutral.

The final two *Girsh* factors are evaluated together and analyze "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 440 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538). The risks attendant with proceeding on with litigation in this case have been referenced above. The benefits provided, namely an extended warranty period, are common among vehicle-defect cases and have been considered reasonable. *See Oliver*, 2021 WL 870662, at *8 (collecting cases). I find that the value of the settlement is commensurate with the relative strengths and weaknesses of the case and support settlement.

For these reasons, I will enter an order granting final approval of the class action settlement.

### C. Motion for Fees and Costs

The proposed settlement also states that defendant would not oppose an application for attorney's fees and costs that collectively seeks up to $2.2 million (ECF No. 82–3 p. 29), a sum that was negotiated after a settlement on the merits was reached (ECF No. 90–1 p. 10). Rule 23(h) provides that a court may award reasonable attorney's fees and costs as authorized by agreement. Fed. R. Civ. P. 23(h). "[C]ourts routinely approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount is independent of the benefit obtained for the class." *Rossi v. Proctor & Gamble Co.*, Case No. 11–07238, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013).

Despite this custom and courts' general discretion in awarding fees, a thorough analysis must still be conducted even when the parties agree to the requested fee. *See Schwartz v. Avis Rent a Car Sys., LLC*, Case No. 11–04052, 2016 WL 3457160, at *12 (D.N.J. June 21, 2016). Fee awards are generally determined by a percentage-of-recovery or lodestar method, with the lodestar method used in cases, such as this, where there is no common settlement fund from which to pull fees or a definitive means of calculating the total monetary value of the settlement. *See id.* The lodestar method has been used in evaluating fee applications similar to the application in this case. *See, e.g., Gray*, 2017 WL 3638771, at *5–6.

The lodestar method calculates a reasonable fee by multiplying the number of hours reasonably worked by a reasonable hourly rate. *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). The applicable rate is generally "the prevailing rate in the forum of the litigation," *see Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005), and the prevailing rate within this vicinage is that of the Philadelphia/New Jersey legal market, *see D'Ottavio v. Slack Techs.*, Case No. 18–09082, 2022 WL 15442211, at *8 (D.N.J. Oct. 26, 2022). The rate is to be determined at the time of the fee

application as opposed to the time services were rendered. *See Warner v. Twp. of S. Harrison*, Case No. 09–06095, 2013 WL 3283945, at *7 (D.N.J. June 27, 2013).

Counsel have included declarations with their motions for fees and costs, each providing summaries of the hours, rates, and costs sought. A court may rely on such summaries. *See Talone v. Am. Osteopathic Assoc.*, Case No. 16–04644, 2018 WL 6318371, at *16 (D.N.J. Dec. 3, 2018). Capstone Law APC submits that it has expended 647.1 hours for a total lodestar of $408,810, with fees ranging from $475 per hour for an associate with six years of experience to $950 per hour for a partner with 30 years of experience. (ECF No. 90–2 ¶ 30.) Berger Montague states that it has spent 1,228.5 hours on this case for a total lodestar of $695,402, with fees ranging from $540 to $1,075 for attorneys and $280 to $445 for paralegals and analysts. (ECF No. 90–4 ¶ 11.) Finally, Ladah Law submits that a single attorney with ten years of experience expended 306 hours at a rate of $550 per hour for a total lodestar of $168,300. (ECF No. 90–5 ¶ 4.)

Though some of the fees requested exceed that of the Community Legal Services of Philadelphia fee ranges sometimes relied upon within this vicinage, I find that the fee rates requested are within the range approved for similar cases within this District. *See Skeen*, 2016 WL 4033969, at *22, 23 (approving fees up to $1,100 per hour by utilizing a lodestar multiplier). I am further persuaded that the 2,181 hours expended over three years are reasonable given the significant research, drafting, and negotiating that counsel have engaged in. *See id.* at *21, 22 (concluding that 5,100 hours were reasonable for a three-year-old consumer class action involving the laws of a dozen states).

Counsel further seeks just shy of $17,000 in total costs relating to mediation, filing and courier fees, research, travel, printing, and similar litigation-related expenses. (ECF No. 90–2 ¶ 33, ECF No. 90–4 ¶ 18, ECF No.

16

90–5 ¶ 7.) These costs, too, are in line with those approved within this District in similar cases, *see Saini*, 2015 WL 2448846, at \*19 (concluding that $22,848.22 in expenses for travel, mediation, and consultant fees were reasonable), and I independently determine that such costs are reasonable here.

Together, counsel's sought-after lodestar fee and costs total $1,289,456.12. Counsel requests that a lodestar multiplier of just over 1.7 be applied to reach the agreed-upon $2.2 million. (ECF No. 90–1 p.35.) Counsel further represents that this multiplier will decrease over time as additional work is performed, including responding to inquiries and supervising the ongoing administration of claims. (*Id.*) Lodestar multipliers are intended to account for the risk taken on in certain cases and the quality of counsel's work, *In re Diet Drugs*, 582 F.3d 524, 540 n.33 (3d Cir. 2009), and multipliers similar to the one counsel seeks here have been applied for comparable work and risk, *see, e.g.*, *Gray*, 2017 WL 3638771, at \*5–6 (providing a multiplier of 1.5 as opposed to the requested 2.4); *Alin*, 2012 WL 8751045, at \*22 (approving a multiplier between 1.67 and 1.73 depending on the inclusion of costs).

In addition to evaluating the requested fees and costs under the lodestar model, I have evaluated them under the *Gunter/Prudential* factors, which include 1) the size of the fund and number of beneficiaries, 2) the presence or absence of objections to the settlement or fees requested, 3) the skill and efficiency of counsel, 4) the complexity and duration of litigation, 5) the risk of nonpayment, 6) the amount of time devoted to the case by plaintiffs' counsel, 7) the awards in similar cases, 8) the value of benefits attributable to class counsel as opposed to other groups, 9) the percentage of fee that would have been negotiated in a private-fee arrangement, and 10) any innovative settlement terms. *Halley*, 861 F.3d at 496. Courts need not apply these factors in any particular way and certain factors may be afforded greater weight depending

17

on the circumstances. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 153 (D.N.J. 2013).

Here, there is no fund to consider, though the number of beneficiaries are considerable with 5,134 claim forms filed and further relief for members with vehicles still within the warranty ranges to potentially come. Counsel represents that a private-fee arrangement would have likely been between 30 and 40 percent (ECF No. 90–1 at 44), but it is unclear to what total sum that rate would have been applied. As referenced earlier, the relief secured here is common to these kinds of cases.

I place greater weight in the second through eighth factors. As stated, there are comparatively very few objections to the settlement or fee request, especially in light of the approximately half-million notices that were mailed out. *See Saini*, 2015 WL 2448846, at *17 (concluding that 13 opt-outs out of 104,000 potential class members supported approval). Counsel are well-experienced generally, and with this type of litigation specifically, as recognized by Judge Hillman in his appointment of them as interim counsel (ECF No 65 pp. 68–70) and I conclude that that experience shepherded this case toward the present settlement. I further find that counsel's efforts, supported by named plaintiffs, are responsible for the resulting settlement.

For reasons similar to those articulated in evaluating the *Girsh* factors, this matter is complex both technically with respect to the defect alleged and legally as plaintiffs rely on a wide range of state statutory and common law. *See Skeen*, 2016 WL 4033969, at *24 (noting that counsel survived dismissal and obtained a settlement in a complex, multi-state consumer class action); *see also Oliver*, 2021 WL 870662, at *10 (noting that settlement was preferable to potential years of legal hurdles and related uncertainty). Counsel have spent three years and over 2,000 hours on this litigation, sufficient time to satisfy the fourth and sixth factors, *see Saini*, 2015 WL 2448846, at *18; *Henderson*, 2013

WL 1192479, at *18, and the risk of no recovery was substantial due to the aforementioned challenges ahead, including certification and summary-judgment motion practice. Finally, the $2.2 million in fees and costs sought is well within the range of fees and costs awarded in similar cases. *See Oliver*, 2021 WL 870662, at *11 (approving a $900,000 award and reviewing fees for similar litigation of up to $8.6 million).

I will therefore enter an order granting the motion for attorney's fees and costs. That order will also approve the incentive payments sought. The settlement provides for eight service awards of $5,000 each to nine named plaintiffs, with two plaintiffs who co-own the same vehicle receiving a single award. (ECF No. 82–3 pp.29, 30.) Plaintiffs seek these awards in their unopposed motion for attorney's fees, costs, and service awards. (ECF No. 90–1 pp.24 n.8, 45–47). I conclude that these awards are appropriate based on the time and effort plaintiffs have expended, including participation in initial interviews with counsel, collection and preservation of relevant documents and other evidence, and review of the various iterations of the complaint and settlement. *See Henderson*, 2013 WL 1192479, at *19 (approving award of $5,000 and $6,000).

### III. CONCLUSION

For the foregoing reasons, plaintiffs' unopposed motion for attorney's fees, costs, and service awards (ECF No. 90) and plaintiffs' motion for an order granting final approval of the settlement (ECF No. 101) will be GRANTED. An appropriate order accompanies this opinion.

                                       */s/ Edward S. Kiel*
                                       EDWARD S. KIEL
                                       UNITED STATES DISTRICT JUDGE

Dated: May 16, 2024